**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

|  |  |
|---|---|
| J.H., by and through his next friend, Terina Gray; on behalf of himself and all persons similarly situated, T.A., by and through his next friend, Alice Austin, on behalf of himself and all persons similarly situated, and DISABILITY RIGHTS MISSISSIPPI<br><br><br>Plaintiffs,<br><br>v.<br><br>HINDS COUNTY, MISSISSIPPI,<br><br>Defendant. | Case No.  3:11-CV-327 DPJ-FKB |

**AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.     This is a civil action pursuant to 42 U.S.C. § 1983 to vindicate the rights of children imprisoned at the Henley-Young Juvenile Justice Center (hereinafter "Henley-Young") under the First, Eighth, and Fourteenth Amendments to the United States Constitution and to enforce their rights to an effective, meaningful Protection and Advocacy System ("P & A"). The Plaintiffs represent a class of children who have suffered abuse and live in unsafe and unsanitary conditions at Henley-Young. Henley-Young's inhumane and unconstitutional practices include regularly isolating children in small cells for 20 - 23 hours a day and subjecting them to sensory deprivation.  Children languish in their cells receiving sporadic access to educational services and counseling services.  Children with serious mental health needs are

frequently denied the services necessary to treat their conditions. Henley-Young staff torment youth—including those living with mental illness—with taunts and threats that constitute verbal abuse. One officer told a suicidal youth that if the youth succeeded in killing himself it would be okay—because there would be one less child to care for inside of the facility. Another staff member threatened to come to a child's house and harm his family because the child took too long in the shower. These violations reflect a disorganized, understaffed facility that houses children in brutal, abusive conditions.

2.      On behalf of themselves and all similarly situated children, the named Plaintiffs seek declaratory, preliminary, and permanent injunctive relief requiring that the Defendant cease its unconstitutional policies and practices at Henley-Young and provide class members with the standard of care and conditions of confinement mandated by the United States Constitution.

3.      Plaintiff Disability Rights Mississippi ("DRMS") is a non-profit agency with a federal mandate to protect the rights of individuals with disabilities. In order to ensure that DRMS can provide effective protection and advocacy services, federal law requires that juvenile detention centers provide DRMS with access to residents, facilities, and records. DRMS has exercised its access rights, through its contracted agent the Southern Poverty Law Center ("SPLC"), without interference from Hinds County since the summer of 2009 until June 2, 2011. DRMS/SPLC hoped to collaborate with the County to correct the unlawful conditions in Henley-Young. Unfortunately, county officials have now barred DRMS from providing protection and advocacy services to the children imprisoned in Henley-Young.

4.     Moreover, the Defendant has interfered with youths' meaningful access to the courts by only allowing youth to speak with attorneys from DRMS/SPLC.  The Defendant is no longer allowing youth to speak with advocates, interns, or anyone working under the authority of attorneys for DRMS/SPLC.   Thus, rather than facilitate access to the courts as the Constitution demands, the Defendant has implemented a policy that limits youths' access to the courts.

5.     The County's failure to comply with federal law leaves Plaintiff DRMS with no choice but to seek declaratory and preliminary and permanent injunctive relief to prevent Defendant from denying DRMS its right to complete, timely, and unaccompanied access to Henley-Young, its staff, records, and youthful residents.

## PARTIES

6.     Plaintiff J.H. is a twelve-year-old male who lives with various mental health diagnoses, including attention deficit hyperactivity disorder, and is currently imprisoned at Henley-Young.   On behalf of himself and all similarly situated children, he brings this action by and through his next friend and mother, Terina Gray.  J.H. is confined at Henley-Young pre-adjudication.

7.     Plaintiff T.A. is a fifteen-year-old male who lives with attention deficit hyperactivity disorder.   T.A. is educationally mentally retarded and receives special education services.   T.A. is currently imprisoned at Henley-Young.   On behalf of himself and all similarly situated children, he brings this action by and through his next friend and mother, Alice Austin.  T.A. is confined at Henley-Young as a post-adjudication disposition entered by the Hinds County Youth Court.

8.      The named Plaintiffs' plight echoes the stories of many youth imprisoned at Henley-Young. Children uniformly describe Henley-Young as a facility where youth languish without necessary mental health services, are regularly verbally abused, harassed, and taunted by officers and where they are almost always confined in small cells for approximately 20 hours a day. These conditions violate the constitutional rights of the named Plaintiffs and all similarly situated children, all of whom are entitled to reasonably safe and sanitary conditions of confinement and protection from harm.

9.      Plaintiff DRMS has a federal mandate to protect and advocate for the rights of persons with disabilities in Mississippi. Federal law extends this mandate to children with disabilities who are confined to juvenile detention centers. Through a contracted agent, DRMS devotes significant resources to investigating conditions of confinement and advocating on behalf of youth housed in juvenile facilities across the state of Mississippi. After having access to children with disabilities who are confined at Henley-Young for approximately two years, DRMS/SPLC, have now been denied access to these children.[1]

10.     DRMS recently changed its name from Mississippi Protection and Advocacy Services, Inc. to Disability Rights Mississippi. Incorporated in 1976, DRMS has over thirty years experience protecting the rights of children with disabilities throughout

---

[1] Federal law permits DRMS to designate agents with whom it contracts to assist in carrying out its responsibilities under federal law. 42 U.S.C. § 10804(a)(1)(A-B); 42 C.F.R. § 51.42(a). Pursuant to this authority, DRMS has contracted with the Mississippi Youth Justice Project (MYJP), a project of the Southern Poverty Law Center, to conduct monitoring activities in juvenile justice and mental health facilities throughout the state of Mississippi. When conducting monitoring under the P & A Acts, MYJP is an agent of DRMS and thus has the same access authority under federal law. *See* Exhibit A (Memorandum of Cooperation between MYJP and DRMS).

the state of Mississippi. DRMS files this complaint in its own name to redress injuries to itself and to the children DRMS is mandated to serve.

11. Defendant Hinds County is a governmental entity with responsibility to "establish and maintain detention facilities, shelter facilities . . . or any other facility necessary to carry on the work of the youth court." Miss. Code Ann. § 43-21-19. Hinds County is the entity with ultimate responsibility to secure and protect the rights of children held at Henley-Young.

### JURISDICTION AND VENUE

12. The named Plaintiffs' cause of action arises under the First, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

13. Plaintiffs' cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 *et seq.*; the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. §§ 794e *et seq.* (these three laws are hereafter collectively referred to as "The P & A Acts"); and 42 U.S.C. § 1983. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

14. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

15. Venue in this Court is proper under 28 U.S.C. § 1391(b). Defendant resides in this district, and the events and omissions complained of occurred in this district.

### CLASS ACTION ALLEGATIONS

16.     The named Plaintiffs bring this suit on their own behalf and on behalf of all children who are, or will in the future be, imprisoned at the Henley-Young Juvenile Justice Center.

17.     The class is so numerous that joinder of all members is impractical. Henley-Young has the capacity to house 84 youth at one time and well over 300 youth pass through the facility in a one-year time period. Accordingly, the Defendant has subjected hundreds of children to abusive conditions. Further, because children remain at Henley-Young for varying lengths of time, and the population changes on a daily basis, the class also includes future members whose names are not known at this time. Fed. R. Civ. P. 23(a)(1).

18.     There are questions of law and fact common to all class members, including but not limited to the Defendant's failure to provide class members with constitutionally adequate mental health care, the Defendant's policy and practice of subjecting class members to prolonged periods of cell confinement, and the Defendant's failure to otherwise provide class members with constitutionally safe and humane conditions of confinement. Fed. R. Civ. P. 23(a)(3).

19.     Because the policies, practices, and customs challenged in this Complaint apply with equal force to the named Plaintiffs and the other members of the class, the claims of the named Plaintiffs are typical of the class in general. Fed. R. Civ. P. 23(a)(3).

20.     The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit and are represented by experienced counsel with expertise in class action litigation in

federal court. Counsel has the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action. Fed. R. Civ. P. 23(a)(4).

21.     The Defendant refuses to act on grounds generally applicable to the class in that Defendant's policies and practices of violating the Plaintiffs' constitutional rights have affected all class members. Further, the Defendant's policy and practice of interfering with youths' constitutional right to access the courts has affected all class members equally. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

22.     Henley-Young is the largest detention center in the State and has the capacity to house 84 youth. There are currently 37 children being held in the facility. Henley-Young holds children awaiting adjudication and disposition by the Hinds County Youth Court. It may also hold youth for up to 90 days as a post-adjudication disposition. Miss. Code Ann. § 43-21-605(1)(k). Youth are regularly incarcerated at Henley-Young both before and after disposition.

23.     This complaint describes conditions that currently exist and gives examples involving specific youth who are and recently were incarcerated at Henley-Young.

### Excessive Cell Confinement

24.     Defendant has a custom and/or practice of confining youth in oppressively small cells that contain nothing but a toilet, sink, and bed for 20-23 hours per day. Youth imprisoned at Henley-Young spend the majority of their time in their cells with absolutely nothing to do, requiring them to sit or lie idle in their cells for extended periods of time. Only a select few youth are allowed to have reading

materials from Henley-Young's school in their cells and the majority of the youth are not allowed to have any type of reading or writing materials in their cells, with the exception of a Bible.

25.     Defendant has a custom and/or policy of failing to provide children with access to regular physical exercise, recreation, or any other rehabilitative programming. Youth are occasionally permitted to exercise, but are generally denied the opportunity to engage in any large muscle exercise for days at a time.

26.     Since his admission into Henley-Young, J.H. has spent 20 hours a day locked inside of cell with limited human interaction. He is denied access to all rehabilitative and educational programming and is provided only extremely limited opportunities to engage in large muscle exercise.

## Inadequate Mental Health Care

27.     The Defendant fails to provide minimally adequate mental health services for the youth in its custody. The Defendant has a policy and practice of denying the Plaintiffs access to mental health counseling, medication monitoring, and the staff fail to distribute and/or monitor youths' medications in compliance with professionally accepted standards of care. Most staff members are unable to recognize and properly react to the obvious needs of youth with known, demonstrable, serious mental health disorders.

28.     Defendant fails to assure that youth are provided adequate psychological assessments upon admission to Henley-Young by trained mental-health professionals, resulting in under-identification of and inadequate treatment for youth with serious mental illnesses, developmental disabilities, or other disabilities. Defendant also fails

to take steps to treat youths' pre-existing mental health conditions, causing youth to go without medication, psychological evaluations, and access to mental-health professionals.

29.     Defendant routinely asks parents of youth detained at the facility to bring medication to the facility and has even threatened to report parents to the Mississippi Department of Human Services for neglect if they fail to do so.  Defendant depends on the parents/guardians of youth detained at Henley-Young to provide medication, rather than securing medication for youth in its custody.

30.     Prior to his admission to Henley-Young, J.H. was prescribed and took Risperidone daily to address his mental health needs.  J.H. arrived at the facility without his medication and went without his medication for two days.  He was only able to resume taking his prescription after he informed his mother that he had not been provided his medication.  In response to this denial, J.H.'s mother brought his pills to the detention center.  If J.H.'s mother had been unable to bring the medication to Henley-Young, it is likely that he would have been deprived of his medication for the duration of his detention.  Despite his pronounced mental health needs, J.H. received no mental health counseling or treatment for the duration of his imprisonment at Henley-Young.

31.     In April 2011, Henley-Youth staff denied W.J., a sixteen-year-old youth with serious mental health needs, the Melatonin, Cogentin and Zyprexa that he regularly took in order to treat his mental health needs and to help him sleep.  As a result of this denial, W.J. often had trouble falling asleep.

32.     In May 2011, D.C., a twelve-year-old youth with a history of serious mental health issues was detained at Henley-Young for well over a month. During this entire time period, Henley-Young staff refused to provide him with mental health services—including but not limited to prescription medication. Because he was denied treatment for his mental health needs, D.C. began to experience suicidal thoughts and attempted to harm himself by banging his head against the walls of his cell. Despite his clearly manifested need for treatment, Henley-Young staff refused to provide D.C. with adequate care.

33.     In October 2010, D.I., a seventeen-year old youth, began cutting himself with a razor—this self-harming behavior was a manifestation of serious mental health need. Instead of providing D.I. with the required care, Henley-Young staff taunted the youth and commented that if he succeeded in killing himself, there would be "one less person officers have to worry about."

### Verbal Abuse

34.     Staff at Henley-Young routinely subject youth confined at the facility to verbal and physical abuse. The verbal abuse is usually in the form of cursing and threats of physical harm to youth, and in some instances family members of youth. Officers have even threatened to kill youth. This verbal abuse frequently escalates into physical assaults. Instead of employing de-escalation techniques, officers routinely use physical force to get youth to return to their cells.

35.     While J.H. has been at Henley-Young, he has been targeted by staff because he continually cries and expresses his depression. Officers have called him a "cry baby" and have said "shut up you b---h" to him when he is crying. The officers have

also threatened to beat J.H. as a consequence for his crying. As a result, J.H. does not feel safe at Henley-Young and is constantly afraid that the officers are going to harm him. This causes J.H. severe emotional distress.

36.     In February 2011, an officer began cursing a youth who took too long to return to his cell after his shower. The officer began cursing the youth and told the youth that he worked for the police department and would find out where the youth lives and inflict harm on the youth and his family. In the days that followed this incident, the officer refused to allow the youth to shower on a daily basis.

37.     Upon information and belief, and based on interviews with youth who are currently held or were recently held at Henley-Young, such verbal abuse is routinely inflicted on putative class members.

### Inadequate Family Unification and Community Reintegration

38.     The Defendant has a custom and/or practice of placing an unnecessary burden on a youth's ability to maintain contact with their family members. This communication is essential for children's treatment and rehabilitation and for their eventual reintegration into the community. It is also important to ensure that the facility's policies and practices do not substantially depart from accepted professional judgment.

39.     J.H. has been barred from engaging in regular communication with his mother since his arrival at Henley-Young. He was denied the opportunity to call his mother when he first entered the facility and approximately 24 hours elapsed before was allowed to speak with his mother.

### PLAINTIFF DRMS'S ACCESS AUTHORITY

11

40.     Congress established Protection and Advocacy ("P & A") systems in 1975 to protect and advocate for the rights of persons with developmental disabilities, and reauthorized these systems in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"). 42 U.S.C. §§ 15001 *et seq.* Congress provided P & A systems with the authority to investigate incidents of abuse and neglect against individuals with developmental disabilities and pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a). Congress has expanded the scope of the P & A system to provide protection and advocacy services to all persons with disabilities. The Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act") provides for the protection of rights of individuals with mental illness, 42 U.S.C. §§ 10801 *et seq.*; and the Protection and Advocacy of Individual Rights Program ("PAIR Act") was created to protect the rights of all other individuals with disabilities who are not covered under the PADD and PAIMI Acts. 29 U.S.C. §§ 794e *et seq.*

41.     Pursuant to federal law, DRMS has rights to:

  a. reasonable unaccompanied access, for monitoring and investigatory purposes, to public and private areas of the detention facility in Henley-Young, 42 C.F.R. § 51.42(b); 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(f); 45 C.F.R. § 1386.22(g);

  b. interview facility service recipients, staff and other persons as part of an abuse and neglect investigation when DRMS determines it has probable cause to believe an incident has occurred, 42 C.F.R. § 51.42(b);

  c. provide information and training on individual rights and services provided by the P & A system, 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g);

  d. communicate privately with facility residents, 42 C.F.R. § 51.42(d); 45 C.F.R. § 1386.22(h);

e.      access to records of facility residents, 42 C.F.R. § 51.41; 45 C.F.R. § 1386.22(a)-(e); and

f.      access to facility incident reports and investigatory findings, 42 C.F.R. § 51.41(c)(2); 45 C.F.R. § 1386.22(b)(1)-(2).

42.     Because Mississippi receives federal funding under the P & A Acts, the state must have an effective P & A system.  DRMS is the designated Mississippi P & A System.  (*See Mississippi Protection & Advocacy v. Cotten*, 929 F.2d 1054, 1055-56 (5th Cir. 1991).  Federal law permits DRMS to designate agents with whom it contracts to assist in carrying out its responsibilities under federal law.  42 U.S.C. § 10804(a)(1)(A-B); 42 C.F.R. § 51.42(a).

43.     To effectuate the Congressional mandate to protect and advocate for the rights of individuals with disabilities, the P & A Acts require that a P & A system and its authorized agents have physical access to individuals with disabilities, access to individuals' records, and physical access to the facilities housing these individuals. 42 U.S.C. § 15043(a)(2)(H)-(J); 42 U.S.C. § 10805(a)(3)-(4); 45 C.F.R. § 1386.22; 42 C.F.R. § 51.42(a)-(c).  This access includes the right "to meet and communicate privately" with residents "both formally and informally, by telephone, mail and in person." 45 C.F.R. § 1386.22(h); 42 C.F.R. § 51.42(d).

44.     Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility that a P & A is authorized to access and monitor.  These "[f]acilities include… juvenile detention facilities." 42 C.F.R. § 51.2. *See also* 45 C.F.R. § 1386.19 (specifying that facilities covered under the PADD Act include juvenile detention facilities).

45.     Henley-Young is a covered "facility" as defined under the PAIMI Act and the PADD Act.  42 U.S.C. § 10802(3); 42 C.F.R. 51.2; 45 C.F.R. § 1386.19.

46.     A significant number of the youth who are detained at Henley-Young live with disabilities—including various forms of mental illness and learning disabilities. Mental illness prevalence rates reported for incarcerated youth throughout the state of Mississippi and the country as a whole is estimated to be around 60%. *See* Angela Robertson & Jonelle Husain,  Mississippi State University, *Prevalence of Mental Illness & Substance Abuse Disorders Among Incarcerated Juveniles* (July 2001), http://www.ssrc.msstate.edu/publications/Prevalence%20of%20Mental %20Illness.PDF (finding that 66% to 85% of incarcerated juveniles in Mississippi suffer from at least one diagnosable mental disorder, compared to only 14% to 20% of youth in the state's general population and that 60-70% of youth in the Henley-Young require mental health services); Thomas Grisso, *Adolescent Offenders with Mental Disorders*, 18 THE FUTURE OF CHILDREN 143, 150 (2008), http://futureofchildren.org/futureofchildren/publications/docs/18_02_07.pdf (estimating that about one-half to two-thirds of youth in various juvenile justice settings meet criteria for one or more mental disorders, compared to about 15 to 25 percent of youth in the U.S. general population).

47.     Under the P & A Acts, Congress designated two distinct bases for access to facilities and residents:  (1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. § 15043(a)(2)(B), 42 U.S.C. § 10805(a)(1)(A), 45 C.F.R. § 1386.22(f), 42 C.F.R. § 51.42(b); and (2) access for the purpose of

monitoring the facility and the treatment of its residents, 42 U.S.C. § 15043(a)(2)(H),

42 U.S.C. § 10805(a)(3), 45 C.F.R. § 1386.22(g), 42 C.F.R. § 51.42(c).

48.     To carry out its mandate to investigate incidents of abuse and neglect, DRMS

is entitled to "reasonable unaccompanied access . . . to all areas of the facility which

are used by residents or are accessible to residents . . . [and] shall have reasonable

unaccompanied access to residents at all times necessary to conduct a full

investigation of an incident of abuse or neglect." 42 C.F.R. § 51.42(b). *See also* 45

C.F.R. § 1386.22(f).

49.     To carry out its monitoring duties, DRMS is entitled to reasonable

unaccompanied access to all residents of a facility at reasonable times to provide P &

A services and contact information, rights information, monitor compliance with

respect to the rights and safety of service recipients, and to view and photograph all

areas of the facility which are used by residents or are accessible to residents. 42

C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g).

50.     The PAIMI Act states that DRMS has the right of access to all residents of a

facility "despite the existence of any State or local laws or regulations that restrict

informal access to minors and adults with legal guardians or conservators." 42 C.F.R.

§ 51.42(e).

51.     The PAIMI and PADD Acts provide DRMS with access to records of

individuals who are in the custody of the state and with respect to whom a complaint

has been received by DRMS or with respect to whom there is probable cause to

believe that such individual has been subjected to abuse or neglect. 42 C.F.R. §

51.41(b)(2)(ii)-(iii); 45 C.F.R. § 1386.22(a)(2)(ii)-(iii).

52.     The PAIMI regulations also require the Defendant to provide DRMS:

Reports prepared by an agency charged with investigating abuse, neglect,
or injury occurring at a facility rendering care or treatment, or by or for the
facility itself, that describe any or all of the following: (i) Abuse, neglect,
or injury occurring at the facility; (ii) The steps taken to investigate the
incidents; (iii) Reports and records, including personnel records, prepared
or maintained by the facility, in connection with such reports of incidents;
or (iv) Supporting information that was relied upon in creating a report,
including all information and records used or reviewed in preparing
reports of abuse, neglect or injury such as records which describe persons
who were interviewed, physical and documentary evidence that was
reviewed, and the related investigative findings. 42 C.F.R. § 51.41(c)(2).

53.     The access provisions of the P & A Acts are interrelated and it is clear that
Congress intended for the provisions to be applied in a consistent manner, and the
PAIR Act expressly incorporates by reference, at 29 U.S.C. § 794e(f), the authority
regarding access to facilities and records set forth in the PADD Act.

54.     To the extent Mississippi state law protects the identities of minors and
requires parental consent, this confidentiality is preempted by federal authority to
monitor these facilities.  42 C.F.R. § 51.42(e).

55.     Moreover, federal courts have widely recognized that a P & A is "the final
arbiter of probable cause" for the purpose of investigating abuse or neglect. *See
Arizona Ctr. For Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Ariz. 2000); *see
also Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong*, 266 F.
Supp. 2d 303, 321-22 (D. Conn. 2003) (holding that P & A is entitled to make its
probable cause determination independent of any other agency or third party review).

## DENIAL OF ACCESS

56.     Between June 2009 and the present, the SPLC, acting as an agent of DRMS,
has conducted P & A monitoring visits at Henley-Young and DRMS and SPLC

entered into a Memorandum of Understanding with the Hinds County Board of Supervisors in November 2009. *See* Exhibit B (Memorandum of Understanding between DRMS/SPLC and the Hinds County Board of Supervisors).

57.     On June 2, 2011, the day after DRMS and SPLC filed a federal class action lawsuit against Hinds County for abusive practices that routinely occur at Henley-Young, the County refused to allow DRMS and SPLC access to the facility.

58.     Upon arrival at Henley-Young, Jed Oppenheim and Samir Jaber, acting as agents of DRMS were informed by the director of the facility that, per order from the attorney for the Hinds County Board of Supervisors, they could not speak with youth. Mr. Oppenheim exercised his authority to speak with youth under the P & A Acts but was denied this right. Mr. Oppenheim was also denied the right to speak with youth who have been retained by DRMS/SPLC.

59.     Corrie Cockrell, an attorney with SPLC e-mailed Ms. Crystal Martin on June 2, 2011, informing her that representatives from SPLC had been denied access to all youth at Henley-Young, including youth who have been retained by DRMS/SPLC. (*See* Exhibits C and D e-mails to Ms. Martin regarding denial of access and denial of access to retained youth and Exhibits E and F Selected Correspondence with County). Dana Price, an attorney assisting the Hinds County Board replied on behalf of Ms. Martin and stated that DRMS/SPLC may have access to Henley-Young for the purpose of interviewing our client. Ms. Price also informed DRMS/SPLC that it would be required to disclose our client's name, provide the County with proof of representation, a valid bar card, and photo identification in order to be admitted into the facility. *See* Exhibit E (electronic mail from Ms. Price on behalf of Ms. Martin).

60.     As detailed above, Defendant's refusal to allow DRMS/SPLC to exercise its Congressionally-mandated duties of protecting and advocating for the youth held at Henley-Young has unlawfully deprived these children of their rights to DRMS/SPLC's services.

### First Amendment: Access to the Courts and Unlawful Retaliation

61.     T.A. has been denied access to the courts because of the Defendant's unreasonable attorney visitation policy. T.A. has been denied access to the courts as a consequence for providing information to, and for associating with, attorneys who brought the federal class action conditions of confinement lawsuit against the County. The Defendant is unlawfully retaliating against T.A. by denying him access to the courts. T.A. and his guardian have retained DRMS/SPLC to represent him in matters relating to his educational rights and the conditions of confinement he has experienced at Henley-Young.   Because of the Defendants' unlawful attorney visitation policy, T.A. was denied his right to communicate with his attorneys on June 2, 2011. His right to access the courts remains compromised by the Defendants' policy of limiting legal visits to barred attorneys, thus barring paralegals and non-legal professional advocates who work under the direction of an attorney from meeting with T.A.

62.     Upon information and belief county officials adopted this new policy to further two unlawful objectives: (1) retaliate against the youth who provided information about conditions to DRMS/SPLC and (2) to erect impermissible barriers to detained children's ability to access the courts. The Defendant's actions have a chilling affect on children's rights to seek redress from the Defendant and discourage

children from accessing the courts to remedy their unconstitutional conditions of confinement.

63.     All youth at Henley-Young have the right to speak to attorneys and non-attorneys who work under the direction of attorneys about issues regarding conditions of confinement and any policy to the contrary unconstitutionally places a substantial burden on youths' access to courts. The County's policy of prohibiting non-attorney access to incarcerated youth will place an unjustifiable restriction on youths' right to access the courts.

**NECESSITY FOR INJUNCTIVE RELIEF**

64.     The Defendant has acted and continues to act in violation of the law as explained above. The named Plaintiffs and the class they seek to represent do not have an adequate remedy at law. As a result of the policies, practices, acts, and omissions of the defendant, the named Plaintiffs, and the class they seek to represent, have suffered serious, imminent, irreparable physical, mental and emotional injuries.

**EXHAUSTION**

65.     The named Plaintiffs have exhausted all available administrative remedies. Additionally, since June 2010, undersigned counsel has submitted weekly reports to the Defendants documenting these and other deficiencies and informed the Defendant of the same by letter from December 2009 to June 2010. The Defendants have failed to take any meaningful action to correct these constitutional violations and have allowed the children in their custody to languish in an abusive facility despite having clear notice that these violations persist.

**CAUSES OF ACTION**

66.     Plaintiffs incorporate by reference all of the above factual allegations to
support the following claims:

### Count I

67.     The conditions of confinement at Henley-Young and the Defendant's
deliberate indifference to those conditions, considered both individually and in their
totality, constitute cruel and unusual punishment and a denial of due process in
violation of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments to
the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count II

68.     Defendant's refusal to protect children from harm, otherwise keep them
physically safe and secure and free from unconstitutional practices like excessive cell
confinement, and verbal abuse violates plaintiff's constitutional rights under the
Eighth Amendment and the Fourteenth Amendment to the United States Constitution,
as enforced through 42 U.S.C. § 1983.

### Count III

69.     Defendant's deliberate indifference to the children's serious mental health
needs and their right to rehabilitative services violates the Plaintiff's constitutional
rights under the First, Eighth, and Fourteenth Amendments to the United States
Constitution, as enforced through 42 U.S.C. § 1983.

### Count IV

70.     The policies, procedures, regulations, practices, and customs of the Defendant
violate and continue to violate the rights of the Plaintiff DRMS to full, complete,
timely, and meaningful access to Henley-Young, staff, residents, and their records, in

violation of the PAIMI, PADD, and PAIR Acts, and under the color of law in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### Count V

71.    By refusing to allow Plaintiffs to meet with non-attorney representatives, Defendant is violating the Plaintiffs' First and Fourteenth Amendment rights to meaningful, effective, and adequate access to the courts.  U.S. CONST. amend. I & XIV.

### PRAYER FOR RELIEF

a.    Declare that the acts and omissions of the Defendant violate the federal law;

b.    Enter a preliminary and permanent injunction requiring the Defendant, its agents, employees and all persons acting in concert with the Defendant to cease their unconstitutional and unlawful practices;

c.    Award to the Plaintiffs reasonable costs and attorney's fees; and

d.    Grant the Plaintiffs such other relief as the Court deems just.


Respectfully Submitted,

 /s/ Corrie W. Cockrell
Corrie W. Cockrell, Miss. Bar No. 102376
Jody E. Owens, II, Miss. Bar No. 102333
Poonam Juneja, Miss. Bar No. 103181
Sheila A. Bedi, Miss. Bar No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law
Center
921 N. President St., Suite B
Jackson, Mississippi 39202
jody.owens@splcenter.org
poonam.juneja@splcenter.org
corrie.cockrell@splcenter.org
sheila.bedi@splcenter.org
601-948-8882 (telephone)
601-948-8885 (fax)

Wendy White, Miss Bar No. 100409
Disability Rights Mississippi

Counsel for Plaintiffs.

## CERTIFICATE OF SERVICE

I, Corrie W. Cockrell, one of the attorneys for the Plaintiff, do hereby certify that I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the ECF system, which sent notification to all counsel of record.

SO CERTIFIED, this 6th day of June 2011.

/s/ Corrie W. Cockrell
Corrie W. Cockrell, Miss. Bar No. 102376