# MEMORANDUM OF UNDEERSTANDING BETWEEN HINDS COUNTY, MISSISSIPPI AND MISSISSIPPI'S PROTECTION AND ADVOCACY SYSTEM, DISABILITY RIGHTS MISSISSIPPI (DRMS)

## INTRODUCTION

I. Pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§15001, et seq.; Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C., §§794e, et. seq, Mississippi's Protection and Advocacy System, Disability Rights Mississippi (DRMS), conducts regular monitoring at the Henley-Young Juvenile Detention Center. DRMS investigates conditions of confinement and helps ensure that juvenile detention centers comply with federal and state law. Throughout this agreement, the Mississippi Youth Justice Project (MYJP) will fulfill the responsibilities of DRMS. MYJP is a contracted agent of DRMS with all the rights and responsibilities of DRMS pursuant to federal Protection and Advocacy law.

II. DRMS and Hinds County Board of Supervisors have been working together to address any issues that DRMS has raised, and to ensure that Henley-Young Juvenile Detention Center complies with all constitutional and federal and state statutory rights.

III. As a result of the County's high level of voluntary cooperation and willingness to implement meaningful change without the need for contested and costly federal litigation, DRMS and the County believe that this Agreement represents the best opportunity to address DRMS's findings at Henley-Young.

IV. This agreement is binding upon the County and DRMS, through MYJP, by and though its officials, agents, employees and successors.

## 1. APPROPRIATE STAFFING AND OVERCROWDING

1.1. Henley-Young shall operate with a direct care staff-to-youth ratio of 1:8 from the hours of 6:00 am until 10:00 pm and 1:10 from the hours of 10:00 pm to 6:00 am.
1.2. If the Henley-Young staff-to-youth ratio falls below the requirements of § 1.1 for longer than two (2) days, the Director or his assignee shall immediately identify youth accused of nonviolent offenses who are eligible for less restrictive alternatives to secure detention and request from the Youth Court an emergency release for eligible youth.

## 2. CELL CONFINEMENT

2.1. Henley-Young will create a plan to permit all youth to be outside of their cells from 6:00 a.m. (breakfast) until 9:00p.m (bedtime). MYJP will work with Henley-Young to create the plan, to be completed within ten days. Henley-Young will immediately begin to increase the number of hours that youth spend outside their cells and within three months of the effective date of this agreement permit youth to be outside their cell from breakfast to bedtime. However, Henley-Young staff shall grant any youth's request to spend time in his or her cell during the hours of 6:00 am to 9:00 pm, except when school is in session or his or her unit is on outdoor recreation. Unless youth receive a medical excuse, all youth are expected to participate in programs.



2.2. Henley-Young may only use 24-hour cell confinement to discipline youth who pose a serious risk of bodily injury to staff or other youth. Youth placed on 24-hour cell confinement shall be released from their cells daily to maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on youth who are subject to 24-hour cell confinement every 15 minutes. No youth shall be confined for over 8 hours without receiving due process. Due process shall consist of a hearing before the Facility Director or his assignee during which the youth has the opportunity to call witnesses and explain the circumstances that resulted in cell confinement. Under no circumstances shall any youth be subject to cell confinement for longer than 24 hours. A serious incident report must be filed for every incident of room confinement.

3. USE OF RESTRAINTS

   3.1. Mechanical and/or chemical restraints shall not be used to punish youth or for the convenience of staff. Restraints shall only be used when a resident presents a threat of serious bodily injury to others. Under no circumstances shall restraints be used to secure a youth to a fixed object, such as a bed, a post or a bar. Restraints shall be removed from a restrained youth as soon as the threat has de-escalated. Restraints shall not be used for more than 15 minute, unless restraints are approved by a mental health professional. Under no circumstances shall a youth be restrained for longer than 30 minutes. No resident shall be subject to restraints until staff have first attempted verbal de-escalation techniques. On the rare occasion that Henley-Young must use restraints, only properly trained staff may use them, and youth must receive continuous, one-on-one supervision for the duration of the restraint. Nothing in this provision shall prohibit restraints from being placed on youth during transportation, if staff have reason to believe that a youth presents a flight risk or will engage in violent behavior during transport. Currently Henley-Young does not use any chemical restraints and the County agrees that chemical restrains will not be used in the future.
   3.2. Henley-Young policy will prohibit the use of restraints on youth engaging in self-injurious or suicidal behavior unless restraints are ordered by a licensed mental health professional. If a licensed mental health professional deems restraints necessary to prevent a youth from harming him or herself, that youth shall be immediately transported to a mental health facility or to the emergency room of a local hospital. Each time Henley-Young uses restraints under section 3 a serious incident report must be filed.
   3.3. No mechanical or chemical restraints shall be used on a youth who is confined to a cell.

4. USE OF FORCE

   4.1. Physical force shall not be used to punish youth. Staff supervising youth detained by an order of the Youth Court shall not "slam," "take down," or "secure youth to the floor" as a form of control or a control technique. Henley-Young staff shall only use physical force to stop youth from causing serious physical injury to self or others. If physical force is necessary, staff must use the minimum amount required to contain the youth safely. No youth shall be subject to physical force until staff have first attempted verbal de-escalation techniques.

5. SUICIDE PREVENTION

   5.1. Henley-Young shall immediately implement policies and procedures to work with youth who exhibit suicidal ideation. For any youth who expresses suicidal ideation for longer than 24 hours emergency action must be taken. Emergency action may require transportation to a mental health facility, to the emergency room of a local hospital for evaluation and/or treatment, or other measures that ensure a youth is examined and treated by a medical and/or mental health

professional. Henley Yong will develop a three-tiered suicide policy that will evaluate the level of risk for any youth who expresses suicidal ideation and only remove clothes from the youth with the most serious needs. For any youth placed on the highest level of risk, every effort must be made to have a mental health professional evaluate the youth within 12 hours, but in no case more than 24 hours after his or her placement on suicide watch. Youth on suicide watch shall participate in recreation, school and other structured activities. Youth shall not be required to wear a suicide gown unless locked in a cell.

6. HYGIENE AND SANITATION

   6.1. Youth shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily of sufficient length for proper hygiene, soap for washing hands after each time the youth uses the toilet, and tooth paste and a tooth brush for tooth brushing, which will occur at least twice daily.
   6.2. Youth shall be provided with sleeping mats and blankets that are clean and odorless and have no visible stains or tears.
   6.3. Youth shall be provided with clothing that is clean and has no visible stains.
   6.4. Unless through suicide prevention policies, no youth shall be deprived of clothing, mats, or blankets. A suicide gown or suit must be provided to any youth who prevents such a high risk pursuant to suicide policies that would justify removing a youth's clothes.
   6.5. All detained youth shall be provided with a clean, sanitary environment.

7. STAFF TRAINING

   7.1. The County shall work with DRMS to design and implement a comprehensive training for Henley-Young detention center staff, including 40 hours of pre-service training. Training shall include, but not be limited to the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development, effective communication with adolescents, understanding adolescent behavior, appropriate use of force and restraint, effective documentation, suicide prevention, protection from harm in detention, investigation of grievances, and best practices for detention center administration.

8. POLICIES AND PROCEDURES

   8.1. The County will immediately work with DRMS to review and revise all polices for youth at Henley-Young to meet federal law and national best practice. New policies will be implemented within 90 days of the effective date of this agreement. Until such time as new policies are agreed upon and implemented, the county will take the following actions immediately:
      8.1.1. The County will work with DRMS to create and adopt an age and reading level appropriate handbook/resource for youth detained at Henley Young. The Director will ensure that all youth have meaningful access to the information by either displaying the rules on posters in all living areas and the school, or ensuring all youth receive a copy of the handbook during intake, or making copies of the handbook available for youth to review in the school and in their living quarters. All youth shall be read the rules during intake.
      8.1.2. The County will adopt a meaningful, confidential grievance policy that will permit youth to file a grievance and ensure a proper investigation of each grievance is conducted. The policy shall require that each grievance shall be investigated by an independent staff member who was not involved in the incident described in the

- grievance and who is not supervised by a staff member who was involved in the grievance. Youth will be informed of the grievance procedure at intake, and posters explaining the process will be posted in all living areas of Henley-Young.
  - 8.1.3. Henley-Young staff are currently subject to the County discipline procedures. The County shall work with DRMS to evaluate the County discipline procedures, and revise them as necessary to meet the unique needs of a detention facility. This shall include disciplinary procedures for any violations of this agreement.
  - 8.1.4. Henley Young shall post prominently in living areas and in staff-only areas posters that clearly describe staffs' mandatory reporting requirements pursuant to Miss. Code Ann. §43-21- 353.

9. MEDICAL CARE

   9.1. Henley-Young will refer youth who are in need of emergency medical or mental health treatment at the time of intake to the proper healthcare facility or community mental health center for evaluation and treatment within 48 hours. Miss. Code Ann. § 43-21-321 (2).
   9.2. Henley-Young will provide access to necessary and adequate medical care and treatment while in the facility, including, but not limited to, reviewing and refilling prescriptions as necessary.
   9.3. The Director, or his assignee, will request emergency relief for release from the judge when the detention center cannot provide appropriate medical or mental health care for a youth in the facility.

10. MISCELLANEOUS PROVISIONS

    10.1. Male and female youth shall be provided with equal access to educational services, medical care, and indoor and outdoor recreation.
    10.2. Henley-Young staff are prohibited from having inappropriate contact with youth. Inappropriate contact includes, but is not limited to, conversations of a sexual nature, verbal sexual harassment, dissemination of sexually explicit materials inside Henley-Young, and sexual acts or touching.
    10.3. The County will collaborate with DRMS to develop a comprehensive policy that will address cross-gender supervision, sexual harassment and gender discrimination.
    10.4. All youth shall have the opportunity to engage in at least one hour of large muscle exercise a day.
    10.5. Youth shall be provided with the opportunity for at least eight hours of continuous sleep each night.
    10.6. MYJP will monitor the detention center and provide quarterly reports to the Hinds County Board of Supervisors for a period of three years. Additionally, MYJP will provide in-person reports to the Board of Supervisors as requested. At the end of three years, if Henley-Young is in full compliance with this agreement and any policies adopted pursuant to this agreement, DRMS will resume periodic P&A monitoring. The Detention Center Director will work with MYJP to develop a report format to track compliance with this agreement DRMS agrees that in the event of a breach of this agreement; they will immediately notify the County Board Attorney and the Board of Supervisors and give them an opportunity to resolve the breach prior to pursuing any legal remedy. Additionally, DRMS agrees that prior to initiating media contact about a problem at Henley-Young they will notify the County Board Attorney and the County administrator and give them an opportunity to correct the problem. Hinds County agrees that MYJP will have full access to the juvenile detention center, its residents and relevant records, including but not limited to institutional files, medical files, mental health files, educational files, videotapes, and all informational and other reports by staff, grievances, incident reports, and other relevant documents and files maintained by the Hinds County Juvenile Detention Center. MYJP agrees to indemnify the County for any liability it incurs because of MYJP's unlawful actions or inactions related to

the monitoring of this agreement. MYJP further agrees to comply with all state and federal confidentiality requirements regarding youth court, education and/or medical care.

10.7. DRMS will work with Hinds County to identify and develop resources to implement this agreement and bring community stakeholders into the process. This may include activities such as convening meeting of key stakeholders, convening community meetings, technical assistance in drafting policies and identifying experts to assist in creating and implementing policies.

10.8 The terms of this agreement shall last for two (2) years.

**APPROVED AND EXECUTED BY THE RESPECTIVE PARTIES** on the date indicated herein. This agreement shall be effective on and after the ____ of _____, 2009.

MISSISSIPPI'S PROTECTION AND ADVOCACY SYSTEM,
DISABILITY RIGHTS MISSISSIPPI (DRMS)

BY: _____

HINDS COUNTY, MISSISSIPPI

BY: _____
George Smith, Board President

ATTEST:

(Seal)

_____
Chancery Clerk and Clerk of the Board