TO: ADMINISTRATOR DALE KNIGHT, HENLEY-YOUNG JUVENILE JUSTICE CENTER

CC: CRYSTAL MARTIN, ATTORNEY, HINDS COUNTY BOARD OF SUPERVISORS

FROM: THE SOUTHERN POVERTY LAW CENTER

SUBJECT: OVERVIEW OF PROTECTION & ADVOCACY AUTHORITY TO ACCESS YOUTH IN JUVENILE DETENTION CENTERS

DATE: June 2, 2011

The Southern Poverty Law Center (SPLC) and Disability Rights Mississippi (DRMS) provide protection and advocacy services to eligible youth at many facilities in Mississippi. SPLC provides these services pursuant to a contract with DRMS to provide Protection & Advocacy services to eligible youth in Mississippi facilities. We have worked with the Department of Corrections, the Department of Human Services and the Department of Mental Health to access disabled youth at Walnut Grove Correctional Facility, Columbia Training School (while it was still in operation), and Specialized Treatment Facility. Additionally, SPLC has negotiated access to youth at the detention centers in Forrest, Harrison and Lauderdale Counties.

Congress created protection and advocacy systems ("P&As") with the passage of the Developmental Disabilities Assistance and Bill of Rights Act of 1975; and P&A services have since been expanded to provide legal representation and other advocacy services on behalf of all persons with disabilities.[1] The PADD Act provides for a P&A to protect the legal and human rights of individuals with developmental disabilities. 42 U.S.C. § 15041. The PAIMI Act recognizes that "individuals with mental illness are vulnerable to abuse and serious injury ... [and] subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning." 42 U.S.C. § 10801(a). PAIMI requires the P&A system to ensure that the rights of individuals with mental illness are protected by monitoring facilities and investigating incidents of abuse and neglect of the mentally ill. 42 U.S.C. § 10801(b). Finally, the PAIR Program was created to protect the rights of all other individuals with disabilities who are not covered under the PADD and PAIMI Acts—including, but not limited to youth with special education needs. 29 U.S.C. § 794e.

In order to carry out the congressional mandate to protect the rights of individuals with disabilities, the P&A Acts provide that the state's protection & advocacy system, and its authorized agents like SPLC, must have physical access to facilities housing individuals with disabilities. The P & A Statutes apply with full force to the Henley-Young Juvenile Justice Center because both PAIMI and PADD include "juvenile detention centers" in the definition of facilities covered by P&A authority. 42 C.F.R § 51.2; 45 C.F.R § 1386.19.

---

[1] The "P&A Acts" consists of the following: Part C of Title I of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"), 42 U.S.C. §§ 15041-15045; the Protection & Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act'), 42 U.S.C. §§ 10801 *et seq.;* and the Protection and Advocacy of Individual Rights ("PAIR") Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e.



1

Under the PADD Act, SPLC "shall have unaccompanied access to all residents of a facility [providing care, support, and services to individuals with developmental disabilities] at reasonable times ..." 45 C.F.R § 1386.22(g) and this "shall include the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person." 45 C.F.R §1386.22(h). P&As have access to facilities for the purpose of:

> (1) Providing information and training on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system., including the name, address, and telephone number of the system and other information and training about individual rights; and

> (2) Monitoring compliance with respect to the rights and safety of service recipients.

45 C.F.R § 1386.22(g).

The PAIMI Act similarly provides that SPLC must have reasonable access to facilities that provide care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3). *See also* 42 C.F.R § 51.42(a) ("Access to· facilities and residents shall be extended to all authorized agents of a P&A system."). P&As are entitled to "reasonable unaccompanied access to facilities [which render care and treatment for people with mental illness] including all areas which are used by residents, are accessible to residents and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. 42 C.F.R § 51.42(c). The purpose of this access is providing residents with educational programming on mental health, individual rights, and protection and advocacy services; "monitoring compliance with respect to the rights and safety of residents; and ... inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R § 51.42(c) (1)– (3).

Congress intended that the respective access authorities under the three protection and advocacy programs be applied in a consistent manner, and the PAIR program expressly incorporates by reference (at 42 U.S.C. 794e(f)(2)) the authority regarding access to facilities and records (as well as the other general authorities granted protection and advocacy systems) set forth in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (PADD). Specifically, the PAIR statutory language provides that protection and advocacy systems under the PAIR Program "have the same general authorities, including access to records ... as set forth" in PADD. 29 U.S.C.§ 794e(f)(2). Thus, PADD's access authority applies with equal force under the PAIR Program.

The population served under the PAIR program includes all individuals who have a physical or mental impairment that substantially limits one or more major life activity. 29 U.S.C. § 705(9)(B). Major life activities include learning, and thus individuals with learning disabilities who receive services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401(3), are also entitled to receive P&A services.

Under both the PADD Act and the PAIMI Act, Congress designated two distinct sources for access to facilities: 1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. § 15043(a)(2)(B), 42 U.S.C. § 10805 (a) (1) (A), 45 C.F.R § 1386.22(f), 42 C.F.R § 51.42(b); and 2) access for the purpose of monitoring the facility and the treatment of residents. 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. § 10805(a)(3), 45 C.F.R § 1386.22(g), 42 C.F.R § 51.42 (c). Federal courts in the 5th Circuit have recognized both types of P&A access authority. *See Miss. Protection & Advocacy System v. Cotten*, 1989 U.S. Dist. LEXIS 17075 (S.D. Miss. 1989); *aff'd*, 929 P.2d 1054 (5th Cir. 1991).

A facility must grant a P&A investigatory access when the P&A receives a complaint or allegation of abuse, 45 C.F.R § 1386.22(f), 42 C.F.R § 51.42(b)(1); *or* when the P&A has probable cause to believe that an incident of abuse has occurred. 45 C.F.R § 1386.22(f), 42 C.F.R § 51.42(b)(3). A complaint includes any formal or informal communication alleging abuse, 42 C.F.R § 51.2; and the P&A is responsible for making the probable cause determination. *See* 42 C.F.R § 51.31(g) ("Determination of 'probable cause' may result from P&A system monitoring or other activities, including observation by P&A system personnel ...."). Further, when investigating allegations of abuse, a P&A "shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect." 42 C.F.R § 51.42(b).

P&As also have authority to access a facility and its residents for the purpose of monitoring conditions – even absent a report of an incident of abuse or neglect or probable cause to believe that such an incident has occurred. *Michigan Protection and Advocacy, Inc. v. Miller* 849 F. Supp. 1202 (W.D. Mich. 1994) (holding that beyond allowing the investigation of specific complaints, the state must also provide P&A with reasonable access to a juvenile facility so that P&A may engage in monitoring activities). In addition to access for investigating suspected incidents of abuse and neglect, P&As are also entitled to "reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours." 42 C.F.R § 51.42 (c); *see also* 45 C.F.R. § 1386.22(g). The purpose of this access is providing residents with educational programming on mental health, individual rights, and protection and advocacy services; "monitoring compliance with respect to the rights and safety of residents; and ... inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R § 51.42(c)(1) – (3); *see also* 45 C.F.R § 1386.22(g).

The P&A is not required to furnish a facility with the name or other identifying information regarding the resident(s) with whom it plans to meet, or of the individuals that reported incidents of abuse or neglect. *See Cotten,* 929 F.2d at 1056–57. Similarly, the P&A does not need to justify or explain its contacts with residents to the facility. *See Cotten,* 929 F.2d at 1056-1057. Indeed, federal courts widely recognize that a P&A is "the final arbiter of probable cause" for the purpose of investigating abuse or neglect. *See Arizona Ctr. For Disability Law v. Allen,* 197 F.R.D. 689, 693 (D.Ariz. 2000); *see also Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong,* 266 F. Supp. 2d 303, 321–22 (D. Conn. 2003) (holding that P&A is entitled to make its probable cause determination independent of any other agency or third party review).

It is entirely possible that there are some youth housed at the Juvenile Detention Center who the facility has not yet identified as disabled. A P&A's right to access these youth is similarly well established. *See Michigan Protection & Advocacy Services  v. Miller,* 849 F.Supp. 1202 (W.D. Mich. 1994) (finding that denying P&A full access prevents the advocacy organization from bringing in their own mental health professionals to ascertain whether the residents suffer from mental illness when studies showed the prevalence of mental illness in training schools and detention centers).[2]

---

[2] *See also Connecticut P&A v. Hartford Board of Education,* 355 F. Supp. 2d 649 (D. Conn. 2005) (stating the purpose of PAIMI and PADD to provide protection and advocacy services is defeated if P&A is not allowed to ascertain whether students have a mental illness); *Georgia Advocacy Office Inc. v. Camp,* 172 F.3d 1294 (11th Cir. 1999) (finding that a facility that offered the services of a psychiatrist and psychologist as well as mental health screenings, evaluations, counseling, medication supervision, and education may have residents who were "mentally ill" under the PAIMI Act.); *Georgia Advocacy Office v. Borison,* 520 S.E.2d 701 (Ga. Ct. App. 1999) (holding P&A could have access to records of subjects of fraudulent drug studies even though P &A did not have knowledge of whether any particular individual had a disability.)

As a P&A, it is not our mission or objective to interview youth about their pending youth court case, or to provide them with legal information, advice, or representation on their pending youth court matter. In fact, to do so would go beyond the federal P&A mandate, which authorizes a P&A to monitor juvenile facilities in order to ensure that youth with disabilities receive the care, treatment, and services to which they are entitled under state and federal law. If a represented youth raises any questions or concerns about their youth court case, SPLC will refrain from offering information or advice, and will instead direct the youth to consult with their attorney. SPLC is also happy to contact a youth's attorney following a monitoring visit to pass on any questions or concerns raised by youth that need to be addressed by that child's defense attorney.

Finally, with regard to any concerns about confidentiality and parental consent, these matters are also addressed by the P&A Acts. The PAIMI Act specifically states that:

> The right of access ... shall apply despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators. The system shall make every effort to ensure that the parents of minors or guardians of individuals in the care of a facility are informed that the system will be monitoring activities at the facility and may in the course of such monitoring have access to the minor or adult with a legal guardian.

42 C.F.R. § 51.42(e). To the extent that Mississippi state law protects the identities of minors and requires parental consent, this confidentiality is preempted by federal authority to monitor these facilities.