IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| J.H., by and through his next friend, Terina Gray, on behalf of himself and all persons similarly situated; T.A., by and through his next friend, Alice Austin, on behalf of himself and all persons similarly situated; and DISABILITY RIGHTS MISSISSIPPI, <br><br> Plaintiffs, <br> v. <br><br> HINDS COUNTY, MISSISSIPPI, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 3:11-CV-327 DPJ-FKB |

**SUPPLMENTAL BRIEF AND RESPONSE TO THE COURT'S INQUIRY FROM HEARING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION AND PROCEDURAL HISTORY**

As the federally designated Protection and Advocacy ("P&A") system for the State of Mississippi, Plaintiff Disability Rights Mississippi ("DRMS"), has the authority to conduct confidential visits with residents of any facility that houses people with disabilities, determine which residents have a disability and are eligible for P&A services, monitor conditions at the facility, and investigate allegations of abuse and neglect. DRMS's authorized agent, the Southern Poverty Law Center ("SPLC"), exercised this authority at the Henley-Young Juvenile Justice Center ("Henley-Young") undisturbed for two years. On June 2, 2011 – one day after DRMS filed a federal civil rights action against Defendant Hinds County – Defendant abruptly terminated Plaintiff's ability to access residents of Henley-Young and monitor conditions inside

1

the facility. Plaintiff asks the Court to fully restore DRMS's ability to pursue its federal mandate to identify children with disabilities at Henley-Young, and protect these children from abuse and neglect.

On June 6, 2011, Plaintiff DRMS filed a Motion for an Immediate Preliminary Injunction to compel Defendant to cease its interference with Plaintiff's authority to monitor Henley-Young. (Pl.'s Mot. for Prelim. Inj., ECF No. 7). Defendant did not file a brief in response (*Exhibit A* Prelim. Inj. Hr'g Tr. 2, June 17, 2011); and at the June 17, 2011 hearing Defendant conceded that: 1) DRMS is the Protection and Advocacy System for the state of Mississippi; 2) DRMS and SPLC have the authority to access Henley-Young for the purposes of monitoring and investigating allegations of abuse and neglect; 3) DRMS and SPLC may conduct confidential meetings with any child with a disability; 4) DRMS and SPLC are the final arbiters of probable cause for the purpose of determining whether a child with a disability has been subjected to abuse and/or neglect; and 5) DRMS and SPLC may speak with any child at Henley-Young, including nondisabled children, if that child may have witnessed abuse and neglect of a child with a disability. (*Exhibit A* Prelim. Inj. Hr'g Tr., 3-4, June 17, 2011). Instead, Defendant's opposition rested on their contention that Henley-Young, and not DRMS, has the authority to determine which detained children have a disability and are eligible for P&A services; and that DRMS's monitoring must not include contact with non-disabled children. (*Exhibit A* Prelim. Inj. Hr'g Tr., 17, June 17, 2011). Because Defendant did not raise this issue at the briefing stage, the Court granted the parties the opportunity to provide supplemental briefing to clarify: 1) whether DRMS or Defendant has the authority to determine if a child at Henley-Young has a disability and is eligible to receive P&A services; and 2) whether DRMS has the authority to access all children at Henley-Young for monitoring purposes.

2

**ARGUMENT**

I. **DRMS HAS THE AUTHORITY TO DETERMINE WHICH YOUTH AT HENLEY-YOUNG HAVE A DISABILITY AND ARE ELIGIBLE FOR P&A SERVICES**

Defendant maintains that DRMS may only speak with children at Henley-Young who have been identified by Henley-Young personnel as having a disability. While DRMS does not deny that only children with disabilities are eligible for P&A services, *Exhibit A* Prelim. Inj. Hr'g Tr., 19-20, June 17, 2011, federal law mandates that DRMS must have the ability to identify and determine which children at Henley-Young have a disability and are eligible for P&A services. Depriving DRMS of this function would almost entirely frustrate DRMS's ability to provide effective protection and advocacy services to the children with disabilities who are detained at Henley-Young, and would improperly grant Defendant the authority to deny DRMS access to eligible children and to shield itself from DRMS's oversight. Accordingly, DRMS must have the ability to determine which children at Henley-Young have a disability and are eligible for P&A services.

Federal case law makes it clear that a P&A system has the authority to determine whether there is probable cause to believe that an individual has a disability, and that the P&A may assert its authority to access that individual and his records based upon this determination. The P&A is not required to demonstrate that certain individuals within a facility have a disability before asserting its right to access the facility. Rather, "evidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill is sufficient under the PAMII Act to merit access by [P&A]." *Ky. Protection and Advocacy Div. v. Hall*, 2001 U.S. Dist. LEXIS 26316, at *4 (W.D. Ky. Sept. 24, 2001). *See* Am. Compl. ¶ 46.

In *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong,* 266 F.Supp.2d 303 (D. Conn. 2003), the Court specifically addressed the question of whether a P&A could make its own probable cause determination of whether an individual inside a facility has a disability. Following the suicide deaths of several inmates of Connecticut's Department of Corrections, the Connecticut P&A "determined that it had probable cause to believe that each of these inmates was mentally ill" and requested access to the inmates' records to conduct an investigation. *Id.* at 308. Defendant refused to provide the P&A with the requested records, and instead demanded that the P&A substantiate its contention that it had probable cause to believe that the deceased inmates were individuals with disabilities. *Id.* The Court accepted the Connecticut P&A's probable cause determination, and squarely rejected defendant's claim that the P&A must make "an affirmative showing that each inmate is mentally ill," prior to accessing their records. *Id.* at 315. Just as the Connecticut P&A was authorized to make its own probable cause determination regarding whether an individual had a disability, the Plaintiff here must be afforded the ability to determine whether individual residents of Henley-Young have a disability and are eligible for P&A services.

In *Kentucky Protection and Advocacy Division v. Hall*, the Court also rejected a facility's demand that the P&A produce evidence of a resident's disability before obtaining access to that resident. 2001 U.S. Dist. LEXIS 26316, at *6. The Kentucky P&A sought access to all residents of two juvenile justice facilities. *Id.* at *1-*2. The Defendant asserted that prior to gaining access to the facility, the Kentucky P&A had to "make a threshold showing that the particular individual to which it seeks access is developmentally disabled or mentally ill." *Id.* at *3. The district court disagreed, and concluded that "[the Defendant's] present policy of denying [Kentucky P&A] full access prevents the advocacy organization from bringing in their own

4

mental health professionals to ascertain whether any [of the defendant's] residents do in fact suffer from mental illness." *Id.* The Court further noted that defendant's restrictive access policies undermined Congress's intent in passing the P&A Acts:

> [Defendant's restrictions on Plaintiff's access do not safeguard the legal and reputational rights of [the Defendant's] residents -- as Defendant maintains -- but rather have the opposite effect of hindering their knowledge of and ability to utilize those who would advocate on their behalf. *Demanding a conclusive, individualized showing of developmental disability or mental illness before permitting entry would reserve to Defendant a gatekeeping function contrary to the specific terms and general purpose of the Acts.*

*Id.* at \*5 -\*6 (Emphasis added).

Further, Defendant's refusal to grant access to all residents severely limits DRMS's ability to determine which residents have a disability and whether they have been subject to abuse and neglect. *See id.* ("Connecticut P&A's ability to do as [defendant] asks – make an affirmative showing that each inmate is mentally ill – is severely hampered by [defendant's] own refusal to provide these inmates' basic psychiatric and mental health records.") Demanding an individualized showing of disability before accessing a facility and its residents would prevent a P&A from "bringing in their own mental health professional to ascertain whether any . . . residents do in fact suffer from mental illness." *Mich. Protection and Advocacy Service, Inc. v. Miller,* 849 F. Supp. 1202, 1207 (W.D. Mich. 1994). *See also Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford*, 355 F. Supp. 2d 649, 655 (D. Conn. 2005), *Office of Protection and Adovcacy for Persons with Disabilities v, Armstrong*, 266 F. Supp. 2d 303, 314 (D. Conn. 2003), *Hall,* 2001 U.S. Dist. LEXIS 26316, at \*6. Indeed, Defendant's refusal to grant DRMS access to all residents of Henley-Young deprives DRMS of the ability to ascertain the very information Defendant is demanding before granting DRMS access to a resident. Accordingly, Defendant must permit DRMS access to residents of Henley-

Young for the purpose of determining whether they have a disability and are eligible to receive protection and advocacy services.

Allowing Defendant to identify which children at Henley-Young have a disability would also result in the denial of P&A services to countless eligible youth. A significant number of children who are detained at Henley-Young live with mental illness and learning disabilities, and the prevalence of mental illness among incarcerated youth in Mississippi is estimated to be around 60 percent. (Am. Compl. ¶ 46). Nonetheless, Henley-Young consistently fails to recognize symptoms of mental illness or conduct adequate psychological assessments to identify residents with mental health needs. (Am. Compl. ¶ 27-33). Additionally, Henley-Young, like the majority of juvenile detention centers around the country, administers the Massachusetts Youth Screening Instrument (MAYSI-2), to youth when they enter the facility. "The MAYSI-2 is a self-report questionnaire designed to identify potential instances of mental and emotional disturbance or distress. It consists of 52 items in a yes/no response format." Elizabeth Cauffman et al., *Juvenile Detention Centers Ass'n of Pennsylvania, Mental Health Needs in Pennsylvania's Secure Juvenile Detention Population* 34 (Aug. 2006) http://www.jdcap.org/SiteCollectionDocuments/Prevalence%20Final%20Version.pdf. *See* Exhibit B (Mental Health Needs in Pennsylvania's Secure Juvenile Detention Population).

Henley-Young administration relies on the MAYSI-2 to determine whether a youth is eligible P&A services. This is problematic for numerous reasons. First, the MAYSI-2 only screens for one type of disability (mental illness). Children are considered disabled under the P&A Acts if they live with a number of conditions, including but not limited to mental illness, learning disabilities, physical impairments and developmental disorders. 42 U.S.C. § 10801, 42 U.S.C. § 15001, and 29 U.S.C. § 794e. Second, while the MAYSI-2 may help the facility

6

identify immediate mental health needs, the accuracy of the instrument—which relies on information self reported by detained children—is questionable at best. Indeed, some of the very mental and developmental disabilities that these children live with could affect their ability to accurately complete the MAYSI-2 screening instrument. Given this reality, it is unquestionable that Defendants will severely limit DRMS's ability to meet with eligible residents if it is permitted to identify children with disabilities based on this screening instrument.

DRMS's recent monitoring visit underscores this fact. On or about June 2, 2011, there were approximately 40 children detained in the facility. (Exhibit C June 2, 2011 Henley-Young Roster). However, the Defendants identified only 7 youth as eligible[1] for DRMS's services— approximately 17% of the total population of youth detained at Henley-Young. By Defendant's own admission, Henley-Young personnel is only identifying youth who have seen mental health professionals or who have received treatment for mental disorders. (Exhibit D Henley-Young Roster provided to DRMS on June 23 & 24, 2011). Defense counsel asserted that Henley-Young will provide DRMS with the names of youth who have a mental diseases or disorders, developmental disabilities, or physical disabilities, however, Defendant did not produce a roster containing eligible residents. *See* Exhibit E e-mail exchange between Plaintiff and Defendant. National studies show that 60% of detained youth live with disabilities. In a 2005 study, Henley-Young staff estimated that 60-70% of the detained youth lived with disabilities. Clearly, the Defendant's reliance on the MASYI-2 leads to significant under-identification of children with disabilities and functions to deprive children of the services to which they are entitled under federal law.

---

[1] *See* Exhibit D Henley-Young Roster provided to DRMS on June 23 & 24, 2011.

## II. DRMS HAS AUTHORITY TO ACCESS ALL YOUTH AT HENLEY-YOUNG FOR MONITORING PURPOSES.

Defendant incorrectly contends that DRMS may only have contact with youth who it considers eligible for DRMS services. (*Exhibit A* Hr'g Tr. 23-24). As already set forth in Section I *supra,* DRMS is entitled to access all youth for the purpose of determining their eligibility for P&A services. Federal law also mandates that DRMS have access to all residents of Henley-Young while monitoring conditions at the facility.[2]

Notably, the implementing regulations of the PAIMI Act and the PADD Act grant the P&A access to *all* residents, and make no distinction between "eligible" and "ineligible" residents. The PADD Act states that "the system and all of its authorized agents shall have unaccompanied access to *all residents of a facility* . . . for the purpose of (1) Providing information and training on . . . the protection and advocacy services available from the system . . . and (2) Monitoring compliance with respect to the rights and safety of service recipients." 45 C.F.R. § 1386.22 (g) (emphasis added). The PAIMI Act also states that "[a]ccess to facilities and residents shall be extended to all authorized agents of a P&A system," 42 C.F.R. § 51.42 (a), and does not exclude nondisabled individuals from the group of residents that the P&A may access for monitoring purposes.

DRMS must have access to all residents while monitoring to ensure that all residents—even those who the defendant has failed to identify as eligible— are aware of their right to access

---

[2] DRMS also has access to all youth and staff for the purposes of investigating when it has probable cause to believe that eligible youth are subject to abuse and neglect. 42 U.S.C. § 15043(a)(2)(B); 42 C.F.R. 51.42(b). As fully documented in the reports that DRMS has provided to the county, it has probable cause to believe that eligible youth at Henley-Young are regularly subject to unlawful conditions that constitute abuse and neglect. These conditions include the denial of mental health services, physical and verbal abuse and excessive lock down and isolation. (*See* Exhibit F. Reports submitted to the Defendant from DRMS documenting the unlawful conditions that constitute abuse and neglect at the facility).

8

protection and advocacy services and ensure that all residents are able to report incidents of abuse and neglect. As already argued in greater detail in Section I, Defendant cannot select specific residents for DRMS to monitor, and it is unacceptable for Defendant to limit DRMS's monitoring to merely distributing written materials to some Henley-Young residents.[3] This Court has already held that limiting P&A monitoring to the distribution of literature and the P&A's phone number violates residents' right to an effective P&A system. *Mississippi Protection and Advocacy System v. Cotten,* 1989 U.S. Dist. LEXIS 17075, *29 (S.D. Miss. Aug. 7, 1989). In order to effectuate a resident's right to an effective P&A system and satisfy the requirements of federal law, a facility "must allow greater interaction between MP&A staff and . . . residents. . . . Only by frequent personal contact with residents, out of the presence of [facility] staff, can MP&A effectively carry out its mission of pursuing remedies to protect the rights of . . . residents and of providing the necessary information to them." *Id.* at *32.

Courts have also recognized that individuals with mental illness are "unable to recognize a violation of their rights, unwilling to complain . . . , unwilling to initiate contact with a complete stranger, and incapable of understanding that a P&A system is their resource . . . ." *Equip for Equality, Inc., v. Ingalls Memorial Hospital*, 292 F. Supp. 2d 1086, 1097 (N.D. Ill. 2003) (citing *Robbins v. Budke*, 739 F. Supp. 1479, 1487 (D.N.M. 1990). To ensure that individuals with disabilities receive the protection and advocacy they are entitled to under federal law, the "P&A system must be given leeway to discover problems or potential problems at a facility and to raise its level of scrutiny to that of an investigator if necessary." *Equip for Equality,* 292 F. Supp. 2d at 1100. DRMS must therefore have the ability to access all residents

---

[3] During the hearing, Defendant argued that there is no need for DRMS to have personal contact with residents while monitoring: "They can pass out pamphlets. They want to make announcements. I don't know. Once you pass out pamphlets and let everyone know what their rights are, then anybody who comes to the lobby or is in a living quarters will see what their rights are. They are free to call them." (Hr'g Tr. 15).

at Henley-Young to monitor conditions and uncover abuse and neglect of residents with disabilities. Allowing Defendant to arbitrarily limit DRMS's access while monitoring Henley-Young would deprive eligible residents the opportunity to learn about P&A services, request these services, and would prevent all residents from reporting incidents of abuse and neglect to the P&A.

Finally, Defendant's contention that these new restrictions are necessary to counter DRMS's disruptive presence lacks all credibility. For two years, DRMS has enjoyed broad access to Henley-Young and the youth detained there and has not posed any disruption to the daily activities. (Am. Compl. ¶¶ 3 & 56). DRMS monitors Henley-Young at a mutually agreed upon time, taking care to accommodate the facility's security and programming needs and has never interrupted school or any other activities provided by the detention center while carrying out its duties. (Am. Compl. ¶ 56). Defendant only characterized DRMS's monitoring activities as disruptive and only sought to restrict DRMS's access after DRMS filed this lawsuit. Accordingly, the Court should deny Defendant's attempt to interfere with DRMS's federal mandate, and restore DRMS's ability to provide residents of Henley-Young with an effective P&A system.

## CONCLUSION

Congress enacted the P&A system to ensure that vulnerable individuals are protected from abuse and neglect and the only way to ensure that congressional intent is upheld is to conclude that DRMS has the authority to determine whether youth at Henley-Young are eligible for P&A services and that DRMS necessarily has the authority to speak with all youth in order to make the determination regarding eligibility. For the reasons stated above, we respectfully request this Court to find in favor of the Plaintiff, DRMS.

Respectfully submitted,

/s/ Corrie W. Cockrell, 102376
Jody E. Owens, Miss. Bar No. 102333
Poonam Juneja, Miss. Bar No. 103181
Sheila A. Bedi, Miss. Bar No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law Center
921 N. President St., Suite B
Jackson, Mississippi 39202
corrie.cockrell@splcenter.org
jody.owens@splcenter.org
poonam.juneja@splcenter.org
sheila.bedi@splcenter.org
601-948-8882 (telephone)
601-948-8885 (fax)

Wendy White, Miss Bar No. 100409
Disability Rights Mississippi
210 E. Capitol Street, Suite 100
Jackson, Mississippi 39201
wwhite@drms.ms
601-968-0600 (telephone)
601-968-0665 (fax)

## **CERTIFICATE OF SERVICE**

I, Corrie W. Cockrell, one of the attorneys for the Plaintiff, do hereby certify that I electronically filed the foregoing Supplemental Brief with the Clerk of the Court using the ECF system, which sent notification to all counsel of record.

SO CERTIFIED, this 24th day of June 2011.

/s/ Corrie W. Cockrell
Corrie W. Cockrell, Miss. Bar No. 102376