UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

J.H., BY AND THROUGH HIS NEXT FRIEND
TERINA GRAY, ON BEHALF OF HIMSELF
AND ALL PERSONS SIMILARLY SITUATED, ET AL.                    PLAINTIFFS

VS.                                    CIVIL ACTION NO.: 3:11-cv-327-DPJ-FKB

HINDS COUNTY, MISSISSIPPI                                      DEFENDANT

ORDER

This matter is before the Court on Plaintiff Disability Rights Mississippi's ("DRMS") Motion for Preliminary Injunction [7], and the Motion for Declaratory Judgment [17] filed by Defendant Hinds County, Mississippi. Having fully considered the Motions, oral argument, and supplemental submissions, the Court finds that both Motions should be granted.

I.     Facts/Procedural History

This civil action was brought under 42 U.S.C. § 1983 on behalf of a putative class of imprisoned children at the Henley-Young Juvenile Justice Center ("Henley-Young"). According to the Amended Complaint, Defendant Hinds County, Mississippi, has violated the residents' Constitutional rights in various ways, including denial of mental health treatment. Relevant to the pending motion, DRMS contends that Hinds County has blocked the residents' rights to an effective and meaningful Protection and Advocacy System ("P & A").

A trio of federal statutes provide protection for individuals with mental illnesses collectively referred to as the "P & A statutes." *See* Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), as amended, 42 U.S.C. §§ 10801–10851 (2006),[1] the

---

[1]Enacted in 1986 as the "Protection and Advocacy for Mentally Ill Individuals Act of 1986," Pub. L. No. 99-319, 100 Stat. 478 (May 23, 1986), the Act was commonly referred to by

Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), as amended 42 U.S.C. §§ 15001–15115 (2006), and the Protection and Advocacy of Individual Rights Act ("PAIR"), as amended 29 U.S.C. § 794e (2006) (collectively, the "P & A statutes"). The P & A statutes provide funding for the state to establish independent organizations . . . that monitor and protect the rights of the mentally ill." *Advocacy Ctr. v. Stadler*, 128 F. Supp. 2d 358, 360 (M.D. La. 1991). DRMS is the federally mandated and funded P & A system in Mississippi and is authorized under certain circumstances to access Henley-Young's facilities, residents and records.

According to DRMS's Motion, Henley-Young violated the P & A statutes by blocking DRMS's access. At the hearing, the parties announced substantial agreement on the terms of a preliminary injunction allowing reasonable access. But the parties disputed whether DRMS and its agents should be allowed to (1) interview residents not known to have mental illnesses as part of DRMS's monitoring functions; and (2) interview those same residents to determine whether they suffer a mental illness that might trigger protection under the P & A statutes.

After the hearing, Hinds County filed an Emergency Motion for Declaratory Judgment [17] informing the Court that Hinds County Youth Court Judge William Skinner had issued a *sua sponte* Order Regarding Access on July 1, 2011. *See* Def.'s Mot. [17] Ex. A. The order limited DRMS's access to the facility. Fearing conflict with federal mandates, Hinds Count

---

the acronym "PAIMI." *See, e.g.*, *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1263 (10th Cir. 2003). In 1991, amendments to the Act substituted "individuals with mental illness" for "mentally ill individuals" wherever it appeared in the Act. *See* Pub. L. No. 102-173, § 10(2), 105 Stat. 1217, 1219 (Nov. 27, 1991). The short title, however, remained unchanged. In 2000, Congress amended the short title so that the Act is now known as the "Protection and Advocacy for Individuals with Mental Illness Act" or "PAIMI." *See* Pub. L. No. 106-310, 114 Stat. 1101, 1193-94 (Oct. 17, 2000). *Conn. Office of Prot. & Advocacy for Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 233 n.1 (2d Cir. 2006).

seeks declaratory judgment to determine whether Judge Skinner's order is enforceable.  DRMS predictably argues that it is not.

II.     DMRS's Motion

    A.     Standard

To obtain a preliminary injunction, DRMS carries the burden of establishing four elements:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010) (citation omitted).  Granting a preliminary injunction is an "extraordinary remedy" to be granted only if the party seeking it has "clearly carried the burden of persuasion" on all four elements.  *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

In the present case, the parties skip discussion of these standards regarding the disputed issues, and Hinds County concedes that DRMS met its burden with respect to the agreed upon portions of its Motion.  As for the two disputed issues, a host of federal authority holds that irreparable harm exists when a P & A system is unable to fulfill its mandate under federal law, that the threatened injury of denying the injunction outweighs the harm caused by the injunction, and that granting the injunction would not disserve the public interest.  *See*, *e.g.*, *Mich. Prot. & Advocacy Serv., Inc. v. Evans*, No. 09-12224, 2010 WL 3906259, at *5 (E.D. Mich. Sept. 30, 2010) (citing *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 653 (D. Conn. 2005); *Ohio Legal Rights Serv. v. Buckeye Ranch,*

*Inc.*, 365 F. Supp. 2d 877 (S.D. Ohio 2005); *Wis. Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wis. 2001); *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003).  This Court agrees—the P & A statutes reflect a strong public interest in protecting those with mental illnesses, and limiting a P & A service from fully exercising its authority places residents with mental illnesses at increased risk of harm.  Thus, the issue is whether DRMS has established a substantial likelihood of success on the merits of the two disputed issues.[2]

    B.    Analysis

        1.    Access to Non-Disabled Residents for Purposes of Monitoring.

Hinds County concedes that Henley-Young is subject to the P & A statutes and that DRMS has certain monitoring rights.  It contends, however, that the monitoring privileges stop short of allowing interviews with non-disabled residents.  Hinds County's only argument on this front is to observe that 45 C.F.R. § 1386.22(f) allows "access to non-disabled residents when necessary to conduct a 'full investigation of an incident of neglect.'"  Def.'s Resp. [12] at 12.  The County concludes from this that "DRMS has the right to interview a non-disabled resident only if DRMS reasonably believes that the non-disabled person has 'knowledge of the incident under investigation.'"  *Id*.  Hinds County offers no other authority for its position, and the Court is aware of none.

---

[2]At the hearing, Hinds County suggested that it should be the final arbiter of disability.  It is not apparent that the County still maintains that position, but such a ruling would defeat the goals of the statute—discussed below—and place the proverbial fox in charge of the henhouse.  *C.f.*, *Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991) (affirming summary judgment in favor of P & A service and noting that "state cannot satisfy the requirements of the DDA by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority") (citation omitted).

The County's interpretation is too narrow.  While § 1386.22(f) addresses investigations, the dispute is whether DRMS may access non-disabled residents pursuant to its duty to monitor.  On that issue, § 1386.22 (g) states, "Under 42 U.S.C. § 15043(a)(2)(H), the system and all of its authorized agents shall have unaccompanied access to *all residents* of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, for the purpose of: . . . (2) Monitoring compliance with respect to the rights and safety of service recipients."  (Emphasis added).  The Court finds that DRMS's right to monitor compliance includes reasonable access to non-disabled residents.  *Accord Penn. Prot. & Advocacy, Inc. v. Roger-Greaves Sch. For Blind*, No. Civ. A. 98-3995, 1999 WL 179797 (E.D. Pa. Mar. 25, 1999).

        2.      Access to Residents not Known to Have Mental Illness to Determine Disability

DRMS represented during the hearing that it intended to employ mental health professionals to evaluate Henley-Young residents to determine whether they are subject to the P & A statutes.  The County takes issue with the proposal arguing that the P & A statutes do "not give DRMS unlimited access to all individuals in a facility for the purpose of determining whether the person has a mental, developmental or other disability."  Def.'s Resp. [12] at 3.

Hinds County builds its case on two primary foundations.  First, it offers a construction of the statutory and regulatory scheme by contrasting "child find" or "seek and serve" requirements of the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487 (2000 & Supp. IV).  Def.'s Resp. [12] at 3.  Second, The County distinguishes DRMS's legal authority without offering any of its own.[3]

---

[3]The parties discuss various orders issued within this district, but there is no indication that those judges faced the same legal question now presented.

a. Statutory Construction

Starting with the construction argument, the County posits that the language of the P & A statutes and the implementing regulations do not allow these interviews. As noted, however, the regulations expressly allow access to non-disabled residents to fulfil a P & A services's obligations, including the obligation to monitor the facility. 45 C.F.R. § 1386.22(g); *see Chevron, U.S.A. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842–43 (1984) (discussing interpretation of regulations). The right to investigate claims, such as those alleged in the Amended Complaint, and the right to monitor, would seemingly encompass the right to determine whether certain individuals are covered.

But even if ambiguity exists, the County's construction is not persuasive. The County argues that because the IDEA includes "child seek" or "seek and serve" provisions, the absence of similar language in the P & A statutes means that Congress did not intend to allow such access. In essence, Hinds County suggests that the IDEA and the P & A statutes should be read *in pari materia*. Under that constructive tool, "statutes addressing the same subject matter generally should be read as if they were one law." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006) (citations and quotations omitted). But this rule of construction does not apply because the IDEA and the P & A statutes deal with disability issues in materially different contexts. *See Fort Stewart Sch. v. Fed. Labor Relations Auth*., 495 U.S. 641, 648 (1990) (rejecting suggestion that statutes dealing with same issues in different fields should be read *in pari materia*). Ultimately, the Court must discern congressional intent, and the P & A statutes and regulations reflect "Congress' intent to have State facilities and records accessible to the local P & A in order to investigate suspected abuse or neglect of the mentally ill." *Armstrong*,

266 F. Supp. 2d at 315.  The Court finds that reasonable access is allowed to determine whether individuals are covered.

      b.  Case Law

  Although the County offers distinctions, a number of courts have rejected the argument that a P & A service must establish disability before access is granted.  The most relevant example is *Michigan Protection & Advocacy Service, Inc. v. Miller*, where a P & A service sought injunctive relief lifting restrictions on its right to access the facility.  849 F. Supp. 1202, 1207 (W.D. Mich. 1994).  There, the P & A service "enjoy[ed] only limited access:  it [could] speak with a minor in a DSS facility if the minor [was] a MPAS client or if there ha[d] been a complaint to MPAS regarding the minor."  *Id.*  The court made the following observations and holdings:

> In response to significant evidence from plaintiff indicating that DSS facilities do in fact house mentally ill persons, defendant maintains that because the youth in the system have not recently been determined to be mentally ill or emotionally impaired by a mental health professional, they do not fall within the ambit of PAIMI.  The Court notes that MPAS has offered substantial evidence indicating that many DSS facilities have in the past housed minors who suffer mental illness, as determined by mental health professionals.  Recent evidence proffered by MPAS also suggests that some current DSS residents may be mentally ill.  *DSS's present policy of denying MPAS full access prevents the advocacy organization from bringing in their own mental health professionals to ascertain whether any DSS residents do in fact suffer from mental illness.*  Such conduct by DSS defeats the very purpose of PAIMI and the DD Act to provide effective protection and advocacy services to mentally ill and developmentally disabled individuals.

*Id*. at 1207.  *Miller* is not an outlier case and has been followed by other courts in various contexts under the P & A  statutes.  *See Disability Rights Wash. v. Penrith Farms*, No. CV-09-024-JLQ, 2009 WL 777737, at *3 (E.D. Wash. Mar. 20, 2009); *Conn. Office of Prot. & Advocacy for Persons with Disabilities*, 355 F. Supp. 2d at 655, ("Courts have found that

protection and advocacy systems need not 'make a threshold showing of mental illness' in order to exercise their authority under PAIMI"); *Armstrong*, 266 F. Supp. 2d at 314; *Ky. Prot. & Advocacy Div. v. Hall*, No. Civ.A.3:01CV-538-H, 2001 WL 34792531, at *1 (W.D. Ky. Sept. 24, 2001) (citing Miller).

The County attempts to distinguish *Miller*, noting that the *Miller* plaintiff presented evidence indicating that current and former residents suffered from mental illness. Def.'s Resp. [12] at 8. This argument fails for two reasons. First, "conclusive evidence that a particular person or persons qualifies as an individual with mental illness or developmentally disabled for purposes of protection" is not required. *See Conn. Office of Prot. & Advocacy for Persons with Disabilities*, 355 F. Supp. 2d at 655. Instead, several courts "have held that a showing of 'substantial evidence' must suffice in order for such systems to fulfill their statutory mandate." *Id.* (citation omitted). In this regard, "[e]vidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill[,] is sufficient under PAIMI to merit access by [protection and advocacy systems]." *Id.* (citations and quotations omitted). In this case, DRMS presented evidence supporting a probable cause finding that Henley-Young continues to house a significant percentage of youths with mental illness. *See* Angela Robertson & Jonelle Husain, *Prevalence of Mental Illness and Substance Abuse Disorders Among Incarcerated Juvenile Offenders* 2, 20, 27 (2001); *see also Armstrong*, 266 F. Supp. 2d at 314 (holding that studies regarding inmate populations were sufficient).

Second, to the extent the evidence is lacking, the County presents a "Catch 22" by claiming DRMS lacks sufficient evidence of actual cases of mental illness but denying DRMS

access to residents for the purpose of determining whether other cases exist. The position is inconsistent with the purpose of the P & A statutes. *See Armstrong*, 266 F. Supp. 2d at 315 (noting that defendant's failure to provide access hampered efforts to collect additional evidence) (citing *Miller*, 849 F. Supp. at 1207 (finding that "[the defendant's] present policy of denying [P & A] full access prevents the advocacy organization from bringing in their own mental health professionals to ascertain whether any DSS residents do in fact suffer from mental illness . . . [and] defeats the very purpose of PAIMI . . . to provide effective protection and advocacy services to mentally ill . . . individuals"); *Ga. Advocacy Office v. Borison*, 520 S.E. 2d 701, 704 (Ga. Ct. App. 1999) ("[W]ithout access to the records, [P & A] could not specifically show which, if any study participant[s] . . . were mentally ill.")). "[D]emanding a conclusive, individualized showing of . . . mental illness before permitting [access] would reserve to Defendant a gatekeeping function contrary to the specific terms and general purpose of the Acts." *Id.* (citation and quotations omitted).[4] DRMS has shown a substantial likelihood of success on the merits justifying a preliminary injunction in its favor.[5]

III.    Hinds County's Motion for Declaratory Judgment

On June 17, 2011, the parties appeared before the undersigned to argue DRMS's Motion for Preliminary Injunction. At the hearing, the parties announced agreement as to the majority of

---

[4] The County also notes, and correctly so, that the Court in *Miller* referred the case to two special masters to work out the details of the access. This portion of *Miller* is not well-explored, but it is consistent with the fact that access must be "reasonable." And there are a host of issues related to what constitutes reasonable access.

[5] It is worth noting that DRMS seeks preliminary injunction and that this Order is not, therefore, the final word. As the case now stands, the Court finds that the disputed access must be permitted. Based on the arguments that have been presented, the Court finds a substantial likelihood of success on the merits of such a claim, but the issue must be finally decided with respect to the requested permanent injunction.

DRMS's concerns, and the Court asked for briefing on the issues addressed in this Order. At that time, the County generally granted access to DRMS. On July 1, 2011, Youth Court Judge William Skinner entered a *sua sponte* Order "in light of Disability Rights Mississippi v. Hinds County, Mississippi; In the United States District Court for the Southern District of Mississippi—Jackson Division; Civil Action Number 3:11-cv-327-DPJ-FKB" ("Youth Court Order"). Def.'s Mot. [17] Ex. A at 1. The County seeks declaratory judgment indicating whether it must comply with the Youth Court Order.

The Youth Court Order states that any contact with residents as a result of *this* civil action must comply with a new "protocol." It then substantially restricts access to the residents in a way that would nullify the relief sought in DRMS's Motion for Preliminary Injunction. In particular, the order states that no access may occur until Assistant Youth Court Defender Brandon I. Dorsey is notified:

> to provide Dorsey the opportunity to be involved in such measures, and for any other purpose(s) that he may deem appropriate, and that said juvenile(s) shall not be interviewed, interrogated, or otherwise questioned regarding any subject matter, whether pertaining to [this case] and all other matters, without his prior expressed consent, and that subsequent to any such interview, interrogation or otherwise, that said public defender shall be provided with a summary of any and all such interview, interrogation, or otherwise.

*Id.*

This Court has authority to issue "all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006). The Anti-Injunction Act is inapplicable because this Order is in "aid of [this Court's] jurisdiction" and "otherwise protect[s] or effectuate[s] its judgments." *Id.* § 2283; *see In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2nd Cir. 1985) (holding that "[e]ven before a federal

10

judgment is reached . . . the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such 'federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'") (quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981)).

The Youth Court Order expressly references this civil action, for which this Court exercises jurisdiction, and adjudicates issues raised in DRMS's Motion—many of which have been granted as unopposed and are otherwise meritorious. Allowing the Youth Court Order to stand substantially interferes with this Court's consideration and disposition of the case and essentially nullifies this Order. Enforcement of the Youth Court Order is properly enjoined.

Moreover, the Youth Court Order violates the P & A statutes in at least the following ways. First, DRMS is entitled to "reasonable unaccompanied access to residents." 42 C.F.R. § 51.42(b) (2011); 45 C.F.R. § 1386.22(f) (2011). The County may not require attendance by a third party. Second:

> [DRMS] must: (1) . . . keep confidential all records and information, including information contained in any automated electronic database pertaining to: (i) Clients to the same extent as is required under Federal or State laws for a provider of mental health services; (ii) Individuals who have been provided general information or technical assistance on a particular matter; (iii) Identity of individuals who report incidents of abuse or neglect or furnish information that forms the basis for a determination that probable cause exists; and (iv) Names of individuals who are residents and provide information for the record.

42 C.F.R. § 51.45(a)(1) (2011). The County may not require DRMS to identify those residents providing DRMS with information, nor is the County entitled to a summary of the information obtained. Third, the Fifth Circuit has observed that similar "pre-screening and post-interview

11

counseling could only create a chilling effect of gigantic proportions." *Cotten*, 929 F.2d at 1057 (5th Cir. 1991).  For these reasons, the Court grants the County's Motion for Declaratory Judgment and enjoins compliance with the Youth Court Order.

  IT IS, THEREFORE, ORDERED that the parties are instructed to draft a preliminary injunction order consistent with this Order.  If the parties cannot agree, then they should submit a proposed order that identifies areas of agreement and impasse.

  IT IS FURTHER ORDERED THAT Defendant is hereby enjoined from complying with all state court orders that interfere with, contradict, or conflict with this Order and are hereby enjoined from enforcement of same.  Such orders include, but are not limited to, the Youth Court Order.

  **SO ORDERED AND ADJUDGED** this the 25th day of July, 2011.

              s/ *Daniel P. Jordan III*
              UNITED STATES DISTRICT JUDGE