UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H. and DISABILITY RIGHTS
MISSISSIPPI
                                     PLAINTIFFS

v.                       CIVIL ACTION NO. 3:11cv327-DPJ-FKB

HINDS COUNTY, MISSISSIPPI             DEFENDANT

ORDER

This matter involves alleged constitutional and federal-law violations at the Henley-Young Juvenile Justice Center. Though the parties settled their differences, Plaintiff Disability Rights Mississippi ("DRM") now seeks an order holding Defendant Hinds County, Mississippi, in contempt for violating the terms of that agreement. DRM also seeks other remedies. Mot. [41]. For the reasons stated, the motion is granted in part.

I.  Background

In June 2011, Plaintiffs filed a class-action lawsuit against Hinds County to remedy unconstitutional conditions at Henley-Young. In July, the Court entered a preliminary injunction, and by March 2012, the parties entered an agreement requiring Hinds County to rectify 71 specific deficiencies at Henley-Young. The Agreement included a two-year expiration date that would have passed March 28, 2014, had DRM not filed its motion.

DRM now seeks an extension of the Agreement and further seeks an order holding Hinds County in contempt for failure to comply with the Agreement. The Court held an evidentiary hearing on April 24, 2014, and heard testimony from Court-appointed monitor Leonard Dixon. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Analysis

There are two basic questions: (1) should the Agreement be extended; and (2) should Defendant be held in contempt. The answer to the first is an easy "yes"; the answer to the second is a closer "yes," but attorneys' fees will not be awarded at this time.

A.      Extending the Agreement

The parties' Agreement states that "it is the intent of the parties that the Court will retain ongoing jurisdiction over this Settlement Agreement for purposes of enforcement, pursuant to the terms of the Prison Litigation Reform Act." Agreement [33] at 2. Paragraph 1 of the Agreement then follows the Act's provisions for extending relief, stating as follows:

> This agreement will terminate at the end of two years. If the Court makes written findings based on the record that prospective relief remains necessary after two years to correct a current and ongoing violation of federal right, this agreement shall not terminate. *See* 18 U.S.C. § 3626(b)(3).

Agreement [33] at 2. Section 3626(b)(3) also states that any continued prospective relief must be "narrowly drawn and the least intrusive means to correct the violation."[1]

An extension of the Agreement is necessary in this case. Mr. Dixon is an expert in the field of youth detention, and he has served as the Court-appointed monitor since the parties selected him in May 2012. He has provided six status reports that are docketed in the record. Those reports rate the County's success in fixing the 71 identified deficiencies at Henley-Young. The rating system includes the following potential scores: Substantial Compliance ("SC"), Partial Compliance ("PC"), Beginning Compliance ("BC"), and Non-Compliance ("NC"). As of

---

[1] In its response, Hinds County suggested that this Court lacked authority to do anything other than reinstate the dismissed civil action, but it abandoned that position during the hearing. In any event, both the Agreement and § 3626(b)(3) give the Court authority to extend the terms of the Agreement.

2

the sixth report in February 2013—some 23 months into the Agreement—Hinds County reached SC status in only three of 71 categories and was no better than BC status as to 54 of the 71.  A follow-up visit one month later, in March 2014, showed no improvement in any area and instead revealed backsliding in one.  And as for the three categories that have reached SC, they did not appear difficult to accomplish yet were not reached until December 2013.  They include provisions 7.5 ("No Restraint Chairs, Chemical Restraints and/or Tasers"); 7.6 ("No Hogtying in Facility"); and 7.10 ("No Firearms in Facility").

The Agreement acknowledges that the 71 requirements are "necessary to correct an ongoing violation of a federal right" and further agrees that these provisions "extend no further than necessary to correct the violation of federal right, and that the prospective relief is narrowly drawn and is the least intrusive means to correct the violation."  Agreement [33] at 2.  If the provisions are the least intrusive means to correct the violations, then the failure to achieve 68 of the 71 demonstrates that "prospective relief remains necessary after two years to correct a current and ongoing violation of federal right."  *See* 18 U.S.C. § 3626(b)(3).  The Court therefore extends the current Agreement for another two years.  But because the extension must be narrow, the Court will drop the three provisions for which Hinds County reached SC status if it maintains that rating through June 30, 2014.

The decision to extend the Agreement by two years is based on Mr. Dixon's testimony that many of the requirements will take substantial time to achieve.  Based on the testimony, the Court concludes that Hinds County will not be in substantial compliance within the next 12 months.  But to ensure that the County makes appropriate progress in the interim, the Court will conduct quarterly telephonic conferences with Mr. Dixon and counsel for all parties to be

scheduled by Plaintiffs. In addition, the Court will henceforth visit Henley-Young with Mr. Dixon—with or without notice to the facility.

      B.      Contempt

DRM moves the Court to hold Hinds County in contempt and award attorneys' fees. This raises the threshold issue whether the Agreement is actually a consent decree that can be enforced with an order of contempt or a private settlement agreement that cannot. The Court finds that the Agreement is a consent decree.

The March 28, 2012 Agreement docketed in the record is clearly titled "Settlement Agreement." But this label does not necessarily determine whether it is a private settlement agreement or a consent decree. *Cf. Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. 1981) (noting that substance not labels apply in admiralty context); *United States v. Martin Linen Supply Co.*, 534 F.2d 585, 587 n.3 (5th Cir. 1976) (same in double jeopardy context for criminal dismissals).

Section 3626(g) defines the two terms. "'Consent decree' means any relief *entered by the court* that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements." 18 U.S.C. § 3626(g)(1) (emphasis added). "'[P]rivate settlement agreement' means an agreement entered into among the parties that is *not subject to judicial enforcement* other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(g)(6) (emphasis added).

These definitions led the Eleventh Circuit to hold that "judicial enforcement is thus the critical distinction between private settlement agreements and consent decrees." *Rowe v. Jones*, 483 F.3d 791, 795–96 (11th Cir. 2007) (citing 18 U.S.C. § 3626(g)). And though addressed in a

different context, this district noted in *Davis v. City of Jackson Fire Department* that "private settlements do not entail the judicial approval and oversight involved in consent decrees." 399 F. Supp. 2d 753, 755 (S.D. Miss. 2005) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 n.7 (2001)). The Court further noted that "a consent decree, unlike a settlement agreement, is a judgment that can be enforced through contempt proceedings. Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court." *Id.* (citation and punctuation omitted).

The Agreement in this case fully satisfies the definition of a consent decree. First, the parties sought and obtained judicial approval of their agreement. *See* Agreed Order Granting Approval [32]. Second, the Court entered the Agreement as an order, signing it under the words "SO ORDERED." Agreement [33]; *see also* 18 U.S.C. § 3626(g)(1) (stating that consent decrees are "entered by the court"). Third, the Agreement stated the parties' intent "that the Court will retain ongoing jurisdiction over this Settlement Agreement for purposes of enforcement." Agreement [33] at 2; *see also* 18 U.S.C. § 3626(g)(6) (stating that settlement agreements are "not subject to judicial enforcement"). Fourth, the Agreement quotes and complies with the limits noted in § 3626(a), which nullifies the County's reliance on § 3626(c).

Finally, to the extent the mere use of the term "settlement agreement" would somehow deprive the Court of jurisdiction to enforce its order, the Agreement further states that "[i]n the event that the Court determines that it does not have jurisdiction of this Settlement Agreement for purposes of enforcement, the parties agree to modify the Settlement Agreement to the least extent necessary to ensure ongoing federal court jurisdiction." Agreement [33] at 2. Changing the label would be such a modification. For all of these reasons, the Court concludes that the

Agreement docketed at [33] in the record is a consent decree.

The question then becomes whether to hold Hinds County in civil contempt. To obtain a civil contempt order, the "the movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). At the hearing, the parties focused on whether Hinds County's conduct was willful or in bad faith, but in the Fifth Circuit, "[t]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citation omitted). And where a party has established the elements of civil contempt, "the grant or withholding of remedial relief is not wholly discretionary with the judge." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also La. Educ. Ass'n v. Richland Paris Sch. Bd.*, 421 F. Supp. 973, 975 (W.D. La. 1976) ("[A] court's discretion is not unfettered. A court cannot refuse to preserve rights under its own order absent extraordinary circumstances." (citing *McComb*, 336 U.S. at 191)).

There is no dispute that Plaintiffs have established the three elements of civil contempt and that Hinds County is therefore technically in contempt. But the Court is reluctant to impose attorneys' fees or other sanctions based on the record before it.[2] Mr. Dixon testified that it was never feasible for Hinds County to attain substantial compliance in the 71 areas identified in the Agreement in two years. He further stated that no one at Henley-Young ever refused to comply

---

[2]As relief for the contempt, Plaintiffs seek an extension of the Agreement, which they are entitled to without regard to the contempt finding. They also ask for their attorneys' fees associated with the contempt motion, but attach no evidence detailing the fees sought.

with the Court's order; instead, he stated that the order—comprised entirely of obligations that the parties mutually conceived—was overwhelming to the administration at the facility and that incompetence, rather than willfulness or bad faith, was to blame.  The Court fully credits this testimony.

Though the County has not made the progress it should, the goals appear to have been unattainable within the initial two years.  As Mr. Dixon indicated, we are faced with a large task and possible incompetence.  That said—and this needs to be clearly understood—the progress thus far is unacceptable.  Excuses aside, many of the 71 requirements should have been accomplished long before now.  If in the coming months the County fails make adequate progress, then Plaintiffs may file a properly supported motion seeking their attorneys' fees associated with efforts to enforce the Agreement.

III.    Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Plaintiffs' Motion for Contempt [41] is granted, but the Court declines to sanction Hinds County for its contempt at this time.  Additionally, the Settlement Agreement [33] is hereby extended for a period of two years—through March 28, 2016—as set forth herein.

**SO ORDERED AND ADJUDGED** this the 25th day of April, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE