**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**J.H. AND**                                       **PLAINTIFFS**
**DISABILITY RIGHTS MISSISSIPPI**

**V.**                                 **CAUSE NO. 3:11-CV-327-DPJ-FKB**

**HINDS COUNTY, MISSISSIPPI**                   **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO
JUDGE WILLIAM SKINNER'S MOTION TO INTERVENE**

**\*\*\* ORAL ARGUMENT REQUESTED \*\*\***

---

> *"This is not Judge Skinner's first violation of the Canons of Judicial Conduct. And absent some behavior-modifying punishment, it likely will not be his last."*
>
> *Miss. Comm'n on Judicial Performance v. Skinner,*
> *119 So. 3d 294, 309 (2013)*
> *(Dickinson, P.J., concurring in part and dissenting in part).*

. . .

Judge Skinner does not come to this Court for a simple resolution of inconsistent orders. He seeks permission to continue violating children's legal rights.

For at least 17 months, Hinds County Youth Court Judge William Skinner has claimed the "right" to incarcerate children indefinitely at the Henley-Young Juvenile Detention Center. In doing so, Judge Skinner has violated the legal rights of no fewer than 11 children and has thwarted Henley-Young officials' good-faith attempts to comply with Mississippi and federal law.

Now that this Court has clarified that Henley-Young must adhere to Mississippi and federal law, Judge Skinner attempts to preserve his supposed "authority" by intervening in this case. For three reasons, his motion must be denied.

1

First, any right to intervene that Judge Skinner might once have had has long since evaporated. A motion to intervene must be filed timely, and this case is nearly five years old. If Judge Skinner ever had the right to intervene, then he spent nearly a half-decade sleeping on that right. His untimeliness requires denial of the motion.

Second, Judge Skinner's effort to protect a nonexistent right is futile. Judge Skinner has the power neither to order that children be incarcerated indefinitely nor to override Hinds County's administrative policies at Henley-Young. Such futility requires denial of the motion to intervene.

Finally, Judge Skinner failed to support his motion to intervene with a proposed pleading, as Rule 24(c) requires. If the Court declines to deny the motion on its merits, then it nevertheless should deny without prejudice, so that when Judge Skinner re-files, the Plaintiffs can review the proposed pleading before responding.

## BACKGROUND

**Procedural History.**

The Henley-Young Juvenile Detention Center is the largest juvenile detention center in Mississippi. It is located in Jackson and is owned by Hinds County. It is designed to be a short-term facility, and the Hinds County Board of Supervisors has established a 21-day limit on detentions at Henley-Young.[1]

In June 2011, the Plaintiffs filed this class-action lawsuit against Hinds County, alleging a host of unconstitutional conditions and practices at Henley-Young. The lawsuit's filing generated substantial publicity.[2]

---

[1] *See* Exhibit A ("Resolution of the Hinds County Board of Supervisors Regarding the Youth Detention Center").

[2] *See, e.g.*, Exhibit B (Holbrook Mohr, Associated Press, "Lawsuit Claims Abuse at Hinds Co. Juvenile Center" (June 1, 2011)); Exhibit C (*The Clarion-Ledger*, "Access to Incarcerated Youth Sought" (June 8, 2011)).

Hinds County and the Plaintiffs ultimately agreed to a settlement. As part of that settlement, the parties moved the Court to enter a consent decree. Pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, the Court conducted a fairness hearing, and after considering all available record evidence, the Court concluded that the settlement was fair and entered the consent decree.[3]

In February 2014, the Plaintiffs moved the Court to extend the consent decree for an additional two years. Hinds County opposed that motion. Again, the Court reviewed the parties' briefs, considered all available record evidence, and concluded that a two-year extension was in order.[4]

By August 2014, Hinds County still had reached substantial compliance with just nine of the consent decree's 71 provisions. Undoubtedly, some of this failure was due to instability in Henley-Young's leadership: during the first four years of this case's life, Henley-Young went through five directors.

However, in April 2015, Hinds County appointed Johnnie McDaniels to serve as Henley-Young's facility administrator. Under Mr. McDaniels' guidance, Henley-Young has achieved substantial compliance with a total of 17 provisions of the consent decree.

Today, Henley-Young is making progress. That progress has come slower than the Plaintiffs hoped it would, but there is no doubt that Mr. McDaniels is bringing Henley-Young closer than it ever has been to complying with its constitutional obligations to Hinds County's children.

Judge Skinner unapologetically threatens that progress.

---

[3] Agreed Order Granting Approval of Settlement Agreement and Certifying a Settlement Class [Docket No. 32].
[4] Order [Docket No. 50].

**Judge William Skinner Has a Career-Long Pattern of Misbehavior.**

Judge William Skinner began sitting as a judge for the Hinds County Youth Court in 2007. In his nine years of service, Judge Skinner (a.) has served a 30-day suspension for judicial misconduct,[5] (b.) has been privately admonished at least once by the Mississippi Commission on Judicial Performance,[6] and (c.) has been informally admonished by the Commission at least three times.[7]

In its 2013 decision suspending Judge Skinner, the Mississippi Supreme Court noted that "the record certainly indicates that Judge Skinner's actions were done with knowledge that they were wrong."[8] Two of the Court's justices argued for a harsher punishment: "This is not Judge Skinner's first violation of the Canons of Judicial Conduct," wrote Presiding Justice Dickinson in a separate opinion. "And absent some behavior-modifying punishment, it likely will not be his last."[9] Since 2013, he has been the subject of at least one more Judicial Performance Commissioner complaint.[10]

In January 2008, Judge Skinner assumed administration of Henley-Young.[11] That relationship lasted barely more than a year; in January 2009, the Hinds County Board of Supervisors stripped Judge Skinner of his Henley-Young duties[12] "amid questions about his management of the facility."[13]

---

[5] *Miss. Comm'n on Judicial Performance v. Skinner*, 119 So. 3d 294 (Miss. 2013).
[6] *Id.* at 302.
[7] *Id.*
[8] *Id.* at 307.
[9] *Id.* at 309 (Dickinson, J., concurring in part and dissenting in part) (opinion joined by Coleman, J.).
[10] R.L. Nave, *Jackson Free Press*, "Despite Henley-Young Report, Frank Bluntson Says 'I'm Calling the Shots'" (Feb. 4, 2015), http://www.jacksonfreepress.com/news/2015/feb/04/despite-youth-jail-report-bluntson-says-im-calling/ (last visited Apr. 26, 2016) (complaint filed by Disability Rights Mississippi following 2014 incident involving Judge Skinner).
[11] *Neyland v. Henley-Young Juvenile Justice Center*, No. 3:09-cv-520-DPJ-FKB, 2011 WL 1980276, *1 (S.D. Miss. May 20, 2011).
[12] Monica Hernandez, *MS News Now*, "Youth Court Judge Battles Board of Supervisors," http://www.msnewsnow.com/story/9675531/youth-court-judge-battles-board-of-supervisors (last visited Apr. 19, 2016).

Judge Skinner's interference with children's legal rights has not been limited by the walls of his own courtroom. In the instant case's earliest days, Judge Skinner retaliated against the Plaintiffs by *sua sponte* ordering that Disability Rights Mississippi — a federally mandated watchdog — be forbidden from interviewing Henley-Young residents without the youth court public defender's approval.[14] This Court quickly enjoined that order's enforcement.[15]

Even when not actively trying to impede this litigation, Judge Skinner has been a problem. The monitor reported in his January 2015 report that Judge Skinner's behavior at Henley-Young had created a "political atmosphere" that was "toxic."[16] This contributed to what the monitor described as "a disheartening environment for staff and youth."[17]

Over the five-year life of this case, Judge Skinner has been a constant hindrance to progress at Henley-Young. He has usurped technological and financial resources that rightly belonged to Henley-Young; he has obstructed Henley-Young's efforts to gather evidence about incidents therein; and he has subjected children to sentences far beyond the 90-day limit established by Mississippi law.

Now, Judge Skinner seeks an active role in this litigation. But let there be no mistake: Judge Skinner has not come to this Court seeking to protect his rights. He has come to violate the rights of Hinds County's children.

---

[13] R.L. Nave, *Jackson Free Press*, "SPLC Blasts Henley-Young Plan," http://www.jacksonfreepress.com/news/2014/may/14/splc-blasts-henley-young-plan (last visited Apr. 19, 2016).
[14] *J.H. ex rel. Gray v. Hinds Cnty., Miss.*, No. 3:11-cv-327-DPJ-FKB, 2011 WL 3047667, *1 (S.D. Miss. July 25, 2011).
[15] *Id.* at *6.
[16] Eighth Monitoring Compliance Report [Docket No. 58] at 8-9.
[17] Eighth Monitoring Compliance Report at 8.

**Judge Skinner Requires Henley-Young to Hold Children Indefinitely.**

Section 43-21-605 of the Mississippi Code provides an unambiguous time limit on a child's confinement at a juvenile detention center: 90 days. The law allows for no discretion on this limit, and it does not permit youth court judges to circumvent it under the pretense of sentencing authority. As the Mississippi Supreme Court has explained, any juvenile's detention exceeding 90 days is patently illegal.[18]

Judge Skinner has routinely and purposefully broken this law.

On December 3, 2014, Judge Skinner entered a standing order forbidding the Hinds County Board of Supervisors "from authorizing any one . . . from executing any Order authorizing the release of any child from the Hinds County Youth Detention Facility."[19] Similarly, on November 10, 2015, Judge Skinner entered a standing order in which he claimed exclusive authority to authorize children's releases from Henley-Young.[20] Judge Skinner specifically ordered that "[a]ny violation of this Court's order and/or release of any juvenile <u>without Court approval</u> . . . shall hereby result in further sanctions from this Court."[21]

As a result of these orders, Henley-Young has declined to release children even after their incarcerations have exceeded 90 days. The December 2014 standing order is on appeal at the Mississippi Supreme Court, but a decision is not expected until well into 2017.[22]

---

[18] *In re J.P.*, 151 So. 3d 204, 214 (Miss. 2014).
[19] Exhibit D (Order in *In re Juveniles John Does 1 Through Infinity*) at 1 (hereinafter "December 2014 Standing Order" or the like).
[20] Exhibit E ("Order of Authorization to Detain and Release Juveniles") (hereinafter "November 2015 Standing Order" or the like).
[21] November 2015 Standing Order at 2 (underlined in original).
[22] The appeal is docketed as *Hinds County, Mississippi v. William L. Skinner, II*, No. 2014-TS-01837. Hinds County noticed its appeal on this matter in December 2014. However, as of April 28, 2016, no record had yet been lodged by the circuit clerk. Therefore, briefing has not yet even begun. The Mississippi Supreme Court's "270-day rule" does not come into play until briefing has concluded.

Since the entry of the December 2014 Standing Order, Judge Skinner's orders have led directly to the illegal confinements of no fewer than 11 children:[23]

| Child's Initials | Detention Date | Total Days Detained |
|---|---|---|
| Q.P. | August 31, 2014 | 107 |
| M.E. | August 31, 2014 | 107 |
| S.T. | March 27, 2015 | 95 |
| C.B. | August 21, 2015 | 102 |
| Q.B. | September 22, 2015 | 123 |
| X.C. | September 26, 2015 | 119 |
| C.D. | October 7, 2015 | 108 |
| A.C. | October 12, 2015 | 103 |
| C.W. | October 29, 2015 | 97 |
| C.M. | November 17, 2015 | 95 |
| A.B. | November 24, 2015 | 93 |

Through the December 2014 and November 2015 standing orders, Judge Skinner repeatedly violated the legal rights of Hinds County's children. Given the opportunity, he will do it again.

**The Amended Consent Decree.**

In early 2016, the parties began negotiating a two-year extension of the consent decree. During those negotiations, the Plaintiffs complained about Henley-Young's repeated failure to adhere to the 90-day detention limit. Hinds County explained that although it believed Judge Skinner's standing orders to be illegal, the orders had left Henley-Young officials confused as to their obligations. The parties agreed that such

---

Therefore, even if briefing began in May 2016, and even if the briefing period lasted just three months, the Court's decision would not be due until May 2017.

[23] Exhibit F (redacted Henley-Young rosters). The Plaintiffs are in possession of the unredacted rosters, which they have not filed because of the confidentiality of youth court records. If it pleases the Court, the Plaintiffs would gladly submit the unredacted rosters under seal.

detentions were illegal, that they violated the consent decree, and that they must be stopped.

Therefore, in order to clarify Henley-Young's obligations, Hinds County and the Plaintiffs agreed to amend the consent decree so that it provides, in relevant part: "[T]he parties agree that Provision 2.1 necessarily requires Henley-Young to discharge any resident on or before his/her 21st day at Henley-Young. The parties further agree that Provision 2.1 requires Henley-Young to refuse admission to any youth sentenced to a period of greater than 21 days."[24]

The parties jointly moved the Court to enter the Amended Consent Decree. Again, the Court met with all counsel of record, considered the parties' positions, reviewed all available record evidence, and concluded that the Amended Consent Decree should be entered. The Amended Consent Decree is now in effect through March 28, 2018.[25]

**Judge Skinner's Motion to Intervene.**

Nearly five years into this case's existence – and more than four years after the entry of Final Judgment[26] – Judge Skinner moved to intervene without including a proposed pleading. The remarkable length of Judge Skinner's half-decade-long delay is exceeded only by the shamelessness of the motion's stated purpose: to protect Judge Skinner's purported "right" to continue incarcerating children indefinitely.

---

[24] Amended Consent Decree [Docket No. 64] at 6.
[25] Amended Consent Decree at 1.
[26] *See* Judgment (March 28, 2012) [Docket No. 34].

## **ARGUMENT**

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil procedure. In the absence of a federal statute providing for intervention, a party seeking to intervene as a matter of right must satisfy four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[27]

Rule 24(b) governs permissive intervention. Absent an applicable federal statute, courts considering requests for permissive intervention evaluate "whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit."[28]

In either instance, a would-be intervenor must show at least two things: timeliness of the motion, and a legally protectable interest in the litigation. Judge Skinner can show neither. In this case, Judge Skinner's motion is woefully untimely, and his attempt to vindicate non-existent legal authority is futile. Therefore, whether viewed through the lens of Rule 24(a) or Rule 24(b), the motion must be denied.

Additionally, Judge Skinner failed to comply with Rule 24(c), which requires a would-be intervenor to attach a proposed pleading to a motion to intervene. Failure to comply with Rule 24(c) requires denial without prejudice. Therefore, even if Judge

---

[27] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).
[28] *United Gas*, 732 F.2d at 472 (quotations omitted).

Skinner's motion escapes a quick death on its merits, it still must be denied for its procedural deficiency.

## I.    JUDGE SKINNER'S MOTION IS UNTIMELY.

The first requirement for any motion to intervene, whether as of right or by permission, is timeliness.[29] Judge Skinner's motion fails this threshold obligation.

As the Fifth Circuit explained in *Stallworth v. Monsanto*, courts employ four factors when reviewing the timeliness of a motion to intervene. Those factors are: (1.) the length of time during which the would-be intervenor knew or should have known of his interest in the case before moving to intervene; (2.) whether intervention would prejudice the case's existing parties; (3.) whether denial of the motion to intervene will prejudice the would-be intervenor; and (4.) whether unusual circumstances either support or militate against intervention.[30]

In this case, none of those factors weighs in Judge Skinner's favor.

**Judge Skinner's Actions Prove that He Believed His Interests to Be at Stake as Early as July 2011 But No Later Than December 2014.**

For purposes of evaluating timeliness under Rule 24, "the timeliness clock runs either from the time the applicant knew or reasonably should have known of his stake in the case into which he seeks to intervene or from the time he became aware that his stake would no longer be protected by the existing parties to the lawsuit."[31] This does not mean that the clock begins to run only upon a non-party's certainty that litigation will affect its rights. Instead, the clock begins to run when the would-be intervenor

---

[29] Fed. R. Civ. P. 24(a) ("On *timely* motion . . .") (emphasis added); Fed. R. Civ. P. 24(b) ("On *timely* motion . . .") (emphasis added).
[30] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).
[31] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (punctuation omitted).

either (a.) knew or should have known that he had a "stake in the case"[32] or an "interest in the case,"[33] or (b.) knew or should have known that existing parties' interests might no longer be in accord with his own.[34] Even the mere "possibility" of being affected by litigation is enough to begin the timeliness clock.[35]

Judge Skinner cannot seriously argue that he only recently learned of an interest in this litigation. Since the day this lawsuit was filed, it has always been about the legality of children's incarcerations at Henley-Young. Moreover, the consent decree entered in 2012 placed specific limits on overcrowding and staff-to-inmate ratios – issues that necessarily implicated Henley-Young's ability to keep and accept residents.[36] This has been obvious to any observer for more than four years.[37]

Even if the consent decree did not put Judge Skinner on notice of his stake in this case, his own words prove conclusively that nearly a year prior – as early as July 2011 – he believed that this case encroached on his ability to preside over the youth court. The July 2011 order eventually enjoined by this Court[38] announced a "'protocol' change" that Judge Skinner deemed necessary "in light of" this lawsuit, "so as to avoid any and all

---

[32] *Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 166 (E.D. La. 2012).

[33] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

[34] *John Doe No. 1*, 256 F.3d at 376.

[35] *Staley v. Harris Cnty., Tex.*, 160 Fed. Appx. 410, 412 (5th Cir. 2005).

[36] Settlement Agreement [Docket No. 33] at 5.

[37] Technically, the timeliness inquiry is slightly more lenient with regard to intervention as of right than with permissive intervention. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977). However, in this case, the remarkable length of Judge Skinner's delay overcomes even that lenience. *See, e.g., Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (motion to intervene, apparently as of right, was untimely when filed eight months after settlement and dismissal); *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1208-09 (5th Cir. 1985) (motion to intervene untimely when filed four years after entry of consent decree); *Smith v. Missouri Pac. R.R. Co.*, 615 F.2d 683, 684-85 (5th Cir. 1980) (motion to intervene as of right was untimely when filed two years after entry of consent decree); *United States ex rel. Marshall v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 452-53 (5th Cir. 1977) (motion to intervene as of right was untimely when filed nine months after agreement upon consent decree and more than seven months after entry of judgment).

[38] *J.H. ex rel. Gray v. Hinds Cnty., Miss.*, No. 3:11-cv-327-DPJ-FKB, 2011 WL 3047667 (S.D. Miss. July 25, 2011).

conflict(s) of interest."[39] The order is not the picture of clarity, but it obviously responds to what Judge Skinner believed to be incongruence between this case and his interests.

Likewise, Judge Skinner's own words demonstrate that in 2014, he believed that his interests were not being protected by this case's parties. On December 4, 2014, Judge Skinner hand-delivered a letter to the District Court. In that letter, he expressed concerns regarding the Board of Supervisors' decisions to limit capacity and lengths of incarceration at Henley-Young.[40] Judge Skinner wrote:

> [I]t is my belief that the interim Executive Director of the Hinds County Detention Center, the Hinds County Board of Supervisors, Board Attorney Pieter Teeuwissen, and Special Board Attorney Anthony R. Simon have acted in a manner expressly prohibited by statute in releasing youth from detention without Order (whether verbal or in writing) by this Court....*See Section 43-21-301(4)*.[41]

In the same letter, Judge Skinner expressed his "belief that the acting Executive Director . . . on behalf of the Hinds County Board of Supervisors has usurped this Court's authority as provided by applicable statute as it relates to the detention and release of youth in Hinds County . . . ."[42] These are precisely the same concerns that Judge Skinner seeks permission to vindicate by intervening in this case.

By his own words, Judge Skinner revealed that he believed his interests to be at stake as early as July 2011 but no later than December 2014. For whatever reason, he did not seek to intervene at those times. He cannot now do so and pretend that his request is timely.

---

[39] Exhibit A to Emergency Motion for Declaratory Judgment [Docket No. 17-1] at 1 ("Order Regarding Access" entered by Judge Skinner "in light of Disability Rights Mississippi v. Hinds County, Mississippi; In The United States District Court For The Southern District Of Mississippi – Jackson Division; Civil Action Number 3:11-cv-327-DPJ-J-FKB").
[40] Exhibit G (hereinafter "Letter from Judge Skinner to Judge Jordan").
[41] Letter from Judge Skinner to Judge Jordan at 1.
[42] Letter from Judge Skinner to Judge Jordan at 1-2.

**Allowing Judge Skinner to Intervene Would Prejudice the Parties, But Denying His Motion Would Cause Him No Prejudice.**

The untimeliness of Judge Skinner's motion clearly threatens to prejudice the Plaintiffs and Hinds County. Today, the parties are more than four years into an agreement reached out of a mutual desire to avoid protracted, expensive litigation. Granting Judge Skinner's request would threaten the Amended Consent Decree and jeopardize the case's ceasefire: if the parties' agreement is altered without their consent, then there is no guarantee that the parties could agree to continue under what remained of the Amended Consent Decree. This would be deeply prejudicial to Henley-Young's children, who depend every day on the Amended Consent Decree's protections.[43]

Judge Skinner implicitly acknowledges all of this. Judge Skinner's stated purpose in seeking to intervene is to vindicate his orders requiring indefinite detentions at Henley-Young. These orders have directly led to children being held beyond Mississippi's 90-day juvenile confinement limit. If Judge Skinner is allowed to intervene, and if he succeeds in vindicating his orders, then the result will be that children at Henley-Young will continue to languish under illegally lengthy sentences. It would be difficult to imagine greater prejudice.

On the other hand, if the Motion to Intervene is denied, then Judge Skinner will suffer no prejudice because he does not enjoy the rights he claims to be protecting.

---

[43] *See Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1210 (5th Cir. 1985) ("A negotiated settlement of a difficult problem is put at risk, to the disadvantage of the named parties, the class, the police department, and the City. There would have been prejudice had the intervention come immediately after the decree and before implementation of the new procedures. Coming after implementation markedly increases the prejudice."); *United States v. Allegheny-Ludlum Industries, Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (denying motion to intervene filed nine months after entry of consent decree) ("Intervention now for the purpose of challenging the consent agreement will prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation.").

Judge Skinner has no authority to incarcerate children indefinitely,[44] and because the Amended Consent Decree extends no further than necessary to effectuate federal law,[45] any conflicts between it and Judge Skinner's orders cannot be decided in Judge Skinner's favor.[46]

### No Unusual Circumstances Justify Judge Skinner's Delay.

Finally, Judge Skinner has offered no convincing justification for his untimely motion. The Fifth Circuit has explained that untimeliness might be excusable if "for reasons other than lack of knowledge [the would-be intervenor] was unable to intervene sooner."[47] Judge Skinner offers no hint of such a circumstance, and indeed, there is none.

These four factors leave no room for doubt that Judge Skinner's motion to intervene is untimely.

### Intervention Post-Judgment is Disfavored.

Finding Judge Skinner's motion to be untimely is even more clearly required because Final Judgment was entered more than four years ago.

"Post-judgment intervention is rare."[48] The Fifth Circuit has explained that "intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye as they have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court."[49]

---

[44] *In re J.P.*, 151 So. 3d 204, 214 (Miss. 2014) (citing 90-day juvenile confinement limit provided by Miss. Code Ann. § 43-21-605).

[45] Amended Consent Decree at 2.

[46] *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause).

[47] *Stallworth*, 558 F.2d at 266.

[48] *United States ex rel. Marshall v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977).

[49] *Staley v. Harris Cnty., Tex.*, 160 Fed. Appx. 410, 412 (5th Cir. 2005) (punctuation omitted) (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)).

The Fifth Circuit's decision in *Staley v. Harris County* is instructive.[50] In *Staley*, a citizen filed suit arguing that a courthouse's display of a Bible violated the First Amendment. Nearly a year after the lawsuit's filing, the case was tried, and the district court entered Final Judgment in favor of the plaintiff. Nine days later, the church that owned the Bible moved to intervene.[51]

As the Fifth Circuit explained, this motion was untimely because the church "knew or should have known of its interest in the action before the entry of final judgment."[52] The Fifth Circuit noted that publicity surrounding the lawsuit "could not have escaped the [church]'s attention."[53] Two of the trial's witnesses were affiliated with the church,[54] and "[f]rom the outset of the lawsuit, court-ordered removal of the monument was always a possibility – indeed it was the relief the Plaintiff sought."[55]

In other words, the church knew from the case's earliest days that its interests might be affected, and yet it did nothing. Delaying in its motion to intervene until nine days after the Final Judgment's entry was untimely.

In the case at bar, the facts point even more clearly toward untimeliness.

Since this case began some five years ago, Judge Skinner has believed it implicated his interests. Just a month into this case's existence, Judge Skinner retaliated against Disability Rights Mississippi for filing this lawsuit by attempting to restrict its access to Henley-Young; the order specifically referenced this case.[56] As early as May

---

[50] *Staley*, 160 Fed. Appx. 410.
[51] *Id.* at 411.
[52] *Id.* at 413.
[53] *Id.* at 412.
[54] *Id.* at 413.
[55] *Id.* at 412-13.
[56] Exhibit A to Emergency Motion for Declaratory Judgment [Docket No. 17-1] at 1 ("Order Regarding Access" entered by Judge Skinner "in light of Disability Rights Mississippi v. Hinds County, Mississippi; In The United States District Court For The Southern District Of Mississippi – Jackson Division; Civil Action Number 3:11-cv-327-DPJ-J-FKB").

2012, he met with the court-appointed monitor,[57] and he has attempted to sway this Court with correspondence.[58]

Even if Judge Skinner had some protectable interest in this case, he has known of it for years longer than did the church in *Staley*, and he delayed far longer than did the church in moving to intervene post-judgment. In *Staley*, the church acted untimely by not moving to intervene until nine days after entry of Final Judgment; in this case, Judge Skinner has waited *more than four years*. His request is the very definition of untimely.

### The Amended Consent Decree Did Not Reset the Timeliness Clock.

In defense of his delay, Judge Skinner attempts to shift the goalposts. Instead of focusing on his July 2011 order or his December 2014 letter, Judge Skinner suggests that the timeliness inquiry should focus on the entry of the Amended Consent Decree.

Judge Skinner cites no authority for this suggestion, which plainly conflicts with Fifth Circuit precedent. Timeliness does not focus on the most recent implication of a would-be intervenor's interests. Instead, the timeliness question focuses on "the time the applicant knew or reasonably should have known of his stake in the case into which he seeks to intervene or from the time he became aware that his stake would no longer be protected by the existing parties to the lawsuit."[59] That time has long passed. The Amended Consent Decree does not afford Judge Skinner a second bite at the apple.

In the face of his five-year delay, Judge Skinner claims that his motion to intervene is timely "because the Court has not yet substantively and substantially

---

[57] First Monitoring Compliance Report [Docket No. 35] at 4
[58] Letter from Judge Skinner to Judge Jordan.
[59] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (punctuation omitted).

engaged the issues in this litigation."[60] This statement both poses an incorrect legal standard and is demonstrably inaccurate. In the five years during which this Court has presided over the case, the Court (a.) has convened at least three settlement conferences (at least one of which Judge Skinner attended), (b.) has conducted a full Rule 23(e)(2) fairness hearing, (c.) has reviewed all record evidence no fewer than the three times when it either entered or extended the consent decree, (d.) has met with the parties' attorneys several times over the course of four years in efforts to facilitate compliance with the consent decree, and (e.) has performed an on-site tour of Henley-Young to evaluate compliance for itself.

The Court's involvement with this case has been nothing short of extensive. Suggesting that "the Court has not yet substantively and substantially engaged the issues in this litigation" simply defies the record.

As the Fifth Circuit has explained, "[t]here must be an end to litigation at some point."[61] In this case, active litigation ended more than four years ago when the Court entered Final Judgment in April 2012 – at least nine months after Judge Skinner expressed his belief that this case impeded his ability to preside over the youth court. Nevertheless, he neither intervened then, nor in December 2014, when he wrote a letter to this Court expressing his belief that his authority had been usurped through these proceedings. His remarkable delay, when considered alongside the prejudice that he would visit upon the parties, renders his post-judgment motion untimely. It should be denied.

---

[60] Memorandum in Support of Hinds County Youth Court's Motion to Intervene [Docket No. 66] at 3.
[61] *Smith v. Missouri Pac. R.R. Co.*, 615 F.2d 683, 685 (5th Cir. 1980).

## II.   INTERVENTION IS UNAVAILABLE BECAUSE JUDGE SKINNER'S CLAIMS ARE FUTILE.

Whether a party moves to intervene as of right or by permission, intervention cannot be permitted when it would be futile. This is because intervention is allowed only to protect "an interest that is concrete, personalized, and legally protectable."[62] An interest is not legally protectable if pursuing it would be futile.[63]

The Fifth Circuit has emphasized this point repeatedly. In *United States v. Aldawsari*,[64] a journalist moved to intervene in order to challenge a gag order. The Fifth Circuit ruled that denial of the motion was proper because the journalist's constitutional rights had not been violated and, therefore, "that intervention by [the journalist] would have been futile."[65] Likewise, in *Crowley Maritime v. Panama Canal Commission*,[66] the Fifth Circuit affirmed the denial of a motion to intervene when the would-be intervenor's claims would have violated the statute of limitations.[67] The Fifth Circuit reached the same conclusion in *Atkins v. General Motors*,[68] where a motion to intervene was properly denied because the would-be intervenors' claims were time-barred and, therefore, futile.[69]

---

[62] *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015).

[63] *See United Gas*, 732 F.2d at 466 ("[A] legally protectable interest is required for intervention under Rule 24(a)(2), and such intervention is improper where the intervenor does not itself possess the only substantive legal right that it seeks to assert in the action.").

[64] *United States v. Aldawsari*, 683 F.3d 660 (5th Cir. 2012).

[65] *Id.* at 666.

[66] *Crowley Maritime Corp. v. Panama Canal Comm'n*, 849 F.2d 951 (5th Cir. 1988).

[67] *Id.* at 954.

[68] *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124 (5th Cir. 1983).

[69] *Id.* at 1130 n.5 ("Appellant also asserts that the district court erred in not allowing certain plaintiffs to intervene. The district court denied the motion on the ground that their claims were barred by the statute of limitations. This conclusion was correct.") (citation omitted).

A number of district courts have denied motions to intervene on the same basis: where a would-be intervenor seeks to pursue claims or defenses that would not survive a Rule 12(b) motion, that intervention is futile and cannot be allowed.[70]

Judge Skinner's attempt at intervention presents just such a claim.

**Judge Skinner Has No Power to Incarcerate Children Indefinitely.**

As an initial matter, it must be noted that the Amended Consent Decree's provisions extend no further than necessary to effectuate the guarantees of federal law.[71] Any conflict between federal law and Judge Skinner's youth-court authority is a fight that Judge Skinner cannot win.[72]

But Judge Skinner's claims also are futile for reasons specific to his untenable position. At bottom, Judge Skinner's argument is that Mississippi law vests him with authority to release children from detention, and that through the Amended Consent Decree, his authority (in his view) has been usurped impermissibly by the Hinds County Board of Supervisors.[73]

This argument fails to acknowledge a critical distinction between Judge Skinner's authority to release children from their sentences and the authority to determine administrative policy at the facilities where those sentences are served. Undoubtedly, Mississippi law grants Judge Skinner the former power, but the latter is a different matter. Section 43-21-109 of the Mississippi Code expressly entrusts *counties and*

---

[70] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. ex rel. Holley v. United States*, No. Civ.A. 02-1799, 2003 WL 1873089, *3 n.1 (E.D. La. Apr. 10, 2003) (denying motion to intervene "[b]ecause the Court finds that intervention is futile"); *Ceribelli v. Elghanayan*, No. 91 CIV. 3337 (CSH), 1994 WL 529853, *2 (S.D.N.Y. Sept. 28, 1994) ("An alternative basis for rejecting a proposed intervention under Rule 24, or an amended pleading under Rule 15, is legal futility."); *E.E.O.C. v. Century I, L.C.*, 142 F.R.D. 494, 496 (D. Kan. 1992) (denying in part a motion to intervene where some of these proposed claims "would be futile, as those claims could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)").

[71] Amended Consent Decree at 2.

[72] *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause).

[73] Memorandum in Support of Hinds County Youth Court's Motion to Intervene [Docket No. 66] at 2.

*municipalities* the authority to "establish and maintain detention facilities . . . or any other facility necessary to carry on the work of the youth court." Moreover, Section 43-21-109 provides that counties or municipalities "may" establish and maintain juvenile detention facilities – i.e., that such maintenance is left to their discretion.

In that discretion, Hinds County established Henley-Young; and within its discretion to maintain Henley-Young, Hinds County concluded that Henley-Young should be a short-term facility. Therefore, Hinds County established a 21-day limit to incarcerations at Henley-Young. Judge Skinner cites no legal authority to suggest that this administrative policy is beyond Hinds County's power.

If Judge Skinner wants to incarcerate children for longer than 21 days, then that is his legally recognized prerogative. He simply must find a facility that allows such lengthy detentions.[74] Henley-Young is not such a facility.

In any event, Judge Skinner's standing order violates Mississippi law by requiring Henley-Young to detain children indefinitely. Section 43-21-605 creates an unambiguous 90-day limit on the incarceration of any child in a juvenile detention center.[75] The Mississippi Supreme Court has made clear that any incarceration of longer than 90 days violates Mississippi law.[76]

**Judge Skinner Routinely Violates Children's Legal Rights.**

Under Judge Skinner's standing orders, detentions of longer than 90 days are not only a possibility – repeatedly, they have been a reality.

---

[74] *See* Miss. Code Ann. § 43-21-605(1)(l)(i) (providing that one option available to youth court finding minor to be delinquent is to "[o]rder the child . . . into a juvenile detention center operated by any county with which the county in which the court is located has entered into a contract for the purpose of housing delinquents").

[75] *Id.* ("The time period for detention cannot exceed ninety (90) days . . . .").

[76] *In re J.P.*, 151 So. 3d 204, 214 (Miss. 2014) ("J.P. spent 103 days in the Pike County Juvenile Detention Facility. Section 43-21-605 forbids the confinement of delinquents in a detention facility for more than ninety days."). *See also id.* at 207 n.2 ("Youth courts are not permitted to sentence a juvenile to a detention facility for more than ninety days.").

Since Judge Skinner ordered in December 2014 that releases from Henley-Young be approved by him, no fewer than 11 children have languished at Henley-Young for longer than 90 days. In one case, a young man detained in September 2015 was incarcerated for 123 days – a period that overlapped all the rest of the fall school semester and into the spring semester.

These illegal detentions have not been the product of mere oversight. As one incident shows, Judge Skinner knows exactly what he is doing.

On February 25, 2016, the parties' attorneys were involved in an e-mail conversation with Brandon Dorsey, the youth court public defender, about a young man whose detention had exceeded 90 days. Plaintiffs' counsel requested a copy of the motion seeking the child's release, to which the youth court public defender responded at 9:30 a.m., "When I get out of court I will get a copy for you." Within minutes, Plaintiffs' counsel replied: "If you are in Judge Skinner's court right now, then ***I beg you*** to bring [the child]'s motion to his attention." Henley-Young director Johnnie McDaniels quickly added: "I agree that the Motion should be presented *ore tenus*, if necessary."[77]

More than two hours went by without further response from the youth court public defender. At 12:34 p.m., Plaintiffs' counsel asked, "Mr. Dorsey, did you bring this matter to Judge Skinner's attention? If so, what update can you give us?" The youth court public defender answered, "This matter is placed on the docket to be heard tomorrow." In response, Plaintiffs' counsel asked, "Why was this not resolved while you were in court? Did you fail to bring the motion to Judge Skinner's attention, or did he

---

[77] Exhibit H (e-mail exchange among parties' counsel, Feb. 19-25, 2016) (hereinafter ("E-mail Exchange")) at 2-3 (emphases in original).

refuse to rule on it?" The youth court public defender replied: "I brought 'this' to Judge

Skinner's attention and he stated that the matter will be heard tomorrow morning."[78]

In other words, Judge Skinner knew that a child was being held in violation of

Mississippi law, and he could not be troubled to deal with it until another day.

This is the power that Judge Skinner seeks to vindicate by intervening in this

lawsuit. Today, as the parties acknowledged in the Amended Consent Decree, Hinds

County's 21-day policies would prevent a child from languishing under an illegally long

sentence. Judge Skinner seeks to erase that progress. He has no right to do so, and any

effort suggesting otherwise is futile.

### Judge Skinner Has No Legally Protectable Interest in Any Alleged Failure to Change Henley-Young's Classification.

Finally, although Judge Skinner makes no mention of the issue in his

memorandum and cites no authority in support, he briefly suggests in his motion that

Hinds County cannot make Henley-Young a 21-day facility without approval from the

"Mississippi Department of Public Safety Planning."[79]

Without citation to authority, it is impossible to say whether Judge Skinner is

correct. This alone amounts to waiver of the argument.[80]

But this failure to cite authority also raises a practical problem. Among other

things, a would-be intervenor must show "an interest that is related to the property or

transaction that forms the basis of the controversy in the case into which she seeks to

---

[78] E-mail Exchange at 1.

[79] Hind's [*sic*] County Youth Court's Motion to Intervene [Docket No. 65] at 2. Doubtlessly, Judge Skinner means the Mississippi Department of Public Safety.

[80] *In re Sherman*, 98 F.3d 1337, *1 n.2 (5th Cir. 1996) ("Gibson's failure to cite any legal authority in support of his position waives his argument."); *L&A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) ("Southern cites no authority in its one-page argument on the attorney fee question, however, and we consider the challenge abandoned for being inadequately briefed.").

intervene."[81] Although a would-be intervenor need not satisfy Article III standing, he still must demonstrate that his interest in the case is legally protectable.[82]

Absent any reference to authority, Judge Skinner has not and cannot make that showing. Judge Skinner has not shown what is required of a facility seeking to become a 21-day facility, whether such requirements vest a youth court (as opposed to the Department of Public Safety solely) with any protectable interest, or even whether Hinds County failed to fulfill the obligations at which Judge Skinner hints.

This whiff of an argument both fails to show a legally protectable interest and amounts to a waiver. It cannot support intervention.

### III.   JUDGE SKINNER FAILED TO SUBMIT A PROPOSED PLEADING.

Rule 24(c) of the Federal Rules of Civil Procedure requires that every motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." This requirement's purpose is obvious: to provide notice to the case's parties as to the basis for the proposed disruption of the lawsuit. Otherwise, parties are left to guess what arguments they should be raising to oppose the motion.

Judge Skinner's motion is not accompanied by a proposed pleading. This failure leaves his motion procedurally deficient, and therefore, the motion must be dismissed.[83]

Admittedly, dismissing Judge Skinner's motion for failure to comply with Rule 24(c) would not concern the merits of his motion, and such a dismissal would have to be

---

[81] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (listing four factors for intervention as a matter of right).

[82] *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015) ("[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.").

[83] *See Brown v. Colegio de Abogados de Puerto Rico*, 277 F.R.D. 73, 76 (D.P.R. 2011) ("The requirements of Rule 24(c) are mandatory."); *Gaskin v. Pennsylvania*, 231 F.R.D. 195, 196 n.1 (E.D. Pa. 2005) ("Such utter disregard for Rule 24(c) warrants denial of the motion."); *Harlem Valley Transp. Ass'n v. Stafford*, 360 F. Supp. 1057, 1066 n.11 (S.D.N.Y. 1973) (denying motion to intervene where unaccompanied by proposed pleading and where "the grounds for allowing intervention are far from self-evident").

without prejudice. However, if the Court concludes that Judge Skinner's five-year delay is not untimely, and if the Court concludes that the motion is not futile, then the Plaintiffs nevertheless urge the Court to hold Judge Skinner to Rule 24(c) by dismissing the motion without prejudice. The Plaintiffs are entitled to the full protections of Rule 24, including the right to review the pleading that Judge Skinner believes himself entitled to file and to address it fully.

To be clear, the Plaintiffs view Judge Skinner's motion as so obviously untimely and futile that no pleading need be reviewed. However, if the Court disagrees, then the Plaintiffs are entitled to know exactly what prayer for relief Judge Skinner intends to plead. Therefore, if the Court finds no other basis for denying the motion, then the Plaintiffs urge the Court to deny it without prejudice under Rule 24(c) and to require that any re-filed motion include a proposed pleading.

## <u>CONCLUSION</u>

Judge Skinner's motion to intervene should be denied on its merits. It is clearly untimely. Moreover, because it seeks to protect nonexistent rights, it is futile.

Either of these grounds is reason enough to deny the motion in its entirety. However, if the Court disagrees, then it still should deny the motion without prejudice because of Judge Skinner's failure to include a proposed pleading as Rule 24(c) requires.

RESPECTFULLY SUBMITTED this Twenty-Ninth day of April 2016.

  /s/ *Will Bardwell*
Jody E. Owens, II, MSB #102333
Will B. Bardwell, MSB #102910
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882
Facsimile: (601) 948-8885
jody.owens@splcenter.org
will.bardwell@splcenter.org

Joi L. Owens MSB #104529
Disability Rights Mississippi
210 E. Capitol Street, Suite 600
Jackson, Mississippi 39201
Phone: (601) 968-0600
Facsimile: (601) 968-0665
E-mail: jowens@drms.ms

## <u>CERTIFICATE OF SERVICE</u>

I, Will Bardwell, hereby certify that a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by email to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED this Twenty-Ninth day of April 2016.

   <u> /s/ *Will Bardwell*                                     </u>
William B. Bardwell