# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION
# HONORABLE DANIEL P. JORDAN III, U.S. DISTRICT JUDGE

## J.H., ET AL, VS HINDS COUNTY MISSISSIPPI
## 3:11-CV00327 DPJ-FKB

**Monitoring Compliance Report:**

**Report Draft Date: February 21, 2017**
**Report Date: February 27, 2017**

**Submitted by**
**Leonard B. Dixon, MSPA**
**24420 Crescent Drive**
**Woodhaven, MI  48183**
**734 642-7412**
**Email home: lbdixon1@comcast.net**
**Email work: leonard.dixon@cookcountyil.gov**

# The
# Tenth Monitor's Report
# Henley-Young Juvenile Justice Center
# Leonard B. Dixon

**Background**

On March, 28, 2012, Hinds County, Mississippi entered into a settlement agreement ordained and adjudged by Judge Daniel P. Jordan III, for the United States District Court Southern District of Mississippi, Northern Division, regarding conditions of confinement at the Henley-Young Juvenile Justice Center, located in Jackson, Mississippi. According to the order, the settlement agreement and its specific requirements "shall apply to Henley-Young and any contractor that may provide services to Henley-Young in the future. The term "youth" herein often refers to individuals confined at Henley-Young. "The parties" understand that the requirements contained herein will be implemented without undue delay as soon as practicable. Unless otherwise indicated herein, the parties will collaborate to make all reasonable efforts to ensure that within 90 days of the effective date of the agreement, policies, and procedures consistent with the agreement are drafted, in the process of being implemented, and that all detention staff received training on the requirements. The parties agree and understand that the implementation will be an ongoing process that extends beyond the initial 90 days of the agreement. As part of the settlement agreement the defendant shall contract with Leonard Dixon, within 30 days of the court entry of this settlement agreement to serve as an expert who will be responsible for documenting the defendant's compliance with the terms of the agreement and for providing and/or arranging technical assistance and training regarding compliance with this settlement agreement. He will have full and complete access to detained youth, institutional files, medical files, mental health files, education files, video tapes, and youth, staff records and all other information and other reports by staff, grievances, incident reports, and other relevant documents and files maintained by Henley-Young.

All non-public information obtained by the expert shall be kept confidential, except that on a quarterly basis, the expert shall file a report with the Court documenting the progress of compliance. Neither party, nor any employee or agent of either party, shall have any supervisory authority over the expert's activities, reports, findings, or recommendations. The expert shall file with the Court and provide the parties with reports describing the Defendant's steps to implement this Settlement Agreement and evaluate the extent to which the Defendant has complied with each substantive provision of this agreement. Such reports shall be issued quarterly, unless the parties agree otherwise. The reports shall be provided to the parties in draft form for comment at least two (2) weeks prior to their submission to the Court. These reports shall be written with due regard for the privacy interests of individual youth and staff and the interest of the Defendant in protecting against disclosure of non-public information. The expert shall have a budget sufficient to allow him to fulfill the responsibilities described in this Settlement Agreement. Mr. Dixon may consult other experts or consultants retained by either party. All parties shall receive copies of all draft reports from the other experts to Mr. Dixon prior to the issuance of Mr. Dixon's report, and shall have the option of being present at briefings from such experts to Mr. Dixon and Defendant. Mr. Dixon may initiate and receive ex parte communications with the parties and their respective experts and consultants.

**Current:**
It should be noted that on March 25, 2016 an **Amended Consent Decree** was issued and extended as set forth by the Federal Court. The amended consent decree eliminated 13 provisions which had moved from non-compliance to substantial compliance and maintained that standard, which is outstanding.  Based on my most recent review of these provisions they continue to be maintained and are noted in the report as "SC*".  In addition, the Hinds County Youth Court and the County entered into a **Memorandum of Understanding** on June 27, 2016 (see attachment). It should be noted that regarding the Memorandum of Understanding, sections 5, 9, and 10 have yet to be fully implemented; they are awaiting further action from the Youth Court. It is important to note that on February 13, 2017 a new juvenile court judge was assigned to the Hinds County Youth Court. The Youth Court is now under the direction of the **Honorable Melvin Priester**.

**Recommendations based on findings, observations and interviews:**
Result of visit on December 7 – 11, 2016

**Documentation provided and reviewed:**
Amended Consent Decree by J.H. v. Hinds County, MS adjudged March 25, 2016
Resident Orientation Checklist for Resident C.H. dated December 6, 2016
Resident Orientation Checklist for Resident L. M. –no attachment or date
Resident Orientation Checklist for Resident A. M. dated December 6, 2016
Resident Orientation Checklist for Resident R. C. dated December 7, 2016
Resident Orientation Checklist for Resident L. W. dated December 5-7, 2016
Health Care Policies (not signed/dated by Executive Director and attachments are not with policies):

| | |
|---|---|
| 5.A.2 – | Access to Care |
| 5.A.3 – | Responsible Health Authority |
| 5.A.4 – | Medical Autonomy |
| 5.A.5 – | Administrative Meetings and Reports |
| 5.A.6 – | Policies and Procedures |
| No # - | Continuous Quality Improvement Program |
| 5.A.8 – | Communication on Patients Health Needs |
| 5.A.9 – | Privacy of Care |
| 5.A.10 – | Procedure in the Event of Resident Death |
| 5.A.11 – | Grievance Mechanism for Health Complaints |
| 5.B.1 – | Infection Control Program |
| 5.B.1.01 – | Tuberculosis Screening and Treatment |
| 5.B.1.02 – | Communicable Disease Isolation |
| 5.B.1.03 – | HIV Infected Residents |
| 5.B.1.04 – | Personal Protective Equipment |
| 5.B.3 – | Staff Safety |
| 5.B.4 – | Federal Sexual Assault Reporting Regulations |
| 5.B.5 – | Procedure in the Event of Sexual Assault |
| 5.C.1 – | Credentialing |
| 5.C.2 – | Clinical Performance Enhancement |
| 5.C.3 – | Professional Development |

3

5.C.4 –          Training for Detention Officers
5.C.4.01 –       CPR Training
5.C.4 –          Medication Administration Training
5.C.5.01 –       Medication Administration Training for Non-Licensed Staff
5.C.6 –          Resident Workers
5.C.7 –          Staffing Plan
5.C.8 –          Health Care Liaison
5.C.9 –          Orientation for Health Staff
5.D.1.03 –       Disposal of Unused or Expired Medication
5.D.1.04 –       Storage of Pharmaceuticals
5.D.1.05 –       Medication Administration
5.D.1.06 –       Prescribing Authority and Stop Dates
5.D.1.07 –       Transcription of Medication and Telephone Orders
5.D.1.08 –       Medication Administration Record (MAR)
5.D.1.09 –       Medication Errors
5.D.1.11 –       Monitoring Psychotropic Medications
5.D.1.12 –       Documentation of Scheduled/Controlled Medication
5.D.1.13 –       Control of Inventory of Medical Sharps
5.D.1.14 –       Pharmacy Inspections
5.D.1.15 –       Residents on Medication Prior to Detainment
5.D.2 –          Medication Services
5.D.2.02 –       Psychotropic Medication
5.D.3 –          Clinic Space, Equipment and Supplies
5.E.1 –          Information on Health Services
5.E.2 –          Receiving Screening
5.E.3 –          Transfer Screening
5.E.4 –          Health Assessment
5.E.7 –          Non-Emergency Healthcare Requests and Services
5.E.7.01 –       Sick Call
5.E.8 –          Emergency Services
5.E.10 –         Patient Escort
5.G.2 –          Residents with Special Health Needs
13.E.12 –        Continuity of Healthcare during Detainment
5.G.7 –          Care of Pregnant Residents
5.G.9.01 –       Determination of Pregnancy
5.G.9 –          Pregnancy Counseling
13.F.2 –         Nutrition and Medical Diets
Attachments:
       Nursing Protocol Athletes Feet (Tinea Pedis)
       Nursing Protocol Back Pain
       Nursing Protocol Boils, Folliculitis, Furuncle
       Nursing Protocol Burns 1st and 2nd Degree or Sunburn
       Nursing Protocol Contusion
       Nursing Protocol Constipation
       Nursing Protocol Corn or Calluses
       Nursing Protocol Cough/Sinus/Cold/Flu

Nursing Protocol Dental Pain
Nursing Protocol Nursing Protocol Diarrhea
Nursing Protocol Ear pain
Nursing Protocol Excess Ear Wax (Cerumen)
Nursing Protocol Headache
Nursing Protocol Hemorrhoids
Nursing Protocol Hunger Strike
Nursing Protocol Indigestion/Gas/Belching
Nursing Protocol Jock Itch (Tinia Cruris)
Nursing Protocol Knee Pain
Nursing Protocol Lice (Pediculosis Capitis/Corporus/Pubis)
Nursing Protocol Menstrual Cramps (Dysmennorrhea)/PMS
Nursing Protocol Nose Bleed (Epistaxis)
Clinical Opiate Withdrawal Scale (COWS)
Nursing Protocol Ring Worm (Tinia Corpus)
Nursing Protocol Scabies
Emergency Nursing Protocol Seizure Disorder
Nursing Protocol Shortness of Breath/Asthma
Nursing Protocol Sprain/Strain
Nursing Protocol Sore Throat (Pharyngitis)
Annual Physical Health Assessment
Body Chart
Consent to Treatment
Consent to Surgical Procedure
Dental Exam and Treatment Record
Diagnostic Testing Protocols
Food Service Worker Clearance
Health Information Transfer Form
Juvenile Intake & Physical Assessment
Intake Transfer Health Assessment
Written Counseling for Medication Noncompliance
No Harm Contract
Nurse's Notes
Physician's Notes
No title (on bottom 0211NU-POR)
Pregnancy Flow Sheet *
Problem List
Psychiatric Progressive Note
Receipt of Inmate Medical Records
Request for Inmate Medical Records
Quality Correctional Health Care Release of Information Authorization
Segregation Documentation Record
Sick Call Refusal Form
Sick Call Request
Special Needs Communication Form
Medical Observation Record

Tetanus Vaccine (Consent/Declination)
Treatment Refusal Form
Tuberculin PPD for Inmates
Tuberculosis Questionnaire
Urine Test Results
Weight Monitor Sheets
Nursing Protocol Abrasions/Lacerations
Nursing Protocol Acne
Alcohol Withdrawal Assessment Scoring Guidelines (CIWA-Ar)
Chronic Care Clinic (Initial)
Chronic Care Clinic – Follow up
Mental Health Chronic Care Clinic Follow up
Chronic Care Protocol Lab & Diagnostic Tests

Policies & Procedures (not signed/dated):

| 3.A.18 – | Cell phones |
| 3.A.20 – | Body Camera (no attachment) |
| 7.A.4 – | Youth Counselor & Attorney Visit Request (no attachment) |
| 9.A.1 – | Preventative Maintenance (no attachment) |
| 9.A.2 – | Housekeeping: Clean, Safe & Sanitary Environment (no attachment) |
| 10.A.1 – | Court Orders and Document Sharing |

Policies & Procedures (signed/dated October 1, 2015)

| 2.A.3 – | Fire Drills (attachment not attached) |
| 2.A.4 – | Weather Emergencies (attachment not attached) |
| 2.A.5 – | Evacuation and Relocation |
| 2.A.6 – | Emergency Plan Release of Residents (not signed by Youth Court Judge) |
| 2.A.7 – | Emergency Communication (attachment not attached) |
| 2.A.8 – | Escape |
| 2.A.1 – | Fire/Smoke Alarm Response |
| 2.A.2 – | Fire Safety & Evacuation (evacuation plan on front of policy) |
| 3.C.6 – | Due Process (attachment not attached) |
| 3.C.4 – | Incident Reports (attachment not attached) |
| 3.C.5 – | Behavior Management |
| 3.C.1 – | Unit Rules & Regulations |
| 3.C.2 – | Disciplinary Hearings (attachment not attached) |
| 3.C.7 – | Due Process Isolation (attachment not attached) |
| 3.C.8 – | Behavior Management  Isolation (attachment not attached) |
| 3.D.1 – | Residents Rights & Responsibilities |
| 3.D.2 – | Resident Grievance (attachment not attached) |
| 5.A.1 – | Mechanical Restraints for Medical Procedures |
| 2.A.9 – | Hostage Situation |
| 2.A.10 – | Emergency Release (over capacity adjustment) - (not signed by Youth Court Judge) |
| 6.A.4 – | Classification |
| 1.D.1 – | Employment Training & Staff Development |
| 3.B.3 – | Universal Precautions |
| 3.B.6 – | LGBTQI |

3.B.5 –        Child Abuse/Neglect Allegations: Reporting
3.B.4 –        PREA (attachment not attached)
1.C.3 –        Disciplinary Actions & Grievances (attachment not attached)
1.C.1 –        Standards of Conduct
1.C.4 –        Internal Investigation
1.C.9 –        Staffing Levels
1.C.7 –        Staff Relationship with Residents
1.C.13 –      Shift Assignment Duties
1.C.14 –      Quality Assurance
3.A.19 –     Escorting Youths to Secure Detention
3.A.15 –     Mechanical Restraints (attachment not attached)
3.A.16 –     Direct Care Staff on Units
3.A.17 –     Administrative Isolation (attachment not attached)
3.A.9 –        Use of Force
3.A.8 –        Security Searches
3.A.3 –        Resident Movement
3.A.5 –        Resident Management
3.A.1 –        Security Rounds
3.A.2 –        Identification Wristbands
8.A.1 –        Scope of Mental Health
8.A.2 –        Staff and On-Call Mental Health Services
8.A.3 –        Youth Screening and Instruments
8.A.4 –        Treatment Planning
8.A.5 –        Requests for Services (attachment not attached)
8.A.6 –        Counseling, Program & Progress Notes (attachment not attached)
8.A.7 –        Suicide Prevention (attachment not attached)

Daily Population sheets for months:
        June 2016 (missing 1, 3, 4, 5, 9, 11, 18, 19, 25, 26 and 28)
        July 2016 (missing 2, 3, 4, 9, 10, 16, 17, 18, 23, 24, 27, 30 and 31)
        August 2016 (missing 6, 7, 13, 14, 17, 19, 20, 21, 22, 27, 28 and one without a date)
        September 2016 (missing 3, 4, 10 and 17)
        October 2016 (missing 1, 2, 8, 9, 15, 16, 22, 23, 29 and 30)
        November 2016 (missing 5,6,12, 13, 19, 20, 24, 25, 27 and one without a date)
Staff Schedule for 3 shifts (7:00 to 3:00, 3:00 to 11:00 and 11:00 to 7:00)
Training Sign in sheets for months:
        June –
            28 - Suicide Prevention (5 staff)
        July –
            5 – Mental Health Training (4 staff)
            5 to 7 – New employee orientation (7 to 9 staff)
            13 – Juvenile Rights (6 staff)
            16 – Adolescent Development (9 staff)
            19 – Adolescent Development (9 staff)
            26 – Adolescent Development (10 staff)
            27 – Adolescent Development (8 staff)
        August –

       2 – Adolescent Development (9 staff)
       4 – Supervisor Training (7 staff)
       9 – Adolescent Development (6 staff)
       11 – Report writing (18 staff)
       12 – Report writing (15 staff)
       13 – Report writing (12 staff)
       19 – Building Healthy Relationships with Youth (8 staff)
       25 – Building Healthy Relationships with Youth (7 staff)
       26 – Building Healthy Relationships with Youth (8 staff)

September –
       5 – CPI (7 staff)
       8 – Building Healthy Relationships with Youth (7 staff)
       10 – Building Healthy Relationships with Youth (15 staff)
       14 to 16 – New employee orientation (3 to 6 staff)
       16 – Building Healthy Relationships with Youth (8 staff)
       20 – PREA Refresher (8 staff)
       24 – Juvenile Rights/Conflict Resolution (18 staff)
       26 – Behavior Management (8 staff)
October –
       1 – Juvenile Rights/PREA Refresher (13 staff)
       1 – Report writing (2 staff)
       4 – Behavior Management (7 staff)
       7 – Behavior Management (7 staff)
       10 – Policy & Procedure Training (5 staff/15 policies)
       11 – Policy & Procedure Training (9 staff/15 policies)
       14 – Policy & Procedure Training (10 staff/15 policies)
       17 – Policy & Procedure Training (4 staff/15 policies)
       19 – Policy & Procedure Training (8 staff/15 policies)
       20 – Policy & Procedure Training (3 staff/15 policies)
       21 – Policy & Procedure Training (1 staff/15 policies)
       22 – Policy & Procedure Training (3 staff/15 policies)
       24 – Policy & Procedure Training (4 staff/15 policies)
       26 – Policy & Procedure Training (2 staff/15 policies)
       28 – Policy & Procedure Training (1 staff/15 policies)
       28 – Policy & Procedure Training (1 staff/15 policies)
       28 – Policy & Procedure Training (5 staff/19 policies)
       29 – Policy & Procedure Training (4 staff/19 policies)
       31 – Policy & Procedure Training (5 staff/19 policies)
November –
       1 – Policy & Procedure Training (4 staff/19 policies)
       7 – Policy & Procedure Training (4 staff/19 policies)
       9 – Policy & Procedure Training (1 staff/19 policies)
       10 – Policy & Procedure Training (1 staff/15 policies)
       10 – Policy & Procedure Training (5 staff/19 policies)

12 – Policy & Procedure Training (4 staff/34 policies)
18 – Policy & Procedure Training (4 staff/19 policies)
19 – Policy & Procedure Training (10 staff/19 policies)

Due Process Isolation Logs
July 2016 – 1 resident (DPI not given)
August 2016 – 4 residents
September 2016 – 3 residents
October 2016 – 3 residents
November 2016 – 7 residents

Graph for Due Process from August 2015 to August 2016
Graph for Use of Force from August 2015 to August 2016
Graph for Reported Incidents from August 2015 to August 2016
Graph for Suicide Events from August 2015 to August 2016
QA Audit Reports for months/dates:
July 11
August 1
September 7 and September 12
Recreation area varies dates
November 9, 15 and 29
Picture of hinges
Picture of cleaning supplies
Pictures of 8 behavior observation sheets
Quality Assurance Daily Population Records for months:
July 2016
August 2016
September 2016
October 2016
November 2016
Quality Assurance Monthly Incidents Reports for months:
July 2016 – 2 incident
August 2016 – 24 incidents
September 2016 – 27 incidents
October 2016 – 13 incidents
November 2016 – 27 incidents
Use of Force Incidents by Pods for months:
July 2016 - 1
August 2016 - 4
September 2016 - 4
October 2016 – 2
November 2016 – 5
Henley Young Juvenile Justice Center Resident Handbook
Food Establishment Inspection Report dated December 5, 2016
Boiler/Fired Pressure Vessel – Report of Inspection dated November 7, 2016 Inspection 1
Boiler/Fired Pressure Vessel – Report of Inspection dated November 7, 2016 Inspection 2

9

Logs of residents placed on Suicide Watch -
       June 2016 – 10 residents
       July 2016 – 5 residents (1 resident from August)
       August 2016 – 7 residents
       September 2016 – 12 residents
       October 2016 – 17 residents
       November 2016 – 8 residents
Various memos dated from June 29, 2016 to October 31, 2016 listing staff to attend training
Daily Schedule for 4 Units

Recreation Schedule by Month/Pod
       July 2016
       August 2016
       September 2016
       October 2016
       November 2016
       Listing for Thanksgiving Activities
Jackson Public School District Evaluation Report dated June 21, 2016
Letter regarding Hinds County Departmental Budget for 2017 dated September 26, 2016
Fire drill reports:
       Dated July 30, 2016 conducted on dayshift
       Dated August 10, 2016 conducted on afternoon shift
       Dated August 29, 2016 conducted on dayshift
       Dated August 31, 2016 conducted on afternoon shift
       Dated September 27, 2016 conducted on afternoon shift
       Dated September 15, 2016 conducted on dayshift
       Dated October 27, 2016 (no time given sheet is not completed signed by Sr. Officer H.
          Smith)
       Dated October 31, 2016 conducted on afternoon shift
       Dated October 4, 2016 conducted on dayshift
       Dated November 23, 2016 conducted on dayshift
       Dated November 21, 2016 conducted on afternoon shift
       Dated November 25, 2016 conducted on midnight shift (unable to complete due to staff
          shortage)
Tornado Drill reports:
       Dated July 16, 2016 conducted on dayshift
       Dated August 30, 2016 conducted on afternoon shift
       Dated August 24, 2016 conducted on afternoon shift
       Dated August 29, 2016 conducted on dayshift
       Dated September 26, 2016 conducted afternoon shift
       Dated September 17, 2016 conducted on dayshift
       Dated October 31, 2016 conducted on afternoon shift
       Dated October 22, 2016 conducted on dayshift
       Dated October 18, 2016 conducted on dayshift
       Dated November 29, 2016 conducted on afternoon shift
       Dated November 29, 2016 conducted on midnight shift (unable to complete due to staff

shortage)
Fire Alarm Inspection Report dated April 28, 2016 by SimplexGrinnell (not signed by inspector
        and access could not be gained to two areas)
Pre-Engineered Restaurant Fire Suppression Systems Report dated November 15, 2016
        (no permit #)
Metro Fire Systems invoice dated November 30, 2016
Water-Based Fire Protection System Inspection & Testing Findings (2011 edition – not dated)
Visitation Logs:
        July (dated 1, 2, 3, 7, 9, 10, and 14)
        August (dated 6, 7, 11, 13, 14, 18, 16, 20, 21, 25, 27 and 28)
        September (dated 1, 3, 4, 8, 10, 11, 15, 18, 22, 24, 26, and 29)
        October (dated 1, 2, 6, 8, 13, 16, 20, 22, 23, 27, and 30)
        November (dated 3, 5, 6, 10, 12, 13, 17, 19, 20, 24, 26, and 27)
Phone call logs 2016:
        Tubman Pod dated:
                September 7, 13 and date can't read
                October 11, 15, 18, 25 (2 logs)
                November 8 (2 logs), 15 (2 logs), 28 (looks like 18)
        Davis Pod dated:
                May 18
                August 24, 31
                September 7, 14, 21, 28,
                October 5, 11, 26
                November 8, 15, 23, and 30
        Payton Pod dated:
                June 15
                August 22, 29
                September 12, 19, 26
                October 3, 7, 10, 17, 24, 31
                November 14, 21, 28
        JFK Pod dated:
                July 19
                August 9, 16
                October 11
                November 22 and 29
HYJJC Monthly Grievances submitted:
        July - 20 grievances submitted by residents
        August - 12 grievances submitted by residents
        September - 1 grievance submitted by resident
        October - 1 grievance submitted by resident
Food service menus for 4 weeks approved August 29, 2016
Food service site production nutrient comparison:
        Breakfast 8/13-8/19; 8/20-8/26 and 9/3-9/9
        Lunch 8/13-8/19; 8/20-8/26; 8/27-9/2 and 9/3-9/9
Requisitions/Invoices:
        May – 2 requisitions/invoices

November – 2 requisitions/invoices
Henley-Young Juvenile Justice Center Organization Chart
Maintenance/Housekeeping Schedule from 2:00 am to 10:00 am
Maintenance Weekly Schedule March 7, 2016 to March 11, 2016
Notification of Due Process Hearings:

 July 28 – Resident J.M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 August 22 – Resident T.A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 August 22 – Resident D.L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 August 22 – Resident K.M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 August 22 – Resident Q.T. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement, medical reporting form and Hearing Decision)

 September 2 – Resident C.R. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 September 7 – Resident C.R. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 September 16 – Resident E.T. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 October 5 – Resident Q.E. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 October 17 – Resident M.J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 October 26 – Resident J.W. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 7 – Resident A.S. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 9 – Resident M.C. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 29 – Resident J.C. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 28 – Resident K.R. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 14 – Resident J.M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 10 – Resident K.R. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 November 7 – Resident T.A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

 December 2 – Resident C.R. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statement and Hearing Decision)

HYJJC Resident Incident Report/Use of Force/Unusual Incident Reports

 July 2016 – 2 Residents (including some witness statements)

August 2016 – 35 Residents (including some checklists, witness statements and medical forms)

September 2016 – 30 Residents (including some checklists, witness statements and medical forms)

October 2016 – 16 Residents (including some checklists, witness statements and medical forms)

November 2016 – 24 Residents (including some checklists, witness statements and medical forms)

December 2016 – 4 Residents (including some checklist, witness statements and medical forms)

7 Witnesses statements dated July 21, 2016 regarding Resident C.McD. being shot on premises

**Staff Interviewed**
Janet McCoy, Training Coordinator 2 years
Malcolm Sanders, Recreation Supervisor 1 year
Victor Johnson, Recreation Coordinator 1 year 2 months
Kenneth Devine, School Principal 6 months
Jeannette Davis, Laundry 3 years
Tabetha Bouldin, Supervisor Senior Officer 22 years
Larry Brown, Detention Officer 2 years 6 months
Melvin Truitt, Detention Officer 6 months
James Franklin, Correctional Officer 4 months
Rodney White, Detention Officer 2 years
Tremaine Young, Detention Officer 5 month
Eddie Burnside, Operations Manager
Tanecka Moore, Esq., Compliance Officer 1 year
Timothy Stallworth, Court Liaison

**Youth Interviewed**
Resident A. C. 17 years old
Resident F.W. 17 years old
Resident J. J. 15 years old
Resident J. P. 17 years old
Resident F.H. 16 years old
Resident D.C. 17 years old
Resident L.M. 15 years old
Resident A.M. 14 years old
Resident L. W. 15 years old
Resident C.R. 16 years old

**Introduction**
This report is the result of my tenth official visit to the Henley-Young Juvenile Justice Center and the progress made since my previous visit. On December 7 through December 11, 2016, I conducted an official inspection/review of the facility. In this report I detail my findings from my visit. My findings are based on the following criteria: 1) observations, 2) interviews, 3)

13

SPLC reports, 4), subject matter expertise in operating juvenile institutions, 5) best practices in juvenile justice, 6) document reviews, and 7) video and audio reviews.

I would like to again thank the staff, facility administration, and the Hinds County attorneys for their continued cooperation in this process. I would also like to commend the County on the progress made since the federal courts contempt order of 4/25/ 2014. Since that time the county has moved from zero (0) substantial compliance to 23 substantial compliance and from 34 noncompliance down to 13 noncompliance as of this report. Please see; **Compliance summary chart**. The County should carry on the progress it is making at Henley-young and the youth they are serving.

**It should be noted that the facility moved 13 provisions from non-compliance to beginning compliance; 7 provisions moved from beginning compliance to partial compliance and 6 provisions moved from partial compliance to substantial compliance.  This is commendable and they are moving in the right direction.**

**Facility and Operational Culture**
The current administration has developed policies/procedures and many aspects of the operations continue to improve.  It is clear that the facility's administration is listening and taking heed to the monitor and the court seriously and has implemented many of the monitor's and court's recommendations.  It is obvious that the facility's administration is committed to the continuous improvement of the overall operations of the Henley-Young Youth Juvenile Detention Facility. The facility has been committed to bringing about new programming (i.e. recreation, after school programming by Hinds County Behavior Health Services and outside volunteer groups,).

In my interviews with several staff and management, the facility continues to go through trial and error in developing an effective point system for youths and staff consistently following through with policies and procedures. As I stated to them this is a normal part of the process but with focused repetition these areas become less problematic.

In addition, in my discussions, there is an understanding that the facility has come a long way and still has a good way to go.  The facility should continue to focus on the following:

- A.  Adequately train staff
- B.  Hire and train case managers
- C.  Implementation of mental health programs
- D.  Develop MOU with Jackson Public Schools
- E.  Develop recreation programs and purchase additional equipment for youth
- F.  Update cameras and intercom systems
- G.  Continue to improve medical system
- H.  Renovate and redesign unused space
- I.  Continue to maintain cleanliness and repairs of the facility
- J.  Develop an adequate case management system
- K.  Develop and maintain adequate data collection system

In regards to policies/procedures, the facility should continue to ensure the following:

14

(1)  There are written <u>policies</u> covering essential provisions.
(2)  There are written <u>procedures</u> to implement the policies.
(3)  The <u>practices</u> are consistent with the written policies and procedures.
(4)  The policies, procedures, and practices meet <u>constitutional requirements and are in line with other local requirements.</u>

### Staffing

The facility has maintained the recommended direct care staff ratio.  Now the facility must focus on its other specialized staffing (i.e., case management and mental health).  The County is in the process of hiring case managers and mental health professionals.  Funding has been made available for these positions and the County should be commended for this progress.

Based on my review of documents, the Facility has allocated funding for five (5) new permanent employees to be added to the Henley-Young Mental Health Services and Counselors Department.  With this hiring and implementation of programming, all of provisions 5 and 13 should move from non-compliance.

I would recommend that an architect conduct a survey of the facility to renovate and redesign the unused space.  There are several areas that I reviewed that could be used for counseling space which are attached to the housing units and the unused non-contact visitation area which is in the vicinity of the master control area.  These areas could be repurposed for case managers and clinical work.

### Training

The current area used for training staff is inadequate.  Staff members are being trained in the multipurpose room. The training area is the same area youth use as their lunchroom and indoor recreation which means it has no equipment necessary for training.  Therefore, I recommend that all trainings are conducted in the training room located in the east side of the complex.  This training room is better equipped and more conducive to use as a learning and training environment.

### Building Cleanliness/Environmental Issues/Maintenance

The building cleanliness is good, however I recommend that the administration focus on areas that need touch up painting and also recommend that the showers be pressured cleaned to remove the existing mildew.

Since my last visit there have been several water crises in the city of Jackson which has affected the operations of the Henley Young Center. Based on my discussion with the county and because there were youth transferred to another facility; the County and the facility must ensure there is a fully developed evacuation plan. This crisis provides an opportunity for the county to update its emergency/evacuation plans with the fire department, sheriff department, police department, the juvenile courts, and any surrounding juvenile facility that can and will accommodate Hinds County as it relates to the housing of juveniles in cases of an emergency.

15

The intercom system needs repair – there are rooms where the intercom system is not working and youth do not have the ability to contact staff in the event of a problem.

The lights need to be repaired in the multipurpose room.  Moreover, lights in the parking lot and around the building need to be repaired for safety and security purposes.  During my tour of the building on the evening shift it was very dark and unsafe because the master control area does not have a visible line of sight to the parking and front and side areas of the building.

It should be noted that the laundry service has improved dramatically and the staff should be commended for this.  It is very clean and organized and there is a system for discarding items that are no longer usable.

**Professional Standards of Care/Sustainability**
As stated in my previous reports, maintaining systems that are being put in place is essential to ensuring what the facility wants out of the consent decree to maintain its sustainability.  The County has put in place a strong management team that continues to move the facility forward. At this point in the process, the administrative team at Henley-Young has developed their roles and responsibilities and with continued implementation of good policies and procedures it should maintain professional standards of care.

Also, at this juncture of the process, the County must develop a data collection system as mentioned in my previous reports.   Having good data will allow the County and the facility to make better judgments economically and professionally.  It will also help with the collection of data for federal, state and local requirements and provide access to needed data for reporting to the many agencies and stakeholders in the care of these youth.

The facility also needs a database to maintain staff training records.  I recommend monthly data collection listing the type of trainings, the hours staff was trained, the employees who conducted the trainings.  This will make reviewing by the Superintendent and Federal Monitor easier.

**Mental Health**
Please see Dr. Boesky's Mental Health updated report and recommendations, in addition to my last report, which is still relevant as only the names have changed.

**Suicide Prevention**
Please see Dr. Boesky's updated report and recommendations, in addition to my last report.

**Behavior Management/Isolation**
My review of the documents reveals that the behavior management and isolation program continues to improve.  Since there are fewer youths and adequate staffing, I found fewer youth on isolation.  However, the facility still needs to ensure that when youth are placed on behavior management/isolation there are sheets posted on their doors with sufficient documentation and supervision review.  During this visit, I found three (3) youths on unit B and one (1) youth (C.R.) in his room for behavior management without any documentation.  When I interviewed the Direct Care Officer Franklin, he was unaware as to why the Youth C.R. was in his room.

Therefore a call to the supervisor had to be made for clarification as to the reason Youth C.R.was in his room.

Furthermore, there should be a clear system of movement in and out of the units.  The movement was extremely disorganized. This should be addressed as youth should be in single file, tall to short or short to tall which should be a part of the facility policy. Organized movement is a sign of cooperative behavior of youth and indicates a level of understanding between line staff and residents. It can be very telling.

### Medical, Medication Review & Disposal

Please see Dr. Ezike's updated report and recommendations.  The facility should continue to work on the policies and procedures.  In my discussion with Dr. Ezike, the medical department has made very good progress.

### Food Service

In my review of the food service area, major improvements have been made in the quality and presentation of the food.  In addition, the kitchen was much cleaner.  One of my major concerns at this point is that youths are still complaining there is not enough food to eat.  Therefore I recommend reviewing the serving portions to ensure they meet the caloric intake for active youth in this age group.

### 89 day program (Secure Intervention Unit)/Juvenile Court

My statements from my previous report stand. However the County is in the process as stated above of hiring case management positions that would move provision 5 from non-compliance once staff are hired and adequately trained. It should be noted that I did not find any indication that there continues to be an 89 day program at Henley-Young. Since the facility is capped at 32 youth there should be no reason for holding youth that are unsuitable for treatment in a juvenile detention setting.

Conversely; there is still the need for a good case management program at the center and for it to be effective and successful, the following areas must be incorporated in that program:

- Sufficient staff
- Target appropriate juveniles for the program (i.e., medium to high-risk)
- Target risk factors for delinquent behavior that are responsive to intervention
- Ensure case plans are individualized, family based, and delivered in community settings when discharged
- Programming based on a particular treatment model
- Well-trained staff and a Program Director who strongly supports the program outside of the facility's director
- Deliver the amount of treatment to correspond with youth's diagnosis
- Adhere to a program design
- Monitor juvenile's progress on an ongoing basis and modify the program as needed
- Provide aftercare services

- Individual treatment plan (ITP) that reflects why the juvenile is in the program and what goals juvenile should accomplish during his stay. Also mentioned in the ITP is the juvenile's individual education plan (IEP), which specifies how to accomplish the juvenile's educational goals.
- Develop cognitive behavioral programs that confront juvenile's thinking errors and teach juveniles to overcome their thinking errors as a means of behavioral change.
- Develop positive peer culture (PPC) that teaches juveniles to assume responsibility for helping one another. It is based on the belief that the most powerful influence on a resident's behavior is peer pressure. PPC's goal is to teach basic values related to caring for others. PPC is centered on frequent meetings of small groups of juveniles (6-12) and one or two staff leaders. The juveniles are encouraged to help each other.
- Develop strength-based practices that help juveniles to become accountable for their actions and responsible for their behaviors. Accountability is realized when a juvenile admits to the wrong and changes his/her behavior. When juveniles get into trouble, the care worker will initiate more behavior changes in juveniles by having them focus on how to solve their problems.

To ensure that there is an accountability case management in the 89 day program, I am recommending the following a model that incorporates the following elements be implemented:

- specifying troublesome behaviors
- identifying need(s)
- setting goal(s)
- evaluation

| | |
|---|---|
| **Need** | physiological, social, psychological requirement(s) for the well-being of an individual |
| **Goal** | behavioral statement of how the individual will be at the end of a specified period of time |
| **Service Action** | behavioral statement of what the case manager plans and does to assist the individual(s) in achieving the goal |
| **Evaluation** | systematic collection of information on goal indicators and/or service action(s) for the purpose of decision making and planning |

In addition, the court has to determine what therapeutic programs they will be using. An example of these programs would be psychoanalytic therapy, behavioral therapy, rationale emotive therapy, person-centered therapy, reality therapy, etc. It should be noted that I have found in my review of documents, observations, and discussion with staff and residents at this point, there is no difference in the 89 day program than in the general detention program. One staff put it quite profoundly by stating, "When these youths get a long term sentence through the 89 day program they don't care and they are causing most of the problems.  **Detention is a short termed program and they are getting long term sentences."**

18

**School**
Please see Mrs. Brooks' updated report and please see my previous report.  I have met with the new school principal, Kenneth Devine, to discuss the direction of the school and he appears to be more than willing to work with the facility's administration.

**However, I am still recommending that the Jackson Public School system (JPS) hire a compliance officer to ensure that the school educational standards are being met.**

**Compliance Ratings:**
Below are the compliance ratings and summary of ratings that will be used in this report. Please be reminded that though most are in non-compliance, policy development is most important and the start of this process. As stated above the facility has made progress on some provisions which moved them from non-compliance to beginning compliance.

**Please note that many of the comments and recommendations in the provisions are restatements of previous reports because in those areas little movement has been made. The Director should use these comments as a road map to developing a successful facility plan. He should also continue to develop comprehensive corrective action plans for guidance. That plan should have the following:**

       **A.  Clearly state the problem or weakness, including the root cause**

       **B.  List the individuals who will be accountable for the results of the corrective action plan**

       **C.  Create simple, measurable solutions that address the root cause**

       **D.  Each solution should have a person that is accountable for it**

       **E.  Set achievable deadlines**

       **F.  Monitor the progress of the plan**

**The graph has been included to show the progress made thus far on the 71 provisions:**

**Compliance Code Measurements**

**Substantial Compliance (SC):** Practices follow the county-approved policies, training materials or other documents; practices follow policy with rare exception and exceptions lead to corrective action; trained staff fill all positions and vacancies are filled within 3 months; the County has completed work in an acceptable manner; policies, procedures and practice and training are fully operational and quality-assurance audited and audit exceptions lead to corrective action; outcomes meet or exceed agreement requirements.

**NOTE:** Provisions labeled (SC*) will be or was eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016.

**Partial Compliance (PC):** Policy and procedure is implemented in some but not all locations or times; staff are hired but not trained; the County is working on implementation but tasks are not completed; system implemented at some but not all locations or times,



outcomes meet or exceed agreement requirements some of the time and in certain area.

**Beginning Compliance (BC):** Policy and procedure is written by the county but has not been implemented; funding and hiring authority are approved by the County but positions are not filled; training materials prepared and approved by the county but training has not started.

**Non-Compliance (NC):** No action taken and immediate steps needed to maintain schedule or prevent further delay. A policy may exist, but the policy may need significant revision or modifications and rarely translates into practice.

| Provision | Intake | 7th Report | 8th Report | 9th Report | 10th Report |
|---|---|---|---|---|---|
| 1.(1) | Medical and Mental Health Screening for all Residents Admitted to Henley-Young | NC | NC | NC | NC |
| 1.(2) | MAYSI-2 Mental Health Screening | NC | NC | NC | NC |
| 1.(3) | Prescription Medications | NC | NC | NC | BC |
| 1.(4) | Meal Compliance | PC | SC | SC | SC* |
| 1.(5) | Telephone Usage | PC | SC | SC | SC* |
| 1.(6) | Strip Search Policy | BC | BC | PC | PC |
| | | | | | |
| Provision | Staffing and Overcrowding | | | | |
| 2.(1) | Direct Care Staff Ratio | NC | NC | NC | BC |
| 2.(2) | Maximum Capacity Adjustment | SC | SC | SC | SC* |
| 2.(3) | One-Person Cell | SC | SC | SC | SC* |
| | | | | | |
| Provision | Cell Confinement | | | | |
| 3.(1) | Structured, Rehabilitative & Educational Programming | NC | BC | BC | PC |
| 3.(2) | Appropriate Access to Living Unit | NC | NC | NC | BC |
| 3.(3) | Dangerous Residents | NC | NC | NC | BC |
| 3.(4) | Isolation | NC | NC | BC | PC |
| 3.(5) | Direct Care Staff on Units | BC | BC | BC | PC |

| Provision | Structured Programming | 7th Report | 8th Report | 9th Report | 10th Report |
|---|---|---|---|---|---|
| 4 | Educational, Rehabilitative, and/or Recreational Programs | NC | BC | BC | BC |
| | | | | | |
| Provision | Individualized Treatment Plans/Treatment Program for Post-Disposition Residents | | | | |
| 5.(1) | Residents Access to Adequate Rehabilitative Services | NC | NC | NC | NC |
| 5.(2) | Health and/or Substance Abuse Treatment | NC | NC | NC | NC |
| 5.(3) | Treatment Plans | NC | NC | NC | NC |
| 5.(4) | Review of Individual Treatment Plans | NC | NC | NC | NC |
| 5.(5) | Evening and Weekend Programs and Activities | NC | NC | NC | NC |
| 5.(6) | Quality Assurance Program | PC | PC | PC | PC |
| | | | | | |
| Provision | Disciplinary Practices and Procedures | | | | |
| 6.(1) | Implement a Discipline Policy and Practice | NC | NC | NC | BC |
| 6.(2) | Policy for Residents Violations | NC | NC | NC | BC |
| | | | | | |

| Provision | Use of Restraints | | | | |
|---|---|---|---|---|---|
| 7.(1) | Mechanical Restraints | BC | BC | PC | SC |
| 7.(2) | Mechanical Restraints – Transportation | BC | PC | SC | SC |
| 7.(3) | Misuse of Mechanical Restraints | PC | PC | SC | SC |
| 7.(4) | Mental Health – Use of Mechanical Restraints | BC | BC | BC | BC |
| 7.(5) | No Restraint Chairs, Chemical Restraints and/or Tasers | SC | SC | SC | SC* |
| 7.(6) | No Hogtying in Facility | SC | SC | SC | SC* |
| 7.(7) | Mechanical Restraints – One-On-One Supervision | PC | PC | SC | SC |
| 7.(8) | Mechanical Restraints – Notice to Medical Professional | BC | BC | PC | SC |
| 7.(9) | No Electronic Restraints | SC | SC | SC | SC* |
| 7.(10) | No Firearms in Facility | SC | SC | SC | SC* |
| | | | | | |
| Provision | Use of Force | | | | |
| 8.(1) | No Misuse of Use of Force | NC | NC | NC | BC |
| 8.(2) | Notice to Medical Professional After Use of Force | PC | PC | PC | PC |
| | | | | | |
| Provision | Meals and Nutrition | | | | |
| 9.(1) | All Meals and Snacks Must Be Nutritional | PC | PC | PC | PC |
| 9.(2) | Comply with Nutrition Guidelines | BC | BC | BC | PC |
| 9.(3) | Provide Drinking Water Throughout the Day | PC | SC | PC | SC |
| | | | | | |
| | | | | | |
| Provision | Clothing | | | | |
| 10 | Provide Basic Clothing Items | PC | PC | PC | SC |

| Provision | Hygiene and Sanitation | 7th Report | 8th Report | 9th Report | 10th Report |
|---|---|---|---|---|---|
| | | | | | |
| 11.(1) | Provide Appropriate Hygiene Products | PC | PC | PC | SC |
| 11.(2) | Provide Sleeping Mats and Blankets | PC | PC | SC | SC |
| 11.(3) | No Deprivation of Mats and Blankets | PC | SC | SC | SC* |
| 11.(4) | Sufficient Sanitary Mats and Blankets | SC | SC | SC | SC* |
| 11.(5) | Clean and Sanitary Environment | BC | BC | BC | PC |
| 11.(6) | Fire Safety, Weather Emergencies, Sanitation Practices, Food Safety, and Provide Safe Environment | BC | BC | BC | PC |
| 11.(7) | Clean Drinking Glasses and Eating Utensils | PC | PC | PC | SC |
| | | | | | |
| Provision | Medical Care | | | | |
| 12.(1) | Provide Residents With Adequate Medical Care | NC | NC | NC | BC |
| 12.(2) | Provide Medical Professional When Needed | NC | NC | NC | BC |
| 12.(3) | Implement a Sick Call Policy to Ensure  24 Hour Services | NC | NC | NC | BC |

| 12.(4) | Prescription Medications Only Dispensed by Medical Staff | NC | NC | NC | BC |
|---|---|---|---|---|---|
| 12.(5) | Provide Medical and Mental Health Services | NC | NC | NC | BC |
| 12.(6) | Proper Monitoring Residents Who Require Individualized Attention | NC | NC | BC | BC |
| | | | | | |
| **Provision** | **Mental Health Care** | | | | |
| 13.(1) | Provide Adequate Mental Health Care | NC | NC | NC | NC |
| 13.(2) | Residents and Psychotropic Medications | NC | NC | NC | NC |
| 13.(3) | Within 72 Hours of Admittance Complete an Individual Mental Health Treatment Plan | NC | NC | NC | NC |
| 13.(4) | Implement Policies and Procedures for Referrals | NC | NC | NC | NC |
| 13.(5) | Sufficient Psychiatric Services | NC | NC | NC | NC |
| 13.(6) | Psychiatrist and/or Counselors to Record Review to Ensure Proper Care | NC | NC | NC | NC |
| | | | | | |
| **Provision** | **Suicide Prevention** | | | | |
| 14.(1) | Multi-tiered Suicide Prevention Policy | BC | BC | BC | BC |
| 14.(2) | Evaluate Highest Level of Suicide Watch Every 12 Hours by Medical Professional | BC | BC | BC | BC |
| 14.(3) | Closely Monitor Suicide Watch Residents During All Activities | BC | BC | BC | BC |
| 14.(4) | Court Shall be Notified Within 24 Hours of Any Residents on Suicide Watch | BC | BC | BC | BC |
| | | | | | |
| **Provision** | **Family Support and Interaction** | | | | |
| 15.(1) | Visitation Shall Not Be Restricted or Withheld | PC | SC | SC | SC* |
| 15.(2) | Provide Accommodations for Contact Visits | SC | SC | SC | SC* |
| 15.(3) | Visitation Shall be Regularly Scheduled | SC | SC | SC | SC* |
| 15.(4) | Phone Calls Shall be Allowed Based on Policy | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Miscellaneous Provisions** | | | | |
| 16.(1) | Provide Equal Access To All Services | BC | BC | BC | PC |
| 16.(2) | Provide the Opportunity To Participate In Large Muscle Exercise Every Day | NC | NC | NC | BC |
| 16.(3) | Prohibit the Use of Profanity in the Presence of Residents | BC | BC | BC | BC |
| 16.(4) | Provide Adequate Grievance Policy | BC | BC | PC | PC |
| 16.(5) | Provide Residents of All Ages With the Opportunity to See Their Attorney and/or Residents Court Counselor | BC | BC | BC | BC |

**SC\* denotes the areas that have been eliminated under the Amended Consent Decree dated March 25, 2016.**

**The following are my observations and recommendations specific to the provisions of this agreement.**

### 1. Intake

| | |
|---|---|
| Provision1.1 Intake | All residents admitted to Henley-Young shall receive a health screening, within 1 hour of admission or as soon as possible as reasonably thereafter, by appropriately trained staff as required by Mississippi Code Annotated § 43-21-321. Information obtained during the screening shall include, but shall not be limited to, the juvenile's: (a) Mental health; (b) Suicide risk; (c) Alcohol and other drug use and abuse; (d) Physical health; (e) Aggressive behavior; (f) Family relations; (g) Peer relations; (h) Social skills; (i) Educational status; and (j) Vocational status." Mississippi Code Ann. § 43-21-321(1). <br><br> During this screening, Henley-Young shall obtain information regarding the resident's educational status by having the residents or intake officer complete an education screening form developed and provided by the Jackson Public School District. |
| Status | **Non-Compliance** |
| Discussion | See previous report and Dr. Boesky's updated recommendations.  The County is in the process of hiring certified mental health professionals.  Based on my discussion with facility Director, the County is developing a scope of service that would include the following areas of mental health services being provided for the youth at Henley Young: <br> 1. Psychiatric evaluations <br> 2. Medication management <br> 3. Therapy services (individual, group and family) <br> 4. Follow-up case management <br> 5. Patient and family education <br> 6. Specializes in the treatment of mentally ill pregnant females <br> 7. Tele-psychiatric  services <br><br> There continues to be youth who are entering the facility who are identified based on the MAYSI-2 screening as suicidal and/or at mental health risks that are not being addressed. This creates a possible safety and security breach for the facility. When children are in mental health crises their behavior is even more unpredictable than ever. |
| Recommendations | 1. Fully develop admitting policies and procedures to reflect provision <br> 2. The court should provide staffing for intake purposes <br> 3. The facility should provide enough staff to fully cover the care and custody issues in the facility <br> 4. Ensure all staff who admit residents are properly trained <br> 5. Develop training records <br> 6. Provide documentation in an organized way on residents being screened/admitted (files) |

|  |  |  |
|---|---|---|
|  | 7. Ensure all residents' records are available for my review with all areas of the provisions placed in the resident's file<br>8. See Dr. Boesky's updated report/recommendations. |  |
| Evidentiary Basis | Document review, observation, interviews |  |

| | |
|---|---|
| Provision 1.2<br>Intake | All residents shall receive a MAYSI-2 mental health screening upon admission, as required by Mississippi Code Annotated § 43-21-321. The screening will be conducted in private by appropriately trained staff of Henley-Young. If the screening indicates that the residents is in need of emergency medical care or mental health intervention including, but not limited to, major depression, suicidal ideation, withdrawal from drugs or alcohol, or trauma, the detention staff shall refer those juveniles to the proper health care facility or community mental health service provider for further evaluation immediately or as soon as reasonably possible. |
| Status | **Non-Compliance** |
| Discussion | See previous report and Dr. Boesky's updated recommendations. However the County is in the process of hiring certified mental health professionals.<br><br>The status of this provision remains as non-compliance. As stated in my last report (9th), the facility needs first to answer the following questions below; then follow the recommendations.<br><br>    A. What are the program objectives for mental health screening?<br><br>    B. What are the characteristics or common traits the program wants to identify for emergency or follow-up clinical consultation?<br><br>    C. What MAYSI-2 scores will the facility use as the signal for the program staff to obtain clinical consultation or services?<br><br>    D. What mental health follow-up services are available when the resident's MAYSI-2 score indicates that they are needed?<br><br>    E. In what way will the facility develop a database that creates a profile of mental health needs in the population and program \decisions and adjustments needed to improve mental health services for the residents?<br><br>In addition to this report, Dr. Lisa Boesky, an expert mental health consultant, reviewed the mental health services within Henley-Young Juvenile Detention Facility. Dr. Boesky's report was submitted prior to this official report to give the facility an opportunity to begin implementation of her recommendations (see exhibit).<br><br>Develop and follow mental health plan. |
| Recommendations | 1.      Develop comprehensive policy and procedures for this provision. |

|  |  |
|---|---|
|  | 2.    Develop resident files that are organized and arranged properly |
|  | 3.    Develop training and provide documentation of training |
|  | 4.    Identify person or person(s) whose responsibility is to score the instrument |
|  | 5.    Provide documentation on who reviews the instrument and note what services are provided for the residents in the facility and what services should continue when the residents leave the facility |
|  | 6.    Develop process whereby facility staff and court employees develop a system for the sharing of information and reviewing of residents' files which are centrally located and accessible to detention staff. |
|  | 7.    Develop plan |
|  | 8.    See Dr. Boesky's report/recommendations. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 1.3 Intake | Prescription medications will be secured for all residents who have a valid, current prescription within 8 hours of admission, if possible, but in no case, longer than 24 hours after admission, including weekends and holidays. If during a resident's detention, a medical professional either prescribes a new medication or renews a resident's previous prescription medication, Henley-Young will secure the prescription medication within 8 hours of receiving the prescription, if possible, but in no case, longer than 24 hours after receiving the new prescription, including weekends and holidays. Henley-Young shall procure and/or purchase all prescription medications prescribed to confined residents. |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | See Dr. Ezike's updated report.  In addition, I reviewed the medication and prescription policies and procedures as it relates to medical therefore the facility needs to ensure compliance with this provision. |
| Recommendations | 1.  Hire a Medical Doctor, physician's assistant or a practitioner. This person must be involved in developing the medical department and to direct medical care. <br> 2.  Maintain written policy and procedures and  protocols for this provision <br> 3.  Document staff training on distribution and side effects of medication <br> 4.  Provide documentation on efforts to obtain prescription drugs <br> 5.  See Dr. Ezike's report and recommendation. |

| Evidentiary Basis | Document review, observation, interviews |
|---|---|

| Provision 1.4 Intake | Upon admission to Henley-Young, all residents shall be offered a snack or meal in compliance with the United States Department of Agriculture's School Meals Program standards. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility has maintained substantial compliance on this provision based on my observation, interviews and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.5 Intake | Upon admission to Henley-Young, all residents shall be permitted to telephone a parent or legal guardian free of charge and to take a shower before being placed on the pod. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility has remained at substantial compliance on this provision, based on my observation and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.6 Intake | Within 60 days of the date of this agreement, Henley-Young shall develop and implement policies that limit strip searches to instances where Henley-Young staff has an articulable suspicion that a resident may possess weapons or contraband. Anytime a strip search is conducted, Henley-Young staff must document, in writing, their suspicion, obtain permission from a supervisor, and conduct the search in a manner that minimizes the intrusion into the resident's privacy. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision remains at partial compliance.   There shall be a logbook developed to ensure that there is proper documentation and notification of supervisors to ensure permission is obtained prior to search.  Please see previous report and my discussion on safety and security. | |
| Recommendations | 1.  Staff must be provided with the necessary training with information stating the trainer, name of the training class/course, time, date and location of training. 2.  This documentation should be kept and logged in facility records. 3.  Continue to provide enough staff for adequate coverage 24/7. | |
| Evidentiary Basis | Document review, observation, interviews | |

Although, this provision may need modification later; it will be reviewed carefully to ensure that safety and security is at the forefront of youth entering the facility. I recognize that Hinds County has ceased its practice of strip searching residents during the admission process at Henley-Young unless there is an articulable suspicion that a resident possesses weapons, drugs, or contraband and is in the process of implementing a policy that complies with the consent decree.

## 2      Staffing and Overcrowding

| Provision 2.1 Staffing and Overcrowding | Within 90 days of the date of this agreement, Henley-Young shall operate with a direct care staff to resident ratio of 1:8 from the hours of 6:00 a.m. until 10:00 p.m. and a ratio of 1:10 from the hours of 10:00 p.m. to 6:00 a.m. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision has moved to beginning compliance.  The facility has hired adequate direct care staff and is in the process of hiring case managers and mental health professionals.<br><br>The County should be commended for providing adequate funding and ensuring that the population is capped at 32. | |

|  | The staffing now lends itself to a more professional, safe and secure environment for staff and youth.  Facilities that are properly staffed and trained are safer and conditions of confinements and accountability are improved. |
|---|---|

| Recommendations | | | | | |
|---|---|---|---|---|---|
| Units | Day Shift | Evening Shift | Night Shift | Total |
| A officer | 3 | 3 | 2 | 8 |
| B officer | 3 | 3 | 2 | 8 |
| C officer | 3 | 3 | 2 | 8 |
| D officer | 3 | 3 | 2 | 8 |
| Intake | 1 | 1 | 1 | 3 |
| Master Control | 1 | 1 | 1 | 3 |
| Staff for Court Transportation | 2 | 2 |  | 4 |
| Internal Transportation | 2 | 2 |  | 4 |
| Laundry | 2 | 2 |  | 4 |
| *Director | 1 |  |  |  |
| *Deputy Director | 1 |  |  |  |
| *Operation Manager | 1 |  |  |  |
| Supervisors | 3 | 3 | 2 | 8 |
|  | 26 | 23 | 12 | 61 |

Duty Post Staffing/Administration

61 Direct care/supervisor/laundry staffing X 1.5 Relief Factor—Total staff needed to effectively operate the facility—91.5
1 to 8 Awake—1 to 10 Sleep

Misc. post coverage
Medical/MH Hospital Runs
One on One MH/Medical
Visitation
*Administration
*Maintenance

| Evidentiary Basis | Document review, observation, interviews |
|---|---|

| Provision 2.2 Staffing and Overcrowding | If the staff-to-residents ratio falls below the requirements of section 2.1 for longer than two (2) days, the Director or his assignee shall immediately identify residents accused of nonviolent offenses who are eligible for less restrictive alternatives to secure detention and request an emergency release for eligible residents from the appropriate Residents Court. The maximum capacity of Henley-Young shall be calculated by determining how many direct care staff members can supervise residents in accordance with section 2.1. The current maximum capacity of Henley-Young is 84. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 2.3 Staffing and Overcrowding | No more than one resident shall be placed in a one-person cell. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation | |

### 3   Cell Confinement

| Provision 3.1 Cell Confinement | Residents shall be engaged in structured, rehabilitative, and educational programming outside of their cells during the hours of 7:00 a.m. to 9:00 p.m. each day, including weekends and holidays. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facility moved to partial compliance.  The facility should continue to improve on its documentation and ensuring that staff members are following policies and procedures as it relates to cell confinement.  As stated in my introduction there are still occasions when youths are placed in | |

| | confinement without proper documentation. However, there is a major improvement from my last visit. The facility should continue to follow the recommendations below. It should also ensure that staff is properly trained and that supervision from the administrative level periodically walks through the facility to ensure compliance. The facility should continue to follow the recommendations below to ensure that the award and incentive programs are fully developed to include youth who are receiving mental health services. |
|---|---|
| Recommendations | 1. Maintain policies and procedures for this provision. <br> 2. Review the schedules to be sure that they adequately reflect all daily activities. <br> 3. Develop positive behavior management systems with rewards and consequences. <br> 4. Remove the dark film from the Plexiglas in towers on unit which would allow staff to view the unit without there being visual obstruction (when lights on).**Executed** <br> 5. Develop monthly recreation schedule. <br> 6. See all of the recommendations for recreation activities and programming and for the school in the introduction. <br> 7. Purchase frames for facility activities and schedule <br> 8. Hire recreation staff <br> 9. Fully develop award and incentive program |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 3.2 <br> Cell Confinement | Except when residents are in protective custody or confined subject to section 3.3 of this Settlement Agreement, residents placed in the Suicide or Booking cells shall be allowed to spend the hours of 7:00 a.m. to 9:00 p.m. on the appropriate living unit and to have the opportunity to engage in structured, rehabilitative, and educational programming, unless medically counter-indicated. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision has moved to beginning compliance. During my review of documents, observations and discussion with youths I found no indication of youth being placed in the booking area. They were kept on their appropriate units. The facility must ensure youth who are placed on suicide precautions or watch are allowed to engage in all structured, rehabilitative, and educational programs. | |
| Recommendations | 1. Continue to follow recommendations as set forth in section 3.1. <br> 2. Continue to maintain adequate policies and procedures for this provision. | |

| | |
|---|---|
| | 3. Develop data collection for residents who are placed in protective custody or confinement.<br>4. Residents who are removed from school should continue to be placed in a designated living area. |
| Evidentiary Basis | Document review, observation, interviews |

| | |
|---|---|
| Provision 3.3<br>Cell Confinement | Residents who pose an immediate, serious threat of bodily injury to others may be confined in their cells for no longer than 12 hours at a time without administrative approval. Residents who are placed on cell confinement for this reason shall be released from their cells daily to attend school, maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on residents who are subject to cell confinement every 15 minutes. Staff must document all instances of cell confinement in writing and must document the justification for determining that a resident poses an immediate, serious threat of bodily injury. |
| Status | **Beginning Compliance** |
| Discussion | The status of this provision has moved to beginning compliance.  Based on my review of documents, interviews with residents and staff and observation, residents that are still being confined in their cells for long periods of time have appropriate documentation with some exceptions as stated in my introduction. |
| Recommendations | 1. Continue to ensure staff are following policies and procedures for this provision.<br>2. For residents placed in their rooms, ensure the forms that have been developed are being used to indicate the time residents will be in their rooms and post it on their doors.<br>3. Continue to ensure that officer(s) sign off on the form in 15 minute staggered visual checks when residents are placed in their rooms and supervisors sign each hour.<br>4. Continue to develop a system of major and minor consequences for behavior.<br>5. Develop form for 15 minute checks and include in policy.(**Executed**) |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 3.4 Cell Confinement | Residents shall not be automatically subjected to cell confinement and/or isolation upon their admission to Henley-Young unless he or she would be subject to cell confinement under section 3.3. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision has moved to partial compliance.  The facility should continue to follow the policies and procedures as it relates to this provision. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision. 2. Continue to ensure all staff is trained and document training. 3. See provision 3.3 4. Continue to ensure practice is consistent with policy and procedures. 5. Continue to ensure there is adequate staffing and supervision for this area | |
| Evidentiary Basis | Document review, observation | |

| Provision 3.5 Cell Confinement | At all times between the hours of 7:00 a.m. to 10:00 p.m., at least one direct care staff shall be stationed on any living unit where two or more residents are placed, and direct care staff shall be actively engaged with residents. From 10:00 p.m. to 7:00 a.m., staff shall conduct visual checks on residents every 15 minutes. Henley-Young shall ensure that every cell has an operating intercom that allows residents to communicate with staff at all times. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision moved to partial compliance. Based on my review and observation, I found that staff is now in the living areas where the youths are.  This is due in part to the adequacy of staff and the population cap at 32 which provides for staff to monitor and supervise without there being an interruption in programming. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision. 2. Continue to maintain adequate staffing. 3. Continue to maintain Provide adequate staff supervision. 4. See my last report 5. Continue to maintain review the deployment of staffing | |
| Evidentiary Basis | Document review, observation, interviews | |

## 4. Structured Programming

| | |
|---|---|
| Provision 4 Structured Programming | Henley-Young shall administer a daily program, including weekends and holidays, to provide structured educational, rehabilitative, and/or recreational programs for residents during all hours those residents shall be permitted out of their cells, pursuant to section 3.1. Programming shall include:<br>a. activities which are varied and appropriate to the ages of the residents;<br>b. structured and supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship; and<br>c. Supervised small group leisure activities, such as a wide variety of card and table games, arts and crafts, or book club discussions. |
| Status | **Beginning Compliance** |
| Discussion | The status of this provision remains at beginning compliance.<br><br>Based on my review of documents, staff and youth discussion and observation, the facility is improving in developing an adequate structure programming.  The facility has hired an additional recreation specialist who is developing programming for boys and girls.  However there is a need to purchase adequate equipment, games etc. for youth and to develop a monthly schedule that provides details for activities.<br><br>As stated in my previous report, the programming must have the following;<br><br>A. Comprehensive policies and procedures<br>B. Reasonable rules and expectations<br>C. Order<br>D. Organization and clarity<br>F. Clear rewards and incentives<br>G. Reasonable and consistently implemented sanctions<br>H. Case management to ensure youth are there is a collaborative process that assesses, plans, implements, coordinates, monitors, and evaluates the options and progress youth are making during their stay.<br><br>Also please see Ms. Carol Cramer-Brooks' updated report.  It should be noted that education is a major component of programming in a juvenile facility therefore programming, scheduling and school should be tied together. |
| Recommendations | 1. Continue to develop adequate policies and procedures for this provision. |

|  | 2. Provide adequate schedules for weekdays and weekend programming and act on it.<br>3. Develop an adequate monthly recreation schedule with age appropriate games and programs.<br>4. The facility need to hire an officer dedicated to developing and monitoring recreational programs.**(Executed)**<br>5. Hire case management staff. |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

## 5. Individualized Treatment Plans Treatment For Post-Disposition Residents

| Provision 5.1 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents have access to adequate rehabilitative services. Henley-Young shall ensure that children placed in the facility post-disposition will receive constitutionally compliant rehabilitative services. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance. The facility still needs to hire case managers and develops adequate policies and procedure and training.<br><br>See the discussion of the 89 day program in the Introduction.<br><br>Since there is no structured programming outside of individual counseling, the County needs to hire case managers to provide initial and ongoing case management services (i.e. treatment planning, family assessments, educational assessments, referrals for mental health or health services). Also the case manager will identify indicators of goals achieved, specify the person responsible for implementing the resident's and family's treatment goals; update treatment plans; and develop discharge plans with recommendations. In addition, the facility needs counselors who are responsible for a resident's safe adjustment to secure confinement. | |

|  |  |
|---|---|
|  | In addition for this report, Dr. Lisa Boesky, an expert mental health consultant, reviewed the mental health services within Henley-Young Juvenile Detention Facility.  Dr. Boesky's report was submitted prior to this official report to give the facility an opportunity to begin implementation of her recommendations (see exhibit). |
| Recommendations | 1. Develop adequate policy and procedures to meet this provision.<br>2. Either fund properly or discontinue the 89 day program.<br>3. Review residents in program who are in program for minor offenses (i.e., disturbing the family peace) and find alternative placement for them.<br>4. Fund appropriate staffing to develop individualized treatment plans for residents in 89 day program.<br>5. Develop and fund alternative community programming for residents in 89 day program that can be serviced in community.<br>6. Hire 3 case managers who are assigned and work for the facility director.<br>7. Hire case management staff. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.2 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents in need of mental health and/or substance abuse treatment and/or who are in the facility post disposition shall have appropriate treatment plans developed and implemented in accordance with generally accepted professional standards of practice for mental health and rehabilitative services. |
|---|---|
| Status | **Non-Compliance** |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire case managers and develops adequate policies and procedure and training.<br><br>Again, see the technical assistance provided to the court dated November, 2014. Also see introduction on 89 day program. There has only been a name change to the program. However, there is still the need to hire case managers to create a possible treatment program if the county intends to meet this provision.<br><br>In addition for this report, Dr. Lisa Boesky, an expert mental health consultant, reviewed the mental health services within Henley-Young Juvenile Detention Facility.  Dr. Boesky's report was submitted prior to this |

|  | official report to give the facility an opportunity to begin implementation of her recommendations (see exhibit). |
|---|---|
| Recommendations | 1. Develop adequate policies and procedures for this provision.<br>2. See recommendations under (5.1).<br>3. Hire case management staff.<br>4. Purchase case management system |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.3 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall implement policies and procedures for the required content of treatment plans, which shall include;<br>    a. That the treatment plan be individualized;<br>    b. An identification of the mental and/or behavioral health and/or rehabilitative issues to be addressed;<br>    c. A description of any mental health, medication or medical course of action to be pursued, including the initiation of psychotropic medication;<br>    d. A description of planned activities to monitor the efficacy of any medication of the possibility of side effects;<br>    e. A description of any behavioral management plan or strategies to be undertaken;<br>    f. A description of any counseling or psychotherapy to be provided;<br>    g. A determination of whether the type or level of treatment needed can be provided in the resident's current placement; and<br>    h. A plan for monitoring the course of treatment, and if necessary, for revising the treatment plan.<br>    i. A description of the precise terms the of the facility's long-term and short-term objectives for the residents, the full range of services to be provided, and procedures, and timetables and staff assignments for the implementation of such treatment plan;<br>    j. A plan for regularly engaging the family in the resident's treatment plan;<br>    k. A comprehensive re-entry plan that will assist the residents re-enroll in their home school and access medical, mental health, Vocational and rehabilitative services based in the community. |
|---|---|
| Status | **Non-Compliance** |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire case managers and develops adequate policies and procedure and training.<br><br>In addition for this report, Dr. Ngozi Ezike, an expert medical physician, with expertise in juvenile detention health services reviewed medical services and Dr. Lisa Boesky, an expert mental health consultant, reviewed |

| | |
|---|---|
| | mental health services within Henley-Young Juvenile Detention Facility. Dr. Ezike's and Dr. Boesky's reports were submitted prior to this official report to give the facility an opportunity to begin implementation of their recommendations (see exhibit). |
| Recommendations | 1. Develop comprehensive policies and procedures for this provision that includes the contents (A-K). <br> 2. The County/Court shall define the criteria for the program <br>   a. It is important that post dispositional programs in other facilities be reviewed. <br>   b. Often seeing what is being done in other facilities provides insight into how to develop and operate these programs. <br> 3. Provide dedicated staff to manage program. <br> 4. Provide intensive training to these staff members. <br>   a. Train staff in various treatment modalities i.e. cognition, behavioral modification, modeling, psychotherapy, reality therapy, group therapy and group dynamics and other skills required to successfully facilitate the goals of the 89 day program. <br>   b. Create treatment teams <br>   c. Develop case planning and program development <br>   d. Assessment of the program to determine if it meets the needs of the court placed residents. <br>   e. Assessment tool to regularly monitor the success or lack of success of all residents in the program. <br> 5. Provide auxiliary training to all other direct care staff. <br> 6. Hire case management staff. |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 5.4 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall institute a program of periodic staff reviews every three weeks and evaluations of each resident's progress under his/her individualized treatment plan and of the appropriateness of the plan itself and Henley-Young's plan for such review. | |
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance. The facility still needs to hire case managers and develops adequate policies and procedure and training. <br><br> In addition for this report, Dr. Ngozi Ezike, an expert medical physician, with expertise in juvenile detention health services reviewed medical | |

|  |  |  |
|---|---|---|
|  | services and Dr. Lisa Boesky, an expert mental health consultant, reviewed mental health services within Henley-Young Juvenile Detention Facility. Dr. Ezike's and Dr. Boesky's reports were submitted prior to this official report to give the facility an opportunity to begin implementation of their recommendations (see exhibit). |  |
| Recommendations | 1. Develop comprehensive policies and procedures for this provision. <br> 2. Provide training to all staff. <br> 3. Identify roles and responsibilities of direct care, treatment and educational staff as it relates to the staffing for 89 day program through policies and procedures and adequate funding and staffing. <br> 4. Hire case management staff. |  |
| Evidentiary Basis | Document review, observation, interviews |  |

| Provision 5.5 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall develop and implement a program that provides for evening and weekend programs and activities that allow residents to engage in meaningful activities. |  |
|---|---|---|
| Status | **Non-Compliance** |  |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire case managers and develops adequate policies and procedure and training. <br><br> See the technical assistance provided to the court dated November, 2014. <br><br> Based on my review of documents and observation, services are not in place and are still not being provided for this provision. I am reiterating the actions and recommendations from my previous report below. The programming of the facility is at a standstill as it relates to this provision. There are very few activities on weekends therefore there is no meaningful programmatic, structured activities except for card playing and dominoes. Take note of the discussion of these issues in the introduction. |  |
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision. <br> 2. Provide adequate staffing for this program. <br> 3. Develop a monthly recreational program with activities. <br> 4. Keep records of activities provided and note those that were not provided and why. |  |

|  |  |
|---|---|
|  | 5.  Purchase board games etc.<br>6.  Hire recreational staff. (executed)<br>7.  Hire case management staff. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.6<br>Individualized<br>Treatment Plans<br>Treatment<br>Program for Post-<br>Disposition<br>Residents | Henley-Young shall develop and implement an adequate quality assurance program. |
|---|---|
| Status | **Partial  Compliance** |
| Discussion | This provision remains at partial compliance.   The QA department at Henley-Young continues to develop their data fields.  There is significant improvement from no data to what is being developed now.  The QA staff should be commended and encouraged to continue their effort.  Based on my discussion with the administration, the county's IT department will be working with the facility to create and develop data sets that will produce reports that will provide the facility with the system to evaluate the current operations and provide the facility with information that will help them make better decisions as administrators and as facility operators.<br><br>Now the following is needed:<br>•  I will provide the facility with templates for assistance in the full development of this process.<br>•  QA Data Collection Info<br>•  See introduction |



| | |
|---|---|
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision for the facility, school program and SICU program. |
| | 2. Health Care: continuously assess the quality and adequacy of the health services provided, accurately evaluate the performance of staff providing health services and address identified deficiencies. |
| | 3. Recreation and Social programs: continuously assess the quality and adequacy of social and recreational programming provided; accurately evaluate the performance of staff in providing these programs. |
| | 4. Environmental Health and Safety: continuously assess the quality and adequacy of environmental health and safety, accurately evaluate the performance of staff in providing a safe and healthy environment and properly address identified deficiencies. |
| | 5. Discipline and order: continuously monitor use of discipline and promptly address misuse or over use of discipline and other identified deficiencies. |

| | 6. The facility must continue to develop monthly performance measures to indicate achievement in the desired area.<br>7. Review State of Florida Quality Assurance Model and for assistance in developing contact CJCA Performance Based Standard for Juvenile Detention Programs, also use ACA standards to establish policy guidelines.<br>8. Develop data collection system<br>9. See introduction |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

### 6   Due Process/Isolation/Disciplinary Practices and Procedures

| Provision 6.1 Disciplinary Practices and Procedures | Henley-Young shall implement a discipline policy and practice that incorporates positive behavior interventions and support. This policy shall include guidelines for imposing graduated sanctions for rule violations and positive incentives for good behavior. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | This provision has moved to beginning compliance.<br>A review of the documents, interviews with staff and youth, I found that the facility is providing due process for youths involved in disorderly and disruptive behavior.  However, the facility still needs to develop a process for youth who have been identified and are receiving mental health services. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision.<br>2. Ensure youth are familiar with the rules and regulations of the facility during the orientation process and ongoing thereafter.<br>3. Ensure residents are receiving and understand the resident handbooks during orientation and sign for it.<br>   a) They shall include resident's rights, major and minor rule violations and the grievance policy.<br>   b) The handbook will explain to residents in their own language the rules and shall also be explained by staff that will have them sign and date a form indicating that both processes have occurred.<br>   c) These rules shall be posted on each unit.<br>4. Due process rules shall be posted on each unit.<br>5. Develop positive behavior intervention programs.<br>6. Assign and train an independent person(s) to handle due process isolation hearings. The person(s) must be independent of the unit staff.<br>7. Ensure residents who are in isolation are provided recreation and education services. | |
| Evidentiary Basis | Document review, observation, interviews | |

| | |
|---|---|
| Provision 6.2 Disciplinary Practices and Procedures | Residents who violate major rules may be subject to cell confinement for up to 24 hours for a single rule violation. An occasion in which a resident is alleged to have contemporaneously violated multiple major rule violations shall count as a single rule violation for the purposes of this section. No residents shall be confined to a cell for longer than 8 hours for a single rule violation without receiving written notification of the alleged rule violation and the occurrence of a disciplinary review/due process hearing before an impartial staff member, which includes participation by the accused residents. Under no circumstances shall residents be subjected to involuntary cell confinement for longer than 24 hours for disciplinary purposes. Residents who are placed on cell confinement shall be released daily from their cells to attend school, maintain appropriate personal hygiene, and to engage in one hour of large muscle exercise. |
| Status | **Beginning Compliance** |
| Discussion | This provision has moved to beginning compliance.  Although the facility has moved to beginning compliance, there still is a need for educational services to be provided for youth on isolation and behavior management. |
| Recommendations | 1. Continue to maintain policies and procedures for this provision.<br>2. Develop sheets to place on door of any residents in confinement that identifies the reason for confinement and is review and signed by supervisor.(**Executed**)<br>3. Ensure residents in confinement receive education and recreation services.<br>4. See 6.1 recommendations.<br>5. Continue to provide training for all staff on these policies and procedures. |
| Evidentiary Basis | Document review, observation, interviews |

### 7.  Use of Restraints

| | |
|---|---|
| Provision 7.1 Use of Restraints Mechanical | Mechanical restraints shall not be used to punish residents or for the convenience of staff. Mechanical restraints shall only be used to prevent self-harm and/or harm to others, subject to section 7.4, and for transportation to and from court, subject to section 7.2. |
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision has moved to substantial compliance. Again, I reiterate it should be noted that well run facilities only use mechanical restraints for transportation or exigent circumstances which may arise at any facility under supervisory approval. |

| Recommendations | 1. Officers shall continue to receive training on policy and procedures.<br>2. Officers shall continue be trained on when it is appropriate to use mechanical restraints.<br>3. All training shall continue to be documented.<br>4. The policy will require the documentation of any use of mechanical restraint and use of force incidents.<br>5. Restraint log should be implemented.<br>6. Continue to follow policy |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 7.2<br>Use of Restraints<br>Mechanical | Nothing in this section shall prohibit mechanical restraints from being placed on residents who are being transported to and from court or out of the facility, if staff have reason to believe that a residents presents a flight risk or is an imminent danger to the residents or others, or will engage in violent behavior. However, mechanical restraints should be removed immediately after the resident is placed in a cell and at no time shall a resident be placed in a cell wearing mechanical restraints. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility remains at substantial compliance on this provision.  Based on my review of documents, interviews with youths and observations at this time I found no indication of overuse of mechanical restraints with the exception of transferring residents out of the facility.  This should continue. | |
| Recommendations | 1. Continue to develop and provide remedial training for this provision.<br>2. All training shall continue to be documented.<br>3. The policy will require the documentation of any use of mechanical restraint and use of force incidents.<br>4. Operationalize the edicts of this provision.<br>5. Additional supervision needed to ensure mechanical restraints are not misused.<br>6. Continue to follow the process to remain at SC. | |
| Evidentiary Basis | Document review, observation, video recordings and discussion with residents | |

| Provision 7.3 Use of Restraints | Restraints shall not be used to secure residents to a fixed object such as a restraint chair, bed, post, or chair. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility remains at substantial compliance on this provision. Based on my review of documents, interviews with youths and observations at this time I found no indication of overuse of mechanical restraints with the exception of transferring residents out of the facility.  However, to remain at substantial compliance the facility continues to follow the recommendations (2, 3 and 4) below. | |
| Recommendations | 1. Complete the comprehensive policies and procedures for this provision.<br>2. Provide training for staff within the facility as described above on this provision and provide documentation of training.<br>3. Develop and use a mechanical restraint log.<br>4. Provide training on de-escalation techniques to try to use mechanical restraints only as a regular part of facility transport.<br>5. Additional supervision needed to ensure mechanical restraints are not misused. | |
| Evidentiary Basis | Interviews, observation and document review | |
| Provision 7.4 Use of Restraints | No residents shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional or if determined to be necessary under section 7.2 or as reasonably necessary to prevent the residents from engaging in acts of self-harm or harm to others. If a residents must be restrained for longer than 15 minutes in order to prevent self-harm, that residents shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility. | |
| Status | **Beginning Compliance** | |
| Discussion | This provision remains at beginning compliance.  Please see Dr. Boesky's updated report. | |
| Recommendations | 1. Continue to develop comprehensive policy and procedures for this provision with mental health professionals.<br>2. Provide training for staff on policy and procedures and document training.<br>3. Provide training on de-escalation techniques.<br>4. Develop Mental Health protocols for this provision.<br>5. Hire mental health professional or agency. | |
| Evidentiary Basis | Document review | |

| Provision 7.5 Use of Restraints | Henley-Young shall not use, or allow on the premises, restraint chairs, chemical restraints and/or tasers. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision.  Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, video | |

| Provision 7.6 Use of Restraints | Henley-Young shall not subject residents to "hogtying," which is the practice of placing a resident's face down on a bed, floor, or other surface, and securing the resident's hands to his feet. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision. Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation, document review and interviews | |

| Provision 7.7 Use of Restraints | When a resident is placed in mechanical restraints, staff must provide one-on-one supervision for the duration of the restraint, except when mechanical restraints are deemed to be necessary for the reasons specified in section 7.2. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision is maintained at substantial compliance.<br><br>The facility should continue with following the recommendations listed below. | |
| Recommendations | 1. Continue to provide on-going training for staff on policies and procedures.<br>2. Continue to document all training provided to all staff.<br>3. Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional.<br>4. Restraint log should be implemented. | |

| | |
|---|---|
| | 5.   Continue to ensure additional supervision is provided to ensure mechanical restraints are not misused. |
| Evidentiary Basis | Document review |

| Provision 7.8<br>Use of Restraints | Henley-Young shall notify a medical professional whenever a resident is placed in mechanical restraints for reasons other than those specified in section 7.2. A medical professional shall examine the residents as soon as possible after restraints are removed, except when the residents was restrained for the reasons specified in section 7.2. |
|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision has moved to substantial compliance.<br><br>Based on my review of documents, interviews and discussion, I found that mechanical restraints are rarely used within the facility. |
| Recommendations | 1.   Develop comprehensive policies and procedures for this provision.**(Executed)**<br>2.   Continue to provide training on policies and procedures.<br>3.   Continue to document all training provided to all staff.<br>4.   Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional.<br>5.   Continue to ensure that information being reported is accurate and consistent.<br>6.   Develop a single matching reporting system for the entire facility. |
| Evidentiary Basis | Document review |

| Provision 7.9<br>Use of Restraints | Hinds County does not currently and shall not in the future allow officers to enter the secure detention area of the facility with any electronic restraints, including, but not limited to tasers. |
|---|---|
| Status | **Substantial Compliance\*** | |
| Discussion | The facility has remained at substantial compliance on this provision based on my most recent visit and my observations and review of documents. |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. |
| Evidentiary Basis | Document review |

| Provision 7.10<br>Use of Restraints | Henley-Young is required to ensure that no officer enters the secure detention area of the facility with a firearm. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision.  Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision.  Also see provision 7.9 as it relates to tasers.  I would also reiterate under no circumstances should any staff, anyone connected to the facility, and law enforcement etc. have firearms on the premises especially in secure areas.  All weapons must be secured in appropriate locked areas of the building. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, Observation | |

### 8.   Use of Force

| Provision 8.1<br>Use of Force | Physical force shall not be used to punish residents. Staff shall only use physical force to stop residents from causing serious physical injury to self or others or to prevent an escape. If physical force is necessary, staff must use the minimum amount required to safely contain the residents. Whenever possible, staff shall avoid the use of force by first attempting verbal de-escalation techniques. Staff shall be required to fully document in writing every instance of use of force. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision moved to beginning compliance.<br><br>The facility has begun to computer some data (i.e. restraints, suicide attempts, self-injury, physical and mechanical restraint types, incident, confinement hours, use of force, and incidents by shifts) which is good information however the monitor will work with the facility to better extrapolate.<br><br>Good data will assist the facility in determining answers to some of the following examples:<br>      A.  The location of use of force<br>      B.  The number of use of force incidents<br>      C.  The number of use of force requiring mechanical restraints<br>      D.  The type of restraint used<br>      E.  Grievances<br>      F.  The number of incidents requiring chemical agents | |

|  | G. The number of incidents involving non-lethal security devices (i.e. batons, tasers, etc.)<br>H. The number of use of force incidents resulting in injury to residents or staff<br>I. Plan of action to address each incident (i.e. disciplinary action, staff training or remedial training, resident's isolation, resident's behavior management, resident's mental health screening or evaluation etc.) |
|---|---|
| Recommendations | 1. Continue to maintain policy and procedures for this provision.<br>2. Continue to provide training for on policies and procedures<br>3. Continue to document all training provided to all staff.<br>4. Adapt an appropriate curriculum for training staff on the use of verbal de-escalation skill and safe use of physical restraints or mechanical restraints.<br>5. Revise form to distinguish between physical and mechanical restraints.<br>6. Contact the National Partnership for Juvenile Justice for recommendations on training program in this area.<br>7. Document and file report when there is use of force.<br>8. Ensure any time use of force is used residents are seen by a medical professional<br>9. Follow the facility's chain of command which will reduce staff confusion. |
| Evidentiary Basis | Document review, interviews |

| Provision 8.2<br>Use of Force | Henley-Young shall notify a medical professional, including but not limited to the licensed practical nurse on duty whenever physical force is used against a resident. A medical professional shall examine a resident immediately after the use of physical force. |
|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facility continues to maintain partial compliance.  Please see Dr. Ezike's updated medical report.  Please follow the recommendations below. |
| Recommendations | 1. Complete procurement of services as quickly as possible.<br>2. Continue to develop comprehensive policies and procedures for this provision.<br>3. Provide on-going training to staff on policies and procedures.<br>4. Continue to document all training provided to all staff.<br>5. Review nursing schedule and provide more hours at facility.<br>6. Provide written documentation of examination of residents by medical professional in every instance. |

| | |
|---|---|
| | 7. Provide additional medical services after hours and on weekends. (executed) <br> 8. Document and file in resident's records when there is use of force. |
| Evidentiary Basis | Document review, interviews, observation |

### 9. Meals and Nutrition

| Provision 9.1 Meals and Nutrition | Residents shall be provided three meals and a snack daily. If a residents misses a meal because he or she is attending court, or some other appointment, he or she shall receive the missed meal upon his or her return to detention. |
|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision remains as partial compliance.  Please see the introduction. |
| Recommendations | 1. Continue to review portions to ensure residents receive enough food during meals. <br> 2. Develop policy and procedures for this provision.(**executed)** <br> 3. Continue to provide training for kitchen staff and all other staff members involved with handling food and preparing meals. <br> 4. Continue to document compliance with this provision. <br> 5. Food should be served in a timely manner and consistent with facility schedule once developed. <br> 6. Review the National Food Service Management Institute from the University of Mississippi that details "Food Safety Facts". <br> 7. Food service area is in need for maintenance, repair and cleanliness. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 9.2 Meals and Nutrition | All meals and snacks served to residents at Henley-Young shall, at a minimum, comply with the nutrition guidelines set forth in the United States Department of Agriculture's School Meals Program standards. |
|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision moved to partial compliance.  During my observation, interviews with youth, I found the meals that are being served are much better and visual pleasing.  However youths are still complaining of not having enough food.   Please see introduction. |

| Recommendations | 1. Develop policy and procedures for this provision(executed)<br>2. Provide training for kitchen staff and all other staff members involved with handling food and preparing meals. |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 9.3<br>Meals and<br>Nutrition | Residents shall be provided access to drinking water throughout the day. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility has been moved to substantial compliance on this provision. Based on my review and observations, I found that youth had access to water.  However, I am still recommending that the water fountains on the units and in the youths cells be operable. | |
| Recommendations | 1. Contact County or State Environmental office to conduct test on water system. (**execute**d)<br>2. Continue to ensure residents receive water during school and recreational periods and at night.<br>3. Develop a policy for incidents regarding water quality and procedures to address them.<br>4. Repair inoperable drinking fountains. | |
| Evidentiary Basis | Document review, observation, interviews | |

### 10. Clothing

| Provision 10<br>Clothing | Henley-Young shall provide basic clothing items for residents at all times. These items must include, at a minimum, socks, underwear, uniform, shoes, and undershirts. For girls, these items must also include a brassiere. When appropriate, Henley-Young shall also provide residents with a coat, hat, and gloves. Residents must be provided with a clean uniform, socks, undershirt, underwear, and brassiere, if applicable, upon intake and at least once per day. No residents shall be deprived of these basic clothing items for any reason, including, but not limited to, as a punishment, because these items are being washed, or due to overcrowding. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility has moved to substantial compliance on this provision. It should be noted the laundry personnel has done an outstanding job ensuring that tattered, dingy, and not usable clothing is discarded.  The facility has also | |

|  | developed a property inventory system for discarding the above mentioned articles. |
|---|---|
| Recommendation | 1. Continue to check washer and dryer to ensure they are working properly.<br>2. Continue to ensure that girls and boys are equally involved in cleaning and folding clothes.<br>3. Hire 2 laundry staff to ensure clothing is handled properly. **(executed)**<br>4. Continue to ensure that all staff and residents wear protective material (smocks and gloves) when handling chemicals and clothing.<br>5. Continue to discard clothing that is torn, dingy and in poor condition.<br>6. Develop a system for replacing clothing on a regular and consistent basis. **(executed)**<br>7. Develop schedule for distribution. **(executed)**<br>8. Develop a system for prewashing clothing (i.e. undergarments etc.) **(executed)** |
| Evidentiary Basis | Document review, observation, interviews, photographs |

### 11. Hygiene and Sanitation

| Provision 11.1 Hygiene and Sanitation | Residents shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily, soap for washing hands after each time the residents uses the toilet, and toothpaste and a toothbrush for tooth brushing, which will occur at least twice daily, a comb and brush, that if shared, shall be sterilized between uses by residents. Girls must be provided with panty liners on a daily basis and other feminine products as needed. Residents will be issued a comb and brush upon entering the facility; however, if residents are issued a recycled comb or brush or a comb or brush that has been used by another residents, Henley-Young shall ensure that the comb and brush is sterilized and in good condition. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility has moved to substantial compliance on this provision.  I would still also recommend that a licensed barber and/or beautician be retained. | |
| Recommendations | 1. Ensure that hygiene kits are properly labeled and **residents are not** sharing each other's hygiene products or items. **(executed)**<br>2. Ensure items such as hair brushes, if shared, are sterilized and in good condition. **(executed)** | |

|  |  |  |
|---|---|---|
|  | 3. Continue to provide training for staff on these policies and procedures.<br>4. Ensure that clean face towels are available for residents. **(executed)**<br>5. Develop a schedule for distribution of hygiene kits. **(executed)**<br>6. Retain a licensed barber and/or beautician. |  |
| Evidentiary Basis | Document review, observation, interviews |  |

| Provision 11.2<br>Hygiene and<br>Sanitation | Residents shall be provided with sleeping mats and blankets that are clean and odorless sleeping mats shall be sanitized between uses by residents, and residents shall receive clean blankets weekly. | |
|---|---|---|
| Status | **Substantial Compliance** |  |
| Discussion | The status of this provision remains at substantial compliance. Based on my review of documents and observation, the facility needs to continue to ensure that mattresses and blankets are discarded properly.<br><br>Policies and procedures have been developed. The facility has provided training to ensure that the process outlined in the policies and procedures is followed. The facility needs to continue to monitor the condition of the blankets and mattresses for signs of holes and tattering The facility needs to continue to follow the recommendations below. |  |
| Recommendations | 1. Continue to discard all blankets and mattresses that are tattered and have holes in them.<br>2. Clean and maintain laundry area in orderly fashion.<br>3. Develop forms or system of documentation for distribution and inventory **(executed)**<br>4. Label and designate an area for towels, sheets, clothing etc. **(executed)** |  |
| Evidentiary Basis | Document review, observation |  |

| Provision 11.3<br>Hygiene and<br>Sanitation | Under no circumstances shall residents be deprived of mats and blankets. | |
|---|---|---|
| Status | **Substantial Compliance*** |  |
| Discussion | The facility remains at substantial compliance. |  |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. |  |

| Evidence | Observation, and document review |
| --- | --- |

| Provision 11.4 Hygiene and Sanitation | Henley-Young shall maintain a sufficient number of clean, sanitary mats and blankets that correspond with the facility's maximum capacity. | |
| --- | --- | --- |
| Status | **Substantial  Compliance\*** | |
| Discussion | The facility remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation and document review | |

| Provision 11.5 Hygiene and Sanitation | Residents shall be provided with a clean, sanitary environment. | |
| --- | --- | --- |
| Status | **Partial Compliance** | |
| Discussion | The status of this provision moved to partial compliance. The facility at this time is much cleaner however there are areas that are in need of additional clean-up. The facility has faced several difficulties as it relates to the environment (water shortages) were youth where evacuated to other youth facilities. Although it was no fault of the facility; the problem still needs to be addressed.  See introduction. | |
| Recommendations | 1. Develop policies and procedures for this provision. (**executed**) 2. See areas in discussion that should be addressed. 3. Develop housekeeping and cleaning schedule. 4. Develop checklist or inspection report for each unit and area of building. 5. Develop work order system to ensure that when problem arise they are addressed. 6. Develop corrective action plans as needed. 7. Provide training for staff on policy and procedures. 8. Ensure delivered food items are dated and rotated from old to new. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 11.6 Hygiene and Sanitation | Hinds County shall ensure that Henley-Young complies with relevant law regarding fire safety, weather emergencies, sanitation practices, food safety, and the elimination and management of environmental toxins. |
|---|---|
| Status | **Partial Compliance** |
| Discussion | The status of this provision moved to partial compliance. The facility During my review of documents and observation, the facility is still doing safety and fire inspections however to move to substantial compliance the facility needs to ensure that the recommendations 4, 5, 7, 8, 10 and 11 below are followed. See introduction regarding building cleanliness/environmental issues/maintenance. |
| Recommendations | 1. Develop policies and procedures and plans for fire safety, evacuation etc. **(executed)**<br>2. Develop adequate staff training regarding fire safety.<br>3. Properly maintain and repair fire equipment.<br>4. Ensure intercom systems are operating properly.<br>5. Ensure all mattresses used by residents are fire resistant.<br>6. Routinely test all fire equipment and system.<br>7. Ensure that all electrical outlets, wires and equipment (lights) are properly working.<br>8. Develop work order system to ensure items are repaired.<br><br>9. Ensure that all areas in this provision are addressed by a certified professional.<br>10. Review entire fire safety program/system<br>11. Facility needs to develop corrective action plan.<br>12. Clean and Sanitize kitchen<br>13. Develop cleaning procedures |
| Evidentiary Basis | Document review, observation |

| Provision 11.7 Hygiene and Sanitation | Residents shall be provided with clean drinking glasses and eating utensils. |
|---|---|
| Status | **Substantial Compliance** |
| Discussion | The status of this provision has moved to substantial compliance. Based on my observation, review of documents for the kitchen this provision has been implemented at this time. |
| Recommendations | 1. Develop policies and procedures for this provision. **(executed)**<br>2. Provide a thorough cleaning of the kitchen and all equipment and Utensils |

| Evidentiary Basis | Document review, observation and interviews |
|---|---|

### 12. Medical Care

| Provision 12.1 Medical Care | The parties agree, however, that henceforth, Henley-Young shall provide residents with adequate medical care, including: prompt screenings; a full physical exam within 72 hours after their detention hearing or disposition order, as applicable; access to medical professionals and/or prescription medications when needed; and prompt transportation to a local hospital in the case of a medical emergency.  Hinds County is responsible for procuring and/or paying for all medications provided to residents. |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | The status of this provision moved to beginning compliance.  Please see Dr. Ezike updated report. |
| Recommendations | 1. Develop policies, procedures and protocols for this provision. 2. Develop policies and procedures and protocols based on standards for Health Services in Juvenile Detention and Confinement facilities. 3. Provide training for staff members who administer medication to residents on proper usage and possible side effects. Also, train the staff on emergency protocols if side effects occur. 4. Have a licensed medical professional review and sign off on policy, procedures and protocols. 5. Have a licensed health professional periodically review and provide supervision to the nurse at facility. 6. Develop forms to coincide with provision. 7. Remove medication from bags and place them in secure, organized areas and develop forms to determine what medications are present in the facility at all times. 8. Hire or have on contract a physician to review medical area. 9. Ensure that residents receive vision exams, dental screenings, mental health screenings, hearing tests, etc. 10. Order folders with 2 dividers, end tab, classification folders in letter size with 2 prongs for medical charts. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.2 Medical Care | Henley-Young shall ensure that a medical professional is available to examine residents confined at the facility to identify and treat medical needs, when necessary. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision moved to beginning compliance.  Please see Dr. Ezike's updated report. | |
| Recommendations | 1. Hire qualified medical professional for nights and weekend care.<br>2. Develop policies, procedures and protocols for this provision.<br>3. Provide training for staff on this provision. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.3 Medical Care | Henley-Young shall implement its sick call policy and practice which ensures that confined residents who request non-emergency medical attention are examined by a medical professional within 24 hours of a residents placing him or herself on sick call, excepting weekends and holidays. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision moved to beginning compliance.  Please see Dr. Ezike's updated report. | |
| Recommendations | 1. Develop policies, procedures and protocols for this provision.<br>2. Place a kite box on each unit.<br>3. Provide training for staff on this provision.<br>4. Nurse or designated person, making daily rounds to retrieve kites (Request for Medical Service Forms). | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.4 Medical Care | Prescription medications shall only be distributed by licensed medical staff or Henley-Young staff who has been trained by licensed medical personnel. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision moved to beginning compliance.  Please see Dr. Ezike's updated report. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.<br>2. These policies, procedures and protocols must include the appointment of a medication administration protocol.<br>3. There must be a medication record of all medicines administered. | |

| | a. One record to reflect all medicines leaving the pharmacy;<br>b. An additional record kept in each resident's case file.<br>4. Ensure that the training is comprehensive make certain that all medical contingencies are considered.<br>5. The staff should be trained on what side effects to look for drugs commonly prescribed to residents with mental health needs.<br>6. Provide training to staff on the policy, procedures and protocols for this provision.<br>7. All training should be documented and conducted annually. |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.5<br>Medical Care | Medical and mental health services shall be provided in a manner that ensures the confidentiality of resident's health information. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision moved to beginning compliance.  Please see Dr. Ezike's updated report. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.<br>2. Get HIPAA requirements and institute them the facility.<br>3. Designate the persons who have access to the resident's medical records within the facility and outside of the facility, but within the juvenile justice system.<br>4. Provide training to staff on policies, procedures and protocols.<br>5. Provide training to staff on HIPAA requirements, and document training.<br>6. Designate a HIPPA Privacy Officer. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.6<br>Medical Care | Henley-Young shall develop procedures for monitoring residents who require individualized attention because of medical issues that do not involve requiring the residents to sleep on a mat in the visitation room. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | This provision remains at beginning compliance.   Please see Dr. Ezike's updated report. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision. | |

|  | 2. Develop processes of continuous monitoring residents with stable medical issues, i.e. the care for diabetic residents who are on an insulin regiment.<br> a. What are the medical requirements of the residents who need monitoring?<br> b. Who is responsible for the monitoring?<br> c. How are the records kept of the monitoring?<br>3. Provide training to staff on the policies, procedures and protocols for this provision.<br>4. Annual competency training. |
|---|---|
| Evidentiary Basis | Document review, observation and interviews |

### 13. Mental Health Care

| Provision 13.1 Mental Health Care | Henley-Young's contractor, Hinds Behavioral Health Services, shall provide adequate mental health services to all confined residents with a mental health diagnosis or serious mental health need, as indicated by the MAYSI-2. This shall include, but is not limited to, the provision of individual and group counseling sessions upon the request of a residents or the resident's parent/guardian, access to a mental health professional at the detention center, and the distribution and medical monitoring of psychotropic medications by a medical professional. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and training.  In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1. Ensure that the facility has a Standardized Assessment Tool i.e. the MAYSI-2 to use during the intake process.<br>2. Develop policies and procedures to address this provision.<br>3. Provide training to staff on policies and procedures and provide documentation of training.<br>4. Develop documentation that will track resident's progress during their stay at facility.<br>5. Ensure there is communication between Hines Behavioral Health Services, Juvenile Court Case Managers and Facility Staff on residents receiving mental health services.<br>6. Hire case management staff. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.2 Mental Health Care | Residents who are confined for longer than thirty (30) continuous days and who are prescribed psychotropic medications, shall be evaluated by a psychiatrist every thirty (30) days. Such evaluations may be performed by and through employees of Hinds Behavioral Health. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and training.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1.  Develop policies and procedures to address this provision.<br>2.  Provide training to staff on policies and procedures.<br>3.  Hire case management staff. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.3 Mental Health Care | Within 72 hours of a resident's admission to the facility, staff shall develop individual mental health treatment plans for residents who are under the care of a mental health provider. Treatment plans shall emphasize continuity of care and shall ensure that whenever possible, residents are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the resident's initial detention. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and training.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1.  Develop policies and procedures to address this provision.<br>2.  Provide training to staff on policies and procedures.<br>3.  Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>4.  Hire case management staff. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.4 Mental Health Care | Henley-Young shall develop and implement policies and procedures for referring residents in need of psychiatric services to a licensed psychiatrist for a timely mental health evaluation. Such services may be provided by and through employees of Hinds Behavioral Health. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and training.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1.  Develop policies and procedures to address this provision.<br>2.  Provide and document training to staff on policies and procedures.<br>3.  Hire case management staff.<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.5 Mental Health Care | Hinds County shall employ or contract for sufficient psychiatric services to permit a psychiatrist to fulfill the following functions:<br>a.  conduct needed psychiatric evaluations prior to placing residents on psychotropic medications;<br>b.  Monitor, as appropriate, the efficacy and side effects of psychotropic medications;<br>c.  Participate in treatment team meetings for residents under the psychiatrist's care;<br>d.  Provide individual counseling and psychotherapy when needed;<br>e.  Evaluate and treat in a timely manner all residents referred as possibly being in need of psychiatric services; and<br>f.  Provide adequate documentation of treatment.<br>g.  All evaluations and services outlined above may be performed and/or provided by and through employees of Hinds Behavioral Health or any other duly qualified Mental Health agency. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | The status of this provision remains as non-compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and training.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1.  Develop policies and procedures to address this provision. | |

|  |  |  |
|---|---|---|
|  | 2. Provide training to staff on policy and procedures and document training.<br>3. Hire case management staff.<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). |  |
| Evidentiary Basis | Document review, observation |  |

| Provision 13.6 Mental Health Care | The psychiatrist and/or counselors shall review, if necessary, incident reports, disciplinary reports, suicide watch logs, and lockdown logs of residents under their care to determine whether their treatment is working and, if not, how it should be modified. |  |
|---|---|---|
| Status | **Non-Compliance** |  |
| Discussion | The status of this provision remains as non-compliance. The facility still needs to hire mental health professionals and develops adequate policies and procedure and training. In addition the facility needs to review Dr. Boesky's updated report. Please see previous report (9th). |  |
| Recommendations | 1. The mental health of the residents in the custody of the facility needs to be closely monitored at all times.<br>2. The facility needs to develop policies and procedures to address this provision.<br>3. Provide and document training to staff on policies and procedures and document training.<br>4. Facility needs documentation from a mental health organization on plan of action for residents receiving a mental health services.<br>5. Hire case management staff.<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). |  |
| Evidentiary Basis | Document review, observation |  |

## 14.  Suicide Prevention

| Provision 14.1 Suicide Prevention | Henley-Young shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch. Suicide watch shall not be used as punishment. The "suicide cell" shall be reserved for residents for whom the "suicide cell" is deemed necessary in conjunction with this suicide prevention policy. |  |
|---|---|---|
| Status | **Beginning Compliance** |  |

| Discussion | The status of this provision remains as beginning compliance. The facility still needs to hire mental health professionals and develops adequate policies and procedure and ensure staff is trained properly.  In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). |
|---|---|
| Recommendations | 1. Develop policies and procedures to address this provision. (executed)<br>2. Provide and document training for staff on policy and procedures.<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program.<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). |
| Evidentiary Basis | Document review, observation |

| Provision 14.2<br>Suicide Prevention | Any residents placed on the highest level of suicide watch shall be evaluated by a mental health professional, ideally within 12 hours, but in no case longer than 24 hours of his or her placement on suicide watch. If a resident on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the residents shall immediately be transported to a local mental health facility or emergency room for evaluation and/or treatment. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision remains as beginning compliance.  The facility still needs to hire mental health professionals and develops adequate policies and procedure and ensure staff is trained properly.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1. Develop policies and procedures to address this provision. **(Executed)**<br>2. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>3. Provide training for staff on policies and procedures and document training.<br>4. Identify a mental health agency to help develop policies, procedures and protocols.<br>5. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program.<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). | |

| Evidentiary Basis | Document review, observation |
|---|---|

| Provision 14.3 Suicide Prevention | Residents on suicide watch shall participate in recreation, school, and any other structured programming. Residents shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely monitor residents on suicide watch, which includes logging activities every 15 minutes. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The facility still needs to hire mental health professionals and develops adequate policies and procedure and ensure staff is trained properly.   In addition the facility needs to review Dr. Boesky's updated report.   Please see previous report (9th). | |
| Recommendations | 1. Develop policies and procedures to address this provision with the assistance of a mental professional. (**Executed**) <br> 2. Provide and document training for staff on policies and procedures. <br> 3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. <br> 4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area. <br> 5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). | |
| Evidentiary Basis | Document review, observation | |

| Provision 14.4 Suicide Prevention | When a resident is placed on any level of suicide watch, a report shall be made within 24 hours to the resident's court, as well as to the resident's guardian, and his or her defense attorney. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The facility still needs to hire mental health professionals and develops adequate policies and procedure and ensure staff is trained properly.  In addition the facility needs to review Dr. Boesky's updated report.  Please see previous report (9th). | |
| Recommendations | 1. Develop policies and procedures for making and distributing the reports in this provision. (**Executed**) <br> 2. Provide training for staff on policies and procedures and document training. | |

|  |  |
|---|---|
|  | 3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program<br>4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). |
| Evidentiary Basis | Document review, observation |

### 15.  Family Support and Interaction

| Provision 15.1<br>Family Support<br>and Interaction | Visitation shall not be restricted or withheld from residents unless the detention center director determines that a visit will violate the security of Henley-Young or will endanger the safety of residents, visitors, or staff. Visitation should not be restricted as a form of punishment. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The status of this provision remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.2<br>Family Support<br>and Interaction | Within 90 days of the effective date of this Settlement Agreement, Henley-Young shall provide accommodations that allow residents to have contact visits with their families. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation  and interviews | |

| Provision 15.3 Family Support and Interaction | Visitation shall be regularly scheduled at least three times per week, which shall include evening and/or weekend visitation times in order to encourage family visitation. Henley-Young shall permit the minor siblings of confined residents to participate in visitation, as long as the minors' parent or guardian is present during the visit and the siblings are not harmful to the residents who are detained at Henley-Young. Henley-Young shall also permit a confined resident's own child (ren) to participate in visitation | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains at substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.4 Family Support and Interaction | Residents may receive phone calls from their attorneys. At the discretion of the Director or assignee, in emergency situations, residents may receive phone calls from parents, primary caretakers, or legal guardians. Emergency phone calls and phone calls from attorneys should not be restricted as a form of punishment. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facility remains at partial compliance on this provision based on my most recent visit and document review.  During this visit and interviews with youths and review of documentation, the statements below remain.<br><br>Based on my review of documents, residents are now able to mail and receive letters as part of access to supportive relationships that residents have with families and others in the community. Although, there were only 8 incoming and 23 outgoing letters for the year 2016; this is a vast improvement. Once the case management staff are in place the letter volume will increase. This (mail) is a major part of the rehabilitative process. Staff now needs to be trained on policies and procedures and the facility should ensure that policy and procedures are being followed. During this visit and review of documents, I still found no indication that youth receive any contact from their attorneys until they enter court. Because there is no case management, youth are left to wonder about their case or its status. This provision has not been moved to substantial compliance because the residents still do not have full access to their legal team. I found no evidence that the residents have visits from their lawyers within the facility as established by best practices and professional standards within juvenile detention facilities:<br>    1) Privileged mail from court, attorney, | |

|  |  |
|---|---|
|  | 2) Visits from lawyers, paralegals or any legal support staff, 3) Provide a private place for confidential discussions, and 4) Have policies, procedures and protocols incorporated in resident's right to counsel. |
| Recommendations | 1. Develop policies and procedures and practices to address this provision. (**Executed**) 2. Provide and document training for staff on policies and procedures. 3. Ensure that there is proper staffing availability to maintain reliability. 4. Ensure that residents are allowed to mail letters.(County will pay for postage) 5. Hire case managers 6. Develop form for attorney to signed indicating their visits, for placement into youth files |
| Evidentiary Basis | Document review, observation and interviews |

### 16.    Miscellaneous Provisions

| Provision 16.1 Miscellaneous Provisions | Male and female residents shall be provided with equal access to educational and rehabilitative services, medical care, and indoor and outdoor recreation. |  |
|---|---|---|
| Status | **Partial Compliance** |  |
| Discussion | The status of this provision has moved to partial compliance.  During my observation and review of documents I found that although the facility is in the beginning stages of developing an adequate program for girls and boys, the girls are allowed more access to activities and outside recreation than in the past.  The facility should continue to develop this provision. |  |
| Recommendations | 1. Develop policies and procedures and practices for this provision. (**Executed**) 2. Cease in the designation of female residents as being solely responsible for laundry; this is a duty male residents can perform as well as females. (**Executed**) 3. Develop monthly recreational schedules. 4. Develop comprehensive facility schedules. 5. Provide training for staff on policies and procedures and document training. 6. Ensure that there is proper staffing availability to maintain reliability. 7. Repair court and goal area. 8. Posting of schedule on units. |  |

| Evidentiary Basis | Document review, observation, interviews |
|---|---|

| Provision 16.2 Miscellaneous Provisions | The parties agree, however, that henceforth:  All residents shall have the opportunity to engage in at least one hour of large muscle exercise a day. |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | The status of this provision has moved to beginning compliance. The facility has developed a recreation program and policies that details large muscle exercise.   However they must continue to develop their programs to ensure compliance.  In addition, there is a need to purchase equipment that is gender friendly and exposes youth to various activities.  Please continue to follow recommendations below. |
| Recommendations | 1. Develop policies and procedures and implement practices to address the needs of this provision.<br>2. Develop and implement programming and recreational schedules.<br>3. Provide and document training for staff on policies and procedures.<br>4. Ensure that there is proper staffing availability so that residents are not unnecessarily "locked" in their cells. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 16.3 Miscellaneous Provisions | Henley-Young shall implement a policy which prohibits staff from insulting residents or calling them names, and using profanity in the presence of residents |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | The status of this provision remains as beginning compliance. During my review, observation and discussion with youth, staff still at times uses profanity around youth and at youth.  Although it has reduced it is still an area that needs to be addressed by the facility's administration.<br><br>The recommendations below should be followed. |
| Recommendations | 1. Develop policies and procedures and practices to address the needs of this provision. **(Executed)**<br>2. Provide training to staff in the proper de-escalation techniques of residents.<br>3. Administration must provide enough supervision to reduce or eliminate insulting behavior by staff.<br>4. Discipline and retrain staff as needed. |

|  | 5. Provide training for staff on policies and procedures and document training.<br>6. Hire an independent person to investigate allegations of abuse or complaints regarding staff by residents. (**Executed**) |
| --- | --- |
| Evidentiary Basis | Document review, observation and interviews |

| Provision 16.4<br>Miscellaneous<br>Provisions | Henley-Young shall implement an adequate grievance policy that is accessible to all residents regardless of literacy levels, and that provides residents with the opportunity to appeal facility level determinations. Residents shall obtain the grievance forms from the school liaison. | |
| --- | --- | --- |
| Status | **Partial Compliance** | |
| *Discussion | This provision remains at partial compliance. I reviewed grievances from August 2016 to November 2016. During my interview with youth I found that several youths were unfamiliar with the grievance process. In my review of documents, as an example in the month of July, I found three (3) grievances that had no decisions, four (4) with no resolution by staff and five (5) youth released prior to grievance being completed. In November I found the same pattern as July, five (5) grievances not resolved by staff and 13 grievances released prior to completion. Therefore I recommend the facility continue to follow my comments from my previous reports and my recommendations from below. | |
| Recommendations | 1. Place grievance boxes on each unit and school, residents should not be required to request a grievance form.<br>2. Provide training for staff on policies and procedures and document training.<br>3. Provide training for residents on policies and procedures and document training.<br>4. Ensure that residents are adequately familiarized with the grievance process during their orientation into the facility<br>5. Add a place on the Resident's Grievance Resolution Report for a resident to request an appeal and place for the Director's resolution.<br>6. Ensure Resident's Grievance Resolution Reports are provided to the resident for their signature and their response to the outcome. If the resident disagrees with the resolution the resident has the right to appeal the decision to the director.<br>7. Any retractions of grievances should be done by residents and not by staff. | |
| Evidentiary Basis | Document review, observation, interviews | |

| | |
|---|---|
| Provision 16.5 Miscellaneous Provisions | Hinds County denies that Henley-Young does not currently have an adequate policy whereby residents can request to see their attorney and/or Residents Court counselor. The parties agree, however, that henceforth: Henley-Young shall develop and implement an adequate policy that allows residents of all ages and literacy levels with the opportunity to request to see their attorney and/or Resident's Court counselor. Residents shall obtain the form requesting a visit from his/her counselor from the school liaison. Henley-Young agrees to collaborate with the Plaintiffs to design and implement a comprehensive juvenile justice pre-service and in-service training program for detention center staff. Training shall include, but is not limited to, the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation, appropriate use of force and restraint, and best practices for detention center administration. |
| Status | **Beginning Compliance** |
| Discussion | The status of this provision remains as beginning compliance.  Based on my interviews with residents, there is still no indication they had the opportunity to meet with their public defender prior to or after their court hearings.  I did meet with the public defender along with the County counsel and the director of the facility to discuss options to implement a procedure for contacts.  In addition because the facility has no case management, it has become very difficult for residents to be updated on their case or the ability to discuss their case.  As recommending in other provisions and in my introduction, I am reiterating again that case managers are needed to ensure that residents are not falling through the cracks.<br><br>Again, based on my most recent visit and review of documents, residents are still complaining that they have not had the opportunity to speak with their attorneys. Also, in my review of the records, there was no indication that attorneys had been visiting. However, court counselors were seen during visit, present in the facility and seeing the residents. However, the counselor's presence does not represent my discussion with youth that they don't see their counselors and don't know what is happening with them or their case. Additionally, I found no forms for requesting visits from counselors, attorneys or school liaisons. And I found no training on the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation, appropriate use of force and restraint, and best practices for detention center administration. |

| | |
|---|---|
| | Even though the facility has developed a policy and procedures for this provision, it has to ensure there is consistency and follow through not just a document developed.  See Dr. Boesky's updated report. |
| Recommendations | 1. Develop policies and procedures and practices for this provision.<br>2. Provide and document training for staff on policies and procedures.<br>3. Develop single form and system for incident reporting.<br>4. Develop system for receiving and mailing privileged and non-privileged mail for residents.<br>5. Hire case management staff.<br>6.  Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). |
| Evidentiary Basis | Observation, interviews and Document reviews |

**Conclusion**

This is my tenth official visit to the Henley-Young Juvenile Justice Center.  The facility has moved various provisions from non-compliance to substantial compliance, which shows that the facility is moving in the right direction.

The facility must now focus on maintaining those provisions in compliance while developing the additional provisions above until they have moved and maintained substantial compliance for them all.  The County funding of the facility properly has been instrumental in moving this process forward.  The issue now is to maintain that funding and continue to support the facility's administration that is in place.

Even though the facility has developed numerous policies and procedures, and they are being operationalized; the signature of the Executive Director must be on all facility policies as the authorizer of all policies.  Prior to the issuance of any policy and to ensure that all parties are carrying out their responsibilities and agree with the policies and procedures as written, all parties (Medical Representative, Education Representative and the Mental Health Representative) must sign off on their particular policies along with the Executive Director.

Again, I appreciate the work of Dr. Linda Boesky, Dr. Ngozi Ezike and Mrs. Carol Cramer Brooks for their assistance through the insightful observations and reports that have been submitted to the courts and copies to all parties involved. I would also like to thank the Hinds County Board, County Attorneys Anthony Simon and Pieter Teeuwissen, County Administrator Carmen Davis, facility staff, and the facility Director Johnnie McDaniels for their assistance and cooperation.

LEONARD DIXON