# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION
## HONORABLE DANIEL P. JORDAN III, U.S. DISTRICT JUDGE

## J.H., ET AL, VS HINDS COUNTY MISSISSIPPI
### 3:11-CV00327 DPJ-FKB

### Monitoring Compliance Report:

### Report Draft Date March 19, 2018
### Report Date March 22, 2018

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
MAR 22 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

### Submitted by
### Leonard B. Dixon, MSPA
### 24420 Crescent Drive
### Woodhaven, MI  48183
### 734 642-7412
### Email home: lbdixon1@comcast.net
### Email work: leonard.dixon@cookcountyil.gov

# The
# Twelfth Monitor's Report
# Henley-Young Juvenile Justice
# Leonard B. Dixon

**Background**
See previous reports for background history and to become familiar with this consent decree.

**Recommendations based on findings, observations and interviews**
Result of visit on December 13, 2017 to December 15, 2017

**Documentation provided and reviewed**
Jackson Fire Department Fire Inspection Report dated November 21, 2017 (no expiration date on
   License)
Pre-Engineered Restaurant Fire Suppression System Report dated December 8, 2017
Commission on Dietetic Registration card for Tanya D. Kisner expires August 2018
Hinds County Sheriff's Office Active Juvenile Listing dated August 24, 2017 (14 residents)
Youthful Offender Reporting excel sheet (14 residents)
Food Establishment Inspection Report expires April 28, 2018
Food Service Menus prepared by Summit for 4 weeks approval date July 1, 2017
Henley-Young Juvenile Justice Center Organization Chart
MH treatment plan CHS regarding short term stay residents performed by Susan Gabel on
   November 28, 2017
MH treatment plan CHS regarding long term stay residents performed by Savannah Felix on
   December 2, 2017
Maintenance Housekeeping Schedule from 2 am to 10 am
Pending Policy on Hunger Strike
Notification of Due Process Hearings:
   August 24 – Resident J. C. (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
   August 30 – Resident K. R. (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements, Hearing Decision and
      Administrative isolation)
   August 30 – Resident R.J. (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements, Hearing Decision and
      Administrative isolation)
   September 7 – Resident M. G (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
   September 20 – Resident K. H.  (Included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
   October 2 – Resident T. L. (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
   October 4 – Resident J. P. (included with form Due Process Rights, Notice of
      Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
   October 14 – Resident P.P.  (Included with form Due Process Rights, Notice of

2

Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

October 17 – Resident T. L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

October 20 – Resident T. M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

October 20 – Resident J. H. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

October 23 – Resident S. W. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, and Hearing Decision)

October 30 – Resident J. H. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

October 30 – Resident T. L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, and Hearing Decision)

November 14 – Resident T. A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report and Hearing Decision)

November 14 – Resident D.L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, and Hearing Decision)

November 16 – Resident C. S. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report and Hearing Decision)

November 21 – Resident T. A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 26 – Resident O. M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 27 – Resident R. J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 27 – Resident D. L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 27 – Resident J. C. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 29 – Resident G. B. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

November 29 – Resident P. T. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

December 5 – Resident R. J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report and Hearing Decision)

December 5 – Resident F.B. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report and Hearing Decision)

December 5 – Resident S. E. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report and Hearing Decision)

December 11 – Resident D. J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

December 11 – Resident C. S. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

Hinds County Employee Compensatory Time Report ran date-September 2017

Receiving Reports from Bob Barker for:

Various purchase orders etc. for December 2016

1 purchase order dated June 2017 I (sticky note saying "items purchased in bulk, no
    Orders needed for the month of July-November 2017)
1 receiving report dated March 2017

Supply Requisitions:
    July 2017 – 14 requisitions
    August 2017 – 9 requisitions
    September 2017 – 2 requisitions
    October 2017 – 4 requisitions
    November 2017 – 4 requisitions

Departmental Budget for 2018 with attachments:
- Letter from HC Board of Supervisors to McDaniels regarding budget for FY 2018 and amendments
- Budget from 2016 – 2017 to 2017 - 2018

Quality Assurance Monthly Incidents Reports for months:
    November 2017 – 26 incidents
    October 2017 – 24 incidents
    September 2017 – 15 incidents
    August 2017 – 12 incidents
    July 2017 – 3 incidents

HY JJC – Juveniles Charged as Adults for:
    September 6, 7, 8, 11, 12, 13, 14, 15, 18, 20, 21, 22, 25, 26, 27, 28 and 29

Daily Roster sheets for months:
    July 2017 (missing 1-16, 22, 23, 29 and 30)
    August 2017 (missing 5, 6, 11-14, 19, 20, 22, 26 and 27)
    September 2017 (missing 2-4, 9, 10, 16, 17, 23, 24 and 30)
    October 2017 (missing 1, 6, 7, 8, 10, 14, 15, 21, 22, 24, 28, and 29) * all dates included
        have sheets for Juveniles Charged as Adults attached
    November 2017 (missing 1, 2, 4, 5, 10, 11, 12, 16-19, 23-26) * all dates included have
        sheets for Juveniles Charged as Adults attached

Visitation Logs:
    September 2017 (dated 10, 20, 24, 28 and 30)
    October 2017 (dated 1, 5, 7, 12, 14, 15, 19, 20,22,26,28, and 29)
    November 2017 (dated 2, 4, 5, 9, 11, 12, 16, 18, 23, 25, 26, and 30)
    December 2017 (dated 2, 3, 7, 9, 10, 14, 16 and 17)

Juveniles Charged As Adults (JCAA) Visitation Logs:
    January (dated 1, 5, 8, 12, 22, 26, and 28)
    February (dated 2, 4, 5, 9, 12, 23, 25, and 26)
    May (dated 6 – no one visited)
    July (dated 1, 6, 8, 9, 16, 20, 22 – no visit, 25, 29, and 30)
    August (dated 19, 20, 24, and 31)
    September (dated 3, 13, 14, 16, 17, 23 - no visit, 24,

Use of Force Incidents by Pods for months:
> November 2017 – 5
> October 2017 – 9
> September 2017 – 3
> August 2017 – 3
> July 2017 – Not submitted

Weekly Schedule for 4 Units * only gave HT summer weekly schedule

Daily Recreation Schedule for 4 units from July 2017 to December 2017
> (Payton missing October) including a Christmas and New Year Holiday schedule

Quality Assurance Due Process Isolation Log Report
> November 2017 – 10 residents
> October 2017 – 9 residents
> September 2017 – 3 residents
> August 2017 – 2 residents

Quality Assurance Audit Report with pictures:
> Dated July 5, 2017 re: Master file timeframe to correct TBD
> Dated July 10, 2017 re: behavioral point system timeframe to correct TBD
> Dated July 11, 2017 re: facility walkthrough timeframe to correct TBD
> Dated (report not dated) re: JCAA visitation via video surveillance timeframe to correct TBD
> Dated October 2, 2017 re: behavior point system timeframe to correct TBD
> Dated November 6, 2017 re: facility walkthrough timeframe to correct 11/13/17 with Follow-up stated
> Dated November 13, 2017 re: resident grievance food taken timeframe to correct Immediately

Quality Assurance Resident Master File Audit:
> Resident F. B DOB 5/1/03
> Resident L. M DOB 9/14/00
> Resident A. T. DOB 10/7/99
> Resident C. W. DOB 11/22/99
> Resident R. J. DOB 6/14/00

Quality Assurance Daily Population Records for months:
> November 2017
> October 2017
> September 2017
> August 2017
> July 2017

Quality Assurance Audit Reports for months/dates:
November 2017
> Restraint by type table
> Suicide watch log total 11residents
> Suicide attempt/self-injury etc. table
> Incident by month graph total 26 incidents
> Confinement hours table/graph
> Use of force incident table totaled 5 incidents
> Incident by shift graph total 26

Incident by location
Resident monthly total 475
October 2017
Restraint by type table
Suicide watch log total 15 residents
Suicide attempt/self-injury etc. table
Incident by month graph total 24 incidents
Confinement hours table/graph
Use of force incident table totaled 9 incidents
Incident by shift graph total 24
Incident by location
Resident monthly total 464
September 2017
Restraint by type table
Suicide watch log total 10 residents
Suicide attempt/self-injury etc. table
Incident by month graph total 15 incidents
Confinement hours table/graph
Use of force incident table totaled 3 incidents
Incident by shift graph total 15
Incident by location
Resident monthly total 402
August 2017
Restraint by type table
Suicide watch log total 5 residents
Suicide attempt/self-injury etc. table
Incident by month graph total 12 incidents
Confinement hours table/graph
Use of force incident table totaled 3 incidents
Incident by shift graph total 12
Resident monthly total 187
July 2017
Restraint by type table
Suicide watch log total 11 residents
Suicide attempt/self-injury etc. table
Incident by month graph total 3 incidents
Confinement hours table/graph
Use of force incident table totaled 0 incidents
Incident by shift graph total 3
Resident monthly total 364
HYJJC CAP based on findings and recommendations by Mississippi Division of Public Safety
Planning (DPSP) Juvenile Facilities Monitoring (JFMU) dated July 31, 2017 with resolution and
follow up on 8 findings
HYJJC CAP based on findings and recommendations by Mississippi Division of Public Safety
Planning (DPSP) Juvenile Facilities Monitoring (JFMU) dated October 24, 2017 with resolution
on 3 findings

Phone call logs 2017:
       Initial Phone Call Log (?) dated:
              February 7
              November 22, 29
              December 6
       Tubman Pod dated:
              September 5, 12
              October 3, 17, 24
              December 11, 12
       Davis Pod dated:
              July 19, 26
              August 30
              September 20, 27
              October 11, 18
              November 14, 15, 28, 29
              December 5, 6
       Payton Pod dated:
              July 17, 24, 31
              August 15, 28
              December 4, 11
       JFK Pod dated:
              July 18, 19
              August 9, 16
              September 5, 20
              October 10, 11, 17
              November 14
Training sign in sheets for months:
       New employee orientation dated July 17, 2017 to July 21, 2017 (6 employees)
       Certification Training dated August 7, 2017 (10 employees)
       40 hours refresher courses dated August 28, 2017 to September 1, 2017 (6 employees)
       New employee orientation dated October 9, 2017 to October 13, 2017 (6 employees)
       40 hours refresher courses dated October 30, 2017 to November 3, 2017 (6 employees)
       Certification Training dated November 6, 2017 to November 21, 2017 (8 employees)
HYJJJ Monthly Grievances submitted:
  (Note: 1 grievance submitted not dated nor signed by Resident T. L.  Re: ant in food/snack)
       July 2017 – 4 grievances submitted by residents
       August 2017 – 1 grievance submitted by resident
       September 2017 – 8 grievances submitted by resident
       October 2017 – 9 grievances submitted by residents
       November 2017 – 12 grievances submitted by residents
HYJJC Resident Incident Report/Use of Force/Unusual Incident Reports
       December 2017 – 7 residents (includes some checklists, witness statements and
              Medical forms)
       ***November 2017 – 24 residents (includes some checklists, witness statements and
              Medical forms) *** includes an UI report regarding resident D. W.
              attempted escape from hospital

October 2017 – 18 residents (includes some checklists, witness statements and
Medical forms)
September 2017 – 14 residents (includes some checklists, witness statements and
Medical forms)
August 2017 – 9 residents (includes some checklists, witness statements and
Medical forms)
July 2017 – 2 residents (includes some checklists, witness statements and
Medical forms)
Case Management Initial Assessment File on Resident T. L. File #: 57824
Case Management Initial Assessment File on Resident K. R. File # 54688


**Staff Interviewed**
Malcolm Sanders, Recreation Supervisor, 2 years
Victor Johnson, Recreation Coordinator, 2 years and 5 months
Alan Hines, Training Coordinator, 6 months
Brenda Frelix, QMHA
Eddie Burnside, Operations Manager
Eric Dorsey, Quality Assurance Manager
Johnnie McDaniels, Director
Melvin Priester, Judge Hinds County Youth Court
Tamika Barber, Case Manager
Mashara Cook, Case Manager
Ferniece Galloway, Case Manager
Kenyatta Robinson, Food Service Director
Shirley Jones, Cook
Cornell Johnson, Cook


**Youth Interviewed**
Resident M. G. 17 years old
Resident C. B. 16 years old
Resident T. L. 17 years old
Resident J. J. 16 years old
Resident P. T. 15 years old
Resident K. R. 16 years old
Resident O. M. 14 years

## Introduction

This report is my twelfth (12th) official visit to the Henley-Young Juvenile Justice Center and to report the progress made since my previous visit.  On December 13, 2017 through December 15, 2017, I conducted an official inspection and review of the facility.  In this report, I  detailed my findings from my visit which are based on the following criteria: 1) observations, 2) interviews, 3) subject matter expertise in operating juvenile institutions, 4) best practices in juvenile justice, 4) document reviews, and 6) video and audio reviews.

I would like to again thank the staff, facility administration, the County administrator and the Hinds County attorneys for their continued cooperation in this process. Additionally, in my discussions and interviews with the courts and administration I found a more collaborative tone developing as it relates to best practices on behalf of the facility, an observation also shared by Dr. Boesky in her discussion of her professional findings. At this time there is a greater spirit of cooperation between all parties involved which is without question a better situation for the children and staff involved. This is a process which can be very arduous and challenging in the best of environments, consequently the county, the courts and the facility administration should be given great praise for working together as a team for the betterment of youth and families in Hinds County.

## Facility and Operational Culture

Since my last visit the facility's culture, which has been on a continuous improvement path with regards to the needs of the daily juvenile population, is good. However, with the new influx of Juveniles Charged as Adults, (JCAs) a new direction of care has to be addressed, and there has to be an integration of care for juveniles and JCAs. Although there may be a degree of separation in their physical locations within the facility, there must be equal level of services provided to each group at all times. As stated in my previous reports my major concern with the facility housing young adult residents from the county's jail is Henley-Young staff's ability to manage these more aggressive residents. I am concerned that staff be adequately and appropriately trained and have applicable supervision as it relates to this new group of young adults based on their higher-level of erudition and systems knowledge.

The facility will need greater services from Hinds County Behavior Health Services and all other outside volunteer groups that provide services. The three case managers appear to be very engaged with the residents and there appears to be a continuity of care developing at Henley-Young. Now that policies and procedures have been developed, it is only a matter of making them consistent and the practices becoming part of the facility culture.

As stated in my previous report, the facility must continue to focus on the following:

A. **Adequately training staff** –With the entering of JCAs, training must be updated to address new use of force, control of force and the development of a restraint team (RTs) and a more robust staffing plan. The young adults transferring from the Hinds County Jail, the facility has to ensure staff is trained extremely well and that they become familiar with differences as it relates to the current juveniles population and the new

young adult population who have already been exposed to the adult system and can be more aggressive. (see previous report)

B. **Hiring and train case managers** – Continue to train the case managers on the policies and procedures and follow their progress. I will review the program on my next visit for continuity and practice.

C. **Implementation of mental health programs** – The facility still needs to hire a clinical psychologist PhD level. ( see Dr. Boesky's report)

D. **Develop MOU with Jackson Public Schools** – During this visit I found that several of the JCAs had not be integrated into the school system and were not participating in the school program. There has not been an MOU with Jackson Public School which should be prepared. It must be understood that education is a part of the daily programming and must be provided and made available to all youth in the facility. Although, these residents are JCAs they are still a part of the educational process and must be provided with schooling. (See Mrs. Brooks report filed 11/2017).

E. **Develop recreation programs and purchase additional equipment for youth** – The facility continues to do a good job in providing recreation for male and female residents. However, I would recommend more activities for girls as one of their complaints is that they don't receive the same level of recreation as the boys. I believe with the addition of the female recreation specialist these complaints will be reduced.

F. **Update cameras and intercom systems** - the facility continues to work on these areas. The camera and intercom systems are critical for safety and security of staff and youth and vital for investigations. The County still needs to work on this matter.

G. **Continue to improve medical system** –Dr. Ezike will provide report.

H. **Renovate and redesign unused space** –Based on my review the county has made no inroads or provided any support for changes in this area.

I. **Continue to maintain cleanliness and repairs of the facility** – The County should continue to support the cleanliness of the facility and provided resources for repairs and maintenance. The County has done an outstanding job from the beginning of the process to present and should be commended. The administration should continue its efforts in maintaining the facility.

J. **Develop an adequate case management system** – The facility has a case management system and has new policies and procedures. I will review these on my next visit for continuity and practice.

K. **Develop and maintain adequate data collection system** – The County needs to develop a structure for an IT system data collection/processing system A Project Manager and an IT person are needed to help develop the type of information system needed. (See my previous report).

**Facility Staffing**
I have made recommendations to the County for the population to be set a 32 youth, this is an opportunity now to reclassify some positions as it relates to staffing. (See December 4, 2017 memorandum). The facility now has nine (9) vacancies which should be filled.  As stated above, with young adults transferring from the Hinds County Jail, the facility has to ensure staff is trained extremely well and that they become familiar with differences as it relates to the current juveniles population and the new young adult population who have already been exposed to the adult system and can be more aggressive. For that reason I am recommending an enhanced and more robust staffing as well as training program. This enhanced staffing would consist of a certified Restraint Team (RTs) and members of the restraint team being assigned to each shift. The County will need to hire several new staff for these enhanced positions and to train several of the existing Henley-Young staff to make-up this new team. There is a national organization **Controlled F.O.R.C.E Inc**. that can assist the County in the training of this new team and help the new team in developing different methods to adequately handle this new and challenging milieu. This company has been effective in assisting youth oriented agencies in developing staff. The company has been able to use verbal and physical control methods to better improve safety and to effectively manage the juveniles better in care. The program course curriculum covers a variety of body positioning drills, verbal de-escalation programs, takedowns, subject control tactics, handcuffed positioning and restraint applications in addition to team restraint tactics. There is also a train- the- trainer module that will enhance the current training program(s) at Henley- Young and the programs would be more cost-effective. As stated by the company "This program can be customized to best help reduce injuries and provide staff with the skills needed to be safe and effective". As stated previously, I have used this program in my facility for several years and it has been an excellent addition to our training and staffing structures.

**Training**
The facility should continue its training program.

**Building Cleanliness/Environmental Issues/Maintenance**
See previous report.

**Professional Standards of Care/Sustainability**
See previous report.

**Mental Health**
See Dr. Boesky's report 12/2017.

**Suicide Prevention**
See Dr. Boesky's report 12/2017.

**Behavior Management/Isolation**
There has been an uptick in behavior management -isolation with the JCA resident. During my unannounced visit in August the JCA residents were being locked-down and shackled during their time outside for recreation. This was a clear attempt to ensure that the control of the facility was not lost to this new resident type. I don't think it was used in the way of intimidation but

more as a way to control, however, this practice was discontinued after a discussion with the administration. During my next two subsequent visits, the practice had been discontinued and none of the JCAs that I interviewed mentioned the practice continuing.

## Medical, Medication Review & Disposal
 See Dr. Ezike's updated report and recommendations based on her most recent 2017 visit. All medical policies must be revised for the juveniles at Henley Young.

## Food Service
The food service continues to improve based on my interviews with the residents and my review of the menus and interviews with the staff.

## 89-day program (Secure Intervention Unit)/Juvenile Court
At this point in time, the 89-day program has been disbanded and the facility case managers are doing a very good job of providing assistance and case management work to the residents at the Henley-Young. At this juncture practice and consistency will be part of my next review.

## School
Mrs. Brooks' has provided an updated report and recommendations based on her visit.

## Juveniles Charged as Adults
**(\*\*) represents juveniles charged as adults added to the center. These youth JCAs must meet the terms of the provisions the as juveniles housed at Henley- Young.**

Below are the compliance ratings and summary of ratings used in this report. However, as stated above the facility continues to make progress on provisions.

**Please note again that some of the comments and recommendations in the provisions are restatements of previous reports because in those areas minor or some movement has been made. The Director should use these comments as a road map to continue developing the facility plan. He should also continue to develop comprehensive corrective action plans for guidance. That plan should have the following:**

    **A.  Clearly state the problem or weakness, including the root cause**

    **B.  List the individuals who will be accountable for the results of the corrective action plan**

    **C.  Create simple, measurable solutions that address the root cause**

    **D.  Each solution should have a person that is accountable for it**

    **E.  Set achievable deadlines**

    **F.  Monitor the progress of the plan**

**The graph below has been included to show the progress made thus far on the 71 provisions:**



**Compliance Code Measurements**

**Substantial Compliance (SC)**: Practices follow the county-approved policies, training materials or other documents; practices follow policy with rare exception and exceptions lead to corrective action; trained staff fill all positions and vacancies are filled within 3 months; the County has completed work in an acceptable manner; policies, procedures and practice and training are fully operational and quality-assurance audited and audit exceptions lead to corrective action; outcomes meet or exceed agreement requirements.

**NOTE:** Provisions labeled (SC*) will be or were eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016.

**Partial Compliance (PC)**: Policy and procedure is implemented in some but not all locations or times; staff are hired but not trained; the County is working on implementation but tasks are not completed; system implemented at some but not all locations or times, outcomes meet or exceed agreement requirements some of the time and in certain area.

**Beginning Compliance (BC)**: Policy and procedure is written by the county but has not been implemented; funding and hiring authority are approved by the County but positions are not filled; training materials prepared and approved by the county but training has not started.

**Non-Compliance (NC)**: No action taken and immediate steps needed to maintain schedule or prevent further delay. A policy may exist, but the policy may need significant revision or modifications and rarely translates into practice.

| Provision | Intake | 9th Report | 10th Report | 11th Report | 12th Report |
|---|---|---|---|---|---|
| 1.(1) | All Residents Admitted to Henley Young | NC | NC | BC | BC |
| 1.(2) | MAYSI-2 Mental Health Screening | NC | NC | BC | BC |
| 1.(3) | Prescription Medications | NC | BC | BC | BC |
| 1.(4) | Meal Compliance | SC | SC* | SC* | SC* |
| 1.(5) | Telephone Usage | SC | SC* | SC* | SC* |
| 1.(6) | Strip Search Policy | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Staffing and Overcrowding** | | | | |
| 2.(1) | Direct Care Staff Ratio | NC | BC | SC | SC |
| 2.(2) | Maximum Capacity Adjustment | SC | SC* | SC* | SC* |
| 2.(3) | One-Person Cell | SC | SC* | SC* | SC* |
| | | | | | |
| **Provision** | **Cell Confinement** | | | | |
| 3.(1) | Structured, Rehabilitative & Educational Programming | BC | PC | PC | PC |
| 3.(2) | Appropriate Access to Living Unit | NC | BC | PC | PC |

| | | 9th Report | 10th Report | 11th Report | 12th Report |
|---|---|---|---|---|---|
| 3.(3) | Dangerous Residents | NC | BC | BC | BC |
| 3.(4) | Isolation | BC | PC | SC | SC |
| 3.(5) | Direct Care Staff on Units | BC | PC | SC | SC |
| | | | | | |
| **Provision** | **Structured Programming** | | | | |
| 4 | Educational, Rehabilitative, and/or Recreational Programs | BC | BC | PC | PC |
| | | | | | |
| **Provision** | **Individualized Treatment Plans/Treatment Program for Post-Disposition Residents** | | | | |
| 5.(1) | Residents Access to Adequate Rehabilitative Services | NC | NC | BC | PC |
| 5.(2) | Health and/or Substance Abuse Treatment | NC | NC | BC | BC |
| 5.(3) | Treatment Plans | NC | NC | BC | BC |
| 5.(4) | Review of Individual Treatment Plans | NC | NC | BC | PC |
| 5.(5) | Evening and Weekend Programs and Activities | NC | NC | BC | PC |
| 5.(6) | Quality Assurance Program | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Disciplinary Practices and Procedures** | | | | |
| 6.(1) | Implement a Discipline Policy and Practice | NC | BC | PC | PC |
| 6.(2) | Policy for Residents Violations | NC | BC | PC | PC |
| | | | | | |
| **Provision** | **Use of Restraints** | | | | |
| 7.(1) | Mechanical Restraints | PC | SC | SC | SC* |
| 7.(2) | Mechanical Restraints – Transportation** | SC | SC | SC | SC |
| 7.(3) | Misuse of Mechanical Restraints | SC | SC | SC | SC* |
| 7.(4) | Mental Health – Use of Mechanical Restraints | BC | BC | BC | BC |
| 7.(5) | No Restraint Chairs, Chemical Restraints and/or Tasers | SC | SC* | SC* | SC* |
| 7.(6) | No Hogtying in Facility | SC | SC* | SC* | SC* |
| 7.(7) | Mechanical Restraints – One-On-One Supervision | SC | SC | SC | SC* |
| 7.(8) | Mechanical Restraints – Notice to Medical Professional | PC | SC | SC | SC |
| 7.(9) | No Electronic Restraints | SC | SC* | SC* | SC* |
| 7.(10) | No Firearms in Facility | SC | SC* | SC* | SC* |
| | | | | | |
| **Provision** | **Use of Force** | | | | |
| 8.(1) | No Misuse of Use of Force | NC | BC | PC | PC |
| 8.(2) | Notice to Medical Professional After Use of Force | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Meals and Nutrition** | | | | |
| 9.(1) | All Meals and Snacks Must Be Nutritional | PC | PC | SC | SC |
| 9.(2) | Comply with Nutrition Guidelines | BC | PC | SC | SC |
| 9.(3) | Provide Drinking Water Throughout the Day | PC | SC | SC | SC |

| Provision | Clothing | 9th Report | 10th Report | 11th Report | 12th Report |
|---|---|---|---|---|---|
| 10 | Provide Basic Clothing Items | PC | SC | SC | SC |
| | | | | | |
| | **Hygiene and Sanitation** | | | | |
| 11.(1) | Provide Appropriate Hygiene Products | PC | SC | SC | SC |
| 11.(2) | Provide Sleeping Mats and Blankets | SC | SC | SC | SC |
| 11.(3) | No Deprivation of Mats and Blankets | SC | SC* | SC* | SC* |
| 11.(4) | Sufficient Sanitary Mats and Blankets | SC | SC* | SC* | SC* |
| 11.(5) | Clean and Sanitary Environment | BC | PC | PC | PC |
| 11.(6) | Fire Safety, Weather Emergencies, Sanitation Practices, Food Safety, and Provide Safe Environment | BC | PC | PC | PC |
| 11.(7) | Clean Drinking Glasses and Eating Utensils | PC | SC | SC | SC |
| | | | | | |
| **Provision** | **Medical Care** | | | | |
| 12.(1) | Provide Residents with Adequate Medical Care | NC | BC | BC | BC |
| 12.(2) | Provide Medical Professional When Needed | NC | BC | BC | BC |
| 12.(3) | Implement a Sick Call Policy to Ensure 24 Hour Services | NC | BC | BC | PC |
| 12.(4) | Prescription Medications Only Dispensed by Medical Staff | NC | BC | BC | PC |
| 12.(5) | Provide Medical and Mental Health Services | NC | BC | BC | PC |
| 12.(6) | Proper Monitoring Residents Who Require Individualized Attention | BC | BC | BC | BC |
| | | | | | |
| **Provision** | **Mental Health Care** | | | | |
| 13.(1) | Provide Adequate Mental Health Care | NC | NC | NC | BC |
| 13.(2) | Residents and Psychotropic Medications | NC | NC | NC | NC |
| 13.(3) | Within 72 Hours of Admittance Complete an Individual Mental Health Treatment Plan | NC | NC | NC | NC |
| 13.(4) | Implement Policies and Procedures for Referrals | NC | NC | NC | NC |
| 13.(5) | Sufficient Psychiatric Services | NC | NC | NC | NC |
| 13.(6) | Psychiatrist and/or Counselors to Record Review to Ensure Proper Care | NC | NC | NC | NC |

| Provision | Suicide Prevention | 9th Report | 10th Report | 11th Report | 12th Report |
|---|---|---|---|---|---|
| 14.(1) | Multi-tiered Suicide Prevention Policy | BC | BC | BC | BC |
| 14.(2) | Evaluate Highest Level of Suicide Watch Every 12 Hours by Medical Professional | BC | BC | BC | BC |
| 14.(3) | Closely Monitor Suicide Watch Residents During All Activities | BC | BC | BC | BC |
| 14.(4) | Court Shall be Notified Within 24 Hours of Any Residents on Suicide Watch | BC | BC | BC | BC |
|  |  |  |  |  |  |
| Provision | Family Support and Interaction |  |  |  |  |
| 15.(1) | Visitation Shall Not Be Restricted or Withheld | SC | SC* | SC* | SC* |
| 15.(2) | Provide Accommodations for Contact Visits | SC | SC* | SC* | SC* |
| 15.(3) | Visitation Shall be Regularly Scheduled | SC | SC* | SC* | SC* |
| 15.(4) | Phone Calls Shall be Allowed Based on Policy | PC | PC | PC | PC |
|  |  |  |  |  |  |
| Provision | Miscellaneous Provisions |  |  |  |  |
| 16.(1) | Provide Equal Access to All Services | BC | PC | SC | SC |
| 16.(2) | Provide the Opportunity to Participate in Large Muscle Exercise Every Day | NC | BC | PC | PC |
| 16.(3) | Prohibit the Use of Profanity in the Presence of Residents | BC | BC | BC | BC |
| 16.(4) | Provide Adequate Grievance Policy | PC | PC | PC | PC |
| 16.(5) | Provide Residents of All Ages with the Opportunity to See Their Attorney and/or Residents Court Counselor | BC | BC | BC | BC |

**The following are my observations and recommendations specific to the provisions of this agreement. It should be noted that my introductory comments are integral measures of the provisions and should be seen as such.**

### 1. Intake

| | |
|---|---|
| Provision1.1 Intake | All residents admitted to Henley-Young shall receive a health screening, within 1 hour of admission or as soon as possible as reasonably thereafter, by appropriately trained staff as required by Mississippi Code Annotated § 43-21-321. Information obtained during the screening shall include, but shall not be limited to, the juvenile's: (a) Mental health; (b) Suicide risk; (c) Alcohol and other drug use and abuse; (d) Physical health; (e) Aggressive behavior; (f) Family relations; (g) Peer relations; (h) Social skills; (i) Educational status; and (j) Vocational status." Mississippi Code Ann. § 43-21-321(1). During this screening, Henley-Young shall obtain information regarding the resident's educational status by having the residents or intake officer complete an education screening form developed and provided by the Jackson Public School District. |
| Status | **Beginning Compliance ** |
| Discussion | The provision remains at beginning compliance. The facility has developed policies/procedures.  However, the County is still in the process of hiring a psychologist to oversee the qualified mental health professionals (QMHP). Mental health and medical screening are extremely important. During this transition of adding Juveniles Charged as Adults (JCAs) into the facility will require the additional mental health services necessary, due to the maturity and sophistication of this new group of youth entering Henley-Young. Again, as stated in my previous report, the County still has to develop a scope of service that would detail the following areas as it relates to mental health services being provided for youth at Henley Young:   1. Psychiatric evaluations   2. Medication management   3. Therapy services (individual, group and family)   4. Follow-up case management   5. Patient and family education   6. Specializes in the treatment of mentally ill pregnant females   7. Tele psychiatric services  Dr. Boesky has provided an updated report and recommendations based on her visit.  According to Dr. Boesky, there still needs to be more strength- based questions added to the intake screening process. Please see her report.  There continues to be youth who are entering the facility who are identified based on the MAYSI-2 screening who have identified suicidal and mental health risks that are not being addressed. |

| Recommendations | 1. Fully develop admitting policies and procedures to reflect provision<br>2. The court should provide staffing for intake purposes<br>3. The facility should provide enough staff to fully cover the care and custody issues in the facility<br>4. Ensure all staff who admit residents are properly trained<br>5. Develop training records<br>6. Provide documentation in an organized way on residents being screened/admitted (files)<br>7. Hire Doctoral Level Clinical Psychologist.<br>8. Ensure all residents' records are available for my review with all areas of the provisions placed in the resident's file<br>9. Dr. Boesky has provided an updated report and recommendations based on her last visit. |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 1.2 Intake | All residents shall receive a MAYSI-2 mental health screening upon admission, as required by Mississippi Code Annotated § 43-21-321. The screening will be conducted in private by appropriately trained staff of Henley-Young. If the screening indicates that the residents is in need of emergency medical care or mental health intervention including, but not limited to, major depression, suicidal ideation, withdrawal from drugs or alcohol, or trauma, the detention staff shall refer those juveniles to the proper health care facility or community mental health service provider for further evaluation immediately or as soon as reasonably possible. | |
|---|---|---|
| Status | **Beginning Compliance\*\*** | |
| Discussion | This provision remains at beginning compliance.  The facility has initiated a new MAYSI mental health screening tool and has developed policies/procedures.  However, the County is still in the process of hiring a Doctoral Level psychologist to oversee the qualified mental health professionals (QMHP).<br><br>Dr. Boesky has provided an updated report and recommendations based on her last visit.<br><br>Continue to develop and follow mental health plan. | |
| Recommendations | 1. Develop comprehensive policy and procedures for this provision.<br>2. Develop resident files that are organized and arranged properly<br>3. Develop training and provide documentation of training<br>4. Identify person or person(s) whose responsibility is to score the instrument | |

|  |  |
|---|---|
|  | 5. Provide documentation on who reviews the instrument and note what services are provided for the residents in the facility and what services should continue when the residents leave the facility<br>6. Develop process whereby facility staff and court employees develop a system for the sharing of information and reviewing of residents' files which are centrally located and accessible to detention staff.<br>7. Develop plan of action for follow-up services upon a youths release<br>8. Dr. Boesky updated report and recommendations based on her last visit.<br>9. Add drug, Alcohol and Trauma to the screening.<br>10. Hire doctoral level psychologist |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 1.3 Intake | Prescription medications will be secured for all residents who have a valid, current prescription within 8 hours of admission, if possible, but in no case, longer than 24 hours after admission, including weekends and holidays. If during a resident's detention, a medical professional either prescribes a new medication or renews a resident's previous prescription medication, Henley-Young will secure the prescription medication within 8 hours of receiving the prescription, if possible, but in no case, longer than 24 hours after receiving the new prescription, including weekends and holidays. Henley-Young shall procure and/or purchase all prescription medications prescribed to confined residents. |
|---|---|
| Status | **Beginning Compliance **** |
| Discussion | This provision remains at beginning compliance. In my discussion with Dr. Ezike, she informed me that although Henley-Young has improved its medical services, those reforms should be geared more towards juvenile care rather than adults. Please review Dr. Ezeke's upcoming report. |
| Recommendations | 1. Hire a Medical Doctor, physician's assistant or a practitioner. This person must be involved in developing the medical department and to direct medical care.<br>2. Maintain written policy and procedures or protocol for this provision<br>3. Document staff training on distribution and side effects of medication<br>4. Provide documentation on efforts to obtain prescription drugs<br>5. Dr. Ezike will provide an updated report and recommendations based on her visit |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 1.4 Intake | Upon admission to Henley-Young, all residents shall be offered a snack or meal in compliance with the United States Department of Agriculture's School Meals Program standards. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility has maintained substantial compliance on this provision based on my observation, interviews and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.5 Intake | Upon admission to Henley-Young, all residents shall be permitted to telephone a parent or legal guardian free of charge and to take a shower before being placed on the pod. | |
|---|---|---|
| Status | **Substantial Compliance**** | |
| Discussion | The facility has remained at substantial compliance on this provision, based on my observation and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.6 Intake | Within 60 days of the date of this agreement, Henley-Young shall develop and implement policies that limit strip searches to instances where Henley-Young staff has an articulable suspicion that a resident may possess weapons or contraband. Anytime a strip search is conducted, Henley-Young staff must document, in writing, their suspicion, obtain permission from a supervisor, and conduct the search in a manner that minimizes the intrusion into the resident's privacy. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision remains at partial compliance. See my previous reports and my discussion on safety and security. | |
| Recommendations | 1. Staff must be provided with the necessary training with information stating the trainer, name of the training class/course, time, date and location of training. | |

| | |
|---|---|
| | 2.   This documentation should be kept and logged in facility records.<br>3.   Continue to provide enough staff for adequate coverage 24/7. |
| Evidentiary Basis | Document review, observation, interviews |

## 2        Staffing and Overcrowding

| | |
|---|---|
| Provision 2.1<br>Staffing and<br>Overcrowding | Within 90 days of the date of this agreement, Henley-Young shall operate with a direct care staff to resident ratio of 1:8 from the hours of 6:00 a.m. until 10:00 p.m. and a ratio of 1:10 from the hours of 10:00 p.m. to 6:00 a.m. |
| Status | **Substantial Compliance**\*\* |
| Discussion | The status of this provision has moved to substantial compliance **at this time**.<br><br>Although, this provision will need modification, I understand that Hinds County has ceased its practice of strip searching residents during the admission process at Henley-Young unless there is an articulable suspicion that a resident possesses weapons, drugs, or contraband and is in the process of implementing a policy that complies with the consent decree.<br><br>The facility has hired adequate direct care staff and has hired case managers. The facility has not yet hired a Doctor Level Psychologist. See Dr. Boesky's Report.<br><br>The County should be commended for providing adequate funding and ensuring that the population remains capped at 32.  My concern is that although the facility is capped at 32, young adults who may be transferred to the facility from the County Jail will stay longer and the population may increase.<br><br>At this time, the staffing continues to lends itself to a more professional, safe and secure environment for staff and youth.  Facilities that are properly staffed and trained are safer and conditions of confinements and accountability are improved. |
| Recommendations | Duty Post Staffing/Administration |

| Units | Day Shift | Evening Shift | Night Shift | Total |
|---|---|---|---|---|
| A officer | 3 | 3 | 2 | 8 |
| B officer | 3 | 3 | 2 | 8 |
| C officer | 3 | 3 | 2 | 8 |
| D officer | 3 | 3 | 2 | 8 |
| Intake | 1 | 1 | 1 | 3 |
| Master Control | 1 | 1 | 1 | 3 |
| Staff for Court Transportation | 2 | 2 | | 4 |
| Internal Transportation | 2 | 2 | | 4 |
| Laundry | 2 | 2 | | 4 |
| *Director | 1 | | | |
| *Deputy Director | 1 | | | |
| *Operation Manager | 1 | | | |
| Supervisors | 3 | 3 | 2 | 8 |
| | 26 | 23 | 12 | 61 |

61 Direct care/supervisor/laundry staffing X 1.5 Relief Factor—Total staff needed to effectively operate the facility—91.5
1 to 8 Awake—1 to 10 Sleep

Misc. post coverage
Medical/MH Hospital Runs       *  Hire  Doctoral Level Clinical Psychologist
One on One MH/Medical Visitation
*Administration
*Maintenance

See December 24, 2017 Memoranda on Reduction/Appropriation of staffing and incentives.

| Evidentiary Basis | Document review, observation, interviews |
|---|---|

| Provision 2.2 Staffing and Overcrowding | If the staff-to-resident's ratio falls below the requirements of section 2.1 for longer than two (2) days, the Director or his assignee shall immediately identify residents accused of nonviolent offenses who are eligible for less restrictive alternatives to secure detention and request an emergency release for eligible residents from the appropriate Residents Court. The maximum capacity of Henley-Young shall be calculated by determining how many direct care staff members can supervise residents in accordance with section 2.1. The current maximum capacity of Henley-Young is 84. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 2.3 Staffing and Overcrowding | No more than one resident shall be placed in a one-person cell. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation | |

### 3   Cell Confinement

| Provision 3.1 Cell Confinement | Residents shall be engaged in structured, rehabilitative, and educational programming outside of their cells during the hours of 7:00 a.m. to 9:00 p.m. each day, including weekends and holidays. | |
|---|---|---|
| Status | **Partial Compliance\*\*** | |
| Discussion | This provision remains in partial compliance. During this visit and as a result of my document review I found that the Juveniles Charged as Adults (JCAs) population has increased to high of 14. Also I found that these youth were not attending school and that only one JCA a 13- year old was attending the school program after he had been in the facility for over a week. The other JCAs were on their units during the school hours. School is a major component of facility programming and should be seen as such. Therefore, while youth are in Henley-Young educational services must be provided. Consequently, the facility remains in at partial compliance. Please see: Ms. Brooks report. | |
| Recommendations | 1.  Continue to maintain policies and procedures for this provision. Ensure JCAs are included in programming.<br>2.  Review the schedules to be sure that they adequately reflect all daily activities.<br>3.  Develop positive behavior management systems with rewards and consequences for all youth including JCAs.<br>4.  Remove the dark film from the Plexiglas in towers on unit which would allow staff to view the unit without there being visual obstruction (when lights on). **Executed**<br>5.  Develop monthly recreation and education schedules for all youth juvenile and JCAs.<br>6.  See all of the recommendations for recreation activities and programming and for the school in the introduction.<br>7.  Purchase frames for facility activities and schedule<br>8.  Hire recreation staff<br>9.  Fully develop award and incentive program<br>10. Facility administrators documented walkthroughs<br>11. Also, see Ms. Brooks-Report | |
| Evidentiary Basis | Document review, observation, interviews | |

Henley Young Juvenile Justice Center
Twelfth Monitoring Compliance Report
March 22, 2018

| Provision 3.2 Cell Confinement | Except when residents are in protective custody or confined subject to section 3.3 of this Settlement Agreement, residents placed in the Suicide or Booking cells shall be allowed to spend the hours of 7:00 a.m. to 9:00 p.m. on the appropriate living unit and to have the opportunity to engage in structured, rehabilitative, and educational programming, unless medically counter-indicated. | |
|---|---|---|
| Status | **Partial Compliance*** | |
| Discussion | The status of this provision remains in partial compliance. During my review of documents, observations and discussion with staff and youth, I still found no indication of youth being placed in the booking area for suicide watch, living or programming. However, I did find JCAs who were not in school were maintained in their units and rooms as a safety precaution. I can understand why this was happening. As stated in my last report, "youth transitioning from a jail environment, which is operated by sworn officers to Henley-Young, which is staffed by unsworn staff may lead to an increase in violence towards both staff and other residents. Plainly this new group of youth must be adapted to the Henley-Young culture, which takes time. Since this transition has occurred, the facility administration and staff must ensure that training, vigilance and strong programming is in place. During this visit and during multiple phone conferences I made this clear. The current juvenile programming is doing much better, now the facility must incorporate the new JCAs into it. I will review for improvement during my next visit.

Also, see Ms. Brooks report | |
| Recommendations | 1. Continue to follow recommendations as set forth in section 3.1.<br>2. Continue to maintain adequate policies and procedures for this provision.<br>3. Develop data collection for residents who are placed in protective custody or confinement.<br>4. Residents who are removed from school should continue to be placed in a designated living area based on classification.<br>5. Ensure JCAs are integrated into regular programming and only in units and rooms when appropriate.<br>6. See Ms. Brooks report | |
| Evidentiary Basis | Document review, observation, interviews | |

| | |
|---|---|
| Provision 3.3 Cell Confinement | Residents who pose an immediate, serious threat of bodily injury to others may be confined in their cells for no longer than 12 hours at a time without administrative approval. Residents who are placed on cell confinement for this reason shall be released from their cells daily to attend school, maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on residents who are subject to cell confinement every 15 minutes. Staff must document all instances of cell confinement in writing and must document the justification for determining that a resident poses an immediate, serious threat of bodily injury. |
| Status | **Beginning Compliance**\*\* |
| Discussion | This provision remains in beginning compliance. As stated in provision 3.2, the transition of JCAs being placed at Henley-Young has disturbed the natural order to a certain extent of staff supervising only juveniles to now supervising JCAs. Although the administration and staff are working hard, it is still not easily or readily done overnight. The facility continues to transition as it relates to receiving JCA's. On one of my visits leg irons were being used to ensure that these youth would not escape. During my most recent visits that practice had stopped. Now the facility must ensure that JCA's are participating in school and also actively participating in all programing and are not locked in their rooms or kept back on the units during school or any other time for safety precautions unless there is a true need for room or unit confinement.<br><br>Also see Ms. Brooks report |
| Recommendations | 1. Continue to ensure staff is following policies and procedures for this provision.<br>2. For residents placed in their rooms, ensure the forms that have been developed are being used to indicate the time residents will be in their rooms and post it on their doors.<br>3. Continue to ensure that supervisors sign off on the form in 15-minute staggered visual checks when residents are placed in their rooms.<br>4. Continue to develop a system of major and minor consequences for behavior.<br>5. Develop form for 15-minute checks and include in policy. (**Executed**)<br>6. Ensure JCAs are placed in regular programming<br>7. Ensure JCAs are attending school and not in their rooms or units all day. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 3.4<br>Cell Confinement | Residents shall not be automatically subjected to cell confinement and/or isolation upon their admission to Henley-Young unless he or she would be subject to cell confinement under section 3.3. | |
|---|---|---|
| Status | **Substantial Compliance\*\*** | |
| Discussion | This status of this provision remains in substantial compliance as it relates to juveniles. Therefore, the facility should continue to follow the policies and procedures as it relates to this provision. I found no indication that regular juvenile residents are being automatically subjected to isolation upon their admission to the facility. However, based on my review of documents and my observation, JCA's are being maintained within the unit and are not fully integrated into the facility programing. Therefore since JCAs are now being transferred to Henley-Young this provision must be reviewed based on the new population and my interpretation of provisions 3.2 and 3.3, which I will review upon my next visit and my unannounced visits. The facility has come a long way nevertheless, the County must ensure with this very new population that it does not fall backwards. I will review upon my next visit. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision.<br>2. Continue to ensure all staff is trained and document training.<br>3. See provision 3.2 and 3.3<br>4. Continue to ensure practice is consistent with policy and procedure.<br>5. Continue to ensure there is adequate staffing and supervision for this area | |
| Evidentiary Basis | Document review, observation | |

| Provision 3.5<br>Cell Confinement | At all times between the hours of 7:00 a.m. to 10:00 p.m., at least one direct care staff shall be stationed on any living unit where two or more residents are placed, and direct care staff shall be actively engaged with residents. From 10:00 p.m. to 7:00 a.m., staff shall conduct visual checks on residents every 15 minutes. Henley-Young shall ensure that every cell has an operating intercom that allows residents to communicate with staff at all times. | |
|---|---|---|
| Status | **Substantial Compliance \*\*** | |
| Discussion | This provision remains in substantial compliance. Based on my review and observation, I continue to find that staff is now in the living areas where the youths are. This is due in part to the adequacy of staff and the population cap remaining at 32 which provides for staff to monitor and supervise without there being an interruption in programming. I did find staff was actively engaged during my visit. However, I would recommend more administrative unannounced visits on the evenings and night shifts. In | |

|  | addition, the administration must ensure its adequacy of staff as it relates to JCAs. I will review upon my next visit. |
| --- | --- |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision including JCAs into regular programming.<br>2. Continue to maintain adequate staffing.<br>3. Continue to maintain Provide adequate staff supervision.<br>4. See my last report<br>5. Continue to maintain and review the deployment of staffing especially with JCAs in mind.<br>6. Do more administrative unannounced visits during the night shift |
| Evidentiary Basis | Document review, observation, interviews |

**Structured Programming**

| Provision 4<br>Structured<br>Programming | Henley-Young shall administer a daily program, including weekends and holidays, to provide structured educational, rehabilitative, and/or recreational programs for residents during all hours those residents shall be permitted out of their cells, pursuant to section 3.1. Programming shall include:<br>    a.  activities which are varied and appropriate to the ages of the residents;<br>    b.  structured and supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship; and<br>    c.  Supervised small group leisure activities, such as a wide variety of card and table games, arts and crafts, or book club discussions. |
| --- | --- |
| Status | **Partial Compliance \*\*** |
| Discussion | The status of this provision remains at partial compliance.<br><br>The facility has done a very good job as it relates to developing programming for juveniles, and this should continue. The recreation staff is motivated and is continuously developing activities and securing outside programming for the residents. The staff has developed an outstanding activity room in the multipurpose area of the building with games, TV and some workout equipment. This should be commended.<br><br>Now the administration must develop programming for the JCAs who have been transferred to the facility and include them into the overall facility programming. Structured education for these youth is a must as most are limited in their educational progress and are also behind in their academic |

| | |
|---|---|
| | pursuits, which much research has shown. Frankly many of these youth cannot read. Therefore, any programming must include the JCAs and continue to have the following:<br><br>As stated in my previous reports,<br><br>A. Comprehensive policies and procedures<br>B. Reasonable rules and expectations<br>C. Order<br>D. Organization and clarity<br>F. Clear rewards and incentives<br>G. Reasonable and consistently implemented sanctions<br>H. Case management to ensure youth are there is a collaborative process that assesses, plans, implements, coordinates, monitors, and evaluates the options and progress youth are making during their stay.<br>I. good programming which includes an all-inclusive educational program.<br><br>**It should be noted as stated in my previous report, that education is a major component of programming in a juvenile facility including the JCAs therefore programming, scheduling and school should be tied together**. |
| Recommendations | 1. Continue to develop adequate policies and procedures for this provision, which includes JCAs.<br>2. Continue to provide adequate schedules for weekdays and weekend programming and act on it including JCAs.<br>3. Continue to develop an adequate monthly recreation schedule with age appropriate games and programs.<br>4. The facility need to hire an officer dedicated to developing and monitoring recreational programs**. (Executed)**<br>5. Hire case management staff.<br>6. See recommendation on school in introduction. |
| Evidentiary Basis | Document review, observation, interviews |

### 5. Individualized Treatment Plans Treatment for Post-Disposition Residents

| | |
|---|---|
| Provision 5.1 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents have access to adequate rehabilitative services. Henley-Young shall ensure that children placed in the facility post-disposition will receive constitutionally compliant rehabilitative services. |
| Status | **Partial Compliance**** | |

| | |
|---|---|
| Discussion | This provision has moved to partial compliance. The facility has hired 3 case managers. My review of document and interviews with youth reveals the case managers are conducting interviews, providing counseling, assessments, facilitating group meetings and providing the needed advocacy youth were lacking in the past. They are also meeting with parents and providing assistance within the courts on a regular basis. All of the youth I spoke with knew their case manager. The only concerns the youth and the case managers had was the availability of court counselors and public defenders and there providing of information on the youth's court progress and disposition. It would be a good idea if the facility would allow case manages to visit other facilities to see how a case management system works in other juvenile detention facilities. In addition, I would recommend the county allow case managers to visit the adult court where JCAs cases are being processed. This would provide an important understanding in the JCAs transitioning and keep them abreast of their case, which may reduce the young adult's anxiety during their wait at Henley-Young. Dr. Boesky has provided an updated report. (See Dr. Boesky's report.)<br><br>The case managers need to also develop post-dispositional plans as stated in the provision. |
| Recommendations | 1. Continue to develop adequate policy and procedures to meet this provision to include JCAs.<br>2. Continue to review light weight residents in program (i.e. disturbing the family peace) and find alternative placement for them.<br>3. Hire 3 case managers who are assigned and work for the facility director. (executed)<br>4. Hire case management staff.  (executed)<br>5. See Dr. Boesky's report |
| Evidentiary Basis | Document review, observation, interviews |

| | |
|---|---|
| Provision 5.2 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents in need of mental health and/or substance abuse treatment and/or who are in the facility post disposition shall have appropriate treatment plans developed and implemented in accordance with generally accepted professional standards of practice for mental health and rehabilitative services. |
| Status | **Beginning Compliance**\*\* |
| Discussion | The status of this provision remains in beginning compliance.  It should be noted that the facility hired case managers however they have not hired a Clinical Psychologist at the Doctoral level as recommended by Dr. Boesky. |

| | The facility has developed some mental health policies and procedures and training. |
| --- | --- |
| | Dr. Boesky has provided an updated report and recommendations based on her visit. |
| Recommendations | 1. Continue to develop adequate mental health policies and procedures for this provision to include JCAs.<br>2. Develop case management policies and procedures<br>3. See recommendations under (5.1).<br>4. Hire case management staff. (executed)<br>5. Purchase case management system<br>6. See Dr. Boesky's Report. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.3 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall implement policies and procedures for the required content of treatment plans, which shall include;<br>    a. That the treatment plan be individualized;<br>    b. An identification of the mental and/or behavioral health and/or rehabilitative issues to be addressed;<br>    c. A description of any mental health, medication or medical course of action to be pursued, including the initiation of psychotropic medication;<br>    d. A description of planned activities to monitor the efficacy of any medication of the possibility of side effects;<br>    e. A description of any behavioral management plan or strategies to be undertaken;<br>    f. A description of any counseling or psychotherapy to be provided;<br>    g. A determination of whether the type or level of treatment needed can be provided in the resident's current placement; and<br>    h. A plan for monitoring the course of treatment, and if necessary, for revising the treatment plan.<br>    i. A description of the precise terms the of the facility's long-term and short-term objectives for the residents, the full range of services to be provided, and procedures, and timetables and staff assignments for the implementation of such treatment plan;<br>    j. A plan for regularly engaging the family in the resident's treatment  plan;<br>    k. A comprehensive re-entry plan that will assist the residents Re-enroll in their home school and access medical, mental health, Vocational and rehabilitative services based in the community. | |
| Status | **Beginning Compliance\*\*** | |

| Discussion | The status of this provision remains in beginning compliance.  The facility has hired 3 case managers and is in the process of developing adequate policies and procedures and training. The county also needs to hire a Clinical Psychologist. Dr Ezike will provided an updated report based on her visit.<br>Dr. Boesky has provided an updated report and recommendations based on her visit. |
|---|---|
| Recommendations | 1. Develop comprehensive policies and procedures for this provision that includes the contents (A-K).<br>2. The County/Court shall define the criteria for the program<br>   a. It is important that post dispositional programs in other facilities be reviewed.<br>   b. Often seeing what is being done in other facilities provides insight into how to develop and operate these programs.<br>3. Provide dedicated staff to manage program. (**Executed).**<br>4. Provide intensive training to all staff members.<br>   a. Train staff in various treatment modalities i.e. cognition, behavioral modification, modeling, psychotherapy, reality therapy, group therapy and group dynamics and other skills.<br>   b. Create treatment teams<br>   c. Develop case planning and program development<br>   d. Assessment of the program to determine if it meets the needs of the court placed residents.<br>   e. Assessment tool to regularly monitor the success or lack of success of all residents in the program.<br>5. Provide auxiliary training to all other direct care staff.<br>6. Hire case management staff. (executed) |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.4 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall institute a program of periodic staff reviews every three weeks and evaluations of each resident's progress under his/her individualized treatment plan and of  the appropriateness of the plan itself and Henley-Young's plan for such review. | |
|---|---|---|
| Status | **Partial Compliance**\*\* | |
| Discussion | The status of this provision has moved to partial compliance.  The facility has hired case managers and they are working with the residents. The facility must train all staff on the case management process. The case managers also need to ensure that they are up to date with JCAs and their court processes. Dr. Ezike will provide an up-to-dated recommendation | |

| | based on her review. Dr. Boesky has provided an updated report and recommendations based on her visit. |
|---|---|
| Recommendations | 1. Develop comprehensive policies and procedures for this provision to include JCAs.<br>2. Provide training to all staff.<br>3. Identify roles and responsibilities of direct care, treatment and educational staff through policies and procedures and adequate funding and staffing.<br>4. Hired case management staff. (**Executed**)<br>5. Hire a Doctoral Level Clinical Psychologist. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.5 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall develop and implement a program that provides for evening and weekend programs and activities that allow residents to engage in meaningful activities. | |
|---|---|---|
| Status | **Partial Compliance\*\*** | |
| Discussion | The status of this provision has moved to partial compliance.  The facility has hired case managers and has developed adequate policies, procedures and now training is needed for all staff. The facility has also hired an additional female recreational staff to ensure activities are provided to male and female residents.  They have also developed a schedule of activities that is posted on each pod. | |
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision to include JCAs.<br>2. Continue to provide adequate staffing for this program.<br>3. Continue to develop a monthly recreational program with activities.<br>4. Continue to keep records of activities provided and note those that were not provided and why.<br>5. Purchase board games etc. (executed)<br>6. Hire recreational staff. (executed)<br>7. Hire case management staff.  (executed) | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 5.6 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall develop and implement an adequate quality assurance program. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision still remains at partial compliance.   The QA department at Henley-Young continues to develop their data fields and programs.  There is significant improvement from limited data being produced to what is being developed now.  The QA staff should be commended and encouraged to continue their effort.  Based on my discussion with the administration, the county's IT department will be working with the facility to create and develop different data sets that will produce reports. The data sets and system will provide the facility with a technology that can evaluate current operations and improve management decisions.<br><br>The following is from my previous reports and needed:<br>• I have provided the facility with templates for assistance in the full development of the Q/A unit/ process.<br>• See QA Data decision points below | |



| | |
|---|---|
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision for the facility, school program and SICU program. |
| | 2. Health Care: continuously assess the quality and adequacy of the health services provided, accurately evaluate the performance of staff providing health services and address identified deficiencies. |
| | 3. Recreation and Social programs: continuously assess the quality and adequacy of social and recreational programming provided; accurately evaluate the performance of staff in providing these programs. |
| | 4. Environmental Health and Safety: continuously assess the quality and adequacy of environmental health and safety, accurately evaluate the performance of staff in providing a safe and healthy environment and properly address identified deficiencies. |
| | 5. Discipline and order: continuously monitor use of discipline and promptly address misuse or over use of discipline and other identified deficiencies. |

|  | 6. The facility must continue to develop monthly performance measures to indicate achievement in the desired area.<br>7. Review State of Florida Quality Assurance Model and for assistance in developing contact CJCA Performance Based Standard for Juvenile Detention Programs, also use ACA standards to establish policy guidelines.<br>8. Develop data collection system<br>9. See introduction and chart |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

### 6   Due Process/Isolation/Disciplinary Practices and Procedures

| Provision 6.1 Disciplinary Practices and Procedures | Henley-Young shall implement a discipline policy and practice that incorporates positive behavior interventions and support. This policy shall include guidelines for imposing graduated sanctions for rule violations and positive incentives for good behavior. |
|---|---|
| Status | **Partial Compliance**\*\* |
| Discussion | This provision remains in partial compliance.<br><br>The facility still needs to ensure that staff is following the policies and procedures when youth are placed in rooms, particularly JCAs.  The facility still needs to develop a process for youth who have been identified and are receiving mental health services. Please see introduction.<br><br>Dr. Boesky has provided an updated report and recommendations based on her visit. |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision to include JCAs.<br>2. Continue to ensure youth are familiar with the rules and regulations of the facility during the orientation process and ongoing thereafter including JCAs.<br>3. Continue ensure residents are receiving and understand the resident handbooks during orientation and sign for it including JCAs.<br>   a) They shall include resident's rights, major and minor rule violations and the grievance policy.<br>   b) The handbook will explain to residents in their own language the rules and shall also be explained by staff that will have them sign and date a form indicating that both processes have occurred.<br>   c) These rules shall be posted on each unit.<br>4. Due process rules shall be posted on each unit. (**Executed**)<br>5. Develop positive behavior intervention programs. |

|  | 6. Assign and train an independent person(s) to handle due process isolation hearings. The person(s) must be independent of the unit staff. (executed) 7. Ensure residents who are in isolation are provided recreation and education services. (**Executed**) |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 6.2 Disciplinary Practices and Procedures | Residents who violate major rules may be subject to cell confinement for up to 24 hours for a single rule violation. An occasion in which a resident is alleged to have contemporaneously violated multiple major rule violations shall count as a single rule violation for the purposes of this section. No residents shall be confined to a cell for longer than 8 hours for a single rule violation without receiving written notification of the alleged rule violation and the occurrence of a disciplinary review/due process hearing before an impartial staff member, which includes participation by the accused residents. Under no circumstances shall residents be subjected to involuntary cell confinement for longer than 24 hours for disciplinary purposes. Residents who are placed on cell confinement shall be released daily from their cells to attend school, maintain appropriate personal hygiene, and to engage in one hour of large muscle exercise. |
|---|---|
| Status | **Partial Compliance \*\*** |
| Discussion | This provision remains in partial compliance.  Although the facility had moved to partial compliance based on my last review, there still is a need for educational services to be provided for youth on isolation and behavior management this now including JCAs. Although, JCA's are a new population they must be provided the same level of services as juveniles. |
| Recommendations | 1. Continue to maintain policies and procedures for this provision including JCAs. 2. Develop sheets to place on door of any residents in confinement that identifies the reason for confinement and is review and signed by supervisor. (**Executed**) 3. Ensure residents in confinement receive education and recreation services. 4. See 6.1 recommendations. 5. Continue to provide training for all staff on these policies and procedures. 6. JCA's are incorporated into this provision. |
| Evidentiary Basis | Document review, observation, interviews |

## 7. Use of Restraints

| Provision 7.1<br>Use of Restraints<br>Mechanical | Mechanical restraints shall not be used to punish residents or for the convenience of staff. Mechanical restraints shall only be used to prevent self-harm and/or harm to others, subject to section 7.4, and for transportation to and from court, subject to section 7.2. |
|---|---|
| Status | **Substantial Compliance \*\*** |
| Discussion | The facility remains at substantial compliance. Again, I reiterate it should be noted that well run facilities only use mechanical restraints for transportation or exigent circumstances which may arise at any facility under supervisory approval. The facility must ensure that mechanical restraints are not used capriciously with JCAs. Based on my introductory comments, as it relates to behavior management/isolation I will review this process again during my next visits to ensure **JCAs are not shackled**. |
| Recommendations | 1. Officers shall continue to receive training on policies and procedures.<br>2. Officers shall continue be trained on when it is appropriate to use mechanical restraints also with JCAs.<br>3. All training shall continue to be documented.<br>4. The policy will require the documentation of any use of mechanical restraint and use of force incidents. (executed)<br>5. Restraint log should continue to be implemented.<br>6. Continue to follow policy |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 7.2<br>Use of Restraints<br>Mechanical | Nothing in this section shall prohibit mechanical restraints from being placed on residents who are being transported to and from court or out of the facility, if staff have reason to believe that a resident presents a flight risk or is an imminent danger to the residents or others, or will engage in violent behavior. However, mechanical restraints should be removed immediately after the resident is placed in a cell and at no time shall a resident be placed in a cell wearing mechanical restraints. |
|---|---|
| Status | **Substantial Compliance\*\*** |
| Discussion | With the exception of the JCA's being shackled during one of my visits (please see my introduction) The facility remains at substantial compliance on this provision at this time.  Based on my review of documents, interviews with youths and observations at this time. I found no indication of overuse of mechanical restraints with the exception of transferring residents out of the facility.  This should continue. The facility must ensure that mechanical restraints are not used capriciously as stated in provision 7.1 as it relates to JCA's. |
| Recommendations | 1. Continue to develop and provide remedial training for this provision including JCA's. |

| | |
|---|---|
| | 2. All training shall continue to be documented.<br>3. The policy will require the documentation of any use of mechanical restraint and use of force incidents. (executed)<br>4. Operationalize the edicts of this provision. (executed)<br>5. Additional supervision needed to ensure mechanical restraints are not misused.<br>6. Continue to follow the process to remain at substantial compliance including JCAs.<br>7. Ensure JCA's are included in this provision. |
| Evidentiary Basis | Document review, observation, video recordings and discussion with residents |

| Provision 7.3<br>Use of Restraints | Restraints shall not be used to secure residents to a fixed object such as a restraint chair, bed, post, or chair. | |
|---|---|---|
| Status | **Substantial Compliance  \*\*** | |
| Discussion | The facility remains at substantial compliance on this provision. Based on my review of documents, interviews with youths and observations at this time I still found no indication of overuse of mechanical restraints with the exception of transferring residents out of the facility.  However, to remain at substantial compliance the facility needs to continue to follow the recommendations (2, 3 and 4) below. Also, the facility should ensure mechanical restraints are not used capriciously with JCAs. | |
| Recommendations | 1. Update the comprehensive policies and procedures for this provision, this should also include JCAs.<br>2. Continue to provide training for staff within the facility as described above on this provision and provide documentation of training.<br>3. Develop and use a mechanical restraint log. (executed)<br>4. Continue to provide training on de-escalation techniques to try to use mechanical restraints only as a regular part of facility transport.<br>5. Additional supervision needed to ensure mechanical restraints are not misused. | |
| Evidentiary Basis | Interviews, observation and document review | |

| Provision 7.4 Use of Restraints | No residents shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional or if determined to be necessary under section 7.2 or as reasonably necessary to prevent the residents from engaging in acts of self-harm or harm to others. If a resident must be restrained for longer than 15 minutes in order to prevent self-harm, that residents shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility. | |
|---|---|---|
| Status | **Beginning Compliance**** | |
| Discussion | This provision remains at beginning compliance.  Dr. Boesky has provided an updated report and recommendations based on her visit. Although the facilities medical department (QCHC) has a policy in place as it relates to **restraints,** it is adult concentrated and must be revised for the juveniles at Henley -Young. | |
| Recommendations | 1. Continue to develop comprehensive policy and procedures for this provision with mental health professionals including JCAs. 2. Provide training for staff on policy and procedures and document training. 3. Provide training on de-escalation techniques including JCAs. 4. Develop Mental Health protocols for this provision including JCAs. 5. Hire mental health professional or agency (see Dr Boesky's report. 6. Revise restraint policy for juveniles | |
| Evidentiary Basis | Document review | |

| Provision 7.5 Use of Restraints | Henley-Young shall not use, or allow on the premises, restraint chairs, chemical restraints and/or Tasers. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision.  Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, video | |

| Provision 7.6<br>Use of Restraints | Henley-Young shall not subject residents to "hogtying," which is the practice of placing a resident's face down on a bed, floor, or other surface, and securing the resident's hands to his feet. | |
|---|---|---|
| Status | **Substantial Compliance\*\*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision. Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation, document review and interviews | |

| Provision 7.7<br>Use of Restraints | When a resident is placed in mechanical restraints, staff must provide one-on-one supervision for the duration of the restraint, except when mechanical restraints are deemed to be necessary for the reasons specified in section 7.2. | |
|---|---|---|
| Status | **Substantial Compliance  \*\*** | |
| Discussion | The status of this provision is maintained at substantial compliance. (see comments on JCAs) see 7.1, 7.2 and 7.3<br><br>The facility should continue with following the recommendations listed below. | |
| Recommendations | 1. Continue to provide on-going training for staff on policies and procedures including JCAs.<br>2. Continue to document all training provided to all staff including JCAs.<br>3. Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional.<br>4. Restraint log should be implemented.<br>5. Continue to ensure additional supervision is provided to ensure mechanical restraints are not misused. | |
| Evidentiary Basis | Document review | |

| Provision 7.8 Use of Restraints | Henley-Young shall notify a medical professional whenever a resident is placed in mechanical restraints for reasons other than those specified in section 7.2. A medical professional shall examine the residents as soon as possible after restraints are removed, except when the residents was restrained for the reasons specified in section 7.2. | |
|---|---|---|
| Status | **Substantial Compliance \*\*** | |
| Discussion | The status of this provision remains in substantial compliance. (See comments on JCAs) <br><br> Based on my review of documents, interviews and discussion, I found that mechanical restraints are rarely used within the facility. (However ,**See comments on JCAs**) | |
| Recommendations | 1. Redevelop comprehensive policies and procedures for this provision including JCAs**. (Executed)** <br> 2. Continue to provide training on policies and procedures including JCAs. <br> 3. Continue to document all training provided to all staff. <br> 4. Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional. <br> 5. Continue to ensure that information being reported is accurate and consistent. <br> 6. Develop a single matching reporting system for the entire facility. Including JCAs | |
| Evidentiary Basis | Document review | |

| Provision 7.9 Use of Restraints | Hinds County does not currently and shall not in the future allow officers to enter the secure detention area of the facility with any electronic restraints, including, but not limited to Tasers. | |
|---|---|---|
| Status | **Substantial Compliance\*\*** | |
| Discussion | The facility has remained at substantial compliance on this provision based on my most recent visit and my observations and review of documents. However, the facility must ensure officers monitoring residents (JCAs) from the Hinds County Jail are not carrying mechanical restraints on their person within the facility and must follow the policies of Henley-Young. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review | |

| Provision 7.10 Use of Restraints | Henley-Young is required to ensure that no officer enters the secure detention area of the facility with a firearm. | |
|---|---|---|
| Status | **Substantial Compliance**** | |
| Discussion | I still would like to continue to commend the facility on maintaining substantial compliance with this provision.  Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision.  Also see provision 7.9 as it relates to Tasers.  I would also reiterate under no circumstances should any staff, anyone connected to the facility, and law enforcement etc. have firearms on the premises especially in secure areas.  All weapons still must be secured in appropriate locked areas of the building. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, Observation | |

### 8. Use of Force

| Provision 8.1 Use of Force | Physical force shall not be used to punish residents. Staff shall only use physical force to stop residents from causing serious physical injury to self or others or to prevent an escape. If physical force is necessary, staff must use the minimum amount required to safely contain the residents. Whenever possible, staff shall avoid the use of force by first attempting verbal de-escalation techniques. Staff shall be required to fully document in writing every instance of use of force. | |
|---|---|---|
| Status | **Partial Compliance **** | |
| Discussion | The status of this provision remains in partial compliance. The facility should continue to follow the recommendation from my last report.<br><br>Although the facility is computerizing some data (i.e. restraints, suicide attempts, self-injury, physical and mechanical restraint types, incident, confinement hours, use of force, and incidents by shifts) which is good information, it is not enough. The County should assist the facility in developing their information technology program.<br><br>Again, good data will assist the facility in determining answers to some of the following examples:<br>    A.  The location of use of force<br>    B.  The number of use of force incidents<br>    C.  The number of use of force requiring mechanical restraints<br>    D.  The type of restraint used<br>    E.  Grievances | |

| | |
|---|---|
| | F.  The number of incidents requiring chemical agents |
| | G.  The number of incidents involving non-lethal security devices (i.e. batons, Tasers, etc.) |
| | H.  The number of use of force incidents resulting in injury to residents or staff |
| | I.  Plan of action to address each incident (i.e. disciplinary action, staff training or remedial training, resident's isolation, resident's behavior management, resident's mental health screening or evaluation etc.) |
| Recommendations | 1.  Continue to maintain policy and procedures for this provision including JCAs.<br>2.  Continue to provide training for on policies and procedures including JCAs.<br>3.  Continue to document all training provided to all staff.<br>4.  Adapt an appropriate curriculum for training staff on the use of verbal de-escalation skill and safe use of physical restraints or mechanical restraints.<br>5.  Revise form to distinguish between physical and mechanical restraints.<br>6.  Develop an information technology program.<br>7.  Develop computerized tracking of all JCAs entering and leaving the facility<br>8.  Continue to stay in contact the National Partnership for Juvenile Justice for recommendations on training program in this area.<br>9.  Continue to document and file report when there is use of force.<br>10. Continue to ensure any time use of force is used residents are seen by a medical professional<br>11. Continue to follow the facility's chain of command which will reduce staff confusion. |
| Evidentiary Basis | Document review, interviews |

| Provision 8.2 Use of Force | Henley-Young shall notify a medical professional, including but not limited to the licensed practical nurse on duty whenever physical force is used against a resident. A medical professional shall examine a resident immediately after the use of physical force. | |
|---|---|---|
| Status | **Partial Compliance\*\*** | |
| Discussion | The facility continues to maintain partial compliance.  Dr. Ezike will provide an updated report and recommendations based on her visit.  Please continue to follow the recommendations below. | |
| Recommendations | 1.  Complete procurement of services as quickly as possible.<br>2.  Continue to develop comprehensive policies and procedures for this provision.<br>3.  Continue to provide on-going training to staff on policies and procedures.<br>4.  Continue to document all training provided to all staff.<br>5.  Continue to review nursing schedule and provide more hours at facility.<br>6.  Continue to provide written documentation of examination of residents by medical professional in every instance.<br>7.  Provide additional medical services after hours and on weekends. (executed)<br>8.  Continue to document and file in resident's records when there is use of force.(Including JCAs) | |
| Evidentiary Basis | Document review, interviews, observation | |

## 9.  Meals and Nutrition

| Provision 9.1 Meals and Nutrition | Residents shall be provided three meals and a snack daily. If a resident misses a meal because he or she is attending court, or some other appointment, he or she shall receive the missed meal upon his or her return to detention. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision has moved to substantial compliance.  Please see the introduction. | |
| Recommendations | 1.  Continue to review portions to ensure residents receive enough food during meals.<br>2.  Develop policy and procedures for this provision. (**executed**) | |

| | |
|---|---|
| | 3. Continue to provide training for kitchen staff and all other staff members involved with handling food and preparing meals.<br>4. Continue to document compliance with this provision.<br>5. Food should be served in a timely manner and consistent with facility schedule once developed.<br>6. Review the National Food Service Management Institute from the University of Mississippi that details "Food Safety Facts".<br>7. Food service area is in need for maintenance, repair and cleanliness. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 9.2 Meals and Nutrition | All meals and snacks served to residents at Henley-Young shall, at a minimum, comply with the nutrition guidelines set forth in the United States Department of Agriculture's School Meals Program standards. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision moved to substantial compliance. Please see introduction. | |
| Recommendations | 1. Develop policy and procedures for this provision(executed)<br>2. Continue to provide training for kitchen staff and all other staff members involved with handling food and preparing meals. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 9.3 Meals and Nutrition | Residents shall be provided access to drinking water throughout the day. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility remains at substantial compliance on this provision. Based on my review and observations, I found that youth had access to water. However, I am still recommending that the water fountains on the units and in the youth's cells be operable. | |
| Recommendations | 1. Contact County or State Environmental office to conduct test on water system. (**execute**d)<br>2. Continue to ensure residents receive water during school and recreational periods and at night. | |

|  |  |  |
|---|---|---|
|  | 3. Continue to develop a policy for incidents regarding water quality and procedures to address them.<br>4. Repair inoperable drinking fountains. |  |
| Evidentiary Basis | Document review, observation, interviews |  |

### 10. Clothing

|  |  |  |
|---|---|---|
| Provision 10<br>Clothing | Henley-Young shall provide basic clothing items for residents at all times. These items must include, at a minimum, socks, underwear, uniform, shoes, and undershirts. For girls, these items must also include a brassiere. When appropriate, Henley-Young shall also provide residents with a coat, hat, and gloves. Residents must be provided with a clean uniform, socks, undershirt, underwear, and brassiere, if applicable, upon intake and at least once per day. No residents shall be deprived of these basic clothing items for any reason, including, but not limited to, as a punishment, because these items are being washed, or due to overcrowding. |  |
| Status | **Substantial Compliance** |  |
| Discussion | The facility still remains at substantial compliance in this provision. It should be noted the laundry personnel continues to do an outstanding job ensuring that clothing which is tattered, dingy, not usable is discarded. The facility should maintain the property inventory system for discarding the above-mentioned articles. |  |
| Recommendation | 1. Continue to check washer and dryer to ensure they are working properly.<br>2. Continue to ensure that girls and boys are equally involved in cleaning and folding clothes.<br>3. Hire 2 laundry staff to ensure clothing is handled properly. **(executed)**<br>4. Continue to ensure that all staff and residents wear protective material (smocks and gloves) when handling chemicals and clothing.<br>5. Continue to discard clothing that is torn, dingy and in poor condition.<br>6. Develop a system for replacing clothing on a regular and consistent basis. **(executed)**<br>7. Develop schedule for distribution. **(executed)**<br>8. Develop a system for prewashing clothing (i.e. undergarments etc.) **(executed)** |  |
| Evidentiary Basis | Document review, observation, interviews, photographs |  |

### 11.   Hygiene and Sanitation

| | |
|---|---|
| Provision 11.1 Hygiene and Sanitation | Residents shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily, soap for washing hands after each time the residents uses the toilet, and toothpaste and a toothbrush for tooth brushing, which will occur at least twice daily, a comb and brush, that if shared, shall be sterilized between uses by residents. Girls must be provided with panty liners on a daily basis and other feminine products as needed. Residents will be issued a comb and brush upon entering the facility; however, if residents are issued a recycled comb or brush or a comb or brush that has been used by another resident, Henley-Young shall ensure that the comb and brush is sterilized and in good condition. |
| Status | **Substantial Compliance** |
| Discussion | The facility still remains at substantial compliance in this provision.  I would still recommend that a licensed barber and/or beautician be retained. |
| Recommendations | 1.  Ensure that hygiene kits are properly labeled and **residents are not** sharing each other's hygiene products or items. **(executed)** <br> 2.  Ensure items such as hair brushes, if shared, are sterilized and in good condition. **(executed)** <br> 3.  Continue to provide training for staff on these policies and procedures. <br> 4.  Ensure that clean face towels are available for residents. **(executed)** <br> 5.  Develop a schedule for distribution of hygiene kits. **(executed)** <br> 6.  Retain a licensed barber and/or beautician. |
| Evidentiary Basis | Document review, observation, interviews |

| | |
|---|---|
| Provision 11.2 Hygiene and Sanitation | Residents shall be provided with sleeping mats and blankets that are clean and odorless sleeping mats shall be sanitized between uses by residents, and residents shall receive clean blankets weekly. |
| Status | **Substantial Compliance** |
| Discussion | The status of this provision still remains in substantial compliance. Based on my review of documents and observation, the facility needs to continue to ensure that mattresses and blankets are discarded properly <br><br> Policies and procedures have been developed. The facility has provided training to ensure that the process outlined in the policies and procedures is |

| | |
|---|---|
| | followed. The facility needs to continue to monitor the condition of the blankets and mattresses for signs of holes and tattering the facility needs to continue to follow the recommendations below. |
| Recommendations | 1. Continue to discard all blankets and mattresses that are tattered and have holes in them. <br> 2. Clean and maintain laundry area in orderly fashion. <br> 3. Develop forms or system of documentation for distribution and inventory **(executed)** <br> 4. Label and designate an area for towels, sheets, clothing etc. **(executed)** |
| Evidentiary Basis | Document review, observation |

| Provision 11.3 Hygiene and Sanitation | Under no circumstances shall residents be deprived of mats and blankets. | |
|---|---|---|
| Status | **Substantial Compliance\*** | |
| Discussion | The facility still remains in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidence | Observation, and document review | |

| Provision 11.4 Hygiene and Sanitation | Henley-Young shall maintain a sufficient number of clean, sanitary mats and blankets that correspond with the facility's maximum capacity. | |
|---|---|---|
| Status | **Substantial Compliance\*** | |
| Discussion | The facility still remains in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation and document review | |

| Provision 11.5 Hygiene and Sanitation | Residents shall be provided with a clean, sanitary environment. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision remains at partial compliance. The facility at this time continues to be much cleaner however there are areas that are in need of additional clean-up and repair, i.e. showers, kitchen, lights, outside lights, and touch-up painting in all units. | |
| Recommendations | 1. Develop policies and procedures for this provision. (**executed**)<br>2. See areas in discussion that should be addressed.<br>3. Need to develop housekeeping and cleaning schedule.<br>4. Need to develop checklist or inspection report for each unit and area of building.<br>5. Need to develop work order system to ensure that when problems emerge they are addressed.<br>6. Need to develop corrective action plans as needed.<br>7. Need to provide training for staff on policy and procedures.<br>8. Continue to ensure delivered food items are dated and rotated from old to new.(**Executed**)<br>9. See my previous introduction as it relates to transferring young adults from the Hinds County Jail. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 11.6 Hygiene and Sanitation | Hinds County shall ensure that Henley-Young complies with relevant law regarding fire safety, weather emergencies, sanitation practices, food safety, and the elimination and management of environmental toxins. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision remains at partial compliance.<br>During my review of documents and observation, the facility is still doing safety and fire inspections however to move to substantial compliance again the facility still needs to ensure that the recommendations 4, 5, 7, 8, 10 and 11 below are followed. Again during this report and the last report a review of documents shows that the facility sprinkler tampered switch and the H119 mechanical room main switched failed and there are still no corrective action plans in place to correct these violations. Safety and security is a mainstay of any institution therefore it is of paramount importance that all safety concerns be addressed. These are areas that must be corrected immediately. | |

| | |
|---|---|
| Recommendations | 1. Develop policies and procedures and plans for fire safety, evacuation etc. **(executed)** <br> 2. Develop adequate staff training regarding fire safety. <br> 3. Properly maintain and repair fire equipment. <br> 4. Ensure intercom systems are operating properly. <br> 5. Ensure all mattresses used by residents are fire resistant. <br> 6. Routinely test all fire equipment and system. <br> 7. Ensure that all electrical outlets, wires and equipment (lights) are properly working. <br> 8. Develop work order system to ensure items are repaired. <br> 9. Ensure that all areas in this provision are addressed by a certified professional. <br> 10. Review entire fire safety program/system <br> 11. **Facility needs to develop corrective action violations plan and Correct violations from previous report** <br> 12. Clean and Sanitize kitchen <br> 13. Develop cleaning procedures <br> 14. Repair the areas that failed inspections <br> 15. Have fire inspectors sign report |
| Evidentiary Basis | Document review, observation |

| | |
|---|---|
| Provision 11.7 Hygiene and Sanitation | Residents shall be provided with clean drinking glasses and eating utensils. |
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains at substantial compliance. Based on my observation and review of documents this provision continues to be implemented at this time. |
| Recommendations | 1. Develop policies and procedures for this provision. **(executed)** <br> 2. Continue to provide a thorough cleaning of the kitchen and all equipment and utensils |
| Evidentiary Basis | Document review, observation and interviews |

### 12. Medical Care

| | |
|---|---|
| Provision 12.1 Medical Care | The parties agree, however, that henceforth, Henley-Young shall provide residents with adequate medical care, including: prompt screenings; a full physical exam within 72 hours after their detention hearing or disposition order, as applicable; access to medical professionals and/or prescription medications when needed; and prompt transportation to a local hospital in the case of a medical emergency.  Hinds County is responsible for procuring and/or paying for all medications provided to residents. |
| Status | **Beginning Compliance\*\*** |
| Discussion | The status of this provision still remains at beginning compliance. See Dr. Ezike's   updated report and recommendations based on her November, 2017 visit. |
| Recommendations | 1. Develop policies, procedures and protocols for this provision.(Including JCAs)<br>2. Develop policies and procedures and protocols based on standards for Health Services in Juvenile Detention and Confinement facilities.<br>3. Provide training for staff members who administer medication to residents on proper usage and possible side effects. Also, train the staff on emergency protocols if side effects occur.<br>4. Have a licensed medical professional review and sign off on policy, procedures and protocols.<br>5. Have a licensed health professional periodically review and provide supervision to the nurse at facility.<br>6. Develop forms to coincide with provision.<br>7. Remove medication from bags and place them in secure, organized areas and develop forms to determine what medications are present in the facility at all times.<br>8. Hire or have on contract a physician to review medical area.<br>9. Ensure that residents receive vision exams, dental screenings, mental health screenings, hearing tests, etc.<br>10. Order folders with 2 dividers, end tab, classification folders in letter size with 2 prongs for medical charts.<br>11. See Dr. Ezike's most recent report. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.2 Medical Care | Henley-Young shall ensure that a medical professional is available to examine residents confined at the facility to identify and treat medical needs, when necessary. | |
| --- | --- | --- |
| Status | **Beginning Compliance\*\*** | |
| Discussion | The status of this provision still remains at beginning compliance. See Dr. Ezike's updated report and recommendations based on her November, 2017 visit. | |
| Recommendations | 1. Hire qualified medical professional for nights and weekend care.<br>2. Develop policies, procedures and protocols for this provision.(Including JCAs)<br>3. Provide training for staff on this provision.<br>4. Ensure medical protocols are child/youth centered.<br>5. See Dr. Ezike's most updated 2017 report. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.3 Medical Care | Henley-Young shall implement its sick call policy and practice which ensures that confined residents who request non-emergency medical attention are examined by a medical professional within 24 hours of a residents placing him or herself on sick call, excepting weekends and holidays. | |
| --- | --- | --- |
| Status | **Partial Compliance** | |
| Discussion | The status of this provision has moved to partial compliance. See Dr. Ezike updated report and recommendations based on her November, 2017 visit. | |
| Recommendations | 1. Develop policies, procedures and protocols for this provision.<br>2. Place a resident's grievance and medical request box (kite box) on each unit.<br>3. Provide training for staff on this provision.<br>4. Nurse or designated person, making daily rounds to retrieve kites (Request for Medical Service Forms).<br>5. See Dr. Ezike updated report and recommendations based on her November 2017visit. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.4 Medical Care | Prescription medications shall only be distributed by licensed medical staff or Henley-Young staff who has been trained by licensed medical personnel. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision has moved to partial compliance. See Dr. Ezike's updated report and recommendations based on her November, 2017 visit. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.<br>2. These policies, procedures and protocols must include the appointment of a medication administration protocol.<br>3. There must be a medication record of all medicines administered.<br>   a. One record to reflect all medicines leaving the pharmacy;<br>   b. An additional record kept in each resident's case file.<br>4. Ensure that the training is comprehensive make certain that all medical contingencies are considered.<br>5. The staff should be trained on what side effects to look for drugs commonly prescribed to residents with mental health needs.<br>6. Provide training to staff on the policy, procedures and protocols for this provision.<br>7. All training should be documented and conducted annually.<br>8. See Dr. Ezike's report and recommendations based on her November 2017 visit. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.5 Medical Care | Medical and mental health services shall be provided in a manner that ensures the confidentiality of resident's health information. | |
|---|---|---|
| Status | **Beginning Compliance**** | |
| Discussion | The status of this provision has moved to partial compliance. See Dr. Ezike and Dr. Boesky's updated reports and recommendations based on their most recent 2017 visits. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.(Including JCAs)<br>2. Get HIPAA requirements and institute them the facility.<br>3. Designate the persons who have access to the resident's medical records within the facility and outside of the facility, but within the juvenile justice system.<br>4. Provide training to staff on policies, procedures and protocols.<br>5. Provide training to staff on HIPAA requirements, and document training.<br>6. Designate a HIPPA Privacy Officer. | |

|  | 7. See Dr.Ezike and Dr. Boesky's most recent reports. |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.6 Medical Care | Henley-Young shall develop procedures for monitoring residents who require individualized attention because of medical issues that do not involve requiring the residents to sleep on a mat in the visitation room. |
|---|---|
| Status | **Beginning Compliance **  |
| Discussion | This provision still remains at beginning compliance.<br>See Dr. Ezike's updated report and recommendations based on her November, 2017 visit. |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.(Including JCAs)<br>2. Develop processes of continuous monitoring residents with stable medical issues, i.e. the care for diabetic residents who are on an insulin regiment.<br>   a. What are the medical requirements of the residents who need monitoring?<br>   b. Who is responsible for the monitoring?<br>   c. How are the records kept of the monitoring?<br>3. Provide training to staff on the policies, procedures and protocols for this provision.<br>4. Annual competency training. |
| Evidentiary Basis | Document review, observation and interviews |

### 13. Mental Health Care

| Provision 13.1 Mental Health Care | Henley-Young's contractor, Hinds Behavioral Health Services, shall provide adequate mental health services to all confined residents with a mental health diagnosis or serious mental health need, as indicated by the MAYSI-2. This shall include, but is not limited to, the provision of individual and group counseling sessions upon the request of a residents or the resident's parent/guardian, access to a mental health professional at the detention center, and the distribution and medical monitoring of psychotropic medications by a medical professional. |
|---|---|
| Status | **Beginning Compliance**  |

| | |
|---|---|
| Discussion | The status of this provision has moved to beginning compliance. The facility is developing policies and procedures and they have been reviewed by Dr. Boesky to ensure compliance with this provision. See Dr. Boesky's review of the mental health program. |
| Recommendations | 1. Ensure that the facility has a Standardized Assessment Tool i.e. the MAYSI-2 to use during the intake process.<br>2. Develop policies and procedures to address this provision.(Including JCAs)<br>3. Provide training to staff on policies and procedures and provide documentation of training.<br>4. Develop documentation that will track resident's progress during their stay at facility.<br>5. Ensure there is communication between Hines Behavioral Health Services, Juvenile Court Case Managers and Facility Staff on residents receiving mental health services.<br>6. Hire case management staff.<br>7. Hire doctoral level psychologist |
| Evidentiary Basis | Document review, observation, interviews |

| | |
|---|---|
| Provision 13.2 Mental Health Care | Residents who are confined for longer than thirty (30) continuous days and who are prescribed psychotropic medications, shall be evaluated by a psychiatrist every thirty (30) days. Such evaluations may be performed by and through employees of Hinds Behavioral Health. |
| Status | **Non-Compliance \*\*** |
| Discussion | Although the status of this provision remains at non-compliance, the facility is developing policies and procedures and they will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017. Please see her report. |
| Recommendations | 1. Develop policies and procedures to address this provision.(Including JCAs)<br>2. Provide training to staff on policies and procedures.<br>3. Hire case management staff.<br>4. Hire doctoral level psychologist |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 13.3 Mental Health Care | Within 72 hours of a resident's admission to the facility, staff shall develop individual mental health treatment plans for residents who are under the care of a mental health provider. Treatment plans shall emphasize continuity of care and shall ensure that whenever possible, residents are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the resident's initial detention. | |
|---|---|---|
| Status | **Non-Compliance**\*\* | |
| Discussion | Although the status of this provision remains at non-compliance, the facility is developing policies and procedures and they will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |
| Recommendations | 1. Develop policies and procedures to address this provision.(Including JCAs)<br>2. Provide training to staff on policies and procedures.<br>3. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>4. Hire case management staff.<br>5. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.4 Mental Health Care | Henley-Young shall develop and implement policies and procedures for referring residents in need of psychiatric services to a licensed psychiatrist for a timely mental health evaluation. Such services may be provided by and through employees of Hinds Behavioral Health. | |
|---|---|---|
| Status | **Non-Compliance**\*\* | |
| Discussion | Although the status of this provision remains at non-compliance, the facility is developing policies and procedures and they will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017.Please see her report. | |
| Recommendations | 1. Develop policies and procedures to address this provision.(Including JCAs)<br>2. Provide and document training to staff on policies and procedures.<br>3. Hire case management staff.<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>5. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.5 Mental Health Care | Hinds County shall employ or contract for sufficient psychiatric services to permit a psychiatrist to fulfill the following functions:<br>a. conduct needed psychiatric evaluations prior to placing residents on psychotropic medications;<br>b. Monitor, as appropriate, the efficacy and side effects of psychotropic medications;<br>c. Participate in treatment team meetings for residents under the psychiatrist's care;<br>d. Provide individual counseling and psychotherapy when needed;<br>e. Evaluate and treat in a timely manner all residents referred as possibly being in need of psychiatric services; and<br>f. Provide adequate documentation of treatment.<br>g. All evaluations and services outlined above may be performed and/or provided by and through employees of Hinds Behavioral Health or any other duly qualified Mental Health agency. | |
|---|---|---|
| Status | **Non-Compliance**\*\* | |
| Discussion | Although the status of this provision remains at non-compliance, the facility is developing policies and procedures and they will be reviewed by Dr. Boesky to ensure compliance with this provision. Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |
| Recommendations | 1. Develop policies and procedures to address this provision.(Including JCAs)<br>2. Provide training to staff on policy and procedures and document training.<br>3. Hire case management staff.<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>5. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 13.6 Mental Health Care | The psychiatrist and/or counselors shall review, if necessary, incident reports, disciplinary reports, suicide watch logs, and lockdown logs of residents under their care to determine whether their treatment is working and, if not, how it should be modified. | |
|---|---|---|
| Status | **Non-Compliance \*\*** | |
| Discussion | Although the status of this provision remains at non-compliance, the facility is developing policies and procedures and they will be reviewed by Dr. Boesky to ensure compliance with this provision. Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |

| Recommendations | 1. The mental health of the residents in the custody of the facility needs to be closely monitored at all times. <br> 2. The facility needs to develop policies and procedures to address this provision.(Including JCAs) <br> 3. Provide and document training to staff on policies and procedures and document training. <br> 4. Facility needs documentation from a mental health organization on plan of action for residents receiving a mental health services. <br> 5. Hire case management staff. <br> 6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). <br> 7. Hire doctoral level psychologist |
|---|---|
| Evidentiary Basis | Document review, observation |

## 14.  Suicide Prevention

| Provision 14.1 Suicide Prevention | Henley-Young shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch. Suicide watch shall not be used as punishment. The "suicide cell" shall be reserved for residents for whom the "suicide cell" is deemed necessary in conjunction with this suicide prevention policy. | |
|---|---|---|
| Status | **Beginning Compliance**\*\* | |
| Discussion | The status of this provision remains as beginning compliance. The facility still needs to hire a psychologist and develop adequate policies and procedure and ensure staff is trained properly.  They will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (Executed). However, now JCAs must be included. <br> 2. Provide and document training for staff on policy and procedure. <br> 3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. <br> 4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.). <br> 5. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 14.2 Suicide Prevention | Any residents placed on the highest level of suicide watch shall be evaluated by a mental health professional, ideally within 12 hours, but in no case longer than 24 hours of his or her placement on suicide watch. If a resident on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the residents shall immediately be transported to a local mental health facility or emergency room for evaluation and/or treatment. | |
|---|---|---|
| Status | **Beginning Compliance\*\*** | |
| Discussion | The status of this provision remains at beginning compliance.  The facility still needs to hire a psychologist and develop adequate policies and procedure and ensure staff is trained properly.  They will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (Executed). However, JCAs must now be included.<br>2. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>3. Provide training for staff on policies and procedures and document training.<br>4. Identify a mental health agency to help develop policies, procedures and protocols.<br>5. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program.<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>7. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 14.3 Suicide Prevention | Residents on suicide watch shall participate in recreation, school, and any other structured programming. Residents shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely monitor residents on suicide watch, which includes logging activities every 15 minutes. | |
|---|---|---|
| Status | **Beginning Compliance\*\*** | |
| Discussion | The provision remains at beginning compliance.  The facility still needs to hire a psychologist and develop adequate policies and procedure and ensure staff is trained properly. They will be reviewed by Dr. Boesky to ensure compliance with this provision.  Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |

| Recommendations | 1. Develop policies and procedures to address this provision with the assistance of a mental professional. (Executed). However, JCAs must now be included.<br>2. Provide and document training for staff on policies and procedures.<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program.<br>4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>6. Hire doctoral level psychologist |
|---|---|
| Evidentiary Basis | Document review, observation |

| Provision 14.4 Suicide Prevention | When a resident is placed on any level of suicide watch, a report shall be made within 24 hours to the resident's court, as well as to the resident's guardian, and his or her defense attorney. | |
|---|---|---|
| Status | **Beginning Compliance**** | |
| Discussion | The provision remains at beginning compliance. The facility still needs to hire a psychologist and develop adequate policies and procedure and ensure staff is trained properly. They will be reviewed by Dr. Boesky to ensure compliance with this provision. Dr. Boesky reviewed the mental health program in October 2017. Please see her report. | |
| Recommendations | 1. Develop policies and procedures for making and distributing the reports in this provision. (Executed). However, JCAs must now be included.<br>2. Provide training for staff on policies and procedures and document training.<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program<br>4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>6. Hire doctoral level psychologist | |
| Evidentiary Basis | Document review, observation | |

## 15.   Family Support and Interaction

| Provision 15.1 Family Support and Interaction | Visitation shall not be restricted or withheld from residents unless the detention center director determines that a visit will violate the security of Henley-Young or will endanger the safety of residents, visitors, or staff. Visitation should not be restricted as a form of punishment. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The status of this provision still remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.2 Family Support and Interaction | Within 90 days of the effective date of this Settlement Agreement, Henley-Young shall provide accommodations that allow residents to have contact visits with their families. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility still remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.3 Family Support and Interaction | Visitation shall be regularly scheduled at least three times per week, which shall include evening and/or weekend visitation times in order to encourage family visitation. Henley-Young shall permit the minor siblings of confined residents to participate in visitation, as long as the minors' parent or guardian is present during the visit and the siblings are not harmful to the residents who are detained at Henley-Young. Henley-Young shall also permit a confined resident's own child (Ren) to participate in visitation | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility still remains at substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| | |
|---|---|
| **Provision 15.4 Family Support and Interaction** | Residents may receive phone calls from their attorneys. At the discretion of the Director or assignee, in emergency situations, residents may receive phone calls from parents, primary caretakers, or legal guardians. Emergency phone calls and phone calls from attorneys should not be restricted as a form of punishment. |
| Status | **Partial Compliance \*\*** |
| Discussion | The facility still remains at partial compliance on this provision based on my most recent visit and document review. There is still no indication that residents are in contact with their attorneys.  A review of documents and interviews revealed that several residents still have not seen or spoken to their attorney.<br><br>The case management system is now in place since my last visit. However I still found no evidence that the residents house at the Henley Young Center received visits from their lawyers which is well established by law, best practices and professional standards within juvenile detention facilities, it is more important at this juncture of the process because JCAs that have been transferred to Henley Young must be able to interact with their attorneys because of their distance in proximity to the adult court. Therefore the following still applies:<br>    1) Privileged mail from court, attorney,<br>    2) Visits from lawyers, paralegals or any legal support staff,<br>    3) Provide a private place for confidential discussions, and<br>    4) Have policies, procedures and protocols incorporated in resident's Right to counsel. |
| Recommendations | 1.  Develop policies and procedures and practices to address this provision. **(Executed)**<br>2.  Provide and document training for staff on policies and procedures.<br>3.  Ensure that there is proper staffing availability to maintain reliability.<br>4.  Ensure that residents are allowed to mail letters. (County will pay for postage) (executed)<br>5.  Hire case managers (executed)<br>6.  Develop form for attorney to signed indicating their visits, for placement into youth files<br>7.  Develop a mechanism for tracking attorney phone calls<br>8.  Case Managers develop policies and procedures that will help youth interact with attorneys and provide documentation of those interactions.<br>9.  **Ensure JCAs have access to counsel(their attorney's)** |
| Evidentiary Basis | Document review, observation and interviews |

### 16.    Miscellaneous Provisions

| Provision 16.1 Miscellaneous Provisions | Male and female residents shall be provided with equal access to educational and rehabilitative services, medical care, and indoor and outdoor recreation. | |
|---|---|---|
| Status | **Substantial Compliance\*\*** | |
| Discussion | The status of this provision still remains in substantial compliance. The facility has developed structured programming for males and females.  The facility has hired recreational staff to ensure programming is being implemented. They have also purchased equipment and are attracting outside volunteers to assist in programming. To remain in substantial compliance the facility needs to ensure JCAs are an integral part of the programming. I will review for consistency and sustainability during my next visit. | |
| Recommendations | 1. Develop policies and procedures and practices for this provision including JCAs. See Ms. Brooks report.<br>2. Cease in the designation of female residents as being solely responsible for laundry; this is a duty male resident can perform as well as females. (**executed**)<br>3. Continue to develop monthly recreational schedules including JCAs.<br>4. Continue to develop comprehensive facility schedules including JCAs.<br>5. Continue to provide training for staff on policies and procedures and document training.<br>6. Ensure that there is proper staffing availability to maintain reliability.<br>7. Repair court and goal area. (executed)<br>8. Continue to post facility wide schedule on units. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 16.2 Miscellaneous Provisions | The parties agree, however, that henceforth:  All residents shall have the opportunity to engage in at least one hour of large muscle exercise a day. | |
|---|---|---|
| Status | **Partial Compliance\*\*** | |
| Discussion | The status of this provision remains in partial compliance. The facility has developed a recreation program and policies that details large muscle exercise. However, JCAs must be integral part of facility programming. See introduction.  Please continue to follow recommendations below. | |
| Recommendations | 1. Continue to develop policies and procedures and implement practices to address the needs of this provision **including JCAs**. | |

| | |
|---|---|
| | 2. Continue to develop and implement programming and recreational **schedules including JCAs.**<br>3. Continue to provide and document training for staff on policies and procedures.<br>4. Continue to ensure that there is proper staffing availability so that residents are not unnecessarily "locked" in their cells. **Including JCAs** |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 16.3<br>Miscellaneous<br>Provisions | Henley-Young shall implement a policy which prohibits staff from insulting residents or calling them names, and using profanity in the presence of residents | |
|---|---|---|
| Status | **Beginning Compliance\*\*** | |
| Discussion | The status of this provision remains at beginning compliance.  Although it has improved there is still indication that staff is using profanity in some of their dealings with youth.  This must be addressed by the facility's administration.<br><br>The recommendations below should be followed. | |
| Recommendations | 1. Develop policies and procedures and practices to address the needs of this provision. **(Executed)**<br>2. Provide training to staff in the proper de-escalation techniques of residents.<br>3. Administration must provide enough supervision to reduce or eliminate insulting behavior by staff.<br>4. Discipline and retrain staff as needed.<br>5. Provide training for staff on policies and procedures and document training.<br>6. Hire an independent person to investigate allegations of abuse or complaints regarding staff by residents. (**Executed)** | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 16.4<br>Miscellaneous<br>Provisions | Henley-Young shall implement an adequate grievance policy that is accessible to all residents regardless of literacy levels, and that provides residents with the opportunity to appeal facility level determinations. Residents shall obtain the grievance forms from the school liaison. | |
|---|---|---|
| Status | **Partial Compliance \*\*** | |

| | |
|---|---|
| *Discussion | This provision remains at partial compliance Although the facility has JCAs, they must be integrated into the regular programming at Henley Young therefore I recommend the facility continue to follow my comments from my previous reports and my recommendations from below. |
| Recommendations | 1. Place grievance boxes on each unit and school, residents should not be required to request a grievance form.<br>2. Provide training for staff on policies and procedures and document training.<br>3. Provide training for residents on policies and procedures and document training.<br>4. Ensure that residents are adequately familiarized with the grievance process during their orientation into the facility<br>5. Add a place on the Resident's Grievance Resolution Report for a resident to request an appeal and place for the Director's resolution.<br>6. Ensure Resident's Grievance Resolution Reports are provided to the resident for their signature and their response to the outcome. If the resident disagrees with the resolution the resident has the right to appeal the decision to the director.<br>7. Any retractions of grievances should be done by residents and not by staff.<br>8. **Ensure that JCAs are part of the Henley Young program including the grievance process** |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 16.5 Miscellaneous Provisions | Hinds County denies that Henley-Young does not currently have an adequate policy whereby residents can request to see their attorney and/or Residents Court counselor. The parties agree, however, that henceforth: Henley-Young shall develop and implement an adequate policy that allows residents of all ages and literacy levels with the opportunity to request to see their attorney and/or Residents Court counselor. Residents shall obtain the form requesting a visit from his/her counselor from the school liaison. Henley-Young agrees to collaborate with the Plaintiffs to design and implement a comprehensive juvenile justice pre-service and in-service training program for detention center staff. Training shall include, but is not limited to, the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation, appropriate use of force and restraint, and best practices for detention center administration. | |
| Status | **Beginning Compliance \*\*** | |

| | |
|---|---|
| Discussion | The status of this provision still remains at beginning compliance. Based on my interviews with residents, there continues to be no indication and no documentation they had the opportunity to meet with their public defender prior to or after their court hearings. The facility now has case managers in place. Therefore, youth should be able to contact their attorneys, who in turn should help then along with their case manager understand their case and the process they are involved in as relates to court proceedings. These youth should have the ability to discuss their cases with their attorneys and are updated about their case. This will keep the youth from falling through the cracks. The youth's attorneys are needed more with JCAs now being a part of the Henley-Young program.<br><br>Again, based on my most recent visit and review of documents, residents are still complaining they have not had the opportunity to speak with their attorneys. In my review of the records, there is still no indication that attorneys had visited their client. Again, I found no forms for requesting visits from counselors, attorneys or school liaisons. **The requirements of the Prison Rape Elimination Act are not in place and still needs to be developed.** |
| Recommendations | 1. Develop policies and procedures and practices for this provision including JCAs.<br>2. Provide and document training for staff on policies and procedures.<br>3. Develop single form and system for incident reporting.<br>4. Develop system for receiving and mailing privileged and non-privileged mail for residents.<br>5. Hire case management staff.(**Executed**)<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>7. Develop policies and procedures based on the prison rape elimination act. |
| Evidentiary Basis | Observation, interviews and Document reviews |

**CONCLUSION/ THOUGHTS**

This is my 12th official report on the progress at the Henley Young Juvenile Justice facility. I must say that some of the youth are doing very well for the amount of young people coming through the facility. In addition, the personnel at the facility have shown significant improvements since the beginning of this process. Therefore, keeping a strong administrative team in place is extremely critical at this juncture in the process.

Most young people are participating in recreation, group activities, regular programming and school. As I have stated during my visits, youth need a variety of experiences to help them develop their strengths and reduce their risk of participating in future criminal activities. The

same expectation should be experienced by the new cohort of residents (your JCAs) regardless of their status in the criminal justice system. They also have unmet needs and are particularly at risk of participating in problematic behaviors.

Understanding adolescent development and the factors contributing to the healthy development of all youth are critical in the design and structure of facility programming. Physical and psychological safety and security is also a must during this transition. With the transfer of JCAs into the facility, integrated programming is critical. The transitioning of JCAs to Henley Young will require the facility to ensure all provisions of the consent decree are still fully carried out and the program rules and policies are adhered to. The facility must also provide an ample array of program opportunities that appeal to and meet the needs of this diverse population. Good programming is essential for an effective facility.  JCAs and the juvenile population should be incorporated into the facility to work together in synergistic ways. Programming with strong staff participation and a strong structure is more conducive and provides better support for young people and their positive development. Structures that are developmentally appropriate with clear expectations for behavior as well as increasing opportunities for the residents to make decisions and participate in the governance and rulemaking is also a key component of facility programing. Such programs will help them to develop and take on more leadership roles as they move through the| behavioral modification program. These components will be extremely valuable for their growth and the facility's success with this new population.

**Henley Young has come a long way and has continued to make improvements**. The mental health, medical and education experts have also confirmed improvements made since this process started. Now the County must continue to move forward and work towards moving the other provisions into the substantial compliance category. The facility must then maintain compliance at that level. Maintaining compliance is the key once you have reached substantial compliance.

I recognize this conclusion is longer than in the past, but I think it is necessary. The adding of JCAs is a group that has been added to this process and there is a need to ensure this transition goes as smoothly as possible and there is no deterioration in the hard work the county and the facility have put in place thus far. I still continue to recommend the County proceed with the proposed renovations and additions to the existing juvenile facility.

I would like to thank Hinds County Juvenile Judge Melvin Priester, Hinds County Board of supervisors, the County's Attorneys Anthony Simon and Pieter Teeuwissen, County Administrator Carmen Davis, facility staff and the facility Director Johnnie McDaniels for their assistance and cooperation.

LEONARD DIXON

Henley Young Juvenile Justice Center
Twelfth Monitoring Compliance Report
March 22, 2018