**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**
**HONORABLE DANIEL P. JORDAN III, U.S. DISTRICT JUDGE**

**J.H., ET AL, VS HINDS COUNTY MISSISSIPPI**
**3:11-CV00327 DPJ-FKB**




# Monitoring Compliance Report:
**Draft Report December 10, 2018**
**Report Date: December24, 2018**

**Submitted by**
**Leonard B. Dixon, MSPA**
**24420 Crescent Drive**
**Woodhaven, MI 48183**
**734 642-7412**
**Email home: lbdixon1@comcast.net**
**Email work: leonard.dixon@cookcountyil.gov**

# TheThirteenth Monitor's Report
# Henley-Young Juvenile Justice
# Leonard B. Dixon

**Background**
See previous reports for background history and to become familiar with this consent decree.

**Recommendations based on findings, observations and interviews**
Result of visit on July 26, 2018 and October 6, 2018 to October 8, 2018

**Documentation provided and reviewed**
Jackson Fire Department Fire Inspection Report dated March 26, 2018 (Still no expiration date on license)
Pre-Engineered Restaurant Fire Suppression System Report dated December 8, 2017 (Still no final approval)
Food Establishment Inspection Report expires April 28, 2019
Food Service for breakfast only
Henley-Young Juvenile Justice Center Organization Chart
Maintenance Housekeeping Schedule from 2 am to 10 am
10 Staff injuries while restraining youth for past year
Staff roster and schedule for administration and 3 shifts

**Policies:**
3.A.23 Anti-bullying signed by Johnnie McDaniel effective 10/27/17
3.A.24 Training Video Check in/out form.No effective or approved by date listed
8.A.1 Scope of Mental Health.No effective or approved by date listed
8. A.2 Suicide Prevention.No effective or approved by date listed
8. A.3 Individualized Treatment Plans.No effective or approved by date listed
8. A.4 Mental Health Screening Referral and Assessment.No effective or approved by date listed
8. A.5 Request for Services.No effective or approved by date listed
8. A.6 Treatment Teams.No effective or approved by date listed
8. A.7 Mental Health Emergency.No effective or approved by date listed
8. A.8 Psychiatric Services.No effective or approved by date listed
8. A.9 Clinical Record Keeping.No effective or approved by date listed
8. A.10 Substance Use Screening and Treatment.No effective or approved by date listed
8. A.11 Confidentiality of Mental Health Records and Information.No effective or approved by date listed

**Notification of Due Process Hearings:**

October 1 – Resident D. M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 6 – Residents J.N. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 5 – Resident R.B. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

September 6 – Resident C.M. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 6 – Resident T.W. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 13 – Resident T.W. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 13 – Resident T. A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 21 – Resident F.J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 18 – Resident T.A. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
September 28 – Resident J.N. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 23 – Resident M.J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 23 – Resident F.J. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 23 – Resident T.L. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 23 – Resident J.N. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 22 – Resident C.B. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 14 – Resident X.T. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)
August 6 – Resident T.W. (included with form Due Process Rights, Notice of Violation, Unusual Incident Report, Witness Statements and Hearing Decision)

Hinds County Employee Compensatory Time Report:
ran date January 2018, June 2018, August 2018 and one without a date
Receiving Reports from Bob Barker for purchase orders for July 9, 2018
Departmental Budget for 2019 with attachments:

- Letter from HC Board of Supervisors to Burnside regarding budget for FY 2019
- Budget from 2017 – 2018 to 2018 – 2019

Quality Assurance emergency Preparedness Audit Checklist dated September 26, 2018
Quality Assurance Monthly Incidents Reports for months:July, August, September, October,2018

Daily Rostersheets for months:
June 2018 (missing 1-3, 5, 9-10, 14, 16-17, 20, 23-24, 28-30) * all dates included have Sheets for Juveniles Charged as Adults attached
July 2018 (missing 1, 4, 7-8, 10-12, 14-15, 19, 21-23, 28-29) * all dates included have Sheets for Juveniles Charged as Adults attached
August 2018 (missing 4-5, 11-12, 18-19, 25-26) * all dates included have sheets for Juveniles Charged as Adults attached

September 2018 (missing 1-2, 8-9, 15-16,18, 22-23, 29-30) * all dates included
Half sheets for Juveniles Charged as Adults attached
October 2018 (missing 6-7) * all dates included have sheets for Juveniles Charged as Adults attached

Visitation Logs
July 2018 (dated 7, 8, 14, 15, 21, 22 and 29)
August 2018 (dated 4, 5, 6, 11, 12, 18, 19, 25 and 26)
September 2018 (dated 1, 2, 8, 9, 15, 16, 22, 23, 29 and30)
October 2018 (dated 6 and 7)
**1 sheet with no date, visitor information or escorting officer completed

Daily Recreation Schedule for 4 units (no time period

Quality Assurance Audit Reports on:
Behavior Point Sheet not dated
Facility Review not dated
Master File Audit "on August 8, 2018"
Observation Forms not dated
Intake & Admission "on August 21, 2018"
Facility Review "within days of July 10-12, 2018"
**Security Searches not dated**
**Monthly Drills not dated**

Quality Assurance Resident Master File Audit:
Resident C.Y. File Number 58114 audited August 8, 2018
Resident K. L. File Number 57774 audited July 30, 2018
Resident N.T. File Number 56146 audited July 31, 2018
Resident J.D. File Number 58111 audited August 7, 2018
Resident K. H. File Number 58112 audited August 7, 2018
Resident J. W. File Number 58113 audited August 7, 2018

Tornado and Natural Disaster Drill Logs:
September 2018
Fire Drill on Unit(s) D, B at 0943-0946 dated September 30, 2018
Tornado Drill on Unit(s) A, C at 1041-1045 dated September 30, 2018
Fire Drill on Unit(s) A, C at 1258-1302 dated September 30, 2018
August 2018
*Memo stating 2nd and 3rd shift noncompliance with drills dated September 4, 2018
Fire Drill on Unit(s) C, D at 1151-1153 dated August 26, 2018
Fire Drill on Unit(s) A, B at 1217-1219 dated August 26, 2018
Tornado Drill on A, B at 1215-1217 dated August 26, 2018
Tornado Drill on C, D at 1147-1150 dated August 26, 2018
Tornado Drill summary dated August 1, 2018
Fire Drill summary dated August 15, 2018
July 2018
Fire Drill summary dated July 19, 2018

Quality Assurance Audit Reports for months/dates:
September 2018
Restraint by type table
Suicide watch log total 14 residents

Suicide attempt/self-injuryetc. table
Incident by month graph total 43 incidents
Confinement hours table/graph
Use of force incident table totaled15 incidents
Incident by shift graph total
Incident by location
Resident monthly totaled 753

August 2018

Restraint by type table
Suicide watch log total 12 residents
Suicide attempt/self-injuryetc. table
Incident by month graph total 30 incidents
Confinement hours table/graph
Use of force incident table totaled 7 incidents
Incident by shift graph total
Incident by location
Resident monthly totaled 754

July 2018

Restraint by type table
Suicide watch log total 16 residents
Suicide attempt/self-injuryetc. table
Incident by month graph total 33 incidents
Confinement hours table/graph
Use of force incident table totaled 12 incidents
Incident by shift graph total
Incident by location
Resident monthly totaled 648

Quality Assurance Daily Population Record:

September 1, 2018 to September 30, 2018
August 1, 2018 to August 31, 2018
July 1, 2018 to July 31, 2018

Due Process Confinement Log:

September 2018 – 20 residents
August 2018 – 26 residents
July 2018 – 25 residents

Use of Force Incidents Log:

September 2018 – 15 incidents
August 2018 –7 incidents
July 2018 – 12 incidents

Quality Assurance Monthly Incidents:

September 2018 – 43 incidents
August 2018 – 30 incidents
July 2018 – 33 incidents

HYJJC Mental Health Department Order Summary

Phone call logs 2018:

Payton Pod dated:

June 25
July 2, 9, 16, 23, 25, 30
August 1, 6, 8, 13, 15, 20, 22, 27, 29
September 3, 5, 10, 12, 17, 19, 24, 26
October 1, 3, 8

Ossie Davis dated:
July 4, 11, 18, 24, 26, 31
August 2, 7, 9, 14, 16, 21, 23, 28, 30
September 4, 11, 13, 18, 20, 25, 27
October 2, 4, 9 (then states 7/2 and 7/5)

Harriet Tubman dated:
July 3, 17, 24, 31
August 7, 14, 16, 21, 23, 28, 30
September 4, 6, 11, 13, 18, 20, 25, 27
October – no sheet given

J.F.K. dated:
July 18, 26
August 1

Training sign in sheets for months:
New employee orientation dated September 20, 2018 to September 28, 2018 (7 employees)
Suicide Refresher dated September 4-September 6, 2018 (24 employees)
Mysis Refresher dated September 18-September 19, 2018 (16 employees)
Behavior Points/Management Confinement dated August 29-31, 2018 (35 employees)

Peace Officer Standards and Training signed September 18, 2018 (19 staff not certified)

HYJJJ Monthly Grievances submitted:
July 2018 – 10 grievances submitted by residents
August 2018 – 5 grievances submitted by residents (**2 does not have a resolution**; **1 isnot signed**
September 2018 – 2 grievances submitted by residents
October 2018 – 3 grievances submitted by residents

HYJJC Resident Incident Report/Use of Force/Unusual Incident Reports
October 2018 – 1 resident (includes only checklist and unusual incident report)
September 2018 – 27 residents (includes some checklists, witness statements and Medical forms)
August 2018 – 6 residents (includes some checklists, witness statements and Medical forms)
July 2018 – 17 residents (includes some checklists, witness statements and Medical forms)

JCA Resident Incident Report/Use of Force/Unusual Incident Reports
September 2018 – 17residents (includes some checklists, witness statements and Medical forms)
August 2018 – 13residents (includes some checklists, witness statements and Medical forms)
July 2018 – 30 residents (includes some checklists, witness statements and Medical forms

JCAA Names of resident previous detained (there is not dates given just a handwritten list with 16 residents)
Letter regarding Hinds County Juveniles (JCAs) enrolled in the Jackson Public School District/Other School Districts of Mississippi dated July 11, 2018
Memo to Detention Supervisors/Sr. Officers regarding observation sheets dated August 14, 2018 from QA department
Memo to Eddie Burnside regarding floor officers dated July 23, 2018 from QA department

**Staff Interviewed**
Tisha McClendon, 5 years
Andrianne Lewis, ½ month
Brenda Felix, QMHP
Ferniece Galloway, Youth Support Specialist
Allen Hines, Training Coordinator Acting, 1 year
Victor Johnson, Recreation Coordinator, 2 years and 5 months
Eddie Burnside, Operation Manager
Eric Dorsey, QA Manager
Carnella Davis, RN QCHC
Dr. Nanetta Payne Clinical Psychologist

Youth Interviewed
Resident M.J. 16 years old
Resident S.E. 16 years old
Resident X.T. 17 years old
Resident C.M. 14 years old
Resident C.B. 17 years old
Resident J.P. 15 years old
Resident T.G. 12 years old
Resident T.A. 17 years old

**Introduction**

This report is on my thirteenth (13th) official visit to the Henley-Young Juvenile Justice Center and the progress made since my previous visit. On July25 and 26, 2018 and from October 6, 2018 to October 8, 2018, I conducted an official inspection and review of the facility. In this report, I have detailed my findings from my visit which are based on the following criteria: 1) observations, 2) interviews,3) subject matter expertise in operating juvenile institutions, 4) best practices in juvenile justice, 5) document reviews, and 6) video and audio reviews.

It should be strongly noted that the culture of the Henley Young facility continues to improve. With the support of the County Administration, the Hinds County Board of Supervisors, the board attorneys, the facility administration and staff appear to have a level of profundity and insight now that was not there in the past as it relates to the operations of the detention center. The juvenile courts and the facility have built a strong relationship and are collaborating with the best interest of youth detained at Henley Young. From the beginning of this process (the consent

decree) to where the facility is now is an indicator of significant progress. For the facility to have numerous turnovers in leadership, a lack of cooperation with the juvenile court, funding that bordered on negligence, and a non-professional understanding of the operations of the juvenile detention facility, the County is doing an outstanding job. Although, the County still has areas to address (i.e. **developing stronger mental health and education systems**) the pieces of this puzzle (juvenile detention) are coming together. Juvenile detention is a very complex and difficult system to operate even in the best of systems. These juvenile detention facilities are not automotive assembly plants. These are living breathing individuals with a variety of multifaceted problems that were not addressed prior to them arriving at these facilities.Nevertheless, there problems should not get worse during theirstay in detention. Once a problem has been identified services should beprovided by the appropriate professionals in and outside the facility. Juvenile detention is a system that requires patience, a practical andsystematic understanding of dealing with adult and juvenile behavior. It also requiresthe ability to make good decisions which are immediate, in addition todevelopedongoing training for staff and programming for youth. In my experience working with this facility from the **beginning of this process until now the tone and culture at Henley Young has improved for the better.**

The facility now needs to **hire Dr. Payne as a full-time clinical psychologist** in addition to working with the school to develop a practical program for juveniles and juveniles charged asadult (JCAs). In working with Dr. Payne, Dr. Boesky and I agree that she would be a tremendous benefit to the facility and Countyin developing a good mental health program for youth at Henley Young. I have done in-depth interviews with youth and they too are supporters and agreethat ‘Dr. Payne is great’ (their words). Her ability to engage youth and provide them with alternative ways of addressing their problems was amazing to me. Her understanding of the cultural dynamics of youth entering Henley Young is an asset to both the facility and the county. She can develop the type of mental health program that could be modeled in Mississippi. Her ability to address kid’s needs without high levels of medication prescribing is thoughtful and holistic. During my interviews with several kids they also agreed that their meetings with Dr. Payne provided them with a better understanding of their problems and they didn’t feel the need for the psychiatric medication. However,with there beinga lack of child psychiatrist or psychiatrist in general in the area it is recommended that the county meet with their medical provider to provide more psychiatric hours. **See Dr. Boesky’s most recent report**.

**<u>Facility and Operational Culture</u>**

The Henley-Young facility continues to improve in allits provisions. With the arrival of the JCAs, their integration into the regular juvenile detention programming was a difficult transition. However, during this visit the JCAs are becoming more and more a part of the facility programming. In my interviews with staff and youth they are becoming more and more comfortable with the day-to-day operations. In the beginning most of the JCAs were not attending school. However,during my interviews and observation that has generally changed andmost of the JCAs are now attending school. It should be noted that this would be a difficult transition for any facility, however, through consultation and work on the part of the facility administration the culture at the facility has become more stabilized. It should be notice that although the facility has been without a director for the last few months, **the OperationsManager, the QA manager, along witha County administration**; have held the

facility together and continue to move the facility in a positive direction.**It should be noted that the Operation Manager and the QA Manager have been the constant through-out this process an should be commended for their role in the facilities progress.**

Changing institutional cultures do not happen overnight especially one that was as drastic as the moving of juveniles charged as adults(JCA-s)into a juvenile facility program where the average length of stay was 21 days andis now changed to an average length of stay being 365 days plus. As stated in my introduction it is critical now to hire Dr. Payne from part-time to full-time and allow her to continue to develop the mental health program. **This should be done immediately**.

During this visit and through interviews, observations, and document review, I found that all youth are receiving recreation and involved in other facility activities developed by the recreational staff. I also found that the use of mechanical restraints for JCA-s when involved in outside activities has stopped. Additionally, I found that case managers and Q-MHP's are engaging youth and building relationships with them. Now there needs to be a development of behavior plans that will help determine youth goals and objectives during their stay at Henley Young. Further, the facility has revamped the confinement policy to conform to the consent decree.

As stated in my previous report, the facility must continue to focus on the following:

**A. Adequately training staff**-I won't belabor the issue, -continuous training is necessary to ensure staff members are familiar with facility changes, new and innovative ways to ensure the facility continues moving in the right direction, using outside trainers to help the administration and staff see and hear different professionals in the field. I am still recommending training with control force and the development of a restraint team (Please see my previous report) as it relates to JCA-s and training.

B. **Hiring and train case managers** – Dr. Boesky has provided training to case managers and Q-MHP'-s at the facility. The facility should now hire Dr. Payne full-time to ensure that the mental health program, policies and procedures and services are structured and continued. I will again review the program on my next visit.

C. **Implementation of mental health programs** – The facility still needs to hire a full-time clinical psychologist PhD level. (SeeDr. Boesky's most recent report) The county needs to move Dr. Payne from part-time to full-time. There's not much discussion in this area.

**D. Develop MOU with Jackson Public Schools** – During my technical assistance visit, the facility administration, several County supervisors, the County administrator and County attorneys traveled to New Orleans Louisiana to review several juvenile educational programs. These programs were geared specifically for juveniles who are incarcerated in the county jail and juvenile detention center. Dr. David Domenici operates both education programs and they were quite impressive. However, until such time as the education program at the Henley- Young changes overto fully incorporate all residents into their school system the Jackson Public school system must find a way to integrate juveniles

and JCA-s into their educational programing. An MOU must still be developed with the Jackson Public school system. As stated in my previous reports, education is part of the daily programming of an institution specifically a juvenile institution. Most juvenile defendants are already below grade level which has been bared out through juvenile facility data;consequently, education as a part of the facility programming should be a high-priority for the school system and the county. At some point, these youth will be returning to the community. As I have stated in my previous reports JCA-s are part of the facility and must be a part of the daily education program. **Please see Ms. Brooks' most recent report.**

E. **Develop recreation programs and purchase additional equipment for youth**– The facility continues to do a good job in providing recreation for male and female residents. They should be commended from a recreational aspect.

F. **Update cameras and intercom systems** - The facility continues to work on these areas. The camera and intercom systems are critical for safety and security of staff and youth and vital for investigations. The County still needs to work on this matter.

G. **Continue to improve medical system** – See Dr. Ezike most recent report.

H. **Renovate and redesign unused space** – Again based on my review the county has made no inroads or provided any support for changes.

I. **Continue to maintain cleanliness and repairs of the facility** –Again the County should continue to support the cleanliness of the facility and provide needed repairs and maintenance. The County has done an outstanding job from the beginning of the process to present and is to be commended. It should be noted that continuous cleaning and maintenance and repairs are always a must for facilities to maintain their operational integrity.

J. **Develop an adequate case management system**–Dr. Boesky has provided training to the Q-MHP'-s and case managers. The County now needs to hire a full-time clinical-psychologist to oversee the case management system. The facility has a case management system in place and has new policies and procedures.

K. **Develop and maintain adequate data collection system**– Again the County needs to develop an**IT system** that will collect and assist the facility with processing data.A Project Manager and IT person is needed to help develop the type of information systems needed. (See my previous report).

**<u>Facility Staffing</u>**

The facility continues to hire and fill vacant positions.As I have recommended in my last report the facility needs to take several positions and convert them to a Restraint Team (RT'-s). Again, there is a national organization **Control** F.O.R.C.E Inc. that can assist the county in training this new team. Based on my knowledge of the county system, this may be an organization that the County may also want to use for training in their adult system. (Please see my previous report).

**Training**
Again, the facility should continue its training program.

**Building Cleanliness/Environmental Issues/Maintenance**
See previous report.

**Professional Standards of Care/Sustainability**
See previous report.

**Mental Health**
See Dr. Boesky's most recent report.

**Suicide Prevention**
See Dr. Boesky's most recent report.

**Behavior Management/Isolation**
During my most recent visit, in conjunction with interviews,I found behavior management and isolation with JCA'-s has reduced significantly. In my document review and my interviews with youth, all revealed that the uptick I saw during my last review has been reduced. I found no indication that shackling was still being used for JCA'-s or juveniles. Based on my review of documentation and interviews, I also found no indication that youth were being locked down and shackled during recreation. What I did find doing this review, was that the facility was following the behavior management isolation policy that was revised in August 2018 to address the agreed-upon consent decree. Again, doing this most recent review, I found no indication that shackling, and isolation of JCA-s werethe practice as indicated in my previous report. The facility appears to be calming down after the initial shock of JCA'-s being transferred into the facility. The facility now appears to have a consistent process in place for behavior management/isolations.

**Medical, Medication Review & Disposal**
Please see Dr. Ezike's most recent report.

**Food Service**
Based on my review, observation and discussion with youth, the food service program is doing quite well. The only problem youth complain ofwas"they wanted more". This program has come a long way as it relates to food service. The vendor should be commended.

Below are the compliance ratings and summary of ratings used in this report. However, as stated above, the facility continues to make progress on provisions.

**Please note again that some of the comments and recommendations in the provisions are restatements of previous reports because in those areas minor or some movement has been made. The Director should use these comments as a road map to continue developing the facility plan. He should also continue to develop comprehensive corrective action plans for guidance. That plan should have the following:**

**A. Clearly state the problem or weakness, including the root cause**

**B. List the individuals who will be accountable for the results of the corrective action plan**

**C. Create simple, measurable solutions that address the root cause**

**D. Each solution should have a person that is accountable for it**

**E. Set achievable deadlines**

**F. Monitor the progress of the plan**

**The graph below has been included to show the progress made thus far on the 71 provisions:**




## Compliance Code Measurements

**Substantial Compliance(SC)**: Practices follow the county-approved policies, training materials or other documents; practices follow policy with rare exception and exceptions lead to corrective action; trained staff fill all positions and vacancies are filled within 3 months; the County has completed work in an acceptable manner; policies, procedures and practice and training are fully operational and quality-assurance audited and audit exceptions lead to corrective action; outcomes meet or exceed agreement requirements.

**NOTE:** Provisions labeled (SC*) will be or were eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016.

**Partial Compliance (PC)**: Policy and procedure is implemented in some but not all locations or times; staff are hired but not trained; the County is working on implementation, but tasks are not completed; system implemented at some but not all locations or times, outcomes meet or exceed agreement requirements some of the time and in certain area.

**Beginning Compliance (BC)**: Policy and procedure is written by the county but has not been implemented; funding and hiring authority are approved by the County but positions are not filled; training materials prepared and approved by the county, but training has not started.

**Non-Compliance (NC)**: No action taken, and immediate steps needed to maintain schedule or prevent further delay. A policy may exist, but the policy may need significant revision or modifications and rarely translates into practice.

| **Provision** | **Intake** | **10th Report** | **11th Report** | **12th Report** | **13th Report** |
|---|---|---|---|---|---|
| 1.(1) | All Residents Admitted to Henley Young | NC | BC | BC | PC |
| 1.(2) | MAYSI-2 Mental Health Screening | NC | BC | BC | PC |
| 1.(3) | Prescription Medications | BC | BC | BC | BC |
| 1.(4) | Meal Compliance | SC* | SC* | SC* | SC* |
| 1.(5) | Telephone Usage | SC* | SC* | SC* | SC* |
| 1.(6) | Strip Search Policy | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Staffing and Overcrowding** | | | | |
| 2.(1) | Direct Care Staff Ratio | BC | SC | SC | SC |
| 2.(2) | Maximum Capacity Adjustment | SC* | SC* | SC* | SC* |
| 2.(3) | One-Person Cell | SC* | SC* | SC* | SC* |
| | | | | | |
| **Provision** | **Cell Confinement** | | | | |
| 3.(1) | Structured, Rehabilitative & Educational Programming | PC | PC | PC | PC |
| 3.(2) | Appropriate Access to Living Unit | BC | PC | PC | SC |
| | | **10th Report** | **11th Report** | **12th Report** | **13th Report** |
| 3.(3) | Dangerous Residents | BC | BC | BC | PC |
| 3.(4) | Isolation | PC | SC | SC | SC |
| 3.(5) | Direct Care Staff on Units | PC | SC | SC | SC |
| | | | | | |
| **Provision** | **Structured Programming** | | | | |
| 4 | Educational, Rehabilitative, and/or Recreational Programs | BC | PC | PC | PC |
| | | | | | |
| **Provision** | **Individualized Treatment Plans/Treatment** | | | | |

| | **Program for Post-Disposition Residents** | | | | |
|---|---|---|---|---|---|
| 5.(1) | Residents Access to Adequate Rehabilitative Services | NC | BC | PC | PC |
| 5.(2) | Health and/or Substance Abuse Treatment | NC | BC | BC | SC |
| 5.(3) | Treatment Plans | NC | BC | BC | BC |
| 5.(4) | Review of Individual Treatment Plans | NC | BC | PC | PC |
| 5.(5) | Evening and Weekend Programs and Activities | NC | BC | PC | SC |
| 5.(6) | Quality Assurance Program | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Disciplinary Practices and Procedures** | | | | |
| 6.(1) | Implement a Discipline Policy and Practice | BC | PC | PC | PC |
| 6.(2) | Policy for Residents Violations | BC | PC | PC | SC |
| | | | | | |
| **Provision** | **Use of Restraints** | | | | |
| 7.(1) | Mechanical Restraints | SC | SC | SC* | SC* |
| 7.(2) | Mechanical Restraints – Transportation | SC | SC | SC | SC |
| 7.(3) | Misuse of Mechanical Restraints | SC | SC | SC* | SC* |
| 7.(4) | Mental Health – Use of Mechanical Restraints | BC | BC | BC | PC |
| 7.(5) | No Restraint Chairs, Chemical Restraints and/or Tasers | SC* | SC* | SC* | SC* |
| 7.(6) | No Hogtying in Facility | SC* | SC* | SC* | SC* |
| 7.(7) | Mechanical Restraints – One-On-One Supervision | SC | SC | SC* | SC* |
| 7.(8) | Mechanical Restraints – Notice to Medical Professional | SC | SC | SC | SC |
| 7.(9) | No Electronic Restraints | SC* | SC* | SC* | SC* |
| 7.(10) | No Firearms in Facility | SC* | SC* | SC* | SC* |
| | | | | | |
| **Provision** | **Use of Force** | | | | |
| 8.(1) | No Misuse of Use of Force | BC | PC | PC | PC |
| 8.(2) | Notice to Medical Professional After Use of Force | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Meals and Nutrition** | | | | |
| 9.(1) | All Meals and Snacks Must Be Nutritional | PC | SC | SC | SC |
| 9.(2) | Comply with Nutrition Guidelines | PC | SC | SC | SC |
| 9.(3) | Provide Drinking Water Throughout the Day | SC | SC | SC | SC |

| Provision | Clothing | 10th Report | 11th Report | 12th Report | 13th Report |
|---|---|---|---|---|---|
| 10 | Provide Basic Clothing Items | SC | SC | SC | SC |
| | | | | | |
| | **Hygiene and Sanitation** | | | | |
| 11.(1) | Provide Appropriate Hygiene Products | SC | SC | SC | SC |
| 11.(2) | Provide Sleeping Mats and Blankets | SC | SC | SC | SC |
| 11.(3) | No Deprivation of Mats and Blankets | SC* | SC* | SC* | SC* |
| 11.(4) | Enough Sanitary Mats and Blankets | SC* | SC* | SC* | SC* |
| 11.(5) | Clean and Sanitary Environment | PC | PC | PC | SC |
| 11.(6) | Fire Safety, Weather Emergencies, Sanitation Practices, Food Safety, and Provide Safe Environment | PC | PC | PC | PC |
| 11.(7) | Clean Drinking Glasses and Eating Utensils | SC | SC | SC | SC |
| | | | | | |
| **Provision** | **Medical Care** | | | | |
| 12.(1) | Provide Residents with Adequate Medical Care | BC | BC | BC | BC |
| 12.(2) | Provide Medical Professional When Needed | BC | BC | BC | PC |
| 12.(3) | Implement a Sick Call Policy to Ensure 24 Hour Services | BC | BC | BC | PC |
| 12.(4) | Prescription Medications Only Dispensed by Medical Staff | BC | BC | BC | PC |
| 12.(5) | Provide Medical and Mental Health Services | BC | BC | BC | PC |
| 12.(6) | Proper Monitoring Residents Who Require Individualized Attention | BC | BC | BC | PC |
| | | | | | |
| **Provision** | **Mental Health Care** | | | | |
| 13.(1) | Provide Adequate Mental Health Care | NC | NC | BC | PC |
| 13.(2) | Residents and Psychotropic Medications | NC | NC | NC | PC |
| 13.(3) | Within 72 Hours of Admittance Complete an Individual Mental Health Treatment Plan | NC | NC | NC | BC |
| 13.(4) | Implement Policies and Procedures for Referrals | NC | NC | NC | PC |
| 13.(5) | Enough Psychiatric Services | NC | NC | NC | PC |
| 13.(6) | Psychiatrist and/or Counselors to Record Review to Ensure Proper Care | NC | NC | NC | NC |

| Provision | Suicide Prevention | 10th Report | 11th Report | 12th Report | 13th Report |
|---|---|---|---|---|---|
| 14.(1) | Multi-tiered Suicide Prevention Policy | BC | BC | BC | PC |
| 14.(2) | Evaluate Highest Level of Suicide Watch Every 12 Hours by Medical Professional | BC | BC | BC | PC |
| 14.(3) | Closely Monitor Suicide Watch Residents During All Activities | BC | BC | BC | PC |
| 14.(4) | Court Shall be Notified Within 24 Hours of Any Residents on Suicide Watch | BC | BC | BC | PC |
| | | | | | |
| **Provision** | **Family Support and Interaction** | | | | |
| 15.(1) | Visitation Shall Not Be Restricted or Withheld | SC* | SC* | SC* | SC* |
| 15.(2) | Provide Accommodations for Contact Visits | SC* | SC* | SC* | SC* |
| 15.(3) | Visitation Shall be Regularly Scheduled | SC* | SC* | SC* | SC* |
| 15.(4) | Phone Calls Shall be Allowed Based on Policy | PC | PC | PC | PC |
| | | | | | |
| **Provision** | **Miscellaneous Provisions** | | | | |
| 16.(1) | Provide Equal Access to All Services | PC | SC | SC | SC |
| 16.(2) | Provide the Opportunity to Participate in Large Muscle Exercise Every Day | BC | PC | PC | SC |
| 16.(3) | Prohibit the Use of Profanity in the Presence of Residents | BC | BC | BC | PC |
| 16.(4) | Provide Adequate Grievance Policy | PC | PC | PC | PC |
| 16.(5) | Provide Residents of All Ages with the Opportunity to See Their Attorney and/or Residents Court Counselor | BC | BC | BC | BC |

**The following are my observations and recommendations specific to the provisions of this agreement. It should be noted that my introductory comments are integral measures of the provisions and should be such.**

1. **Intake**

| | | |
|---|---|---|
| Provision1.1 Intake | All residents admitted to Henley-Young shall receive a health screening, within 1 hour of admission or as soon as possible as reasonably thereafter, by appropriately trained staff as required by Mississippi Code Annotated § 43-21-321. Information obtained during the screening shall include, but shall not be limited to, the juvenile's: (a) Mental health; (b) Suicide risk; (c) Alcohol and other drug use and abuse; (d) Physical health; (e) Aggressive behavior; (f) Family relations; (g) Peer relations; (h) Social skills; (i) Educational status; and (j) Vocational status." Mississippi Code Ann. § 43-21-321(1).<br>During this screening, Henley-Young shall obtain information regarding the resident's educational status by having the residents or intake officer complete an education screening form developed and provided by the Jackson Public School District. | |
| Status | **PartialCompliance** | |
| Discussion | This provision has moved to partial compliance. Although the facility has developed policies and procedures there is now a need to hire a full-time clinical psychologist to oversee the QMHP'-s and case managers. As stated in my previous report, with the entering of JCAs into the facility and because of their level of maturity and sophistication, there is a need to ensure adequate mental health services are provided. Dr. Boesky has been very clear on the need for a full-time doctoral level clinical psychologist to oversee the mental health services at Henley Young.<br><br>Dr. Boesky has provided training and updated her report and recommendations based on her most recent visits. Again, as Dr. Boesky made clear in my last report, there is a need to have more strength-based questions added to the intake screening process. Therefore, the need for a full-time clinical psychologist and with this need being aggressively repetitive in these reports the hiring of this person needs to happen immediately to move this provision to substantial compliance.**Please see Boesky's most recent report**.<br><br>There continues to be youth who are entering the facility who are identified based on the MAYSI-2 screening as suicidal and a mental health risk that are not being addressed. | |
| Recommendations | 1. Full developadmitting policiesand procedures to reflect provision.<br>2. Ensure all staff who admit residents are properly trained<br>3. Develop training records (**Executed**)<br>4. Provide documentation in an organized way on residents being screened/admitted (files) (**Executed**)<br>5. Hire Doctoral Level Clinical Psychologist. | |

| | |
|---|---|
| | 6. Ensure all residents' records are available for my review with all areas of the provisions placed in the resident's file (**Executed**)<br>7. Dr. Boesky has provided an updated report, recommendations and training based on her last visit. (**Executed**) |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 1.2<br>Intake | All residents shall receive a MAYSI-2 mental health screening upon admission, as required by Mississippi Code Annotated § 43-21-321. The screening will be conducted in private by appropriately trained staff of Henley-Young. If the screening indicates that the residents is in need of emergency medical care or mental health intervention including, but not limited to, major depression, suicidal ideation, withdrawal from drugs or alcohol, or trauma, the detention staff shall refer those juveniles to the proper health care facility or community mental health service provider for further evaluation immediately or as soon as reasonably possible. | |
| Status | **PartialCompliance** | |
| Discussion | This provision has moved to partial compliance. Although the facility has initiated the new MAYSI-2 screening tool,the County still needs to hire a doctoral level clinical psychologist to oversee the mental health professionals (QMHPs) and case management staff. The hiring of a doctoral level full-time professional is critical to the success of the mental health program.<br><br>Again, Dr. Boesky has provided training and recommendations. Please see her report based on her most recent visit to the facility.<br><br>Continue to develop and follow mental health plan that Dr. Boesky has recommended | |
| Recommendations | 1. Develop comprehensive policy and procedures for this provision. (**Executed**)<br>2. Develop resident files that are organized and arranged properly (**Executed**)<br>3. Develop training and provide documentation of training (**Executed**)<br>4. Identify person or person(s) whose responsibility it is to score the instrument (**Executed**)<br>5. Provide documentation on who reviews the instrument and note what services are provided for the residents in the facility and what services should continue when the residents leave the facility<br>6. Develop process whereby facility staff and court employees develop a system for the sharing of information and reviewing of residents' files which are centrally located and accessible to detention staff.<br>7. Develop plan of action for follow-up services upon a youth's release | |

| | |
|---|---|
| | 8. See Dr. Boesky updated report and recommendations based on her last visit.<br>9. Add drug, Alcohol and Trauma to the screening.<br>10. Hire full-time clinical psychologist. |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 1.3<br>Intake | Prescription medications will be secured for all residents who have a valid, current prescription within 8 hours of admission, if possible, but in no case, longer than 24 hours after admission, including weekends and holidays. If during a resident's detention, a medical professional either prescribes a new medication or renews a resident's previous prescription medication, Henley-Young will secure the prescription medication within 8 hours of receiving the prescription, if possible, but in no case, longer than 24 hours after receiving the new prescription, including weekends and holidays. Henley-Young shall secure and/or purchase all prescription medications prescribed to confined residents. | |
| Status | **Beginning Compliance** | |
| Discussion | This provisionremains at beginning compliance. According to Dr. Eike's most recent report the transition to Quality Correctional HealthCare (OCHC), a vendor with experience delivering healthcare in correctional settings, has provided a stable framework for creating an effective healthcare delivery system. However, policies and procedures still should be developed, and language geared more towards juvenile care. In addition, according to Dr. Ezike the draft manual as it relates to intake procedures poorly reflects the actual process that takes place. Also, she found no evidence or example that the draft policies and procedure statements are part of thefacilities consistent practice. Please see report. The medical department has come a long way from prescriptions being stored in a McDonald's bag. Now the provider QCHC must ensure that they are following the policies and procedures they have developed. | |
| Recommendations | 1. Hire a Medical Doctor, physician's assistant or a practitioner. This person must be involved in developing the medical department andto direct medical care. (Executed QCHC)<br>2. Maintain written policy and procedures or protocol for this provision and ensure that they are followed and reflect the actual process<br>3. Document staff training on distribution and side effects of medication<br>4. Provide documentation on efforts to obtain prescription drugs<br>5. Dr. Ezike has provide an updated report and recommendations based on her most recent visit. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.4 Intake | Upon admission to Henley-Young, all residents shall be offered a snack or meal in compliance with the United States Department of Agriculture's School Meals Program standards. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility has maintained substantial compliance on this provision based on my observation, interviews and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.5 Intake | Upon admission to Henley-Young, all residents shall be permitted to telephone a parent or legal guardian free of charge and to take a shower before being placed on the pod. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility has remained at substantial compliance on this provision, based on my observation and review. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 1.6 Intake | Within 60 days of the date of this agreement, Henley-Young shall develop and implement policies that limit strip searches to instances where Henley-Young staff has an articulable suspicion that a resident may possess weapons or contraband. Anytime a strip search is conducted, Henley-Young staff must document, in writing, their suspicion, obtain permission from a supervisor, and conduct the search in a manner that minimizes the intrusion into the resident's privacy. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provisionremains at partial compliance. See my previous reports and my discussion on safety and security. There is still occasional contraband entering the facility based on my interviews and document review. | |
| Recommendations | 1. Staff must be provided with the necessary training with information stating the trainer, name of the training class/course, time, date and | |

| | |
|---|---|
| | location of training.<br>2. This documentation should be kept and logged in facility records.<br>3. Continue to provide enough staff for adequate coverage 24/7.<br>4. Ensure contraband does not enter the housing and secure areas of the building |
| Evidentiary Basis | Document review, observation, interviews |

## 2 Staffing and Overcrowding

| Provision 2.1 Staffing and Overcrowding | Within 90 days of the date of this agreement, Henley-Young shall operate with a direct care staff to resident ratio of 1:8 from the hours of 6:00 a.m. until 10:00 p.m. and a ratio of 1:10 from the hours of 10:00 p.m. to 6:00 a.m. |
|---|---|
| Status | **Substantial Compliance** |
| Discussion | This provision remains at substantial compliance as it relates to direct care staffing. However, the Doctor of Clinical Psychology is needed immediately on a full-time basis. |
| Recommendations | (see below) |

| Units | Day Shift | Evening Shift | Night Shift | Total |
|---|---|---|---|---|
| A officer | 3 | 3 | 2 | 8 |
| B officer | 3 | 3 | 2 | 8 |
| C officer | 3 | 3 | 2 | 8 |
| D officer | 3 | 3 | 2 | 8 |
| Intake | 1 | 1 | 1 | 3 |
| Master Control | 1 | 1 | 1 | 3 |
| Staff for Court Transportation | 2 | 2 | | 4 |
| Internal Transportation | 2 | 2 | | 4 |
| Laundry | 2 | 2 | | 4 |
| *Director | 1 | | | |
| *Deputy Director | 1 | | | |
| *Operation Manager | 1 | | | |
| Supervisors | 3 | 3 | 2 | 8 |
| | 26 | 23 | 12 | 61 |

Duty Post Staffing/Administration

61 Direct care/supervisor/laundry staffing X 1.5 Relief Factor—Total staff

| | |
|---|---|
| | needed to effectively operate the facility—91.5<br>1 to 8 Awake—1 to 10 Sleep<br><br>Misc. post coverage<br>Medical/MH Hospital Runs Doctoral Level Clinical Psychologist<br>One on One MH/Medical<br>Visitation<br>*Administration<br>*Maintenance<br><br>See December24, 2017 Memoranda on Reduction/Appropriation of staffing and incentives. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 2.2 Staffing and Overcrowding | If the staff-to-resident's ratio falls below the requirements of section 2.1 for longer than two (2) days, the Director or his assignee shall immediately identify residents accused of nonviolent offenses who are eligible for less restrictive alternatives to secure detention and request an emergency release for eligible residents from the appropriate Residents Court. The maximum capacity of Henley-Young shall be calculated by determining how many direct care staff members can supervise residents in accordance with section 2.1. The current maximum capacity of Henley-Young is 84. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 2.3 Staffing and Overcrowding | No more than one resident shall be placed in a one-person cell. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility continues to be in substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation | |

## 3 Cell Confinement

| Provision 3.1 Cell Confinement | Residents shall be engaged in structured, rehabilitative, and educational programming outside of their cells during the hours of 7:00 a.m. to 9:00 p.m. each day, including weekends and holidays. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provisionremains in partial compliance. During this visit and based on my interviews with youth, I found that most youth are attending school including some of the JCA-s, however several JCA-s were attending school on a half-time basis. According to the facility,JCA-s attending half days of school is based on maintaining safety and security. Nevertheless, the school reasoning for JCA-s attending half-day school was due in part that they were not in the Jackson Public school system therefore they were not required to enroll them in school program. Even if both statements are true, any youth housed at Henley Young should be provided a full education program during their stay. **It's just the right thing to do**. As stated in my introduction, at some point, these youth will reenter the community and the county, and the school system has responsibility to educate them. I was advised during this visit that the facility is developing a GED program for JCA residents. A GED program would be great for this facility. It should be noted that although JCA-s were not attending school full-time they were not confined during their time out of the school program. | |
| Recommendations | 1. Update and maintain policies and procedures for this provision. Ensure JCAs are included in programming.<br>2. Review the schedules to be sure that they adequately reflect all daily activities. (**Executed**)<br>3. Develop positive behavior management systems with rewards and consequences for all youth including JCAs. (**Executed**)<br>4. Remove the dark film from the Plexiglas in towers on unit which would allow staff to view the unit without there being visual obstruction (when lights on). **Executed**<br>5. Develop monthly recreation and education schedules for all youth juvenile and JCAs. (**Executed**)<br><br>6. Purchase frames for facility activities and schedule(executed)<br>7. Hire recreation staff (**Executed**)<br>8. Fully develop award and incentive program (**Executed**)<br>9. Facility administrators documented walkthroughs<br>10. Also, see Ms. Brooks'smost recent report on school. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 3.2<br>Cell Confinement | Except when residents are in protective custody or confined subject to section 3.3 of this Settlement Agreement, residents placed in the Suicide or Booking cells shall be allowed to spend the hours of 7:00 a.m. to 9:00 p.m. on the appropriate living unit and to have the opportunity to engage in structured, rehabilitative, and educational programming, unless medically counter-indicated. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | This provision has moved to substantial compliance. During my review of documents and observation, - and discussion with youth and staff, I found no indicationthat youth are being placed in the booking area for any confinement or living arrangements. The facility now needs to ensure it updates its data collection as stated in my introduction. | |
| Recommendations | 1. Continue to follow recommendations as set forth in section 3.1. (**Executed**)<br>2. Continue to maintain adequate policies and procedures for this provision. (**Executed)**<br>3. Develop data collection for residents who are placed in protective custody or confinement.<br>4. Residents who are removed from school should continue to be placed in a designated living area based on classification. (**Executed**)<br>5. Ensure JCAs are integrated into regular programming and only in this area of units and rooms when appropriate. (**Executed**) | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 3.3<br>Cell Confinement | Residents who pose an immediate, serious threat of bodily injury to others may be confined in their cells for no longer than 12 hours at a time without administrative approval. Residents who are placed on cell confinement for this reason shall be released from their cells daily to attend school, maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on residents who are subject to cell confinement every 15 minutes. Staff must document all instances of cell confinement in writing and must document the justification for determining that a resident poses an immediate, serious threat of bodily injury. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved to partial compliance. During my review of documents and interviews with youth and my observations; I found the facility is following the provision as set forth on confinement in the consent decree. On the other hand, the documents I reviewed showed an | |

| | |
|---|---|
| | increase in youth violence during the months of August and September. However, since that time, the violence appears to have decreased. A review of documents revealed the facility documentation has improved greatly. It should be noted that 15-minute checks are being done and youth are not just given 24-hourconfinement as a normal course of discipline; they are also using counseling and restriction of privileges to correct behavior; which is what behavior management is intended to do. Using other alternatives as consequences for negative behavior is part of a continuum. In addition, several youths who were cited for a due process hearing where able to state their case and no consequences were given to them which is again the way the process should work. The facility has been utilizing the mental health professionals and youth supportto reduce disciplinary confinement. The facility has developed a team approach to confinement which includes utilizing mental health and case managers as youth advocates. With the addition of Dr. Payne,with her mental health acumen and her ability to work with youth and staff has strengthened the due process system at Henley Young. The facility has taken a while to get there as relates to confinement and due process as a system, but **much credit should be given to the QA manager Eric Dorsey and his constant fine tuning of the system. This is outstanding work**. I will review the systems again during my next visit to ensure systems are still functioning. |
| Recommendations | 1. Continue to ensure staff is following policies and procedures for this provision. (**Executed**)<br>2. For residents placed in their rooms, ensure the forms that have been developed are being used to indicate the time residents will be in their rooms and post it on their doors.<br>3. Continue to ensure that supervisors sign off on the form in 15-minute staggered visual checks when residents are placed in their rooms.<br>4. Continue to develop a system of major and minor consequences for behavior. (**Executed**)<br>5. Develop form for 15-minute checks and include in policy. **(Executed)**<br>6. Ensure JCAs are placed in regular programming (**Executed**)<br>7. Ensure JCAs are attending school and not in their rooms or units all day. (**Executed**)<br>8. Ensure all documents required for due process/confinement are in place operating as policy and procedure requires. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 3.4<br>Cell Confinement | Residents shall not be automatically subjected to cell confinement and/or isolation upon their admission to Henley-Young unless he or she would be subject to cell confinement under section 3.3. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | This provision remains at substantial compliance. I still found no indication that juveniles of being subjected to isolation upon admission to the facility. Therefore, I will review this provision again during my next visit to ensure the facility is still in compliance. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision.<br>2. Continue to ensure all staff is trained and document training.<br>3. See provision 3.2/ 3.3<br>4. Continue to ensure practice is consistent with policy and procedure.<br>5. Continue to ensure there is adequate staffing and supervision for this area | |
| Evidentiary Basis | Document review, observation | |

| Provision 3.5<br>Cell Confinement | At all times between the hours of 7:00 a.m. to 10:00 p.m., at least one direct care staff shall be stationed on any living unit where two or more residents are placed, and direct care staff shall be actively engaged with residents. From 10:00 p.m. to 7:00 a.m., staff shall conduct visual checks on residents every 15 minutes. Henley-Young shall ensure that every cell has an operating intercom that always allows residents to communicate with staff. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | This provision remains in substantial compliance. However, during this visit I found that several intercoms were not operating in youth rooms. During this visit, the maintenance department was waiting on components to repair these intercoms. I will review them again during my next visit to ensure that they are operable. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision including JCAs into regular programming. (**Executed**)<br>2. Continue to maintain adequate staffing. (**Executed**)<br>3. Continue to maintain Provide adequate staff supervision. (**Executed**)<br>4. See my last report<br>5. Continue to maintain and review the deployment of staffing especially with JCAs in mind. (**Executed**)<br>6. Do more administrative unannounced visits during the night shift. | |

| | |
|---|---|
| Evidentiary Basis | Document review, observation, interviews |

**Structured Programming**

| | | |
|---|---|---|
| Provision 4 Structured Programming | Henley-Young shall administer a daily program, including weekends and holidays, to provide structured educational, rehabilitative, and/or recreational programs for residents during all hours those residents shall be permitted out of their cells, pursuant to section 3.1. Programming shall include:<br>a. activities which are varied and appropriate to the ages of the residents;<br>b. structured and supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship; and<br>c. Supervised small group leisure activities, such as a wide variety of card and table games, arts and crafts, or book club discussions. | |
| Status | **Partial Compliance** | |
| Discussion | The facility still maintains partial compliance. Again, the facility has done a very good job in developing programming for juveniles,and as stated in my last report this should continue. The facility has hired recreational staff who have developed a variety of activities. During my interviews with youth, my observations and my review of documents, reveal that the recreational program is structured with both male and female participating in various types of activities indoors and outdoors. However as stated in my introduction and in other provisions, education is a key program and youth should have the ability to participate in that specific program. The reason the education program is so important and a critical component of the facility, youth spend most of their day there. Consequently, it is a major component of facilities structured time. With all the other programming components in place, once the JCA-s are fullyintegrated into the education program, this provision should move to substantial compliance. | |
| Recommendations | 1. Continue to develop adequate policies and procedures for this provision, which includes JCAs.<br>2. Continue to provide adequate schedules for weekdays and weekend programming and act on it including JCAs.<br>3. Continue to develop an adequate monthly recreation schedule with age appropriate games and programs.<br>4. The facility needs to hire an officer dedicated to developing and monitoring recreational programs**. (Executed)**<br>5. Hire case management staff.<br>6. See recommendation on school in my introduction. | |

| Evidentiary Basis | Document review, observation, interviews |
|---|---|

**5. Individualized Treatment Plans Treatment for Post-Disposition Residents**

| Provision 5.1 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents have access to adequate rehabilitative services. Henley-Young shall ensure that children placed in the facility post-disposition will receive constitutionally compliant rehabilitative services. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision remains in partial compliance. The facility has hired case managers and QMHPs. In my interviews with youth, they are meeting with the case managers and mental health staff and case managers are involved in facilitating meetings and providing advocacy for clients on their caseload. The facility as stated throughout this report must hire a PhD level full-time clinical psychologist to organize, direct, and help develop the individualized treatment plans as specified in this provision. There mustcorrespondingly be a system in place to ensure information is transferred when a youth leaves the facility. In addition, services and treatment plans must be signed off by a mental health administrator who is familiar and connected to the service providers in the community including the schools. Please see Dr. Boesky's last report and my comments in my last report. It should be noted again that plans must be fully developed for the JCA-s who will spend more time at the facility. Because JCA-s may have more identified mentalhealth and health needs, and if they are transferred to a higher level in the criminal justice system, the receiving institution will need all the information available to service them.<br><br>The case managers need to also develop post dispositional plans as stated in the provision. | |
| Recommendations | 1. Continue to develop adequate policy and procedures to meet this provision to include JCAs.<br>2. Continue to review light weight residents in program (i.e. disturbing the family peace) and find alternative placement for them.<br>3. Hire 3 case managers who are assigned and work for the facility director. (**Executed**)<br>4. Hire case management staff. (**Executed**)<br>5. See Dr. Boesky's report | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 5.2 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall ensure that residents in need of mental health and/or substance abuse treatment and/or who are in the facility post disposition shall have appropriate treatment plans developed and implemented in accordance with generally accepted professional standards of practice for mental health and rehabilitative services. | |
|---|---|---|
| Status | **Beginning Compliance** | |
| Discussion | The status of this provision remains in beginning compliance. Please see Dr. Boesky and Dr. Ezike's most recent reports. | |
| Recommendations | 1. Continue to develop adequate mental health policies and procedures for this provision to include JCAs.<br>2. Develop case management policies and procedures<br>3. See recommendations under (5.1).<br>4. Hire case management staff. (**Executed**)<br>5. Purchase case management system<br>6. See both Dr. Boesky's and. Dr. Ezike's reports. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 5.3 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall implement policies and procedures for the required content of treatment plans, which shall include;<br>a. That the treatment plan be individualized;<br>b. An identification of the mental and/or behavioral health and/or rehabilitative issues to be addressed;<br>c. A description of any mental health, medication or medical course of action to be pursued, including the initiation of psychotropic medication;<br>d. A description of planned activities to monitor the efficacy of any medication of the possibility of side effects;<br>e. A description of any behavioral management plan or strategies to be undertaken;<br>f. A description of any counseling or psychotherapy to be provided;<br>g. A determination of whether the type or level of treatment needed can be provided in the resident's current placement; and<br>h. A plan for monitoring the course of treatment, and if necessary, for revising the treatment plan.<br>i. A description of the precise terms the of the facility's long-term and short-term objectives for the residents, the full range of services to be provided, and procedures, and timetables and staff assignments for the implementation of such treatment plan;<br>j. A plan for regularly engaging the family in the resident's treatment plan;<br>k. A comprehensive re-entry plan that will assist the residents Re-enroll in their home school and access medical, mental health, Vocational and rehabilitative services based in the community. |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | The status of this provision remains in beginning compliance. The facility has hired three (3) case managers and QMHPs, and they are in the process of developing adequate policies and procedures and training. The county also needs to hire a full- time doctoral level Clinical Psychologist. Dr Ezike has provided an updated report based on her most recent visit.<br>Dr. Boesky has also provided an updated report and recommendations based on hermost recent visit. She has also provided training for case managers and mental health professionals at Henley Young. |
| Recommendations | 1. Develop comprehensive policies and procedures for this provision that includes the contents (A-K).<br>2. The County/Court shall define the criteria for the program<br>a. It is important that post dispositional programs in other facilities be reviewed.<br>b. Often seeing what is being done in other facilities provides insight into how to develop and operate these programs.<br>3. Provide dedicated staff to manage program. (**Executed).**<br>4. Provide intensive training to all staff members. |

| | |
|---|---|
| | a. Train staff in various treatment modalities i.e. cognition, behavioral modification, modeling, psychotherapy, reality therapy, group therapy and group dynamics and other skills.<br>b. Create treatment teams<br>c. Develop case planning and program development<br>d. Assessment of the program to determine if it meets the needs of the court placed residents.<br>e. Assessment tool to regularly monitor the success or lack of success of all residents in the program.<br>5. Provide auxiliary training to all other direct care staff.<br>6. Hire case management staff. (**Executed)**<br>7. Full-time clinical psychologist. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 5.4 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall institute a program of periodic staff reviews every three weeks and evaluations of each resident's progress under his/her individualized treatment plan and of the appropriateness of the plan itself and Henley-Young's plan for such review. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facility remains at partial compliance. Please see Dr. Boesky's and Dr. Ezike's most recent reports. Dr. Boesky has also provided training to all case managers and mental health staff. As stated in my previous report the case management process needs to ensure that JCAs are involved in the treatment planning and post- dispositional service. | |
| Recommendations | 1. Develop comprehensive policies and procedures for this provision to include JCAs.<br>2. Provide training to all staff.<br>3. Identify roles and responsibilities of direct care, treatment and educational staff through policies and procedures and adequate funding and staffing.<br>4. Hired case management staff. **(Executed**)<br>5. Hire a Doctoral Level Clinical Psychologist. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 5.5 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall develop and implement a program that provides for evening and weekend programs and activities that allow residents to engage in meaningful activities. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | This provision has moved to substantial compliance. Based on my interviews with youth and my review of documents all youth including JCAs are involved in evening and weekend programs and activities. The recreational staff and the operations manager should be commended for the programming and activities they have developed and engaged youth in. Girls and boys are receiving the benefit of these programs. | |
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision to include JCAs. (**Executed**)<br>2. Continue to provide adequate staffing for this program. (**Executed**)<br>3. Continue to develop a monthly recreational program with activities. (**Executed**)<br>4. Continue to keep records of activities provided and note those that were not provided and why. (**Executed**)<br>5. Purchase board games etc. (**Executed**)<br>6. Hire recreational staff. (**Executed**)<br>7. Hire case management staff. (**Executed**) | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 5.6 Individualized Treatment Plans Treatment Program for Post-Disposition Residents | Henley-Young shall develop and implement an adequate quality assurance program. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision remains at partial compliance. The QA department at Henley-Young continues to develop their data fields and programs. There is significant improvement from limited data being produced to what is being developed now. The QA staff should be commended and encouraged to continue their efforts. Based on my discussion with the administration, the county's IT department will be working with the facility to create and | |

| | |
|---|---|
| | develop different data sets that will produce reports. The data sets and system will provide the facility with a technology that can evaluate current operations and improve management decisions.<br><br>The following is from my previous reports and needed:<br>• I have provided the facility with templates for assistance in the full development of the Q/A unit/ process.<br>• See QA Data decision points below<br><br>Master Report Content<br>Master Report Content ↓ \| Aggregated Data for Master Report \| Disaggregated Unit Reports A B C D \| Center Based Monitoring Mechanisms and Quality Assurance<br>Center Population Data: • Days Care • Residents on Mental Health Roster • Environmental Alerts<br>Behavior Management CBT: • Daily Point Sheets • Coupons • Levels • Groups; Commissary<br>Grievances: Type of Grievances by Resident<br>Court Reports: Center Court Report Production<br>Multi-discipline Analysis of Procedural Compliance; Addressing Aberrations, Variance and Improvement Opportunities<br>Restraint Log QA Check Against Assessment and Injury Log<br>Restraint Log QA Check Against Incident Reports<br>Restraint Event Log and Report<br>Incidents: Classification of Incidents; Characteristic of Incidents • Assaults • Injuries • Physical Restraints • Mechanical Restraints<br>Restraint Events: Medical Assessment of Physical and Mechanical Restraint Events; Mental Health Assessment of Restraint Events that > 30 minutes<br>Youth Injuries: Medical Assessment of all Injury Events<br>Medical Assessment and Injury Form and Report<br>Mental Health Assessment and Services Form and Report<br>Confinement Events: Medical Assessment of Confinement Events that > 3 Hours; post 24 hours; Mental Health Assessment of Confinement Events that > 3 Hours; post 24 hours<br>Confinement Event Log and Report<br>Unit Confinement Log Check QA<br>Center Confinement Log Cross Analysis to Hearing Officer<br>Disciplinary Hearing Data: Hearing Officer; Major Rule Violation or Extraordinary Circumstance Violation; Assigned Sanction<br>Center Generated Monthly Reports Director |
| Recommendations | 1. Develop comprehensive policies and procedures to meet the needs for this provision for the facility, school program and SICU program.<br>2. Health Care: continuously assess the quality and adequacy of the health services provided, accurately evaluate the performance of staff providing health services and address identified deficiencies.<br>3. Recreation and Social programs: continuously assess the quality and |

| | |
|---|---|
| | adequacy of social and recreational programming provided; accurately evaluate the performance of staff in providing these programs.<br>4. Environmental Health and Safety: continuously assess the quality and adequacy of environmental health and safety, accurately evaluate the performance of staff in providing a safe and healthy environment and properly address identified deficiencies.<br>5. Discipline and order: continuously monitor use of discipline and promptly address misuse or over use of discipline and other identified deficiencies.<br>6. The facility must continue to develop monthly performance measures to indicate achievement in the desired area.<br>7. Review State of Florida Quality Assurance Model and for assistance in developing contact CJCA Performance Based Standard for Juvenile Detention Programs, also use ACA standards to establish policy guidelines.<br>8. Develop data collection system<br>9. See introduction and chart |
| Evidentiary Basis | Document review, observation, interviews |

## 6 Due Process/Isolation/Disciplinary Practices and Procedures

| Provision 6.1 Disciplinary Practices and Procedures | Henley-Young shall implement a discipline policy and practice that incorporates positive behavior interventions and support. This policy shall include guidelines for imposing graduated sanctions for rule violations and positive incentives for good behavior. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision remains in partial compliance. Once the facility develops its educational program and theJCA-s and they are a total part of that process which includes the support of youth when they are isolated or confined, this provision can be moved to substantial compliance. All the other components are in place; the positive behavior interventions, graduated sanctions, rule violations, and positive incentives for good behavior are all in place. | |
| Recommendations | 1. Continue to maintain adequate policies and procedures for this provision to include JCAs. (**Executed**)<br>2. Continue to ensure youth are familiar with the rules and regulations of the facility during the orientation process and ongoing thereafter including JCAs. (**Executed**)<br>3. Continue ensure residents are receiving and understand the resident | |

| | |
|---|---|
| | handbooks during orientation and sign for it including JCAs. (**Executed**)<br>a) They shall include resident's rights, major and minor rule violations and the grievance policy.<br>b) The handbook will explain to residents in their own language the rules and shall also be explained by staff that will have them sign and date a form indicating that both processes have occurred.<br>c) These rules shall be posted on each unit.<br>4. Due process rules shall be posted on each unit. (**Executed**)<br>5. Develop positive behavior intervention programs. (**Executed**)<br>6. Assign and train an independent person(s) to handle due process isolation hearings. The person(s) must be independent of the unit staff. (**executed**)<br>7. Ensure residents who are in isolation are provided recreation and education services. |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 6.2 Disciplinary Practices and Procedures | Residents who violate major rules may be subject to cell confinement for up to 24 hours for a single rule violation. An occasion in which a resident is alleged to have contemporaneously violated multiple major rule violations shall count as a single rule violation for the purposes of this section. No residents shall be confined to a cell for longer than 8 hours for a single rule violation without receiving written notification of the alleged rule violation and the occurrence of a disciplinary review/due process hearing before an impartial staff member, which includes participation by the accused residents. Under no circumstances shall residents be subjected to involuntary cell confinement for longer than 24 hours for disciplinary purposes. Residents who are placed on cell confinement shall be released daily from their cells to attend school, maintain appropriate personal hygiene, and to engage in one hour of large muscle exercise. | |
| Status | **Substantial Compliance** | |
| Discussion | This provision has moved to substantial compliance. The facility has developed policies and procedures for this provision. In addition, in my review of documents and my interviews with youth I found that the facility is following this provision as it was outlined in the consent decree. The facility has even gone further in that mental health and case managers are involved in the due process hearings as advocates for youth who were charged with facility violations. I will review on my next visit to ensure that the process that is in place continues. | |
| Recommendations | 1. Continue to maintain policies and procedures for this provision including JCAs. (**Executed**)<br>2. Develop sheets to place on door of any residents in confinement that | |

| | |
|---|---|
| | identifies the reason for confinement and is review and signed by supervisor. (**Executed)**<br>3. Ensure residents in confinement receive education and recreation services.<br>4. See 6.1 recommendations.<br>5. Continue to provide training for all staff on these policies and procedures. (**Executed**) |
| Evidentiary Basis | Document review, observation, interviews |

**7. Use of Restraints**

| | | |
|---|---|---|
| Provision 7.1 Use of Restraints Mechanical | Mechanical restraints shall not be used to punish residents or for the convenience of staff. Mechanical restraints shall only be used to prevent self-harm and/or harm to others, subject to section 7.4, and for transportation to and from court, subject to section 7.2. | |
| Status | **Substantial Compliance**** | |
| Discussion | The facility remains at substantial compliance. Again, I reiterate it should be noted that well- run facilities only use mechanical restraints for transportation or exigent circumstances which may arise at any facility under supervisory approval. The facility must ensure that mechanical restraints are not used capriciously with JCAs. | |
| Recommendations | 1. Officers shall continue to receive training on policies and procedures. (**Executed**)<br>2. Officers shall continue be trained on when it is appropriate to use mechanical restraints also with JCA-s. (**Executed**)<br>3. All training shall continue to be documented. (**Executed**)<br>4. The policy will require the documentation of any use of mechanical restraint and use of force incidents. (**Executed**)<br>5. Restraint log should continue to be implemented. (**Executed**)<br>6. Continue to follow policy (**Executed**) | |
| Evidentiary Basis | Document review, observation, interviews | |

| | | |
|---|---|---|
| Provision 7.2 Use of Restraints Mechanical | Nothing in this section shall prohibit mechanical restraints from being placed on residents who are being transported to and from court or out of the facility, if staff have reason to believe that a resident presents a flight risk or is an imminent danger to the residents or others or will engage in violent behavior. However, mechanical restraints should be removed immediately after the resident is placed in a cell and at no time shall a resident be placed in a cell wearing mechanical restraints. | |
| Status | **Substantial Compliance** | |

| | |
|---|---|
| Discussion | The facility remains at substantial compliance on this provision. Based on my review of documents, interviews with youths and observations at this time. I found no indication of overuse of mechanical restraints apart from transferring residents out of the facility. This should continue. The facility must ensure that mechanical restraints are not used capriciously. |
| Recommendations | 1. Continue to develop and provide remedial training for this provision including JCAs.<br>2. All training shall continue to be documented.<br>3. The policy will require the documentation of any use of mechanical restraint and use of force incidents. (**Executed**)<br>4. Operationalize the edicts of this provision. (**Executed**)<br>5. Additional supervision needed to ensure mechanical restraints are not misused.<br>6. Continue to follow the process to remain at substantial compliance including JCAs. |
| Evidentiary Basis | Document review, observation, video recordings and discussion with residents |

| Provision 7.3<br>Use of Restraints | Restraints shall not be used to secure residents to a fixed object such as a restraint chair, bed, post, or chair. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains at substantial compliance on this provision. Based on my review of documents, interviews with youths and observations at this time I still found no indication of overuse of mechanical restraints apart from transferring residents out of the facility. However, to remain at substantial compliance the facility needs to continue to follow the recommendations (2, 3 and 4) below. Also, the facility should ensure mechanical restraints are not used capriciously with JCAs. | |
| Recommendations | 1. Update the comprehensive policies and procedures for this provision, this should also include JCAs. (**Executed**)<br>2. Continue to provide training for staff within the facility as described above on this provision and provide documentation of training. (**Executed**)<br>3. Develop and use a mechanical restraint log. (**Executed**)<br>4. Continue to provide training on de-escalation techniques to try to use mechanical restraints only as a regular part of facility transport.<br>5. Additional supervision needed to ensure mechanical restraints are not misused. | |

| Evidentiary Basis | Interviews, observation and document review |
|---|---|

| Provision 7.4<br>Use of Restraints | No residents shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional or if determined to be necessary under section 7.2 or as reasonably necessary to prevent the residents from engaging in acts of self-harm or harm to others. If a resident must be restrained for longer than 15 minutes in order to prevent self-harm, that residents shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved to partial compliance. During my interviews with youth and staff and my review of documents I found no indication that youth were being restrained for more than 15 minutes. I also found no documents or interviews with staff or kids that youth were engaged in acts of self-harm with themselves and others. I will review this provision again upon my next visit. | |
| Recommendations | 1. Continue to develop comprehensive policy and procedures for this provision with mental health professionals including JCAs. (**Executed**)<br>2. Provide training for staff on policy and procedures and document training. (**Executed**)<br>3. Provide training on de-escalation techniques including JCAs.<br>4. Develop Mental Health protocols for this provision including JCAs.<br>5. Hire Dr. Level clinical psychologist. (See Dr Boesky's most recent report.) | |
| Evidentiary Basis | Document review | |

| Provision 7.5<br>Use of Restraints | Henley-Young shall not use, or allow on the premises, restraint chairs, chemical restraints and/or Tasers. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision. Based on my most recent visit and my observations and review of documents, the facility continues to stay in | |

| | |
|---|---|
| | substantial compliance as it relates to this provision. |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. |
| Evidentiary Basis | Document review, observation, video |

| Provision 7.6<br>Use of Restraints | Henley-Young shall not subject residents to "hogtying," which is the practice of placing a resident's face down on a bed, floor, or other surface, and securing the resident's hands to his feet. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I would like to continue to commend the facility on maintaining substantial compliance with this provision. Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation, document review and interviews | |

| Provision 7.7<br>Use of Restraints | When a resident is placed in mechanical restraints, staff must provide one-on-one supervision for the duration of the restraint, except when mechanical restraints are deemed to be necessary for the reasons specified in section 7.2. | |
|---|---|---|
| Status | **Substantial Compliance *** | |
| Discussion | The status of this provision is maintained at substantial compliance. (see comments on JCAs)<br><br>The facility should continue with following the recommendations listed below. | |
| Recommendations | 1. Continue to provide on-going training for staff on policies and procedures including JCAs.<br>2. Continue to document all training provided to all staff including JCAs.<br>3. Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional.<br>4. Restraint log should be implemented.<br>5. Continue to ensure additional supervision is provided to ensure mechanical restraints are not misused. | |

| | |
|---|---|
| Evidentiary Basis | Document review |

| | | |
|---|---|---|
| Provision 7.8<br>Use of Restraints | Henley-Young shall notify a medical professional whenever a resident is placed in mechanical restraints for reasons other than those specified in section 7.2. A medical professional shall examine the residents as soon as possible after restraints are removed, except when the residents was restrained for the reasons specified in section 7.2. | |
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains at substantial compliance. (See comments on JCA-s)<br><br>Based on my review of documents, interviews and discussion, I found that mechanical restraints are rarely used within the facility. (See comments on JCAs) | |
| Recommendations | 1. Redevelop comprehensive policies and procedures for this provision including JCAs**. (Executed)**<br>2. Continue to provide training on policies and procedures including JCAs.<br>3. Continue to document all training provided to all staff.<br>4. Continue to ensure that residents who are placed in mechanical restraints are seen by a medical professional.<br>5. Continue to ensure that information being reported is accurate and consistent.<br>6. Develop a single matching reporting system for the entire facility. | |
| Evidentiary Basis | Document review | |

| | | |
|---|---|---|
| Provision 7.9<br>Use of Restraints | Hinds County does not currently and shall not in the future allow officers to enter the secure detention area of the facility with any electronic restraints, including, but not limited to Tasers. | |
| Status | **Substantial Compliance*** | |
| Discussion | The facility has remained at substantial compliance on this provision based on my most recent visit and my observations and review of documents. However, the facility should ensure officers monitoring residents (JCAs) from the Hinds County Jail are availed for caring mechanical restraints and must follow the policies of Henley-Young. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review | |

| Provision 7.10 Use of Restraints | Henley-Young is required to ensure that no officer enters the secure detention area of the facility with a firearm. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | I still would like to continue to commend the facility on maintaining substantial compliance with this provision. Based on my most recent visit and my observations and review of documents, the facility continues to stay in substantial compliance as it relates to this provision. The facility should still ensure that the recommendations below should continue to be followed. Also see provision 7.9 as it relates to Tasers. I would also reiterate under no circumstances should any staff, anyone connected to the facility, and law enforcement etc. have firearms on the premises especially in secure areas. All weapons still must be secured in appropriate locked areas of the building. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, Observation | |

**8. Use of Force**

| Provision 8.1 Use of Force | Physical force shall not be used to punish residents. Staff shall only use physical force to stop residents from causing serious physical injury to self or others or to prevent an escape. If physical force is necessary, staff must use the minimum amount required to safely contain the residents. Whenever possible, staff shall avoid the use of force by first attempting verbal de-escalation techniques. Staff shall be required to fully document in writing every instance of use of force. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provisionremains in partial compliance. The facility should continue to follow the recommendation from my last report.<br><br>Although the facility is computerizing some data (i.e. restraints, suicide attempts, self-injury, physical and mechanical restraint types, incidents, use of force, and incidents by shifts) which is good information, it is not enough. The County should assist the facility in developing their information technology program to includes (confinement hours, type of force, etc.).<br><br>Again, good data will assist the facility in determining answers to some of the following examples:<br>A. The location of use of force<br>B. The number of use of force incidents | |

| | |
|---|---|
| | C. The number of use of force requiring mechanical restraints<br>D. The type of restraint used<br>E. Grievances<br>F. The number of incidents requiring chemical agents<br>G. The number of incidents involving non-lethal security devices (i.e. batons, Tasers, etc.)<br>H. The number of use of force incidents resulting in injury to residents or staff<br>I. Plan of action to address each incident (i.e. disciplinary action, staff training or remedial training, resident's isolation, resident's behavior management, resident's mental health screening or evaluation etc.) |
| Recommendations | 1. Continue to maintain policy and procedures for this provision including JCAs.<br>2. Continue to provide training for on policies and procedures including JCAs.<br>3. Continue to document all training provided to all staff.<br>4. Adapt an appropriate curriculum for training staff on the use of verbal de-escalation skill and safe use of physical restraints or mechanical restraints.<br>5. Revise form to distinguish between physical and mechanical restraints.<br>6. Develop an information technology program.<br>7. Develop computerized tracking of all JCAs entering and leaving the facility<br>8. Continue to stay in contact the National Partnership for Juvenile Justice for recommendations on training program in this area.<br>9. Continue to document and file report when there is use of force.<br>10. Continue to ensure any time use of force is used residents are seen by a medical professional<br>11. Continue to follow the facility's chain of command which will reduce staff confusion. |
| Evidentiary Basis | Document review, interviews |

| Provision 8.2<br>Use of Force | Henley-Young shall notify a medical professional, including but not limited to the licensed practical nurse on duty whenever physical force is used against a resident. A medical professional shall examine a resident immediately after the use of physical force. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facilitycontinues to maintain partial compliance. Dr. Ezike has provide an updated report and recommendations based on her visit. Please continue to follow the recommendations below. | |
| Recommendations | 1. Complete procurement of services as quickly as possible.<br>2. Continue to develop comprehensive policies and procedures for this provision.<br>3. Continue to provide on-going training to staff on policies and procedures.<br>4. Continue to document all training provided to all staff.<br>5. Continue to review nursing schedule and provide more hours at facility.<br>6. Continue to provide written documentation of examination of residents by medical professional in every instance.<br>7. Provide additional medical services after hours and on weekends. (executed)<br>8. Continue to document and file in resident's records when there is use of force. | |
| Evidentiary Basis | Document review, interviews, observation | |

**9. Meals and Nutrition**

| Provision 9.1<br>Meals and Nutrition | Residents shall be provided three meals and a snack daily. If a resident misses a meal because he or she is attending court, or some other appointment, he or she shall receive the missed meal upon his or her return to detention. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains in substantial compliance. Please see the introduction. | |
| Recommendations | 1. Continue to review portions to ensure residents receive enough food during meals.<br>2. Develop policy and procedures for this provision. (**Executed)**<br>3. Continue to provide training for kitchen staff and all other staff | |

| | |
|---|---|
| | members involved with handling food and preparing meals.<br>4. Continue to document compliance with this provision.<br>5. Food should be served in a timely manner and consistent with facility schedule once developed.<br>6. Review the National Food Service Management Institute from the University of Mississippi that details “Food Safety Facts”.<br>7. Food service area is in need for maintenance, repair and cleanliness. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 9.2 Meals and Nutrition | All meals and snacks served to residents at Henley-Young shall, at a minimum, comply with the nutrition guidelines set forth in the United States Department of Agriculture’s School Meals Program standards. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains in substantial compliance. Please see introduction. | |
| Recommendations | 1. Develop policy and procedures for this provision **(Executed)**<br>2. Continue to provide training for kitchen staff and all other staff members involved with handling food and preparing meals. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 9.3 Meals and Nutrition | Residents shall be provided access to drinking water throughout the day. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility remains at substantial compliance on this provision. Based on my review and observations, I found that youth had access to water. However, I am still recommending that the water fountains on the units and in the youth’s cells be operable. | |
| Recommendations | 1. Contact County or State Environmental office to conduct test on water system. (**Execute**d)<br>2. Continue to ensure residents receive water during school and recreational periods and at night.<br>3. Continue to develop a policy for incidents regarding water quality and procedures to address them. | |

| | |
|---|---|
| | 4. Repair inoperable drinking fountains. |
| Evidentiary Basis | Document review, observation, interviews |

**10. Clothing**

| | |
|---|---|
| Provision 10 Clothing | Henley-Young shall always provide basic clothing items for residents. These items must include, at a minimum, socks, underwear, uniform, shoes, and undershirts. For girls, these items must also include a brassiere. When appropriate, Henley-Young shall also provide residents with a coat, hat, and gloves. Residents must be provided with a clean uniform, socks, undershirt, underwear, and brassiere, if applicable, upon intake and at least once per day. No residents shall be deprived of these basic clothing items for any reason, including, but not limited to, as a punishment, because these items are being washed, or due to overcrowding. |
| Status | **Substantial Compliance** |
| Discussion | The facility remains at substantial compliance in this provision. It should be noted that the laundry personnel continue to do an outstanding job by ensuring that clothing which is tattered, dingy, not usable is discarded. The facility should maintain the property inventory system for discarding the above-mentioned articles. |
| Recommendation | 1. Continue to check washer and dryer to ensure they are working properly.<br>2. Continue to ensure that girls and boys are equally involved in cleaning and folding clothes.<br>3. Hire 2 laundry staff to ensure clothing is handled properly. **(Executed)**<br>4. Continue to ensure that all staff and residents wear protective material (smocks and gloves) when handling chemicals and clothing.<br>5. Continue to discard clothing that is torn, dingy and in poor condition.<br>6. Develop a system for replacing clothing on a regular and consistent basis. **(Executed)**<br>7. Develop schedule for distribution. **(Executed)**<br>8. Develop a system for prewashing clothing (i.e. undergarments etc.)**(Executed)** |
| Evidentiary Basis | Document review, observation, interviews, photographs |

## 11. Hygiene and Sanitation

| Provision 11.1 Hygiene and Sanitation | Residents shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily, soap for washing hands after each time the residents uses the toilet, and toothpaste and a toothbrush for tooth brushing, which will occur at least twice daily, a comb and brush, that if shared, shall be sterilized between uses by residents. Girls must be provided with panty liners daily and other feminine products as needed. Residents will be issued a comb and brush upon entering the facility; however, if residents are issued a recycled comb or brush or a comb or brush that has been used by another resident, Henley-Young shall ensure that the comb and brush is sterilized and in good condition. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The facility remains at substantial compliance in this provision. I would still recommend that a licensed barber and/or beautician be retained. | |
| Recommendations | 1. Ensure that hygiene kits are properly labeled, and **residents are not** sharing each other's hygiene products or items. **(Executed)**<br>2. Ensure items such as hair brushes, if shared, are sterilized and in good condition. **(Executed)**<br>3. Continue to provide training for staff on these policies and procedures.<br>4. Ensure that clean face towels are available for residents. **(Executed)**<br>5. Develop a schedule for distribution of hygiene kits. **(Executed)**<br>6. Retain a licensed barber and/or beautician. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 11.2 Hygiene and Sanitation | Residents shall be provided with sleeping mats and blankets that are clean and odorless sleeping mats shall be sanitized between uses by residents, and residents shall receive clean blankets weekly. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remainsinsubstantial compliance. Based on my review of documents and observation, the facility needs to continue to ensure that mattresses and blankets are discarded properly<br><br>Policies and procedures have been developed. The facility has provided training to ensure that the process outlined in the policies and procedures is followed. The facility needs to continue to monitor the condition of the blankets and mattresses for signs of holes and tattering the facility needs to | |

| | |
|---|---|
| | continue to follow the recommendations below. |
| Recommendations | 1. Continue to discard all blankets and mattresses that are tattered and have holes in them.<br>2. Clean and maintain laundry area in orderly fashion.<br>3. Develop forms or system of documentation for distribution and inventory **(Executed)**<br>4. Label and designate an area for towels, sheets, clothing etc. **(Executed)** |
| Evidentiary Basis | Document review, observation |

| Provision 11.3 Hygiene and Sanitation | Under no circumstances shall residents be deprived of mats and blankets. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains in substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidence | Observation, and document review | |

| Provision 11.4 Hygiene and Sanitation | Henley-Young shall maintain anenough clean, sanitary mats and blankets that correspond with the facility's maximum capacity. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remainsin substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Observation and document review | |

| Provision 11.5 Hygiene and Sanitation | Residents shall be provided with a clean, sanitary environment. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision has moved to substantial compliance. Although, the facility needs some touch-up painting, and minor maintenance, it should be noted that this facility has left its dungeon status from my initial visits. The facility should keep up the good work. However, the county needs to ensure that funding for the maintenanceof the facility is a part of the facilities annual budget. | |
| Recommendations | 1. Develop policies and procedures for this provision. (**Executed)**<br>2. See areas in discussion that should be addressed.<br>3. Need to develop housekeeping and cleaning schedule.<br>4. Need to develop checklist or inspection report for each unit and area of building.<br>5. Need to develop work order system to ensure that when problems emerge, they are addressed.<br>6. Need to develop corrective action plans as needed.<br>7. Need to provide training for staff on policy and procedures.<br>8. Continue to ensure delivered food items are dated and rotated from old to new. (**Executed)**<br>9. See my previous introduction as it relates to transferring young adults from the Hinds County Jail. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 11.6 Hygiene and Sanitation | Hinds County shall ensure that Henley-Young complies with relevant law regarding fire safety, facility safety, weather emergencies, sanitation practices, food safety, and the elimination and management of environmental toxins. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provisionremains at partial compliance. During this visit I found several security doors (security entrance door and the entry door into the vestibule area adjacent to the master control area) that must be repaired and several intercom's in youth rooms that are also in need of repair. These are major security risks for the facility.<br>During my review of documents and observation, the facility is still doing safety and fire inspections however to move to substantial compliance the facility still needs to ensure that the recommendations 4, 5, 7, 8, 10 and 11 below are followed. During this report and a review of documents it shows that the facility sprinkler tampered switch and the H119 mechanical room main switched failed and there were no | |

| | |
|---|---|
| | corrective action plans in place to correct these violations. There are also no signatures on the report. These are areas that must be corrected. |
| Recommendations | 1. Develop policies and procedures and plans for fire safety, evacuation etc. **(Executed)**<br>2. Develop adequate staff training regarding fire safety.<br>3. Properly maintain and repair fire equipment.<br>4. Ensure intercom systems are operating properly.<br>5. Ensure all mattresses used by residents are fire resistant.<br>6. Routinely test all fire equipment and system.<br>7. Ensure that all electrical outlets, wires and equipment (lights) are properly working.<br>8. Develop work order system to ensure items are repaired.<br>9. Ensure that all areas in this provision are addressed by a certified professional.<br>10. Review entire fire safety program/system<br>11. Facility needs to develop corrective action plan.<br>12. Clean and Sanitize kitchen<br>13. Develop cleaning procedures<br>14. Repair the areas that failed inspections<br>15. Have fire inspectors sign report |
| Evidentiary Basis | Document review, observation |

| Provision 11.7 Hygiene and Sanitation | Residents shall be provided with clean drinking glasses and eating utensils. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains at substantial compliance. Based on my observation and review of documents this provision continues to be implemented at this time. | |
| Recommendations | 1. Develop policies and procedures for this provision. (**Executed)**<br>2. Continue to provide a thorough cleaning of the kitchen and all equipment and utensils | |
| Evidentiary Basis | Document review, observation and interviews | |

**12. Medical Care**

| Provision 12.1 Medical Care | The parties agree, however, that henceforth, Henley-Young shall provide residents with adequate medical care, including: prompt screenings; a full physical exam within 72 hours after their detention hearing or disposition order, as applicable; access to medical professionals and/or prescription medications when needed; and prompt transportation to a local hospital in the case of a medical emergency. Hinds County is responsible for procuring and/or paying for all medications provided to residents. |
|---|---|
| Status | **Beginning Compliance** |
| Discussion | The status of this provision remains at beginning compliance. Please see Dr. Ezike's most recent report. |
| Recommendations | 1. Develop policies, procedures and protocols for this provision.<br>2. Develop policies and procedures and protocols based on standards for Health Services in Juvenile Detention and Confinement facilities.<br>3. Provide training for staff members who administer medication to residents on proper usage and possible side effects. Also, train the staff on emergency protocols if side effects occur.<br>4. Have a licensed medical professional review and sign off on policy, procedures and protocols.<br>5. Have a licensed health professional periodically review and provide supervision to the nurse at facility.<br>6. Develop forms to coincide with provision.<br>7. Remove medication from bags and place them in secure, organized areas and develop forms to determine what medications are always present in the facility.<br>8. Hire or have on contract a physician to review medical area.<br>9. Ensure that residents receive vision exams, dental screenings, mental health screenings, hearing tests, etc.<br>10. Order folders with 2 dividers, end tab, classification folders in letter size with 2 prongs for medical charts. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.2 Medical Care | Henley-Young shall ensure that a medical professional is available to examine residents confined at the facility to identify and treat medical needs, when necessary. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision has moved to partial compliance. Please see Dr. Ezike's most recent report. | |
| Recommendations | 1. Hire qualified medical professional for nights and weekend care.<br>2. Develop policies, procedures and protocols for this provision.<br>3. Provide training for staff on this provision.<br>4. Ensure medical protocols are child/youth centered. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.3 Medical Care | Henley-Young shall implement its sick call policy and practice which ensures that confined residents who request non-emergency medical attention are examined by a medical professional within 24 hours of a residents placing him or herself on sick call, excepting weekends and holidays. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The status of this provision has moved to partial compliance. Please see Dr. Ezike's most recent report. | |
| Recommendations | 1. Develop policies, procedures and protocols for this provision that are child focused.<br>2. Place a resident's grievance and medical request box (kite box) on each unit.<br>3. Provide training for staff on this provision.<br>4. Nurse or designated person, making daily rounds to retrieve kites (Request for Medical Service Forms).<br>5. Dr. Ezike will provide an updated report and recommendations based on her most recent visit | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 12.4 Medical Care | Prescription medications shall only be distributed by licensed medical staff or Henley-Young staff who has been trained by licensed medical personnel. |
|---|---|
| Status | **Partial Compliance** |
| Discussion | The status of this provision has moved to partial compliance. Please see Dr. Ezike's most recent report. |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision child centered.<br>2. These policies, procedures and protocols must include the appointment of a medication administration protocol.<br>3. There must be a medication record of all medicines administered.<br>a. One record to reflect all medicines leaving the pharmacy;<br>b. An additional record kept in each resident's case file.<br>4. Ensure that the training is comprehensive make certain that all medical contingencies are considered.<br>5. The staff should be trained on what side effects to look for drugs commonly prescribed to residents with mental health needs.<br>6. Provide training to staff on the policy, procedures and protocols for this provision.<br>7. All training should be documented and conducted annually. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.5 Medical Care | Medical and mental health services shall be provided in a manner that ensures the confidentiality of resident's health information. |
|---|---|
| Status | **Partial Compliance** |
| Discussion | The status of this provision has moved to partial compliance. Please see Dr. Ezike's most recent report. |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.<br>2. Get HIPAA requirements and institute them the facility.<br>3. Designate the persons who have access to the resident's medical records within the facility and outside of the facility, but within the juvenile justice system.<br>4. Provide training to staff on policies, procedures and protocols.<br>5. Provide training to staff on HIPAA requirements, and document training.<br>6. Designate a HIPPA Privacy Officer. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 12.6 Medical Care | Henley-Young shall develop procedures for monitoring residents who require individualized attention because of medical issues that do not involve requiring the residents to sleep on a mat in the visitation room. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved to partialcompliance. Please see Dr. Ezike's most recent report. | |
| Recommendations | 1. Develop policies, procedures and protocols to address this provision.<br>2. Develop processes of continuous monitoring residents with stable medical issues, i.e. the care for diabetic residents who are on an insulin regiment.<br>a. What are the medical requirements of the residents who need monitoring?<br>b. Who is responsible for the monitoring?<br>c. How are the records kept of the monitoring?<br>3. Provide training to staff on the policies, procedures and protocols for this provision.<br>4. Annual competency training. | |
| Evidentiary Basis | Document review, observation and interviews | |

**13. Mental Health Care**

| Provision 13.1 Mental Health Care | Henley-Young's contractor, Hinds Behavioral Health Services, shall provide adequate mental health services to all confined residents with a mental health diagnosis or serious mental health need, as indicated by the MAYSI-2. This shall include, but is not limited to, the provision of individual and group counseling sessions upon the request of a residents or the resident's parent/guardian, access to a mental health professional at the detention center, and the distribution and medical monitoring of psychotropic medications by a medical professional. | |
|---|---|---|
| Status | **PartialCompliance** | |
| Discussion | The status of this provision has moved to partialcompliance. Please see Dr. Boesky's most recent mental health report. In addition, she provided training to case management staff and the Q MHP's. (See report). | |
| Recommendations | 1. Ensure that the facility has a Standardized Assessment Tool i.e. the MAYSI-2 to use during the intake process. (**Executed**)<br>2. Develop policies and procedures to address this provision. (**Executed**)<br>3. Provide training to staff on policies and procedures and provide | |

| | |
|---|---|
| | documentation of training. (**Executed**)<br>4. Develop documentation that will track resident's progress during their stay at facility.<br>5. Ensure there is communication between Hines Behavioral Health Services, Juvenile Court Case Managers and Facility Staff on residents receiving mental health services.<br>6. Hire case management staff. (**Executed)**<br>7. Hire doctoral level clinical psychologists full-time. |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 13.2 Mental Health Care | Residents who are confined for longer than thirty (30) continuous days and who are prescribed psychotropic medications, shall be evaluated by a psychiatrist every thirty (30) days. Such evaluations may be performed by and through employees of Hinds Behavioral Health. | |
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from noncompliance to partial compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (Executed)<br>2. Provide training to staff on policies and procedures. (**Executed**)<br>3. Hire case management staff. (**Executed**)<br>4. Hire full-time clinical psychologist<br>5. Meet with medical provider to increase the number of psychiatrist hours<br>6. Ensure that the psychiatrist is a part of the mental health planning and team. | |
| Evidentiary Basis | Document review, observation, interviews | |

| | | |
|---|---|---|
| Provision 13.3 Mental Health Care | Within 72 hours of a resident's admission to the facility, staff shall develop individual mental health treatment plans for residents who are under the care of a mental health provider. Treatment plans shall emphasize continuity of care and shall ensure that whenever possible, residents are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the resident's initial detention. | |
| Status | **Beginning Compliance** | |
| Discussion | This provision has moved from noncompliance to beginning compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. | |

| | |
|---|---|
| | (**Executed**)<br>2. Provide training to staff on policies and procedures. (**Executed**)<br>3. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>4. Hire case management staff. (**Executed**)<br>5. hire full-time clinical psychologist |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 13.4 Mental Health Care | Henley-Young shall develop and implement policies and procedures for referring residents in need of psychiatric services to a licensed psychiatrist for a timely mental health evaluation. Such services may be provided by and through employees of Hinds Behavioral Health. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from noncompliance to partial compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (Executed)<br>2. Provide and document training to staff on policies and procedures. (Executed)<br>3. Hire case management staff. (Executed)<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>5. Hire full-time clinical psychologist | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 13.5 Mental Health Care | Hinds County shall employ or contract for enough psychiatric services to permit a psychiatrist to fulfill the following functions:<br>a. conduct needed psychiatric evaluations prior to placing residents on psychotropic medications;<br>b. Monitor, as appropriate, the efficacy and side effects of psychotropic medications;<br>c. Participate in treatment team meetings for residents under the psychiatrist's care;<br>d. Provide individual counseling and psychotherapy when needed;<br>e. Evaluate and treat in a timely manner all residents referred as possibly needing psychiatric services; and<br>f. Provide adequate documentation of treatment.<br>g. All evaluations and services outlined above may be performed and/or provided by and through employees of Hinds Behavioral Health or any other duly qualified Mental Health agency. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from noncompliance to partial compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (Executed)<br>2. Provide training to staff on policy and procedures and document training. (Executed)<br>3. Hire case management staff. (Executed)<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>5. Hire full-time clinical psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 13.6 Mental Health Care | The psychiatrist and/or counselors shall review, if necessary, incident reports, disciplinary reports, suicide watch logs, and lockdown logs of residents under their care to determine whether their treatment is working and, if not, how it should be modified. | |
|---|---|---|
| Status | **Non-Compliance** | |
| Discussion | This provision remains noncompliant. According to Dr. Boesky's report neither the contracted psychiatrist, the mental health professionals, nor the case mangers review incident reports, disciplinary reports, safety alert logs, and room confinement logs of residents under their care, to determine whether treatment is working, and if not, how it should be modified. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. The mental health of the residents in the custody of the facility always needs to be closely monitored. | |

| | |
|---|---|
| | 2. The facility needs to develop policies and procedures to address this provision.<br>3. Provide and document training to staff on policies and procedures and document training.<br>4. Facility needs documentation from a mental health organization on plan of action for residents receiving a mental health service.<br>5. Hire case management staff.<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>7. Hire full-time clinical psychologist |
| Evidentiary Basis | Document review, observation |

**14. Suicide Prevention**

| | | |
|---|---|---|
| Provision 14.1 Suicide Prevention | Henley-Young shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch. Suicide watch shall not be used as punishment. The "suicide cell" shall be reserved for residents for whom the "suicide cell" is deemed necessary in conjunction with this suicide prevention policy. | |
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from beginning compliance to partial compliance. Please see Dr. Boesky's was recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (**Executed**)<br>2. Provide and document training for staff on policy and procedure. (**Executed**)<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. (**Executed**)<br>4. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>5. Hire full-time clinical psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 14.2 Suicide Prevention | Any residents placed on the highest level of suicide watch shall be evaluated by a mental health professional, ideally within 12 hours, but in no case longer than 24 hours of his or her placement on suicide watch. If a resident on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the residents shall immediately be transported to a local mental health facility or emergency room for evaluation and/or treatment. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from beginning compliance to partial compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures to address this provision. (**Executed**)<br>2. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area. (**Executed)**<br>3. Provide training for staff on policies and procedures and document training. (**Executed**)<br>4. Identify a mental health agency to help develop policies, procedures and protocols.<br>5. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. (**Executed**)<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>7. Hire full-time clinical psychologist | |
| Evidentiary Basis | Document review, observation | |

| Provision 14.3 Suicide Prevention | Residents on suicide watch shall participate in recreation, school, and any other structured programming. Residents shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely monitor residents on suicide watch, which includes logging activities every 15 minutes. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from beginning compliance to partial compliance. Please see Dr. Boesky's most recent mental health report... | |
| Recommendations | 1. Develop policies and procedures to address this provision with the assistance of a mental professional. (**Executed**)<br>2. Provide and document training for staff on policies and procedures. (**Executed**)<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. (**Executed**)<br>4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the | |

| | |
|---|---|
| | authorities in this area.<br>5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>6. Hire full-time clinical psychologist |
| Evidentiary Basis | Document review, observation |

| Provision 14.4 Suicide Prevention | When a resident is placed on any level of suicide watch, a report shall be made within 24 hours to the resident's court, as well as to the resident's guardian, and his or her defense attorney. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | This provision has moved from beginning compliance to partial compliance. Please see Dr. Boesky's most recent mental health report. | |
| Recommendations | 1. Develop policies and procedures for making and distributing the reports in this provision. (**Executed**)<br>2. Provide training for staff on policies and procedures and document training. (**Executed**)<br>3. Facility needs to ensure that the suicide prevention policy is included in the overall mental health program. (**Executed**)<br>4. The facility needs mental health professionals to help and enhance the development of these policies and procedures as they are the authorities in this area.<br>5. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>6. Hire full-time licensed clinical psychologist | |
| Evidentiary Basis | Document review, observation | |

**15. Family Support and Interaction**

| Provision 15.1 Family Support and Interaction | Visitation shall not be restricted or withheld from residents unless the detention center director determines that a visit will violate the security of Henley-Young or will endanger the safety of residents, visitors, or staff. Visitation should not be restricted as a form of punishment. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The status of this provision remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |

| Evidentiary Basis | Document review, observation and interviews | |
|---|---|---|

| Provision 15.2 Family Support and Interaction | Within 90 days of the effective date of this Settlement Agreement, Henley-Young shall provide accommodations that allow residents to have contact visits with their families. | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains at substantial compliance. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.3 Family Support and Interaction | Visitation shall be regularly scheduled at least three times per week, which shall include evening and/or weekend visitation times in order to encourage family visitation. Henley-Young shall permit the minor siblings of confined residents to participate in visitation, if the minors' parent or guardian is present during the visit and the siblings are not harmful to the residents who are detained at Henley-Young. Henley-Young shall also permit a confined resident's own child (Ren) to participate in visitation | |
|---|---|---|
| Status | **Substantial Compliance*** | |
| Discussion | The facility remains at substantial compliance on this provision. | |
| Recommendations | Eliminated by agreement of the parties signed under the Amended Consent Decree dated March 25, 2016. | |
| Evidentiary Basis | Document review, observation and interviews | |

| Provision 15.4 Family Support and Interaction | Residents may receive phone calls from their attorneys. At the discretion of the Director or assignee, in emergency situations, residents may receive phone calls from parents, primary caretakers, or legal guardians. Emergency phone calls and phone calls from attorneys should not be restricted as a form of punishment. | |
|---|---|---|
| Status | **Partial Compliance** | |
| Discussion | The facility remains at partial compliance on this provision based on my most recent visit and document review. There is still no indication that residents are in contact with their attorney's. A review of documents and interviews revealed that several residents still have not seen or spoken to their attorney. Since the JCAs are part of the facility and their length of stay | |

| | |
|---|---|
| | is longer there is an urgent need to ensure that these youth are in contact with their attorneys.<br><br>Since, I still found no evidence that the residents specifically JCA's housed at the Henley Young Center have visits from their lawyers which is well established by law, best practices and professional standards within juvenile detention facilities, therefore the following still apply:<br>1) Privileged mail from court, attorney,<br>2) Visits from lawyers, paralegals or any legal support staff,<br>3) Provide a private place for confidential discussions, and<br>4) Have policies, procedures and protocols incorporated in resident's Right to counsel. |
| Recommendations | 1. Develop policies and procedures and practices to address this provision. **(Executed)**<br>2. Provide and document training for staff on policies and procedures.<br>3. Ensure that there is proper staffing availability to maintain reliability.<br>4. Ensure that residents can mail letters. (County will pay for postage) (**Executed**)<br>5. Hire case managers (**Executed**)<br>6. Develop form for attorney to signed indicating their visits, for placement into youth files<br>7. Develop a mechanism for tracking attorney phone calls<br>8. Case Managers develop policies and procedures that will help youth interact with attorneys and provide documentation of those interactions. |
| Evidentiary Basis | Document review, observation and interviews |

**16. Miscellaneous Provisions**

| Provision 16.1 Miscellaneous Provisions | Male and female residents shall be provided with equal access to educational and rehabilitative services, medical care, and indoor and outdoor recreation. | |
|---|---|---|
| Status | **Substantial Compliance** | |
| Discussion | The status of this provision remains in substantial compliance. The facility has developed structured programming for males and females. The facility has hired recreational staff to ensure programming is being implemented. They have also purchased equipment and are attracting outside volunteers to assist in programming. The facility needs to ensure JCAs are an integral part of the programming. | |

| | |
|---|---|
| Recommendations | 1. Develop policies and procedures and practices for this provision including JCAs. (**Executed**)<br>2. Cease in the designation of female residents as being solely responsible for laundry; this is a duty male resident can perform as well as females. (**Executed**)<br>3. Continue to develop monthly recreational schedules including JCAs.<br>4. Continue to develop comprehensive facility schedules including JCAs.<br>5. Continue to provide training for staff on policies and procedures and document training.<br>6. Ensure that there is proper staffing availability to maintain reliability.<br>7. Repair court and goal area. (**Executed**)<br>8. Continue to post facility wide schedule on units. |
| Evidentiary Basis | Document review, observation, interviews |

| Provision 16.2 Miscellaneous Provisions | The parties agree, however, that henceforth: All residents shall have the opportunity to engage in at least one hour of large muscle exercise a day. | |
|---|---|---|
| Status | Substantial Compliance | |
| Discussion | This provision has moved from partial compliance to substantial compliance. During my visit, document review, interviews with youth and staff and my observation I found that youth are engaged in large muscle exercises for an hour or more each day. The facility should maintain this level of compliance with this provision. | |
| Recommendations | 1. Continue to develop policies and procedures and implement practices to address the needs of this provision including JCAs.<br>2. Continue to develop and implement programming and recreational schedules including JCAs.<br>3. Continue to provide and document training for staff on policies and procedures.<br>4. Continue to ensure that there is proper staffing availability so that residents are not unnecessarily “locked” in their cells. | |
| Evidentiary Basis | Document review, observation, interviews | |

| Provision 16.3 Miscellaneous Provisions | Henley-Young shall implement a policy which prohibits staff from insulting residents or calling them names, and using profanity in the presence of residents | |
|---|---|---|
| Status | **Partial Compliance** | |

| | |
|---|---|
| Discussion | This provision has moved from beginning compliance to partial compliance. In my interviews with youth, staff profanity is rare. However, youth did discuss other youth cursing and using profanity towards staff. Therefore, I would recommend staff continue to model good behavior in addition to developing groups with youth to assist them with better ways to constructively present themselves. I will review this again during my next visit. There is a social living skills program curriculum that is available for youth and juvenile detention facility.<br><br>The recommendations below should still be followed. |
| Recommendations | 1. Develop policies and procedures and practices to address the needs of this provision. **(Executed)**<br>2. Provide training to staff in the proper de-escalation techniques of residents.<br>3. Administration must provide enough supervision to reduce or eliminate insulting behavior by staff.<br>4. Discipline and retrain staff as needed.<br>5. Provide training for staff on policies and procedures and document training.<br>6. Hire an independent person to investigate allegations of abuse or complaints regarding staff by residents. (**Executed)**<br>7. **Purchase and train youth and staff on the social living skills program curriculum.** |
| Evidentiary Basis | Document review, observation and interviews |

| | | |
|---|---|---|
| Provision 16.4 Miscellaneous Provisions | Henley-Young shall implement an adequate grievance policy that is accessible to all residents regardless of literacy levels, and that provides residents with the opportunity to appeal facility level determinations. Residents shall also obtain the grievance forms from the school liaison. | |
| Status | **Partial Compliance** | |
| *Discussion | This provision remains at partial compliance Although the facility has JCAs,I recommend the facility continues to follow my comments from my previous reports and my recommendations from below. | |
| Recommendations | 1. Place grievance boxes on each unit and school, residents should not be required to request a grievance form.<br>2. Provide training for staff on policies and procedures and document training.<br>3. Provide training for residents on policies and procedures and document training. | |

| | |
|---|---|
| | 4. Ensure that residents are adequately familiarized with the grievance process during their orientation into the facility<br>5. Add a place on the Resident's Grievance Resolution Report for a resident to request an appeal and place for the Director's resolution.<br>6. Ensure Resident's Grievance Resolution Reports are provided to the resident for their signature and their response to the outcome. If the resident disagrees with the resolution the resident has the right to appeal the decision to the director.<br>7. Any retractions of grievances should be done by residents and not by staff. |
| Evidentiary Basis | Document review, observation, interviews |

| | | |
|---|---|---|
| Provision 16.5 Miscellaneous Provisions | Hinds County denies that Henley-Young does not currently have an adequate policy whereby residents can request to see their attorney and/or Residents Court counselor. The parties agree, however, that henceforth: Henley-Young shall develop and implement an adequate policy that allows residents of all ages and literacy levels with the opportunity to request to see their attorney and/or Residents Court counselor. Residents shall obtain the form requesting a visit from his/her counselor from the school liaison. Henley-Young agrees to collaborate with the Plaintiffs to design and implement a comprehensive juvenile justice pre-service and in-service training program for detention center staff. Training shall include, but is not limited to, the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation, appropriate use of force and restraint, and best practices for detention center administration. | |
| Status | **Beginning Compliance** | |
| Discussion | The status of this provisionremains at beginning compliance. Based on my interviews with residents, there continues to be no indication and no documentation they had the opportunity to meet with their public defender prior to or after their court hearings. The facility now has case managers therefore, youth should be able to contact their attorneys, who should help them understand their case better and the process they are involved as relates to court proceedings. These youth should not have the ability to discuss their cases and updates on their case. This will keep the resident's case from falling through the cracks. The process is more needed now with JCAs being a part of the Henley-Young.<br><br>Again, based on my most recent visit and review of documents, residents are still complaining they have not had the opportunity to speak with their | |

| | |
|---|---|
| | attorneys. In my review of the records, there is still no indication that attorneys had visited their client. Again, I found no forms for requesting visits from counselors, attorneys or school liaisons. **The requirements of the Prison Rape Elimination Act are not in place and still needs to be developed.** |
| Recommendations | 1. Develop policies and procedures and practices for this provision including JCAs.<br>2. Provide and document training for staff on policies and procedures.<br>3. Develop single form and system for incident reporting.<br>4. Develop system for receiving and mailing privileged and non-privileged mail for residents.<br>5. Hire case management staff. (**Executed)**<br>6. Policies and procedures shall be reviewed and signed by a licensed mental health professional (psychiatrist, etc.).<br>7. Develop policies and procedures based on the prison rape elimination act. |
| Evidentiary Basis | Observation, interviews and Document reviews |

**Conclusion**

I would again like to thank the Hinds County Board, the County's Attorneys Anthony Simon and Pieter Teeuwissen, County Administrator Carmen Davis, the County Board, facility staff and the facility Director Johnnie McDaniel for their continued assistance and cooperation. As state in my report this facility has come a long way. It should be noted that the constant in this progress has been Eric Dorsey and Eddie Burnside. They have been in the trenches throughout this process and should be especially recognized for their efforts. Now, the hiring of a full-time clinical psychologist is a must to help move the remainingprovision to substantial compliance. The County should keep moving in this positive direction and maintain it.

LEONARD DIXON