**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

J.H. AND
DISABILITY RIGHTS MISSISSIPPI,

    Plaintiffs,

      v.

HINDS COUNTY, MISSISSIPPI,

    Defendant.

Civil Action No.
3:11-cv-327-DPJ-FKB

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN
CONTEMPT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

LEGAL STANDARD FOR CONTEMPT ....................................................................... 7

THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE ............................... 9

   I.   The Consent Decree is a Court Order ............................................................... 9

   II.  Hinds County Engages in Specific Conduct in Violation of the Consent Decree. ............ 10

      A.   Defendant Permits Direct Care Staff to Use Force Without Adequate Supervisory Oversight and Training. ............................................................................................. 10

      B.   Defendant Fails to Offer Required Structured, Rehabilitative, Recreational and Educational Programs to Reduce Cell Confinement. ............................................ 12

      C.   Defendant Fails to Integrate Structured/Rehabilitative Programming with Coordinated Medical/Mental Health Services. ............................................................................ 13

   III.  Hinds County's Longstanding, Current, and Ongoing Failures to Comply with the Court's Multiple Orders Have Consequences. ........................................................................ 14

      A.   Defendant's Non-Compliance is Longstanding, Current, and Ongoing. ...................... 14

      B.   Defendant's Failures Increase the Serious Risk of Harm to Vulnerable and Disabled Children. ................................................................................................................... 16

CONCLUSION .................................................................................................................. 20

## INTRODUCTION

Plaintiffs J.H. and Disability Rights Mississippi ("Henley-Young Plaintiffs") respectfully submit this memorandum of law in support of their Motion for an Order to Show Cause Why Defendant, Hinds County Board of Supervisors ("Hinds County"), Should Not Be Held in Contempt of the Court's April 2, 2021 Order and Extended Third Amended Consent Decree[1] ("Motion"). This class action concerns the denial of the rights of children confined in Hinds County's youth detention facility, many of whom have disabilities and serious mental health care needs.[2] Henley-Young Plaintiffs are (1) a class of all children confined at Henley-Young Juvenile Justice Center ("Facility");[3] and (2) Disability Rights Mississippi.[4]

In 2011, Henley-Young Plaintiffs sued Hinds County alleging violations of residents' Eighth and Fourteenth Amendment rights and of federal laws protecting persons with disabilities.[5] Henley-Young Plaintiffs and Hinds County agreed to enter a Consent Decree in March of 2012. It was extended in April of 2014; amended and extended in March of 2016; amended and extended in March of 2018; amended and extended in April of 2019; and most recently extended by agreement of the parties in April 2021 for two years (*i.e.*, up to and including March 28, 2023).[6]

---

[1] *See* Order Extending Third Amended Consent Decree ("Order"), Apr. 2, 2021, ECF No. 160; Ext. Third Am. Consent Decree ("Consent Decree"), Apr. 2, 2021, ECF No. 161.

[2] *See* Am. Compl., Jun. 6, 2011, ECF No. 6 at 14 (alleging that "[a] significant number" of facility residents "live with disabilities," and that "60–70% of youth in [] Henley-Young require mental health services").

[3] *See* Agreed Order Granting Approval of Settlement Agreement and Certifying a Settlement Class, Mar. 28, 2012, ECF No. 32 at 2 (defining the settlement class as "all children who are currently, or who will in the future be, confined" at Henley-Young).

[4] *See* Am. Compl., Jun. 6, 2011, ECF No. 6 at 12-14. Disability Rights Mississippi ("DRMS") is Mississippi's federally-designated Protection and Advocacy system and Henley-Young is a covered facility. 42 U.S.C. §§ 10801 *et seq.*; 42 U.S.C. §§ 15001 *et seq.*

[5] *Id*. at 19-21 (providing the causes of action, Counts I through V).

[6] The Extended Third Amended Consent Decree "includes a Corrective Action Plan ("CAP") that requires Defendants to engage Expert Anne Nelsen to provide technical assistance and verify implementation of all Consent Decree provisions at Henley-Young Juvenile Justice Center." Order, Apr. 2, 2021, ECF No. 161

Each time the agreement between the parties was extended, and/or amended and extended, Henley-Young Plaintiffs and Hinds County stipulated that (1) "the remedies contained in this document are necessary to correct an ongoing violation of a federal right, extend no further than necessary to correct the violation of federal right, and that the prospective relief is narrowly drawn and is the least intrusive means to correct the violations;" and (2) "the Court will retain ongoing jurisdiction over this [agreement] for purposes of enforcement, pursuant to the terms of the Prison Litigation Reform Act."[7] Consent Decree at ¶¶ 3-4. In 2021, the parties again agreed that "[a]ll provisions of this Extended Third Amended Consent Decree shall be interpreted to be consistent with this intent." *Id.* at ¶ 3.

The parties agreed to an extension of the Third Amended Consent Decree after the October 2020 Joint Expert Report to the Court ("Report")[8] revealed that 35 out of 39 Consent Decree Provisions (nearly 90%) require corrective action where the Facility was "[w]ithout a fully functioning, comprehensive juvenile justice pre-and in-service training program" in violation of Provision 16.5.[9] Since the extension of the Consent Decree in April 2021, the Learning Development Manager has continued to oversee training. However, Defendant has made too little progress in implementing training mandated by the Consent Decree for new and veteran staff due to continued understaffing and chronic staff turnover.[10] As a result, Hinds County has yet to

---

at 1.

[7] Consent decrees which remedy constitutional violations in conditions cases must comply with the Prison Litigation Reform Act (PLRA). *See* 18 U.S.C. § 3626 (a)(1)(A); *see also Ruiz v. Estelle*, 161 F.3d 814, 817 (5th Cir. 1998). The Consent Decree's provisions comply with the PLRA because they remain necessary to remedy ongoing violations of the federal rights of vulnerable and disabled children detained at the Facility.

[8] Joint Expert Anne Nelsen's Report (Dated 10/21/2020), was submitted to the Court on Oct. 21, 2020.

[9] Third Am. Consent Decree, Apr. 3, 2019, ECF No. 145 at 18-19.

[10] Facility Director Fernandeis Frazier resigned on January 3, 2022, following a weekend in which several residents attempted self-harm (according to Facility incident reports). Former Interim Hinds County Sheriff Marshand Crisler was appointed Interim Director of the Facility by the Hinds County on January 4, 2022.

complete all required training for each Consent Decree provision.[11] Additionally, the internal Quality Assurance review process for the Facility's written and revised policies, procedures and tools remains incomplete because training is incomplete.[12]

In addition to the lack of required staff training, continued understaffing and chronic staff turnover adversely limit both structured/rehabilitative programming and coordinated medical/mental health services[13] which results in Plaintiffs being subjected to cell confinement[14] and substantial risk of serious harm[15] in violation of the Consent Decree.

---

*See* Anthony Warren, *Former sheriff to be interim director of Henley-Young Juvenile Justice Center*, WLBT (Jan. 4, 2022); https://www.wlbt.com/2022/01/04/former-sheriff-be-interim-director-henley-young-juvenile-justice-center.

[11] *See* Provisions 20.4 (Measuring Progress) and 20.5 (Benchmark and Needs). Consent Decree at 23-24. Pursuant to the CAP, there have been no training updates to Table 2 (dated Jan. 11, 2022, and submitted to the Court) since 2020 because the extremely limited training offered by the Facility earlier this month, and throughout 2021, continues to be inadequate due to continued chronic vacancies and severe understaffing.

[12] *See id*. Only 3 of 39 Quality Assurance ("QA") reviews for Consent Decree Provisions have been completed since October 2021. Most QA reviews are out of date (16 reviews in early/mid 2021; 14 reviews have not been updated since 2020; 1 review has not been updated since 2019). There remain 7 Provisions for which no QA review has ever been completed (Provisions 1.3 (Prescription Medications), 5.1 (Residents Access to Adequate Rehabilitative Services), 5.3 and 5.4 (Treatment Plans), 13.2 (Residents and Psychotropic Medications), 13.3 (Within 72 Hrs. of Admittance Complete an Individualized MH Treatment Plan), and 13.6 (Sufficient Psychiatric Services)).

[13] Because of chronic staffing shortages, Defendant fails to "ensure that there are sufficient numbers of adequately trained direct care and supervisory staff to supervise youth safely, protect youth from harm, allow youth reasonable access to medical and mental health services, and allow youth adequate time to participate in out-of-cell activities" in clear violation of Provision 2.1 (Staffing and Overcrowding). Consent Decree at 5-6.

[14] Hinds County has failed to demonstrate progress toward unmet needs in programming, behavior management, medical treatment, and mental health treatment. Multiple Consent Decree provisions mandate daily, structured, rehabilitative, educational and/or recreational programming, including evening and weekend/holiday activities. *See id*. at 6-9, 17 (Provisions 3.1 (Cell Confinement), 4.1 (Structured Programming), 5.5 (Individualized Treatment Plans/Programs), 16.2 (Large Muscle Exercise)). As a result, there has been an increase in the use and misuse/overuse of Emergency Behavior Management Confinement. *See* Facility Reports (redacted), attached as Exhibits A-1 to A-7.

[15] The substantial risk of serious harm to Plaintiffs increases where residents are not receiving the full scope of integrated support in violation of Provisions 5.1-5.6 (Individualized Treatment Plans/Treatment Program for Post-Disposition Youth), 12.1-12.6 (Medical Care), 13.1-13.6 (Mental Health Care), and 14.1-14.3 (Suicide Prevention). *See id*. at 8-9, 13-17.

Given these and other ongoing concerns – including the Facility's failing physical plant[16] and Hinds County's continued and repeated violations of three Orders of the Court[17] – Plaintiffs respectfully requested the Court's guidance during the last settlement conference on January 20, 2022, regarding their intention to move for contempt. Pursuant to Local Rule 7(b)(6)(A), Henley-Young Plaintiffs respectfully request oral argument on this motion.

## **BACKGROUND**

It has been nearly ten years since Henley-Young Plaintiffs and Defendant negotiated a "'Settlement Agreement' (later determined by the district court to be a consent decree)" in acknowledgment of "the best interests of all parties to resolve this matter amicably without further litigation and cost to the taxpayers of Hinds County, Mississippi." Consent Decree at 1. In 2021, the parties reaffirmed the Consent Decree's provisions as necessary to remedy ongoing violations of the federal rights of vulnerable and disabled children by extending all its terms for an additional two years. *Id*. Hinds County "acknowledge[d] that more time is necessary to reach substantial compliance in all areas governed by the Consent Decree." Order, Apr. 2, 2021, ECF No. 161 at 1.

When the Consent Decree was negotiated, the parties also agreed that its "implementation

---

[16] Progress Calls between the parties as scheduled pursuant to the CAP, *see* Consent Decree at 24 (Provision 20.6), have included ongoing physical plant updates. The Facility cannot maintain basic sanitation and security practices inside a global pandemic where access to running water is often limited, and the roof and electronic locking mechanisms continue to be in need of repair and/or replacement.

[17] Also noted during the Progress Calls, *see id.*, the modular units necessary for additional programming space pursuant to the Court's Order, *see* ECF No. 147 at 1, remain inoperable due to understaffing. Even more concerning, Defendant continues to violate the Consent Decree in the same manner which forced the parties to seek clarity from the Court in 2021. *See* Plaintiffs' Motion for Clarification, Jul. 12, 2021, ECF No. 163; Defendant's Response to Plaintiffs' Motion to Clarify, Jul. 18, 2021, ECF No. 164. Recent Facility Rosters in 2021 (December) and 2022 (January, February) confirm the confinement of children under Youth Court jurisdiction well beyond 21 days and resident populations in excess of 32 youth, despite the explicit Order of the Court clarifying that to do so violates the Consent Decree. *See* Order, Aug. 16, 2021, ECF No. 165. *See also, e.g.*, Facility Rosters (redacted), attached as Exhibits B-1 to B-10; Emails Between the Parties, re: ETACD Violations (redacted), attached as Exhibits C-1 to C-5.

and interpretation" would be in alignment with the "primary purposes of Mississippi's juvenile justice system," which are "rehabilitation and individual treatment rather than retribution." Provision 19.1 (Compliance, Enforcement, Dismissal), Consent Decree at 21-22 (quoting *Buck v. State*, 838 So. 2d 256, 260 (Miss. 2003) (internal quotations and citation omitted)). The parties also reiterated their commitment to protecting the children of Hinds County by outlining in Provision 19.1 that "[t]he same principle that guides the interpretation of Mississippi's Youth Court Act shall guide the implementation of this Extended Third Amended Consent Decree." *Id.* (quoting Miss. Code Ann. § 43-21-103 ("when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child")). The parties likewise acknowledged Hinds County's responsibility for the safety of its young people where the Mississippi Supreme Court has held that "[i]nherent in [Mississippi's Youth Court Act] is the protection and care of children in trouble and the rehabilitation of those gone astray." *Id.* (quoting *Helmert v. Biffany*, 842 So.2d 1287, 1291 (Miss. 2003)).

In September 2017, Defendant began housing children in the Facility who are members of the Plaintiffs' class in *United States v. Hinds Cnty. et al.,* No. 3:16-cv-489- CWR-RHWR (S.D. Miss., June 23, 2016) ("DOJ Case").[18] During an April 2018 status conference, Court Appointed Monitor Leonard Dixon and the parties confirmed these children as equal class members in this case.[19] Mr. Dixon also confirmed for the Court and the parties that because JCAs are detained long-term, Hinds County must modify its Facility programming to accommodate the long-term

---

[18] Plaintiffs in the DOJ Case are also referred to as juveniles charged as adults ("JCAs").

[19] *See, e.g.*, Status Conf. Tr., Apr. 24, 2018, ECF No. 131-5 at 4:5-17 ("[T]he [post-disposition] population is a proxy for long-term resident, and CTA is our long-term resident. They are anticipated to have a length of stay of between nine months to two years."), 11:1-7 ("[j]uveniles have access to structured education" and "medical care" and "case managers and mental health personnel"), 16:10-11 ("Speaking of the JCA population as equal class members, we absolutely agree they are equal class members.").

needs of vulnerable and disabled youth:

> Plaintiffs: It's not within the purview of the facility to decide how long the children charged as adults will stay in the facility?
>
> Mr. Dixon: No, no. That's the court. The court determines that.
>
> Plaintiffs: And they may be there for a couple of years.
>
> Mr. Dixon: They could be. I have some that's been for a couple of years. **But you have to modify your programs to address those things. That's why education, to me, is one of the key components of your programming, because you have to have ways of ensuring that kids have a structured program daily.** And, to me, the educational program is a structured program, which means you can also identify a lot of problems that kids have. **If they're not in school, then it's very difficult to deal with those problems or identify those problems.**

*See, e.g.*, Status Conf. Tr., Apr. 24, 2018, ECF No. 131-5 at 37:4-20 (emphasis added).

In 2019, the Consent Decree suspended the independent oversight of Mr. Dixon in favor of more targeted technical assistance through a Corrective Action Plan ("CAP"), whereby Hinds County engaged Joint Expert Anne Nelsen to verify implementation of all Consent Decree provisions in timed phases. *See* Provisions 17.1-17.7 (Independent Monitor), Consent Decree at 18-20; Provisions 20.1-20.10 (2019-2023 Corrective Action Plan), Consent Decree at 23-26. The CAP was extended by agreement of the parties in 2021.

In 2022, Hinds County continues to proceed at a pace too slow, and with a so-called commitment that is too inconsistent, to achieve progress. Actual implementation of Consent Decree Provisions to move the Facility towards substantial compliance requires much more than what is colloquially known as "going through the motions."[20]

---

[20] *See also*, Merriam-Webster dictionary, https://www.merriam-webster.com/dictionary/go%20through%20the%20motions, (defining "go through the motions" as "to do something without making much effort to do it well") (last visited Mar. 18, 2022).

For example, where Defendant has written or revised policies, procedures, and tools for all Consent Decree provisions pursuant to Phase One and Phase Two of the CAP,[21] but has yet to complete all required training for each Consent Decree provision as required by Phase Three[22] – and the internal review process for the written and revised policies, procedures and tools remains incomplete because training is incomplete[23] – Phase Four of the CAP has yet to begin. The Consent Decree requires implementation and sustained substantial compliance for Defendant to fulfill its constitutional obligations to the youth of Hinds County. *See* Order, Apr. 2, 2021, ECF No. 161.

Additionally, since Fall 2020, Henley-Young Plaintiffs have continued to express serious and ongoing concerns where chronic vacancies in facility leadership, and other key positions, and severe understaffing endanger the safety and security of the residents inside a global pandemic.

Henley-Young Plaintiffs therefore respectfully request that the Court order Hinds County to show cause why Defendant should not be held in civil contempt of the Consent Decree and order the relief necessary to expedite compliance.

## LEGAL STANDARD FOR CONTEMPT

Consent decrees mirror contracts, "yet also function[] as [] enforceable judicial order[s]." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998). Parties enter consent decrees to remedy unconstitutional conditions in detention cases. *See United States v. Hinds Cnty. et al.,* No. 3:16-CV-489-CWR-RHWR, 2022 WL 348984, at *6 (S.D. Miss. Feb. 4, 2022) (citing *e.g.*, *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at

---

[21] Table 1 was submitted to the Court and incorporated by reference (Attach. 1) in the Consent Decree. *See also* Provisions 20.3 (Goals and Timeline), Consent Decree at 23.

[22] *See id*. Pursuant to Table 1, Defendant is not in compliance with Phase Three: Training and Internal Review Process (Oct. 2019 – Jun. 2021); *see also* Consent Decree at 23-24 (Provisions 20.4 (Measuring Progress) and 20.5 (Benchmarks and Needs)).

[23] *See* note 11 and note 12, *supra*.

*3 (S.D. Miss. June 10, 2015)). Although "state and local authorities have primary responsibility for curing constitutional violations," *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978), district court judges retain the power to enforce consent decrees entered in their cases. *See, e.g.*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.").

Furthermore, "[c]ourts possess the inherent authority to enforce their own injunctive decrees," *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (citing *United States v. Hall*, 472 F.2d 261, 267 (5th Cir.1972), and "do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." *Id*. (citing *Berry v. Midtown Serv. Corp.*, 104 F.2d 107, 110-11 (2d Cir. 1939) (citation omitted)).

To establish civil contempt, the movant must prove by clear and convincing evidence that: "(1) a court order was in effect; (2) the order required specified conduct by the respondent; and (3) the respondent failed to comply with the court's order."  *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quoting *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)).

The Fifth Circuit defines clear and convincing evidence in the context of contempt as "evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotations and citations omitted).

Once the moving party proves the existence of a valid court order, it must next demonstrate specific conduct in violation of that order. While provisions of district court orders must be "clear

in what conduct they mandated and prohibited," *Am. Airlines*, 228 F.3d at 579, a court "need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." *Id*. at 578. Additionally, "contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order," *Am. Airlines*, 228 F.3d at 581, because "[g]ood faith is not a defense to civil contempt." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

The Consent Decree does not bind the Court to impose a specific form of relief, and, in the Fifth Circuit, "district courts have wide discretion to enforce decrees and to implement remedies for decree violations." *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008); *see also Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("discretion . . . must be left to a court in the enforcement of its decrees").

Hinds County has not demonstrated a commitment to achieving substantial compliance with all Consent Decree Provisions since the Extended Third Amended Consent Decree was ordered in April 2021. Instead, it has flagrantly disregarded the orders of the Court multiple times. The relief requested by the Henley-Young Plaintiffs is necessary, and ordering it is an appropriate exercise of the Court's authority.

## THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE

### I.   The Consent Decree is a Court Order

In April 2021, with agreement of the parties, the Court entered an order *sua sponte*, extending the Third Amended Consent Decree for two years. *See* Order, Apr. 2, 2021, ECF No. 161. In August 2021, the Court reiterated the Consent Decree as an order and its authority to enforce it. *See* Order, Aug. 16, 2021, ECF No. 165. Henley-Young Plaintiffs have satisfied this element.

II.     **Hinds County Engages in Specific Conduct in Violation of the Consent Decree.**

A.      **Defendant Permits Direct Care Staff to Use Force Without Adequate Supervisory Oversight and Training.**

In addition to chronic understaffing[24] and chronic staff turnover,[25] Hinds County continues to allow new employees to work with Plaintiffs without "ensur[ing] that there are sufficient numbers of adequately trained direct care and supervisory staff to supervise youth safely, protect youth from harm, allow youth reasonable access to medical and mental health services, and allow youth adequate time to participate in out-of-cell activities" in clear violation of Provision 2.1 (Staffing and Overcrowding).[26]  Joint Expert Anne Nelsen has repeatedly cited Defendant's pattern and practice of placing new staff into direct contact with vulnerable and disabled children without training and/or supervision as the primary cause of recent serious incident reports:[27]

- On February 19, 2022, a JCA was subjected to use of force (CPI holds[28] and hand/leg restraints) after he was observed smoking marijuana on the recreation yard.

- On February 3, 2022, another JCA was subjected to use of force (CPI holds and hand/leg restraints) in the midst of his attempt to use the grievance process to report that direct care staff had supplied him with marijuana (which was later surrendered to mental health staff when requested).

---

[24] During a Progress Call on September 9, 2021, the Facility announced the elimination of 7 direct care positions and Hinds County's intent to redirect those expenses to provide pay increases to remaining staff.

[25] *See* note 10, *supra*.

[26] Consent Decree at 5.

[27] The Facility emails a roster with weekly incident reports to Henley-Young Plaintiffs and Anne Nelsen on Monday mornings. The Facility began adding shift reports to those weekly emails in April 2021.

[28] Upon information and belief, the Facility uses Crisis Prevention Institute ("CPI") control position escorts/holds when verbal de-escalation is unsuccessful.

- On January 7, 2022, in an incident involving several residents, it is documented that at least two untrained direct care male staff physically restrained youth.[29] Additionally, a responding Hinds County Sheriff's Deputy struck a child in his cell.

- In December 2021 and January 2022, direct care staff used keys, a belt, and a chair in applying force against residents which resulted in serious harm and physical injury.

- Over New Year's weekend 2021, direct care staff distributed medication without knowledge of the Nurse and placed residents on Precautionary Status (suicide watch requiring constant supervision) without knowledge of the Treatment Coordinator.

- In November 2021, direct care staff intentionally left female residents alone on the unit to engage in sexual activity together.

- In October 2021, a male resident reported being sexually assaulted by another resident hours after it happened because direct care staff on the unit at the time of the incident failed to either stop or promptly report the abuse.

- In Spring 2021, during an interview, Henley-Young Plaintiffs learned the details of a January 27, 2021, incident involving pornographic contraband introduced into the Facility by direct care staff. Upon information and belief, that staff member was terminated. However, it remains unclear over a year later whether a full investigation was ever completed. This incident was also especially troubling where Henley-Young Plaintiffs subsequently received documentation of an incident reported on June 4, 2021, which involved two male JCAs reporting inappropriate remarks of a sexual nature directed towards them by female direct care staff.

---

[29] Upon information and belief, a CPI training log provided to Anne Nelsen on January 11, 2022, indicated that 15 of 38 direct care staff (including 1 supervisor) were uncertified, including two male staff cited in the incident report.

Hinds County has not provided Ms. Nelsen with all specifically requested information regarding the above referenced incidents – including full investigations. Instead, Defendant has stated that, in some cases, notifying law enforcement and Child Protective Services absolves Hinds County of the need to take any further action. Henley-Young Plaintiffs have no verification of the initiation and/or results of any investigation(s) involving these serious incidents (which include issues governed by the Prison Rape Elimination Act (PREA)) and information received to date primarily continues to only be revealed through other sources.[30] These events continue to raise ongoing concerns where leadership changes and severe understaffing endanger the safety and security of Plaintiffs.

**B.      Defendant Fails to Offer Required Structured, Rehabilitative, Recreational and Educational Programs to Reduce Cell Confinement.**

Multiple Consent Decree provisions mandate daily, structured, rehabilitative, educational and/or recreational programming, including evening and weekend/holiday activities.[31]  The recent month-long quarantine which spanned the months of December 2021 and January 2022 denied vulnerable and disabled children access to mental health care, school, and family contacts (including over the holidays).[32]

Even before this most recent COVID-19 outbreak, in response to conflicts between

---

[30] In October 2021, Plaintiffs learned of an incident involving a JCA from a news report about the teacher's arrest and detention. *See* Maggie Wade, *JPS teacher at Henley, Young Youth Court School arrested: Wade Jackson is charged with gratification of lust and contraband in a penal institution*, WLBT (Oct. 27, 2021), https://www.wlbt.com/2021/10/28/jps-teacher-henley-young-youth-court-school-arrested.

[31] *See* Consent Decree at 6-9, 17 (Provisions 3.1 (Cell Confinement), 4.1 (Structured Programming), 5.5 (Individualized Treatment Plans/Treatment Program for Post-dispositional Youth), 16.2 (Large Muscle Exercise).

[32] The same unnecessary overuse of cell confinement in violation of the Consent Decree occurred in November 2020, when, upon information and belief, during the week of the Thanksgiving holiday, residents were not offered access to school, daily large muscle exercise, or time outside in violation of the Third Amended Consent Decree. Plaintiffs were not even offered additional telephone calls with their families.

Plaintiffs on two male units, Hinds County alternates classroom attendance for state-mandated education[33] with completing worksheets without academic instruction on the housing units for 1-2 hours (then games the rest of the day).[34]

Even before this most recent COVID-19 outbreak, and despite the continued frequency of suicide threats or attempts throughout 2021, the provision of individual and group treatment, as required in Plaintiffs' treatment plans was not being provided.[35]

**C.    Defendant Fails to Integrate Structured/Rehabilitative Programming with Coordinated Medical/Mental Health Services.**

The Parties have not commenced Phase Four of the CAP[36] because Hinds County has failed to demonstrate progress toward unmet needs in programming, behavior management, medical treatment, and mental health treatment. Facility staff resist the need for programming to keep residents engaged to alleviate boredom and reduce inappropriate acting-out which too often results

---

[33] *See* Miss. Code Ann. § 43-21-321. Upon information and belief, since 2020, male JCA pods alternate days for school with teachers, prohibiting the 5.5 hours of mandated instruction per weekday, in accordance with the agreement between Hinds County and the Jackson Public School District.

[34] Not only is this significant deficiency in educational programming a violation of the Consent Decree and the laws of Mississippi, the "[Individuals with Disabilities Education Act (IDEA)]  requires states and local educational agencies receiving federal IDEA funds to make a [Free and Public Education (FAPE)] available to children with certain disabilities." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc). A FAPE includes both "special education" and "related services." 20 U.S.C. § 1401(9). "Special education" is "specially designed instruction ... to meet the unique needs of a child with a disability." *Id*. at § 1401(29). "Related services" are services "required to assist a child to benefit from" instruction. *Id*. at § 1401(26).

[35] *See* Provisions 20.4 (Measuring Progress) and 20.5 (Benchmark and Needs), which references Table 2 (dated Jan. 11, 2022, and submitted to the Court). Consent Decree at 23-24. Because of the ongoing treatment planning/programming and mental health care deficiencies outlined in Table 2, at 20-32, 60-63 (Provisions 5.1, 5.2, 5.3, 5.4, 5.5, 13.3)), in October 2021, Henley-Young Plaintiffs offered the Facility technical assistance with coordinating treatment from Dr. Monique Khumalo, a clinical child psychologist and juvenile justice consultant who is one of the co-authors of the *Youth in Custody Practice Model*, a program of the Center for Juvenile Justice Reform at Georgetown University. With Dr. Khumalo's on-site and virtual technical assistance, Henley-Young Plaintiffs anticipate improved outcomes for residents in 2022 and acknowledge Hinds County's willingness to accept Dr. Khumalo's guidance and support.

[36] *See* note 21 and note 22, *supra*.

in the use of mechanical restraints and cell confinement.[37]

Notably, most Plaintiffs – as vulnerable and disabled children – have written treatment plans which require access to mental health care.[38] Interviews with both residents and staff have repeatedly revealed that the individual resident "check-ins" usually held in the pod dayrooms do not comply with Consent Decree Section V, Individualized Treatment Plans/Treatment Program for Post-dispositional Youth,[39] or Consent Decree Section XIII, Mental Health Care.[40]

Additionally, the increased use of mechanical restraints over the past year – as cited in incident report after incident report in response to the behavior of residents with chronic unmet mental health needs – has dangerously highlighted the absence of adequate training, communication and coordination between direct care staff and mental health staff (who are usually only notified once the restraints are already in use or after they have been removed). This is not therapy.

III.    **Hinds County's Longstanding, Current, and Ongoing Failures to Comply with the Court's Multiple Orders Have Consequences.**

   A.    **Defendant's Non-Compliance is Longstanding, Current, and Ongoing.**

Henley-Young Plaintiffs move for contempt especially in light of Hinds County's ongoing violations of the Consent Decree in the same manner which forced the parties to seek clarity from the Court in July 2021.[41] From early December 2021 until days before the January 20, 2022, settlement conference, the Facility detained two children under Youth Court jurisdiction well

---

[37] *See* note 14, *supra*.

[38] *See* note 2, *supra*.

[39] *See* Consent Decree at 8-9.

[40] *See id*. at 14-16.

[41] *See* note 17, *supra*.

beyond 21 days,[42] despite the Order of the Court clarifying that to do so violates the Consent Decree.[43]

Additionally, even more concerning is the fact that Henley-Young Plaintiffs continue to raise serious concerns where the Facility's failing physical plant precludes its ability to maintain basic, critical sanitation and security practices, thereby creating a sustained dangerous environment inside a global pandemic.

For example, access to running water is often limited (causing Plaintiffs and laundry to be transported to the county jail for showers and cleaning; toilets must be flushed with buckets); the roof and electronic locking mechanisms continue to be in need of repair and/or replacement; and the modular units necessary for required additional programming space per the Court's Order, *see* ECF No. 147 at 1, remain inoperable for lack of adequately trained staff.[44]

The lack of proper and consistent COVID-19 protocols resulted in several outbreaks in 2020 and 2021 which forced the Facility into quarantine – most recently for nearly the entire month of December. Even in quarantine, when resident activity was severely limited and cell confinement was the norm (instead of the exception), the few critical life safety training topics which were

---

[42] The January 10, 2022, Facility Roster provided to Henley-Young Plaintiffs and Anne Nelsen, identified one Youth Court resident at 59 days, and another Youth Court resident at 39 days. The Defendant's response to Plaintiffs' inquiries on the January 6, 2022, Progress Call did not include a plan to release these children or offer a higher level of care in the interim.

[43] *See* Order, Aug. 16, 2021, ECF No. 165. "And Defendant is in violation of the Extended Third Amended Consent Decree if and when it houses children under Youth Court jurisdiction beyond the 21-day limit set forth in paragraph 2.1." *Id*. at 3.

[44] Where the modular units installed in July 2020 remain inoperable and water damage in the classrooms – and other key facility areas such as the kitchen – resulting from a failing roof have further limited already strained programming space (*i.e.*, the Facility lacks any indoor area large enough to accommodate large muscle exercise), it is alarming that residents have reported that access to the classrooms for state-mandated education and time outside for large muscle exercise is sometimes withheld as punishment (much like access to televisions on the housing units). Such reports reveal clear violations of Provisions 3.1 (Cell Confinement), 4.1 (Structured Programming), 5.5 (Individualized Treatment Plans/Treatment Program for Post-dispositional Youth), 16.2 (Large Muscle Exercise). *See* Consent Decree at 6-9, 17.

being covered in the first few months of 2021 were not even proffered at the end of the year to direct care staff working daily with youth. [45] Joint Expert Anne Nelsen has repeatedly recommended that that 40-hour new employee orientation training address several key areas – including, but not limited to, basic security practices, intake procedures, security searches, the Consent Decree, use of mechanical restraints, adolescent behavior, communication skills, adolescent mental health issues, resident rights (including legal visits and phone calls), report writing, and sexual abuse.

**B.      Defendant's Failures Increase the Substantial Risk of Serious Harm to Vulnerable and Disabled Children.**

Ongoing events – as revealed through incident reports – demonstrate the elevated risk of serious harm to vulnerable and disabled children due to inadequate/incomplete staff training:

- On February 3, 2022, a Youth Court resident was not offered an assessment until after orientation, despite being discovered in his cell at the time of the initial escort with a blanket tied around his neck. The documentation provided by the Facility did not include the time which elapsed between the discovery of the child in his cell (during normal programming hours) actively engaging in self-harm and his placement on Precautionary Status (suicide watch requiring constant supervision).

- On New Year's Eve 2021, a JCA had to be transported to the University of Mississippi Medical Center after he was found unresponsive in his cell following a suicide attempt.

---

[45] Upon information and belief, there exists no formal official, or unofficial, training for contractors and vendors who interact daily with Plaintiffs, such as staff employed by Hinds Behavioral Health Services, Jackson Public Schools, and Quality Correctional Health Care.

- On the evening of November 1, 2021, a Youth Court resident was taken from the Facility by AMR after use of force, mechanical restraints, and a chemical injection were applied as calming techniques following her placement on Precautionary Status during intake.

- Over the course of a weekend during programming hours in September 2021, a JCA was twice discovered threatening self-harm in his room during cell checks.

- One resident had to be transported to the University of Mississippi Medical Center on December 15, 2020, after being injured by other residents the first day he arrived, and the incident was not fully or properly documented. It was not until a subsequent interview that Henley-Young Plaintiffs learned the details of that incident, along with another one on January 2, 2021, involving another serious injury to this same resident by Facility staff who then purposefully failed to report it.

Additionally, the increasing frequency of incidents involving contraband from 2020 to 2021 continues in 2022 – including smoking paraphernalia/marijuana and weapons (*e.g.* "shanks"). Hinds County fails to conduct investigations of the source of contraband unless repeatedly prompted by Ms. Nelsen, and, even then, those "investigations" have generally been cursory as opposed to comprehensive. Given the recent reintroduction of weekend non-contact visitation, it is concerning that the presence of contraband may continue to rise where its prevalence already seemed unabated despite Plaintiffs not having had physical contact with adults outside of the Facility since the start of the pandemic.

Additionally, the increasing frequency of serious suicide attempts from 2020 to 2021 are also likely to continue in 2022. The contract negotiations for medical and mental health services which Hinds County started in 2020 – as reported on multiple Progress Calls between the parties (December 3, 2020 (PC 28); January 28, 2021 (PC 30); February 18, 2021 (PC 31); April 1, 2021

(PC33); December 9, 2021 (PC 44); January 6, 2022 (PC 45)) – only recently resulted in an executed agreement.[46]

In 2020, from September 1 – December 31, based on documentation requested by Ms. Nelsen,[47] residents were placed on Precautionary Status (suicide watch requiring constant supervision) over 20 times with 1 suicide attempt, 2 self-harm incidents, and 4 documented reports of suicide ideation. One incident was especially alarming.

On November 30, 2020, Henley-Young Plaintiffs received a report that a resident attempted suicide on November 27, 2020. Upon information and belief, he remained in the care of University of Mississippi Medical Center for nearly a week. Prior to the November 27 incident, this same child was involved in multiple serious incidents on October 8, 17, 18, 22, 26, 30, and November 6.[48] He continued to actively engage in self-harming behaviors throughout the first half of 2021, and was eventually transferred from the Facility to the Raymond Detention Center[49] – in violation of the settlement agreement in the DOJ Case – following a June 2021 hospitalization for another serious suicide attempt.

---

[46] Hinds County supplied Henley-Young Plaintiffs and Anne Nelsen a copy of the contract on February 4, 2022.

[47] Upon information and belief, the QMHP Mental Health log documenting this Precautionary Status information (*i.e.*, suicide watch requiring constant supervision) did not actually include data for December 2020.

[48] According to the Facility-provided incident reports (*see* note 27, *supra*): on October 8, this resident faked taking medication in the nurse's office; on October 17, he provided direct care staff with a "shank" (sharpened-down toothbrush), reporting another resident had threatened to use it on him; on October 18, he was assaulted by five others, and then involved in a conflict with another resident on October 22; on October 26, this resident again "cheeked" his medication in the nurse's office; on October 30, this same child was in another altercation with several residents; on November 6 (just 20 days before requiring hospitalization), a "metal object with a sharp point wrapped with tape approximately 10 inches long" was found in his cell, heightening Henley-Young Plaintiffs' concerns regarding the substantial risk of serious harm given his then-recent history with multiple peer conflicts and ongoing/severe mental health issues.

[49] *See* First Order of Contempt, DOJ Case, Feb. 4, 2022, ECF No. 100 at 23 (finding the situation involving this vulnerable child "illustrative" of the "the lack of appropriate mental health supports" offered by Defendant).

In January 2021, Henley-Young Plaintiffs received a report that another resident attempted suicide after being tased by staff of the Hinds County Sheriff's Department, in violation of Provision 7.5 (No Restraint Chairs, Chemical Restraints and/ or Tasers; Eliminated by agreement of the parties in March 2016)[50]. Upon information and belief, Hinds County admitted to the Juvenile Monitor for the DOJ Case that the housing unit was insufficiently staffed at the time of the November 2020 suicide attempt. Based on the initial reports from the suicide attempt of January 30, 2021, Henley-Young Plaintiffs believe staffing shortages played a similar role.[51]

Over New Year's Eve weekend 2021, Henley-Young Plaintiffs received several alarming reports, and it was confirmed during a Progress Call between the parties on January 6, 2022, that direct care staff distributed medication without knowledge of the Nurse and placed multiple residents on Precautionary Status without knowledge of the Treatment Coordinator.

In a similar incident involving an inexcusable lack of integration between structured/rehabilitative programming and coordinated medical/mental health services, in November 2020, Henley-Young Plaintiffs received a report that two male residents were being isolated away from the other male residents on the female pod.[52] For one of those male residents, Ms. Nelsen requested his treatment plan as required by Provisions 5.2-5.4 (Individualized

---

[50] Third Am. Consent Decree, Apr. 3, 2019, ECF No. 145 at 11.

[51] According to the Facility's Roster, this JCA had been detained by Hinds County for approximately 383 days at the time of the January 30, 2021, serious suicide attempt. He had reported in mid-January 2021 that Facility programming alternates between school/worksheets on the pods, limited time outside, and playing games/watching television. Anne Nelsen's review of the video captured the day of the November 27, 2020, suicide attempt showed that no structured/rehabilitative programming was taking place in clear violation of Provisions 3.1 (Cell Confinement), 4.1 (Structured Programming), 5.5 (Individualized Treatment Plans/Treatment Program for Post-dispositional Youth), 16.2 (Large Muscle Exercise). *See id.* at 7-8, 10, 18. It was anticipated that the same was true for the January 30, 2021, incident; however, upon information and belief, the investigative reports requested for both incidents continue to remain outstanding.

[52] Hinds County housed female residents in the Facility during that time in intake, in clear violation of Provision 16.1 (Provide Equal Access to All Services; Eliminated by agreement of the parties in March 2018). *See id.* at 18.

Treatment Plans/Treatment Program for Post-dispositional Youth) and 13.2 (Mental Health Care).[53]  Upon review of his records, that resident has been referred for mental health services two months prior but had not yet been seen, in violation of Provision 13.5(e)[54] – despite his treatment history (diagnoses and prior prescriptions for psychotropic medications) and then-recent isolation. At that time, the Treatment Coordinator had recently resigned, causing Henley-Young Plaintiffs to question the quality and substance of mental health services offered by Hinds County. Henley-Young Plaintiffs continue to be concerned.

Furthermore, where incident reports cite the use of Crisis Prevention Institute ("CPI") control position escorts/holds – and staff had either never been trained or were long overdue for their annual CPI update – the risk of serious harm to vulnerable and disabled children increases where residents are not receiving the full scope of integrated support in violation of Provisions 5.1-5.6 (Individualized Treatment Plans/Treatment Program for Post-dispositional Youth), 12.1-12.6 (Medical Care), 13.1-13.6 (Mental Health Care), and 14.1-14.3 (Suicide Prevention).[55]

## CONCLUSION

Simply put, Hinds County has failed to comply with the Court's Orders. Failure to comply with any one of the Provisions of the Consent Decree alone justifies finding Defendant in contempt. The Court should grant the relief sought pursuant to the Court's inherent powers to enforce federal judgements.

Additionally, Hinds County has not fulfilled its obligations to the youth of Hinds County. Henley-Young Plaintiffs are entitled to this relief because Hinds County is not currently in

---

[53] *Id*. at 8-10, 15.

[54] *Id*. at 16.

[55] *See* Consent Decree at 8-9, 13-17.

compliance with several key Consent Decree Provisions, and Hinds County should be required to account for the advanced planning, resources, and transparency necessary to achieve sustained progress in addressing and remedying the substantial risk of serious harm to vulnerable and disabled children in violation of their federal rights.

Henley-Young Plaintiffs request that the Court Order Hinds County to Show Cause Why They Should Not Be Held in Contempt of the Extended Third Amended Consent Decree, and for any additional relief the Court deems necessary and proper.

Dated: March 18, 2022

Respectfully Submitted,

/s/ Leslie Faith Jones
Leslie Faith Jones, MSB No. 106092
Keisha Stokes-Hough, MSB No. 103717
Counsel for the Plaintiffs
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882
Facsimile: (601) 948-8885
E-mail: leslie.jones@splcenter.org
Email: keisha.stokeshough@splcenter.org

/s/ Greta Kemp Martin
Greta Kemp Martin
Counsel for the Plaintiffs
Mississippi Bar No. 103672
Disability Rights Mississippi
5 Old River Place, Suite 101
Jackson, Mississippi 39202
Phone: (601) 968-0600
Facsimile: (601) 968-0665
E-mail: gmartin@drms.ms

## CERTIFICATE OF SERVICE

I, Leslie Faith Jones, hereby certify that a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by email to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

This the 18th day of March, 2022.

/s/ Leslie Faith Jones
Leslie Faith Jones, MSB #106092