IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**J.H. ET AL.**                                                                                                                      **PLAINTIFF**

**VS.**                                                                                                          **NO. 3:11-CV-327-DPJ-FKB**

**HINDS COUNTY, MISSISSIPPI**                                                                       **DEFENDANTS**

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TERMINATE OR, ALTERNATIVELY, MODIFY CONSENT DECREE

Defendant, Hinds County, Mississippi, ("the County") respectfully submits this memorandum of authorities in support of its Motion to Terminate or, Alternatively, Modify the Extended Third Amended Consent Decree between Plaintiffs and the County.

### INTRODUCTION

"[P]rison officials must maintain their facilities consistent with the restrictions and obligations imposed by the Constitution." *Lewis v. Casey*, 518 U.S. 343, 365 (1996) (Thomas, J., concurring). To that end, the Prison Litigation Reform Act (PLRA) prevents federal courts "from providing <u>more</u> than the constitutional minimum necessary" when courts attempt to exercise control over state-run detention facilities. *Jones v. Gusman*, 296 F.R.D. 416, 429 (E.D. La. 2013) (emphasis added) (citing *Frazar v. Ladd*, 457 F.3d 432, 438 n.19 (5th Cir. 2006)). Indeed, Congress enacted the PLRA to "extricate [federal courts] from managing state prisons." *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019) (citation omitted); *Brown v. Plata*, 563 U.S. 493, 530 (2011) ("The PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation." (citing 18 U.S.C. § 3626(a))).

1

In 2011, the parties entered into a sweeping twenty-four (24) page consent decree,[1] that addressed nearly every aspect of conditions of confinement for youth detained in the County's custody at the Henley-Young Juvenile Justice Center ("Henley-Young"). *See generally* [33] Settlement Agreement. To that end, the original consent decree consisted of 71 requirements (including subparts but excluding sub-subparts) for Henley-Young. *See* [33] Settlement Agreement pp. 3-19. Over the life of this matter, the consent decree has been extended and/or amended at various times.[2] Because numerous provisions contained in the [161-1] Extended Third Amended Consent Decree exceed the constitutional minimum necessary to provide Henley-Young detainees with basic sustenance, and Henley-Young's current conditions do not violate detainees' basic constitutional rights, the consent decree must be terminated or, alternatively, modified pursuant to 18 U.S.C. § 3626(b).

## BACKGROUND

On June 1, 2011, Plaintiff J.H., who at the time was detained at Henley-Young, filed suit against the County. [1] Compl. pp. 1-2. The Complaint was amended June 6, 2011, at which point Disability Rights Mississippi ("DRMS") was added as a Plaintiff, among other changes to the original Complaint. Plaintiffs purported to "bring this suit on their own behalf and on behalf of all children who are, or will in the future be, imprisoned at" Henley-Young. [6] Am. Compl. at 6. Plaintiffs alleged that "[t]he conditions of confinement at Henley-Young and the [County's] deliberate indifference to those conditions, considered both individually and in their totality, constitute cruel and unusual punishment and a denial of due process in violation of Plaintiff's [*sic*]

---

[1] Although labeled a "Settlement Agreement," the County refers to the [33] Settlement Agreement first entered in 2011 and amended thereafter as the "consent decree" for simplicity sake. *See* [50] Order at 4.

[2] The three amended consent decrees can be found at the following docket entries: [64] Amended Consent Decree; [120] Second Amended Consent Decree; and [145] Third Amended Consent Decree.

2

rights under the First, Eighth, and Fourteenth Amendments . . . ." *Id.* at 20. Plaintiffs also alleged the County's "refusal to protect children from harm, otherwise keep them physically safe and secure and free from unconstitutional practices like excessive cell confinement, and verbal abuse violates Plaintiff's [*sic*] constitutional rights under the Eighth and Fourteenth Amendments . . . ." *Id.* Plaintiffs further alleged the County's "deliberate indifference to the children's serious mental health needs and their right to rehabilitative services violates the Plaintiff's [*sic*] constitutional rights under the First, Eighth, and Fourteenth Amendments . . . ." *Id.*

The parties engaged in efforts to resolve the lawsuit and, on January 20, 2012, the parties, though a [27] Motion filed by Plaintiffs, sought an order granting "preliminary approval of [a] proposed Settlement Agreement;" setting a "fairness hearing;" certifying a "class for settlement and monitoring purposes;" and "retaining jurisdiction for enforcement purposes." [27] Mot. at 3. The Court granted this [27] Motion on March 5, 2012 and certified, for settlement purposes only, a class "comprised of all children who are currently, or who will in the future, be confined at [] Henley-Young . . . ." [31] Order at 1-3. After conducting a fairness hearing on March 23, 2012, the Court entered a final order on March 28, 2012 approving the consent decree and retaining jurisdiction for purposes of monitoring and enforcement. [32] Agreed Order at 1-2. That same day, the Court entered the consent decree. *See* [33] Settlement Agreement. The consent decree, as defined under the PLRA, grants prospective relief regarding conditions of confinement and mandates the County to adhere to numerous, far-reaching policies and provisions while operating Henley-Young. *See id*. at 2, 3-19.

Additionally, the consent decree established an independent expert (essentially, a monitor). *Id.* at 19-21. The parties selected Mr. Leonard Dixon to serve as the monitor. *See id*. at 19 (¶ 17.1). Mr. Dixon was responsible for assessing and documenting the County's compliance with

the consent decree. *Id*. To date, Mr. Dixon has issued a total of thirteen (13) monitoring reports, with the last one being finalized on December 24, 2019. *See* [140] 13th Monitor's Report.

Over the course of this matter to date, the consent decree has been amended three times, with the third iteration entered on April 3, 2019. *See* [145] Third Amended Consent Decree. With the first and second amendments, various provisions were amended by agreement of the parties while a total of twenty-four provisions were eliminated due to the County's sustained compliance with each. *See* [62] Joint Mot. to Extend Consent Decree at 2 (identifying thirteen provisions from which the County "should be released" (and thus were not included in the Amended Consent Decree) because the County had "maintained substantial compliance" with each for "more than six months"); [119] Joint Motion to Extend Consent Decree at 2-3 (identifying eleven provisions being eliminated in the Second Amended Consent Decree because the County had "maintained compliance" with each for "more than six months"). Prior to the Third Amended Consent Decree being entered, the parties were directed by the Court to pare down the provisions of the Second Amended Consent Decree, and they did so. *See* [144] Order at 3-4. Thus, as a result of each amendment to the consent decree, the Third Amended Consent Decree contains 39 of the initial 71 provisions and requirements from the original consent decree. *Compare* [33] Settlement Agreement 3-19 *with* [145] Third Amended Consent Decree 3-19.

Among the changes made through the Third Amended Consent Decree, the parties agreed to establish a corrective action plan ("CAP") to facilitate global compliance with the consent decree.[3] [145] Third Amended Consent Decree at 23 (¶ 20.1). Pursuant to the CAP, the County agreed "to engage Anne Nelson . . . by April 28, 2019, to provide technical assistance to the County

---

[3] The parties negotiated this agreement in the wake of a hearing related to Plaintiffs' [131] Motion seeking to extend the consent decree and impose a corrective action plan or, alternatively, hold the County in contempt. *See* [144] Order at 1, 3.

. . . ."[4] *Id.* at 24 (¶20.2). In pertinent part, the parties agreed per the CAP to deprioritize subject-matter monitoring and prioritize the County's implementation of "core institutional infrastructure required for global compliance, including conclusively finalizing: (a) all policies, procedures, and tools required to implement procedures; (b) a self-sustaining training program; and (c) an internal review program ('QA')." *Id.* at 25 (¶ 20.7). Thus, so long as the CAP remains in place, the independent monitor provisions are suspended, including Mr. Dixon's monitoring tours and reporting. *Compare id.* at 19 (¶ 17.1) with *id.* at 23 (¶¶ 20.1, 20.7).

Among other provisions, the Third Amended Consent Decree also kept in place a detainee capacity limit placed on Henley-Young with the entry of the [64] Amended Consent Decree in March 2016. Namely, the parties agreed in March 2016 "to adhere to the monitor's recommended 32-resident capacity limit on average daily population" ("ADP") at Henley-Young. [64] Am. Consent Decree at 6 (¶ 2.1); *see also* [145] Third Am. Consent Decree at 6 (¶ 2.1). As a consequence, Henley-Young "cannot exceed an average daily population of 32 residents, and [] any admission that would require an ADP in excess of 32 residents must be denied." *Id.*

The 32-detainee limit has created a series of problems for the County. As explained by Marshand K. Crisler, the Executive Director of Henley Young, the facility detains juveniles who are charged with misdemeanor crimes and thus subject to the jurisdiction of the County's Youth Court. Declaration of Marshand Crisler at ¶ 3, attached as **Exhibit** "**A**" ("Crisler Decl."). At the time the consent decree was first entered on March 28, 2012, these were the only juveniles detained at Henley-Young. Crisler Decl. at ¶ 3. However, in September 2017, the County began having to detain those juveniles being charged as adults ("JCAs") at Henley-Young as a result of ongoing litigation between the County and the Department of Justice over conditions at Raymond Detention

---

[4] While the County agreed to engage Ms. Nelson, if the County opts to end the engagement, "Ms. Nelson's status as Plaintiffs' expert will not change . . . ." *Id.* at 25-26 (¶ 20.9).

Center ("RDC"). Crisler Decl. at ¶ 3. Detaining JCAs at Henley-Young has created challenges, including significantly increasing the overall number of detainees subject to being detained at Henley-Young. Crisler Decl. at ¶ 3.

According to its design, Henley-Young has enough beds to detain up to 80 juvenile detainees, one detainee per cell. Crisler Decl. at ¶ 4. Thus, so long as the 32-detainee limit remains in place, there are 48 of the 80 available beds sitting empty every day at Henley-Young. Crisler Decl. at ¶ 4. Yet, juveniles in the "free world" throughout the County continue to commit crimes that are serious enough to cause those juveniles be charged as adults. Crisler Decl. at ¶ 4.

Making the 32-detainee limit even more problematic, it was put in place prior to JCAs being detained at Henley-Young. Crisler Decl. at ¶ 5. Adding to the problematic nature of the 32-detainee limit is the fact that, in the experience of Henley-Young's administration, juvenile detainees frequently commit crimes in groups, thus requiring more than one juvenile to be detained when a crime is committed. Crisler Decl. at ¶ 5. These highly dangerous juveniles must be detained and the public kept safe from them, yet the 32-detainee limit has placed an inordinate amount of pressure on Henley-Young, its administration, and the County as a whole stemming from the consent decree's requirement that "any admission that would require an ADP in excess of 32 residents must be denied." Crisler Decl. at ¶ 5.[5]

On April 2, 2021, the Court extended the Third Amended Consent Decree *sua sponte*. *See* [161] Order at 1-2. The Court explained that the Third Amended Consent Decree "includes a

---

[5] The pressure created by the current 32-detainee limit is not confined to the JCA population, either. At times the Youth Court must detain juveniles subject to its jurisdiction on an emergency basis, *see, e.g.*, Miss. Code § 43-21-301(6)(a), and the artificial 32-detainee limit puts the County in a bit of a catch-22: refuse to detain the juvenile and endanger their health and safety or detain the juvenile and risk violating the consent decree's artificial detainee limit. These and other issues arising from the intersection of the consent decree's provisions and the Youth Court's mission under Mississippi law unnecessarily interfere with the Youth Court's ability to look out for the best interest of juveniles falling within its jurisdiction.

["CAP"] that requires Defendants to engage Expert Anne Nelson to provide technical assistance and verify implementation of all Consent Decree provisions" at Henley-Young. *Id.* at 1. The Court further observed that while the County was attempting to comply with the consent decree, the County "acknowledge[d] that more time [was] necessary to reach substantial compliance in all areas governed by the" Third Amended Consent Decree. *Id.* Because the parties acknowledged that substantial compliance could not be achieved by March 28, 2021, the "Court, in its discretion to ensure its decrees are followed, issue[d] th[e] [Order Extending Third Amended Consent Decree] *sua sponte*." *Id.* As a consequence, the Third Amended Consent Decree was "extended for two years, up to and including March 28, 2023" and re-named the "Extended Third Amended Consent Decree." *See id.* at 2. The [161-1] Extended Third Amended Consent Decree remains the operative consent decree today.

## ARGUMENT & AUTHORITIES

### A. The PLRA

"The PLRA contains a variety of provisions to bring this [prison condition] litigation under control." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). More importantly, the Act also functions to "relieve states of the onerous burden of complying with consent decrees that often reach far beyond the dictates of federal law." *Plyler v. Moore*, 100 F.3d 365, 370 (4th Cir. 1996); *accord Brown*, 929 F.3d at 229 ("[P]rospective relief like the consent decree at issue in this case must be terminated on the motion of any party unless such relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and . . . is narrowly drawn and the least intrusive means to correct the violation." (second alteration in original) (internal quotation marks and citation omitted)); *Gilmore v. California*, 220 F.3d 987, 991 (9th Cir. 2000) ("It is clear that Congress intended the PLRA to

7

revive the hands-off doctrine."); *Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir. 1997) ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management."); *United States v. Terr. of the V.I.*, 884 F. Supp. 2d 399, 406–07 (D.V.I. 2012) (noting that PLRA sponsors "criticized judicial orders under Federal law [which] have effectively turned control of the prison system away from elected officials accountable to the taxpayer, and over to the courts" (alteration in original) (internal marks and citation omitted)).

Accordingly, the Act reads:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The Court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A); *Benjamin v. Jacobsen*, 172 F.3d 144, 150 (2nd Cir.) (en banc) (noting the PLRA's purpose is "to provide that in civil actions arising under federal law challenging conditions in prisons (including pretrial detention facilities) 'prospective relief' may not be granted in the absence of certain findings"), *cert. denied*, *Benjamin v. Kerik*, 528 U.S. 824 (1999).

Of note, the PLRA also expressly defines certain material terms.  *Inmates of Suffolk Cnty. Jail*, 129 F.3d at 655 (analogizing the PLRA's definitional instructions as a "purposeful," "linguistic anomaly").  Relevant here, "prospective relief" is defined as "all relief other than compensatory monetary damage."  18 U.S.C. § 3626(g)(7).  "Relief," in turn, means "all relief in any form that may be granted or approved by the court, . . . includ[ing] consent decrees . . . ." *Id*. § 3626(g)(9).  "Consent decree" is "any relief by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements."  *Id*. § 3626(g)(1).

8

As hinted to in its definition, consent decrees constitute one of the two forms of settlements addressed by the PLRA. *Id.* § 3626(c). Unlike private settlement agreements, consent decrees must comply with the provisions outlined in 18 U.S.C. § 3626(a). *Id.* The PLRA's specific provisions on this point read as follows:

> **(1) Consent decrees.**--In any civil action with respect to prison conditions, the court shall not enter or approve a consent decree unless it complies with the limitations on relief set forth in subsection (a).
>
> **(2) Private settlement agreements.**--**(A)** Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled.

*Id.* § 3626(c)(1)-(2).

It is undisputed that the agreement in this case is a consent decree consistent with 18 U.S.C. § 3626(c)(1). *See* [50] Order at 4. In fact, the consent decree explicitly states: "It is the intent of the parties that the Court will retain ongoing jurisdiction over this Extended Third Amended Consent Decree for purposes of enforcement, pursuant to the terms of the Prison Litigation Reform Act. All provisions of this Extended Third Amended Consent Decree shall be interpreted to be consistent with this intent." *See* [161-1] Extended Third Amended Consent Decree 3 (¶ 4).

### B.     Termination of the Consent Decree under 18 U.S.C. § 3626(b)

#### 1.     18 U.S.C. § 3626(b)(1), (b)(2), (b)(3)

Against this backdrop, the County turns to termination or, alternatively, modification. Section 3626(b) governs the termination or modification of existing federal court orders, like the consent decree. Most pertinent here, the PLRA entitles any party to terminate an existing consent decree "2 years after the date the court granted or approved the prospective relief." 18 U.S.C. § 3626(b)(1)(A)(i); *see also Guajardo*, 363 F.3d at 394 ("Institutional consent decrees are not

intended to operate in perpetuity. The PLRA strongly disfavors continuing relief through federal courts; indeed, its fundamental purpose was to extricate them from managing state prisons." (cleaned up)).[6]

Establishing that a consent decree is subject to termination under § 3626(b)(1) or (2), however, does not end the analysis. The next section, § 3626(b)(3), provides a limitation to termination. Pursuant to that subsection, the PLRA provides:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief [(1)] remains necessary to correct a current and ongoing violation of the Federal right, [(2)] extends no further than necessary to correct the violation of the Federal right, and [(3)] that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3).[7]

### 2. 18 U.S.C. § 3626(b)'s Burden-Shifting Framework

In terminating the consent decree, the County bears the initial burden to prove that the consent decree is subject to immediate termination under § 3626(b)(2) or that two years have passed since the Court approved the consent decree under § 3626(b)(1)(A)(i), or both. Once met, the burden shifts to Plaintiffs to prove the substantive requirements of § 3626(b)(3).

The Fifth Circuit, in *Guajardo*, is instructive here. There, the panel explained:

> [The defendant], in seeking termination, must initially establish the requisite passage of time. 18 U.S.C. § 3626(b)(1)(iii) (relief terminable upon motion of any party, but "in the case of an order issued . . . before the date of enactment of the [PLRA], 2 years after such date of enactment"). As held by most courts, the burden of proof then shifts to the [plaintiffs] to demonstrate ongoing violations and that the relief is narrowly drawn. 18 U.S.C. § 3626(b)(3). *See* [*Laaman v. Warden*, 238 F.3d

---

[6] In addition, to be eligible for <u>immediate</u> termination, the PLRA provides "a defendant . . . shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. 3626(b)(2).

[7] This same limitation on termination applies not only to termination under § 3626(b)(1) but also termination under 3626(b)(2). *See James v. Lash*, 965 F. Supp. 1190, 1193 (N.D. Ind. 1997) ("Where the requisite findings were not made, the plaintiffs are nonetheless protected by § 3626(b)(3) . . . .").

10

14, 20 (1st Cir. 2001)]; *Ruiz v. Johnson*, 154 F. Supp. 2d 975, 984 n.12 (S.D. Tex. 2001) (observing that constitutional violations were found where prisoners met their burden of proof); *Imprisoned Citizens Union v. Shapp*, 11 F. Supp. 2d 586, 604 (E.D. Pa. 1998), *aff'd sub nom. Imprisoned Citizens Union v. Ridge*, 169 F.3d 178 (3d Cir. 1999) (holding PLRA not unconstitutional for placing on prisoners burden for proving ongoing violations).

We agree with the great majority of courts to address this issue: a plain reading of the PLRA, including its structure, imposes the burden on the prisoners. Section 3626(b)(3) places a limitation on the termination of prospective relief under a consent decree if the court makes the requisite written findings based on the record; but the burden of proof to support these findings is obviously on the party opposing termination. Accordingly, that burden was allocated correctly to plaintiffs.

*Guajardo*, 363 F.3d at 395–96 (emphases added).

### 3.    Analysis

The County moves to terminate the consent decree pursuant to the two-year provision set forth in § 3626(b)(1)(A)(i). Under that subsection, relief "shall be terminable" two years after the Court granted the consent decree. Here, the consent decree was originally entered on March 28, 2012, *see* [33] Settlement Agreement, and the Third Amended Consent Decree was approved on April 3, 2019, *see* [144] Order 1-4. Consequently, and for this independent reason, the consent decree "shall be terminable" under § 3626(b)(1)(A)(i) because nearly three years have passed since the Court's order and approval.

Because the County has satisfied its burden under § 3626(b)(1)(A)(i), the burden now shifts to Plaintiffs to prove why the consent decree should not terminate under § 3626(b)(3). *See Guajardo*, 363 F.3d at 395-96.

Stated differently, Plaintiffs shoulder the burden of proving "current and ongoing" constitutional violations, and the County is entitled to termination if Plaintiffs do not carry their burden of proof. *See id.* The "current and ongoing" inquiry is not focused on past or future events. *See Castillo v. Cameron County*, 238 F.3d 339, 353 (5th Cir. 2001) (explaining that, under the

11

PLRA, the focus of courts is not on "conditions that existed in the past or [on] conditions that may possibly occur in the future"); *Lancaster v. Tilton*, No. C-79-1630-WHA, 2007 WL 4570185, at *6 (N.D. Cal 2007) (noting that while "[i]nstantaneous snapshots are impossible[,]" "facts in close temporal proximity are probative"). This Court instead must assess the conditions of confinement "at the time termination is sought," *Castillo*, 238 F.3d at 353, allowing the parties to put on evidence regarding whether or not there are any existing unconstitutional conditions at Henley-Young. *Ruiz v. United States*, 243 F.3d 941, 950 (5th Cir. 2001) (citation omitted).

If Plaintiffs meet their burden, then Plaintiffs bear the additional burden of proving the second and third elements of § 3626(b)(3). Under the second element, Plaintiffs must show that "aspects of the consent decree remain necessary to correct those violations." *Id*. If Plaintiffs prove the second element, then Plaintiffs must further show that "those parts of the decree are narrowly drawn and the least intrusive means to correct the applicable violation." *Ruiz*, 243 F.3d at 950.

In its review, "[t]he district court should engage in specific, provision-by-provision examination of the consent decree, measuring each requirement against the statutory criteria." *Id*. In *Ruiz v. United States*, Judge Stewart, writing for the panel, delineated the Court's obligations as follows:

> Section 3626(b)(3) outlines specific standards to be followed when a district court considers whether to terminate a consent decree providing for prospective relief. It requires "particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree [] satisfies the need-narrowness-intrusiveness criteria, given the nature of the current and ongoing violation." *Cason v. Seckinger*, 231 F.3d 777, 785 (11th Cir. 2000). "It is not enough [for the district court] to simply state in conclusory fashion that the requirements of the consent decree[] satisfy those criteria." *Id.* Rather, "the district court should engage in specific, provision-by-provision examination of the consent decree, measuring each requirement against the statutory criteria." *Id.*
>
> . . .
>
> [This] procedure . . . is mandated by § 3626(b)(3) and cannot be circumvented by a mere recitation of the key statutory language. Instead, the requisite findings must

12

> be evinced in writing with respect to each remaining aspect of prospective relief. *See Cason*, 231 F.3d at 785 (finding that § 3626(b)(3) requires "[p]articularized findings, analysis, and explanations [to] be made as to the application of each criteria to each requirement imposed by the consent decrees"). Otherwise, the district court should terminate the unnecessary relief, assuming that the other requirements for termination under § 3626 are met.

243 F.3d at 950 (first, second, and third alterations in original).

To sum it up: the County has satisfied its burden under § 3626(b)(1)(A)(i) to terminate the consent decree. And because Plaintiffs will not be able to meet their burden under § 3626(b)(3), the consent decree must be terminated, or, at a minimum, modified to remove the numerous policies and provisions that either are unnecessary to correct any purported violation of federal rights or are hindering the County's efforts to keep the public safe from violent juvenile detainees while working to improve conditions at Henley-Young.

### C.  Modification of the Consent Decree Under 18 U.S.C. § 3626(b)(3) and (4)

In the alternative only, even if Plaintiffs can establish a constitutional violation, the County requests modification of the [161-1] Extended Third Amended Consent Decree pursuant to 18 U.S.C § 3626(b)(3). Namely, the County seeks modification of the Extended Third Amended Consent Decree (a) to remove the 32-detainee limit found in Paragraph 2.1 and (b) to eliminate the CAP described in Section XX and replace Ms. Nelson with Mr. Dixon, allowing him to return to his monitoring duties as set out in Section XVII of the operative consent decree.

Turning first to the 32-detainee limit, this provision must be considered light of the current circumstances at Henley-Young. Specifically, the facility now detains both juveniles subject to the Youth Court's jurisdiction and JCAs not subject to the Youth Court's jurisdiction. The 32-detainee limit was put in place nearly 18 months prior to any JCAs being detained at Henley-Young. *See* [62] Joint Mot. to Extend Consent Decree at 3-4, [64] Amended Consent Decree at 6 (¶ 2.1), [165] Order at 1. While a 32-detainee limit may have been reasonable when Henley-

13

Young was simply a facility detaining on a short-term basis only those juveniles charged with misdemeanors and subject to the Youth Court's jurisdiction, circumstances have changed drastically and it is no longer feasible or equitable to allow this limit to remain in place.[8] Against this backdrop, Plaintiffs cannot demonstrate the 32-detainee limit "extends no further than necessary to correct the violation of the Federal right," or that the 32-detainee limit "is narrowly drawn and the least intrusive means to correct [any purported federal rights] violation" that is current and ongoing at Henley-Young. 18 U.S.C. § 3626(b)(3).

Looking next to the CAP and Ms. Nelson's technical assistance as provided in Section XX of the Extended Third Amended Consent Decree, Plaintiffs cannot establish that keeping the CAP in place and mandating the County remain engaged with Ms. Nelson satisfies the need-narrowness-intrusiveness requirements of 18 U.S.C. § 3626(b)(3) under the circumstances. As an initial matter, the County has complied with requirements central to the CAP as identified in Paragraph 20.7 of the operative consent decree, largely eliminating the need for the CAP. More specifically, as explained by Quality Assurance Coordinator Eric Dorsey, the County has in place 115 policies and procedures and associated "tools" required to implement them. *Compare* Declaration of Eric Dorsey at ¶ 3, attached as **Exhibit** "**B**" ("Dorsey Decl."), *with* [161-1] Extended Third Amended Consent Decree at 24 (¶ 20.7(a)). The County has an in-house Training Director, a Training Coordinator to assist with the training program at Henley-Young, and training is active and ongoing today. *Compare* Dorsey Decl. at ¶ 4, *with* [161-1] Extended Third Amended Consent Decree at 24-25 (¶ 20.7(b)). The County also has in place a robust internal review program led by

---

[8] The County respectfully submits that, in addition to the 32-detainee limit being susceptible to modification pursuant to 18 U.S.C. § 3626(b)(3), it is also susceptible to modification under Rule 60(b)(5) of the Federal Rules of Civil Procedure, as applied through 18 U.S.C. § 3626(b)(4). *Compare* Rule 60(b)(5) (providing that, on motion and just terms, a court may relieve a party from a final judgment or order where "applying [the judgment] prospectively is no longer equitable") *with* 18 U.S.C. § 3626(b)(4) (providing that any party may seek modification to the extent it "would otherwise be legally permissible").

14

Dorsey, who conducts an ongoing review of all policies and procedures and evaluation of whether the facility is meeting the consent decree's goals. *Compare* Dorsey Decl. at ¶ 5, *with* [161-1] Extended Third Amended Consent Decree at 25 (¶ 20.7(c)). Lastly, the County contends (based on its work with Mr. Dixon during his time as monitor) that allowing Mr. Dixon to return to his role as monitor will result in monitoring services more focused on getting the County out of the consent decree for good, consistent with the PLRA's underlying policy. *See Inmates of Suffolk Cty. Jail*, 129 F.3d at 655 ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management.") (citation omitted).

## CONCLUSION

Because the County has satisfied its burden under 18 U.S.C. § 3626(b)(1), the consent decree is now terminable in whole or in part pending Plaintiff's burden under § 3626(b)(3). In the alternative only, if Plaintiffs are able to establish a constitutional violation warranting continued prospective relief, the County requests modification of the [161-1] Extended Third Amended Consent Decree as set forth above.[9]

Dated: March 18, 2022

Respectfully submitted,

**PHELPS DUNBAR, LLP**


BY:  */s/ Nicholas F. Morisani*
      W. Thomas Siler, Jr. MB #6791
      Nicholas F. Morisani, MB #104970
      4270 I-55 North
      Jackson, Mississippi 39211-6391
      Post Office Box 16114

---

[9] The County respectfully requests the opportunity to present oral argument at a hearing on its termination and modification requests and to file post-termination-hearing briefs to fully assess whether Plaintiffs have met their burden under § 3626(b)(3).

15

Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Tommy.Siler@phelps.com
Nick.Morisani@phelps.com

**ATTORNEYS FOR DEFENDANT HINDS COUNTY**

## CERTIFICATE OF SERVICE

I, Nicholas F. Morisani, certify, that, on March 18, 2022, I had this Memorandum electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

*/s/ Nicholas F. Morisani*
Nicholas F. Morisani